# 22-0007-cv

## United States Court of Appeals
### *for the*
## Second Circuit

AYANNA J., by her next friend, Meyghan McCrea, DAMEON C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall, OLIVIA R., by their next friend, Dawn Cardi, MATTHEW V., by their next friend, Samuel D. Perry, Individually and on behalf of a class of all others similarly situated, MIKAYLA G., by her next friend, Michael B. Mushlin, VALENTINA T.C., by their next friend, Rachel Friedman, JOSE T.C., by their next friend, Rachel Friedman, LUCAS T., by their next friend, Rachel Friedman, MYLS J., by their next friend, Elizabeth Hendrix, XIMENA T., by their next friend, Rachel Friedman, MALIK M., by their next friend, Elizabeth Hendrix, EMMANUEL S., by their next friend, Samuel D. Perry, Individually and on behalf of a class and all others similarly situated, ALEXANDRIA R., by her next friend, Alison Max Rothschild, THIERRY E., by his next friend Michael B. Mushlin, ELISA W., XAVION M., by his next friend, Michael B. Mushlin, TYRONE M., by his next friend, Bishop Lillian Robinson-Wiltshire, ANA-MARIA R., by their next friend, Dawn Cardi, BRITTNEY W., by her next friend, Shamara Mills,

*Plaintiffs-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF *AMICI CURIAE* PROFESSORS DAVID MARCUS AND TOBIAS BARRINGTON WOLFF IN SUPPORT OF PLAINTIFFS-APPELLANTS

KEVIN D. BENISH
PATRICK J. WOODS
HOLWELL SHUSTER & GOLDBERG LLP
*Attorneys for Amici Curiae*
425 Lexington Avenue
New York, New York 10017
(646) 837-5151

– v. –

THE CITY OF NEW YORK, SHEILA J. POOLE, Commissioner of the New York State Office of Children and Family Services, in her official capacity,

*Defendants-Appellees,*

STATE OF NEW YORK, NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, DAVID HANSEL, Commissioner of the New York City Administration for Children's Services, in his official capacity, NEW YORK CITY ADMINISTRATION FOR CHILDRENS SERVICES,

*Defendants,*

THE LEGAL AID SOCIETY, LAWYERS FOR CHILDREN, INC., THE CHILDREN'S LAW CENTER OF NEW YORK, CENTER FOR FAMILY REPRESENTATION, ESQ., BRONX DEFENDERS, BROOKLYN DEFENDER SERVICE, NEIGHBORHOOD DEFENDER SERVICE OF HARLEM,

*Intervenors.*

# TABLE OF CONTENTS

Page

INTEREST OF *AMICI CURIAE* ..............................................................1

INTRODUCTION ....................................................................................1

ARGUMENT ...........................................................................................3

I.    This Institutional Reform Class Action Lies in the Heartland of Rule 23(b)(2) and Satisfies the Commonality Requirement as Described in the *Wal-Mart* Case. ..............................................3

II.    Since *Wal-Mart*, a Commonality Determination Requires Careful Attention to the Substantive Law at Issue and the Evidence That Plaintiffs Propose Using to Establish a Defendant's Liability To the Class as a Whole.....................................................................11

        A.    Several Flaws with the District Court's Commonality and Typicality Findings Highlight Why Careful Attention to the Substantive Law and the Plaintiffs' Evidence Is Necessary at the Class Certification Stage. .............................14

                1.    The District Court Did Not Use the Applicable Substantive Law to Explain Why the Plaintiffs' Proposed Common Questions Fail the Rule 23(a)(2) Threshold. ...................................................................14

                2.    Whether Plaintiffs Can Challenge "Departures" from "Unitary, Non-Discretionary Policies" in a Rule 23(b)(2) Class Action Likewise Cannot Be Answered Without Consideration of the Substantive Law and the Plaintiffs' Evidence................18

                3.    Whether Differences Among Class Members Matter to Class Certification Depends on the Applicable Substantive Law and the Plaintiffs' Liability Theory...........................................................20

CONCLUSION ......................................................................................26

## <u>TABLE OF AUTHORITIES</u>

### Cases

*B.K. by next friend Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) .................................................................. 12, 15, 25

*Brown v. Plata*,
  563 U.S. 493 (2011) ............................................................................. 9, 10, 18

*Coleman v. Schwarzenegger*,
  922 F. Supp. 2d 882 (E.D. Cal. 2009) .................................................................10

*Connor B. ex rel. Vigurs v. Patrick*,
  272 F.R.D. 288 (D. Mass. 2011) .........................................................................16

*Connor B. ex rel. Vigurs v. Patrick*,
  278 F.R.D. 30 (D. Mass. 2011) ...........................................................................16

*D.G. ex rel. Strickland v. Yarbrough*,
  278 F.R.D. 635 (N.D. Okla. 2011) ............................................................... 12, 17

*DG ex rel. Stricklin v. Devaughn*,
  594 F.3d 1188 (10th Cir. 2010) ...........................................................................25

*Doe v. New York City Dep't of Soc. Servs.*,
  649 F.2d 134 (2d Cir. 1981) ..................................................................................8

*Dothard v. Rawlinson*,
  433 U.S. 321 (1977) ...............................................................................................7

*Elisa W. v. City of New York*,
  No. 15-CV-5273 (KMW), 2021 WL 4027013 (S.D.N.Y. Sept. 3, 2021).... *passim*

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012)................................................................... 19, 23

*Franks v. Bowman Transp. Co.*,
  424 U.S. 747 (1976) ...............................................................................................6

*Garnett v. Zeilinger*,
  301 F. Supp. 3d 199 (D.D.C. 2018) ....................................................................23

*J.N. v. Oregon Dep't of Educ.*,
  338 F.R.D. 256 (D. Or. 2021) ................................................................24

*K.H. Through Murphy v. Morgan*,
  914 F.2d 846 (7th Cir. 1990) ...............................................................8

*Lucero-Gonzalez v. Kline*,
  No. CV-20-00901-PHX-DJH (DMF),
  2020 WL 8258216 (D. Ariz. Nov. 3, 2020) .........................................24

*M.B. by Eggemeyer v. Corsi*,
  327 F.R.D. 271 (W.D. Mo. 2018) .........................................................24

*M.D. by Stukenberg v. Abbott*,
  907 F.3d 237 (5th Cir. 2018) ...........................................................8, 14

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 832 (5th Cir. 2012) ...............................................................13

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013) .................................................... *passim*

*M.D. v. Perry*,
  Civ. No. C-11-84, 2011 WL 2173673 (S.D. Tex. June 2, 2011) .........................12

*Malam v. Adducci*,
  475 F. Supp. 3d 721 (E.D. Mich. 2020) ..............................................22

*Marisol A. ex rel. Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997) .................................................................8

*McFields v. Dart*,
  982 F.3d 511 (7th Cir. 2020) ........................................................ 17, 18

*Meador v. Cabinet for Human Resources*,
  902 F.2d 474 (6th Cir. 1990) ...............................................................8

*Monell v. New York City Department of Social Services*,
  436 U.S. 658 (1978) ............................................................................17

*Norfleet by and through Norfleet v. Arkansas Dep't of Soc. Servs.*,
  989 F.2d 289 (8th Cir. 1993) ...............................................................8

*Ortega-Melendres v. Arpaio*,
  836 F. Supp. 2d 959 (D. Ariz. 2011) ..................................................................19

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................... 12, 14, 18, 24

*Phillips v. Sheriff of Cook County*,
  828 F.3d 541 (7th Cir. 2016) ........................................................ 11, 19

*Sandoval v. County of Sonoma*,
  No. 11-cv-05817-TEH, 2015 WL 4148261 (N.D. Cal. July 9, 2015) .... 23, 24, 25

*Smith v. City of Chicago*,
  340 F.R.D. 262 (N.D. Ill. 2021) ........................................................19

*Tinsley v. Flanagan,*
  No. CV-15-00185-PHX-ROS,
  2017 WL 11631019 (D. Ariz. Sept. 30, 2017) ................................. 15, 16, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................. *passim*

*Yates v. Collier*,
  868 F.3d 354 (5th Cir. 2017) ...........................................................12

*Yvonne L., By and Through Lewis v. New Mexico Dep't of Human Servs.*,
  959 F.2d 883 (10th Cir. 1992) ...........................................................8

## Statutes and Rules

Fed. R. App. P. 29 ...............................................................................1

Fed R. Civ. P. 23 ................................................................. *passim*

Civil Rights Act of 1964, Title VII ........................................... 5, 6, 12, 14

## Other Authorities

David Marcus,
  *The Persistence and Uncertain Future of the Public Interest Class Action*,
  24 Lewis & Clark L. Rev. 395 (2020).................................................. 1, 11, 12, 19

Tobias Barrington Wolff,
  *Managerial Judging and Substantive Law*,
  90 Wash. U. L. Rev. 1027 (2013) .............................................................. 1, 5, 15

## <u>INTEREST OF *AMICI CURIAE*</u>

David Marcus is Professor of Law at the UCLA School of Law. Tobias Barrington Wolff is the Jefferson Barnes Fordham Professor of Law at the University of Pennsylvania Law School. Professors Marcus and Wolff are scholars in the field of Civil Procedure and Complex Litigation. Both *amici* research and write about class action doctrine and both have addressed Federal Rule of Civil Procedure 23 and the impact of *Wal-Mart v. Dukes* on the commonality requirement in class certification. *See, e.g.*, David Marcus, *The Persistence and Uncertain Future of the Public Interest Class Action*, 24 Lewis & Clark L. Rev. 395 (2020); Tobias Barrington Wolff, *Managerial Judging and Substantive Law*, 90 Wash. U. L. Rev. 1027 (2013). They have a continuing professional and scholarly interest in the correct interpretation and application of these doctrines.[1]

## <u>INTRODUCTION</u>

The court below adopted a construction of Federal Rule of Civil Procedure 23 that would bar most class actions seeking to reform institutions engaged in systematic violations of the rights of individuals in their custody or

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E)(i), no party or party's counsel authored this brief in whole or in part. No party or party's counsel and no other person listed in Federal Rule of Appellate Procedure 29(a)(4)(E) contributed money for preparing or submitting this brief. Pursuant to Fed. R. App. P. 29(a)(2), all parties to this appeal have been requested to consent to the filing of this brief, and counsel for Plaintiffs-Appellants and Defendants-Appellees consent.

care.  This was serious error.  The District Court's approach to the commonality requirement misconstrued the decision of the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and either ignored or dismissed a long line of Supreme Court rulings that have repeatedly confirmed the suitability of Rule 23(b)(2) to institutional reform cases, rulings that have been reaffirmed by many Circuits in the years following *Wal-Mart*.  Commonality requires that the core claims in an action share elements that can produce common answers to the liability question for the class, not that the application of those answers to each individual class member will be identical.  Where the class establishes a unitary course of conduct by the defendants that violates their constitutional duty of care to all plaintiffs, the requirement of commonality is satisfied.

*Amici* take no position on the ultimate question of class certification in this case, nor on the merits of the underlying suit.  *Amici*'s focus in this submission is the District Court's construction of the commonality requirement under Federal Rule 23.  This brief clarifies *Wal-Mart*'s treatment of commonality and the need for class certification to devote careful attention to the underlying substantive law and describes how federal courts in institutional reform cases since *Wal-Mart* have administered that requirement.  The District Court's construction of commonality was legal error and should not stand.

# ARGUMENT

I. **THIS INSTITUTIONAL REFORM CLASS ACTION LIES IN THE HEARTLAND OF RULE 23(B)(2) AND SATISFIES THE COMMONALITY REQUIREMENT AS DESCRIBED IN THE *WAL-MART* CASE.**

The *Elisa W.* plaintiffs allege that the city and state defendants employ systemwide policies that place children in foster care at grave risk of harm in violation of the defendants' constitutional duty of care. The proposed class action does not seek to litigate individual placement decisions of every child in foster care in New York City, it seeks to compel changes in systemwide policies that plaintiffs allege will bring the defendants into compliance with the duties the Constitution imposes on government-run foster care institutions. *See* Amended Class Action Complaint for Injunctive and Declaratory Relief, *Elisa W. v. City of New York*, Civ. No. 15-CV-5273 (KMW), ECF No. 91 at ¶ 171 (S.D.N.Y. Dec. 28, 2015) ("Am. Compl.") (describing the Defendants' liability, in part, in terms of "risk of harms"); *id.* at ¶ 344 (describing the plaintiffs' substantive due process cause of action).

An action of this type lies in the heartland of Rule 23(b)(2). If a state-run prison system chose to employ no doctors or other medical staff to serve the people it incarcerated, that policy would violate the constitutional right of access to adequate medical care possessed by all those incarcerated individuals in a common fashion, even though the specific harms they would suffer from inadequate medical

3

care would vary enormously. Commonality would only be in doubt if the nature of the right secured to the incarcerated plaintiffs by the underlying substantive law varied within the class. Because the Eighth Amendment secures the same right of adequate medical care to all incarcerated people, the plaintiffs' claim would present a liability issue common to all class members.

The same principle governs this case. Plaintiffs allege that the city and state defendants employ policies that place children at substantial and unnecessary risk of extended stays in foster care without an appropriate placement, with the harm and trauma that excessive fosterage can impose. All members of the class possess the same right under the Due Process Clause to be free from substantial and unnecessary risk of harm while in the State's custody. Because the Due Process Clause secures the same duty of care for all children in fosterage, claims of systemic failings allege the same violation of that duty to all children in the class and present a common issue that, if proven, will be central to the resolution of their claims, irrespective of the specific harms experienced by each class member that may flow from that violation.

The District Court's apparent conclusion that these foundational commonality principles were superseded by *Wal-Mart Stores, Inc. v. Dukes* was incorrect. *Wal-Mart* did not effect a radical revision of the commonality requirement. The commonality holding in *Wal-Mart* was grounded in the Court's

conclusion that the substantive law of employment discrimination under Title VII of the Civil Rights Act of 1964 did not recognize the plaintiffs' allegations as presenting any shared liability question. *See* Tobias Barrington Wolff, *Managerial Judging and Substantive Law*, 90 Wash. U. L. Rev. 1027, 1033–39 (2013) [hereinafter Wolff, *Managerial Judging*] (analyzing the commonality holding in *Wal-Mart*). In contrast, where the substantive law does establish common rights shared by members of the class that are threatened in the same way by defendant's conduct, *Wal-Mart* makes equally clear that the commonality requirement is satisfied.[2]

The plaintiffs in *Wal-Mart* alleged that the company followed a policy of giving store-level managers unconstrained discretion in making decisions on hiring, promotion and firing, and they claimed that this policy produced a disparate impact on female employees in violation of Title VII. In rejecting class certification, the Supreme Court shaped its commonality ruling around the substantive content of Title VII, holding that the mere existence of a policy of total discretion was not cognizable under the Civil Rights Act and hence presented no common question that would form any part of the liability determination for all class members. "The only corporate policy that the plaintiffs' evidence

---

[2] The analysis in the next several paragraphs is adapted from the cited passages in Wolff, *Managerial Judging*, *supra*.

convincingly establishes," the Court explained, "is Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters." *Wal-Mart*, 564 U.S. at 355. The Court found that this was "just the opposite of a uniform employment practice that would provide the commonality needed for a class action" and was "also a very common and presumptively reasonable way of doing business [that] 'should itself raise no inference of discriminatory conduct.'" *Id.* at 355–56 (citations omitted). Absent a showing that the company's system of discretionary decision-making violated the same rights under Title VII for all class members, the Court explained, "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's" and so the plaintiffs could not "show that all the employees' Title VII claims will in fact depend on the answers to common questions." *Id.* (citations omitted).

A wide range of Title VII cases presenting both shared and individual issues still satisfy the commonality standard after *Wal-Mart*. For example, if a company had an express policy that encouraged stores to prioritize men over women in hiring and promotion, that policy would violate Title VII and be subject to a common, class-wide injunctive remedy even if many managers would disregard the policy's encouragement and make decisions based purely on merit. *See, e.g., Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976). Similarly, if a company had a policy that favored workers with greater height and upper-body strength in

positions where those characteristics have no occupational justification, that policy would be subject to a common, class-wide injunctive remedy for its unjustified disparate impact even if many managers would disregard the policy and instead "select sex-neutral, performance-based criteria for hiring and promotion that produce no actionable disparity at all." *Wal-Mart*, 564 U.S. at 355. The policy produces a disparate impact that warrants injunctive intervention under Title VII. *See, e.g.*, *Dothard v. Rawlinson*, 433 U.S. 321, 329–30 (1977). In both cases, the substantive law declares these policies invalid because of their overall impact on the class; therefore, the policies violate statutory rights shared by all class members.

Likewise, if the *Wal-Mart* Court had found, *contra* its actual holding, that Title VII *does* prohibit a company-wide policy of reposing discretion in store-level managers because of its capacity to impose a disparate impact on women regardless of how that policy plays out in particular stores—just as the express preference and height-and-weight examples described above could violate Title VII for their intentional discrimination and disparate impact even in the face of store-level idiosyncrasy and variation—then the discretionary policy would itself have constituted a shared issue that would drive liability answers as to all class members. On that reading of the Civil Rights Act, "all the employees' Title

VII claims [would] in fact depend on the answers to common questions" and commonality would be satisfied. *Wal-Mart*, 564 U.S. at 355.

The *Elisa W.* case presents a well-established shared liability question: the constitutional duty of the city and state defendants to avoid imposing substantial and unnecessary risk of harm on all children in the custody of their foster care system. *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997).[3] The cause of action at issue is common to all class members because the alleged malfeasance of the city and state violates the same right and imposes the same risk of harm on all foster children. The substantive due process right of freedom from unreasonable risk of harm does not vary among the children in defendants' custody, and the plaintiffs allege that systemic failures by the defendants violate that duty. Plaintiffs will have to prove their case on the facts, a matter on which *amici* express no view, but any variations in the harm individual children are suffering no more defeats commonality than does the fact that different incarcerated people will suffer different concrete harms from a systematic denial of access to medical care.

---

[3] *See also Doe v. New York City Dep't of Soc. Servs.*, 649 F.2d 134 (2d Cir. 1981); *M.D. by Stukenberg v. Abbott*, 907 F.3d 237 (5th Cir. 2018); *Norfleet by and through Norfleet v. Arkansas Dep't of Soc. Servs.*, 989 F.2d 289 (8th Cir. 1993); *Yvonne L., By and Through Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883 (10th Cir. 1992); *K.H. Through Murphy v. Morgan*, 914 F.2d 846 (7th Cir. 1990); *Meador v. Cabinet for Human Resources*, 902 F.2d 474 (6th Cir. 1990).

To hold otherwise would suggest that the Supreme Court in *Wal-Mart* effectively overruled its decision in *Brown v. Plata*, 563 U.S. 493 (2011), a case argued during the same Term with an opinion issued just one month before *Wal-Mart* was announced. *Plata* involved a Rule 23(b)(2) class action brought by prisoners in the California state prison system who alleged systematic failures to provide adequate medical care. After two decades of litigation in which the district court found a continuing failure by state officials to address these harms adequately, the district court ordered that a portion of the incarcerated population be given early release to alleviate overcrowding. The question before the Supreme Court was whether this extraordinary remedy was justified by the factual record.

The *Plata* Court affirmed the early release order. In so doing, it undertook an extensive review of the district court's findings concerning prison overcrowding and inadequate medical care, the efforts undertaken by lower courts to find less invasive remedies, the efficacy of those remedies that were attempted, and the huge variation among incarcerated individuals in the harms they suffered. 563 U.S. at 502–10. The Court ended its analysis by stressing the continuing role that the lower court would play on remand in adjusting the balance between sweeping orders and surgical tools in its mix of remedies as the state made "further progress . . . toward remedying the underlying constitutional violation." *Id*. at 544.

The issue of commonality was not before the Court in *Plata* but it precedes and underpins all the Court's analysis concerning remedies for the class. Over the course of twenty years, federal district courts certified and adjudicated class claims and superintended remedies in actions comprising all current and future incarcerated people in California state prisons who were being denied access to minimally adequate medical care and treatment. California's failings played out in different ways in different prison facilities, but the harms done to the *Plata* plaintiffs—which were as diverse as the plaintiffs themselves—all sprang from the same massive, systemic problems of prison underfunding, overcrowding and neglect. *See Coleman v. Schwarzenegger*, 922 F. Supp. 2d 882, 898–915 (E.D. Cal. 2009) (describing in detail the history and progression of these proceedings), *aff'd sub nom. Brown v. Plata*, 563 U.S. 493 (2011).

As *Brown v. Plata* demonstrates, institutional reform class actions may be certified where plaintiffs allege systemic problems that violate constitutional and statutory rights commonly shared by members of a class even where they injure individual class members in different ways and in different settings and may require an evolving set of remedies that account for changing conditions on the ground. Such actions would be foreclosed by the District Court's approach to the commonality requirement in this case. Accepting the rationale of the decision below essentially requires finding that the Supreme Court issued its landmark

decision in *Plata* only to conclude one month later in *Wal-Mart* that the entire

institutional reform class in *Plata* should never have been certified. *Wal-Mart* in

no way compels this nonsensical result and the Court of Appeals should reject the

constrained approach to commonality employed in the decision below.

II.     **SINCE *WAL-MART*, A COMMONALITY DETERMINATION REQUIRES CAREFUL ATTENTION TO THE SUBSTANTIVE LAW AT ISSUE AND THE EVIDENCE THAT PLAINTIFFS PROPOSE USING TO ESTABLISH A DEFENDANT'S LIABILITY TO THE CLASS AS A WHOLE.**

In the years since *Wal-Mart*, federal district courts have certified class

actions at a high rate. *See* David Marcus, *The Persistence and Uncertain Future of

the Public Interest Class Action*, 24 Lewis & Clark L. Rev. 395, 411–12 (2020)

[hereinafter Marcus, *Persistence*] (reporting a 75% grant rate in reported class

certification decisions in the federal district courts, 2011–2020). Many of these

post-*Wal-Mart* certification decisions occur in institutional reform cases where

careful engagement with relevant substantive law is dispositive to the commonality

determination. The District Court's Rule 23(a)(2) discussion conflicts with this

extensive body of caselaw, casting the ruling below as a clear outlier.

*Wal-Mart*'s demand for a "'rigorous analysis'" at the class certification stage

has yielded an understanding among federal courts that "[a] determination of

commonality often requires a precise understanding of the nature of the plaintiffs'

claims." *Phillips v. Sheriff of Cook County*, 828 F.3d 541, 552 (7th Cir. 2016); *see*

*also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 968 (9th Cir. 2019). This "precise understanding" tends to involve two inquiries. First, courts ask whether the applicable substantive legal doctrine permits a common, class-wide determination of the defendant's liability. *E.g.*, *Yates v. Collier*, 868 F.3d 354, 360–61 (5th Cir. 2017); *Parsons v. Ryan*, 754 F.3d 657, 676–79 (9th Cir. 2014). Second, courts require plaintiffs to show, with evidence, that their proposed common questions can yield common answers important to an ultimate liability finding. *See* Marcus, *Persistence*, at 427–28.[4]

An episode of foster care reform litigation in Texas involving a proposed class similar to the one in this case exemplifies the dispositive role that substantive law determinations like the Title VII analysis in *Wal-Mart* now play at the class certification stage. Shortly before *Wal-Mart*, a district court certified a class of all children in the custody of Texas's long-term foster care system, challenging various aspects of that system's operation. *M.D. v. Perry*, Civ. No. C-11-84, 2011 WL 2173673, at *19 (S.D. Tex. June 2, 2011). The district court did not analyze the substance of the children's Fourteenth Amendment claims in its commonality analysis and it made no evidentiary determinations. *See id.* at *5–*8.

---

[4] *See also D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 639–46 (N.D. Okla. 2011) (describing "significant proof" the plaintiffs in a foster care reform case mustered to show that the defendants had "general" policies and practices that could generate Fourteenth Amendment liability).

The Fifth Circuit reversed. "[T]he district court's analysis may have been a reasonable application of pre-*Wal-Mart* precedent," the Fifth Circuit commented, but *Wal-Mart* "render[ed] the district court's analysis insufficient." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012). The district court "conducted no analysis of the elements and defenses for establishing any of the proposed class claims" and thereby failed to explain "how those claims depend on a common legal contention . . . ." *Id.* at 842. Given that "the proffered common issue is a somewhat amorphous claim of systemic or widespread misconduct[,]" the Fifth Circuit continued, "the district court should be particularly precise when explaining how the resolution of" the common questions "will resolve an issue that is central to the validity of each of the [individual class member's claims] in one stroke." *Id.* at 844 (internal quotations omitted).

On remand, the district court re-certified the class. *M.D. v. Perry*, 294 F.R.D. 7 (S.D. Tex. 2013). It prefaced its commonality determination with an extensive analysis of the contours of the plaintiffs' substantive due process theory. The court concluded that "the Fourteenth Amendment right upon which Plaintiffs base their claim can be characterized as a right to be free from an unreasonable risk of harm while in the State's custody." *Id.* at 34. The court noted that this "risk of harm is general," *id.* at 45, and whether all children in the system "suffered [this] legal injury" "does not entail individualized inquiries." *Id.* at 34, 45.

The court then made extensive evidentiary findings to suggest that the state had a "policy or practice" of deficiencies that threatened large numbers of children. *Id.* at 39–44. This evidence, coupled with the risk of harm liability theory, meant the plaintiffs had "ma[de] out a claim on behalf of the class" and that "issues central to [it]" turned on common answers to common questions. *Id.* at 44. The district court's class certification decision ultimately prevailed on appeal. *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 271 (5th Cir. 2018).

## A. Several Flaws with the District Court's Commonality and Typicality Findings Highlight Why Careful Attention to the Substantive Law and the Plaintiffs' Evidence Is Necessary at the Class Certification Stage.

In the decision under review by this Court, the District Court did not anchor its commonality or typicality findings in a "precise understanding of the nature of the [plaintiffs'] underlying claims." *Parsons*, 754 F.3d at 676. Several aspects of the district court's decision lack clarity regarding the plaintiffs' substantive legal theories and what these theories require for the plaintiffs to prevail.

## 1. The District Court Did Not Use the Applicable Substantive Law to Explain Why the Plaintiffs' Proposed Common Questions Fail the Rule 23(a)(2) Threshold.

*Wal-Mart*'s engagement with Title VII doctrine makes clear that commonality analysis requires a substantive legal measuring stick. There is no way to know whether "a class-wide proceeding" has "capacity" to generate "common answers apt to drive the resolution of the litigation" unless the court

details what the substantive law requires the plaintiffs to prove to prevail. *Wal-Mart*, 564 U.S. at 350 (internal quotations and emphasis omitted); Wolff, *Managerial Judging and Substantive Law*, at 1035–38. Two recent engagements with commonality in other Circuits illustrate the central role that the substantive legal measuring stick should play at the class certification stage and, by comparison, the shortcomings in the District Court's analysis.

*Tinsley v. Flanagan* involved a class-wide challenge to the administration of Arizona's foster care system. There, as here, the plaintiffs' substantive due process theory centered on the claim that various policies and practices exposed the class members to a "substantial risk of harm." No. CV-15-00185-PHX-ROS, 2017 WL 11631019, at *2 (D. Ariz. Sept. 30, 2017). *Compare* Am. Compl. at ¶ 171 (alleging that Defendants imposed unjustified "risks of harms" on children in the class); *id.* at ¶ 344 (describing the plaintiffs' substantive due process cause of action). After discussing the relevant Fourteenth Amendment doctrine, the Arizona district court determined that common questions involving whether the state "fail[ed] to provide physical and dental health care," and whether the state "fail[ed] to conduct timely investigations into reports when children have been abused or neglected" met *Wal-Mart*'s threshold. *Tinsley*, 2017 WL 11631019, at *8. The Ninth Circuit affirmed this commonality finding after considering "the nature of the plaintiffs' due process claims." *B.K.*, 922 F.3d at 968–69.

15

The district court in the present case held that the several common questions of fact that plaintiffs identified "are too broad and generalized" to meet *Wal-Mart*'s standard. *Elisa W. v. City of New York*, No. 15-CV-5273 (KMW), 2021 WL 4027013, at *9 (S.D.N.Y. Sept. 3, 2021). But a determination of breadth or generality requires a substantive legal measuring stick, and the District Court did not employ one. Questions like "whether ACS exercises meaningful oversight over the Contract Agencies," *id.* at *8, do not generate answers that are any more "generalized" or "broad" than those that were held sufficient to satisfy commonality in *Tinsley* or those that passed muster in other foster care reform class actions after *Wal-Mart*.[5] "To what extent caseworkers are overworked," for instance, is not any narrower or more specific than "whether ACS fails to ensure that case workers receive adequate training." *Compare M.D.*, 294 F.R.D. at 44,

---

[5] In *Connor B. ex. rel. Vigurs v. Patrick*, for instance, the plaintiffs proposed the following common questions in support of their effort to get a class of children in Massachusetts' foster care system certified:

> [W]hether Defendants fail to provide Plaintiff Children with (1) safe, appropriate and stable foster care placements; (2) timely and appropriate services necessary to keep them safe and properly cared for; (3) appropriate case management to ensure that they are either safely reunited with their families when appropriate or, when that is not possible, promptly freed for adoption and placed with a permanent family; and (4) the supports necessary to maintain family relationships including the provision of parent and sibling visits.

Memorandum in Support of Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, C.A. No. 10-cv-30073-MAP, ECF No. 4 at 11 (D. Mass. Apr. 15, 2010). The district court certified the class, *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292–96 (D. Mass. 2011), then affirmed its commonality determination when the defendants moved to decertify after *Wal-Mart*. *Connor B. ex rel. Vigurs v. Patrick*, 278 F.R.D. 30, 33–34 (D. Mass. 2011).

*with Elisa W.*, 2021 WL 4027013, at *8.  *See also D.G.*, 278 F.R.D. at 636 (describing as a common question "[w]hether [Oklahoma] has a policy or practice of failing to adequately monitor the safety of Plaintiff Children causing significant harm and risk of harm to their safety"); *id.* at 646 (denying post-*Wal-Mart* motion to de-certify a class of children in foster care).

In contrast, consider the decision of the Seventh Circuit in *McFields v. Dart*, 982 F.3d 511 (7th Cir. 2020), in which a class of pretrial detainees sued a county for its failure to provide adequate dental care.  There, unlike in *Tinsley*, the court found that, based on the nature of the substantive right at issue, the resolution of the plaintiffs' claim would not be sufficiently advanced by answers to the proposed common questions.  The class representative proposed as a common question "whether there was a widespread practice of failing to provide face-to-face assessments" for detainees suffering from dental pain.  *Id.* at 515.  The Seventh Circuit held that this common question fell short of *Wal-Mart*'s threshold because it found that "the answer to [the] question" regarding the county's policy on face-to-face assessments was "relevant to just one small part of the analysis" required by the substantive law applicable to those claims (Eighth Amendment doctrine and the standard for municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978)).  Given the "individualized, plaintiff-specific assessment[s]" that other elements of the plaintiffs' claims required to arrive at a

finding of liability, an answer to the common question would still have "[left the court] miles from resolving the litigation on a classwide basis." *McFields*, 982 F.3d at 517.

Only a substantive legal measuring stick of the sort that the *Tinsley* and *McFields* courts used can support a judgment on commonality. The District Court in this case failed to perform that analysis.

2. **Whether Plaintiffs Can Challenge "Departures" from "Unitary, Non-Discretionary Policies" in a Rule 23(b)(2) Class Action Likewise Cannot Be Answered Without Consideration of the Substantive Law and the Plaintiffs' Evidence.**

The District Court also determined that the plaintiffs' proposed class failed to satisfy Rule 23(a)(2) because "Plaintiffs' allegations do not flow from unitary, non-discretionary policies that violate the rights of all class members" but instead involve "*departures* from ACS policy . . . ." *Elisa W.*, 2021 WL 4027013, at *9 (emphasis in original). If the District Court read *Wal-Mart* to impose a rule prohibiting class certification unless plaintiffs challenge uniform stated policies, or a rule precluding class certification whenever the alleged injuries to the class involve harms suffered in a range of different settings, then the court clearly erred. *Plata*, 563 U.S. at 502–09; *Parsons*, 754 F.3d at 669 (summarizing evidence of a "system-wide practice of not following the [state's] formal policies and procedures" in a prison conditions class action) (internal quotations and alterations omitted); Marcus, *Persistence*, at 416–17 & n.92–97 (citing decisions granting

18

class certification in cases that do not involve challenges to such policies). Whether plaintiffs can mount a class-wide challenge to "departures" from a "unitary, non-discretionary policy" depends on the contours of the applicable substantive law. *E.g.*, *M.D.*, 294 F.R.D. at 39 (observing that liability for the poor administration of a foster care system can turn on "custom or through failing to act").[6]

The success of a class-wide challenge to something other than a stated, uniform policy also depends on whether the plaintiffs make a sufficient evidentiary showing that the defendants' customs or practices harm class members at a systemic level. The Eighth Amendment, for instance, certainly recognizes that customs and practices regarding healthcare provision in jails and prisons can generate liability whether or not they are enumerated in a stated policy. *E.g.*, *Phillips*, 828 F.3d at 557. But if plaintiffs' evidence only suggests "isolated instances of indifference to a particular inmate's medical needs" in such a case, commonality may fail. *Id.* at 554 (internal quotations omitted); *see also id.* at 557–58.

---

[6] The District Court's reading of *Wal-Mart* would preclude the certification of classes challenging municipal stop-and-frisk policies and practices, since an individual police officer must necessarily decide when to make a stop. *But see Smith v. City of Chicago*, 340 F.R.D. 262 (N.D. Ill. 2021); *Floyd v. City of New York*, 283 F.R.D. 153 (S.D.N.Y. 2012). *Cf. Ortega-Melendres v. Arpaio*, 836 F. Supp. 2d 959 (D. Ariz. 2011) (granting class certification in a case challenging a county's policies and practices regarding the stopping of motorists).

Here, the District Court made no evidentiary determination regarding the alleged departures from stated policy. Nor did it make findings bearing on the degree to which these departures did or did not create a risk of harm to all children in New York City's system. *See Elisa W.*, 2021 WL 4027013, at *9 (citing to a page in the City Defendants' opposition brief to support its determination that departures are "case-specific"). Thus, to the extent that the District Court's ruling depended on its conclusion that the evidence produced during the certification hearing did not adequately demonstrate a custom or practice of departures from stated policy, the court failed to provide the "rigorous analysis" in support of that conclusion that *Wal-Mart* demands. 564 U.S. at 351.

3.   **Whether Differences Among Class Members Matter to Class Certification Depends on the Applicable Substantive Law and the Plaintiffs' Liability Theory.**

In several instances, the District Court stressed the importance of matters requiring individualized determination to support its commonality and typicality findings. The court explained, for instance, that whether "delays in foster children's paths to permanency" occur cannot generate a common answer apt to drive the resolution of all class members' claims. The court asserted that "there are myriad reasons—some beyond the control of ACS or OCFS—why such delays occur" for any particular child. *Elisa W.*, 2021 WL 4027013, at *9. It noted that whether harmful "departures from ACS policy" happen depends on "case-specific"

reasons.  *Id* (emphasis omitted).  And it concluded that "the role played in each child's case by the New York State Family Court system" and "individualized complexities in the nature of a child's representation create . . . dissimilarities in the class and preclude a finding of commonality." *Id.* at *9–10.  These assertions misconstrue the commonality requirement.[7]

Commonality focuses on what the plaintiffs must prove to establish a defendant's liability and whether common answers to common questions are "apt to drive" toward a resolution of this liability.  *Wal-Mart*, 564 U.S. at 350. It does not require that every injury suffered by every class member will be fully adjudicated by common questions.  Injunctive class actions prosecuted under Rule 23(b)(2) do not need to satisfy any predominance requirement.  *Compare* Fed. R. Civ. P. 23(b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members").  It is only if the threshold question of liability depends so heavily on the individual experiences of class members that common questions will not meaningfully drive

_____

[7] As part of its typicality analysis, the District Court insisted that "the named Plaintiffs' claims cannot be said to 'arise[] from the same course of events' as those of other children, because it is not possible to determine what caused a permanency delay, a specific placement, an untimely or poorly-conceived case plan, or an instance of maltreatment, without evaluating all of the other contributing facts and influences." *Elisa W.*, 2021 WL 4027013, at *11.  As the court noted, "[t]ypicality and commonality 'tend[] to merge.'" *Id.* (quoting *Wal-Mart*, 564 U.S. at 349 n.5). This typicality analysis is incomplete for the same reason that the District Court's commonality discussion is incomplete.

the resolution of the defendant's liability to the class that differences among these experiences would counsel against a finding of commonality.

The legal relevance of differences among individual class members, too, can turn on the particulars of the plaintiffs' liability theory. *E.g.*, *Malam v. Adducci*, 475 F. Supp. 3d 721, 735 (E.D. Mich. 2020) (commonality satisfied in challenge to detention facility's COVID-19 mitigation measures due to risk posed regardless of individualized health vulnerabilities). Consider a stop-and-frisk example (*see* n.6, *supra*). If a class of plaintiffs alleges only that individual officers sometimes wind up performing improper stops, then commonality would likely fail because liability would turn on the details of each individual stop and no common question would drive the resolution of the class claims. If, however, plaintiffs allege that a police department employs inadequate training for all its officers or has a department-wide policy, custom or practice that encourages improper stops and frisks, then plaintiffs' claims would allege a common course of conduct violating a right shared by all class members and resolution of those claims would be driven by a common set of facts.

The applicable substantive law may also render individual differences among class members wholly irrelevant. "[E]ven after *Wal-Mart*, Rule 23(b)(2) suits remain appropriate mechanisms for obtaining injunctive relief in cases where a centralized policy is alleged to impact a large class of plaintiffs, even when the

magnitude (and existence) of the impact may vary by class member." *Floyd*, 283

F.R.D. at 173.  For instance, in a case alleging systemic delays in the processing of

applications for Supplemental Nutrition Assistance Program Benefits, the

government defendant cited the "myriad reasons why an [individual class

member's] application was not timely processed" in an attempt to challenge

commonality.  *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 207 (D.D.C. 2018).

These differences, however, posed no commonality problem because the

applicable substantive law made individual reasons for delays irrelevant to the

defendant's liability:  "Determining if there is a statutory violation does not hinge

on the reason for any particular failure to adhere to the statutory timelines."  *Id.*

In contrast, a putative class failed to satisfy Rule 23(a)(2) in a case

challenging a county's vehicle impoundment policy because the Fourth

Amendment makes the circumstances of each individual impoundment decision

relevant to its legality.  *Sandoval v. County of Sonoma*, No. 11-cv-05817-TEH,

2015 WL 4148261, at *8 (N.D. Cal. July 9, 2015).  The plaintiffs in that case did

not claim some systemic failure or malfeasance on the part of the county; instead,

they asked for a prophylactic rule that would invalidate a 30-day vehicle

impoundment policy in all cases because its application might sometimes be

unreasonable under the Fourth Amendment.  The district court found that the

Fourth Amendment did not support such a theory and therefore that common

questions could not drive a resolution of the county's liability for the class as a whole. *Id.*

In a variety of other cases involving a range of substantive legal contexts, courts have held that individual differences in class members' experiences with the challenged government program do not hinder commonality when the plaintiffs allege exposure to a substantial risk of serious harm as their legal injury.[8] After a lengthy discussion of applicable Eighth Amendment doctrine, for instance, the Ninth Circuit noted that "every inmate" in a class action challenging prison conditions allegedly "suffers exactly the same constitutional injury when he is exposed to a single statewide . . . policy or practice that creates a substantial risk of serious harm." *Parsons*, 754 F.3d at 678. The "inquiry" that this alleged injury calls for "does not require us to determine the effect of those policies or practices upon any individual class member . . . or to undertake any other kind of individualized determination." *Id.* Following other courts' leads,[9] the Ninth

---

[8] *E.g.*, *J.N. v. Oregon Dep't of Educ.*, 338 F.R.D. 256, 266 (D. Or. 2021) (commonality satisfied in case alleging liability under the Individuals with Disabilities in Education Act ("IDEA") based on risk of harm posed to class members); *Lucero-Gonzalez v. Kline*, No. CV-20-00901-PHX-DJH (DMF), 2020 WL 8258216, at *5 (D. Ariz. Nov. 3, 2020) (prison conditions case reaching similar conclusion).

[9] *M.B. by Eggemeyer v. Corsi*, 327 F.R.D. 271, 280 (W.D. Mo. 2018) ("[T]he possibility that not all children in the putative class may actually suffer harm as a result of the policies and practices at issue does not defeat commonality. The commonality requirement is satisfied where, as Plaintiffs allege here, Defendants' policies and practices uniformly subject members of the putative class to a *substantial risk of serious harm*."); *M.D.*, 294 F.R.D. at 45 (whether defendants' policies "subject class members to an unreasonable risk of harm . . . can be proven on the basis of classwide evidence without individualized inquiries.").

Circuit later confirmed that "the same reasoning applies" when a class of children in foster care alleges a Fourteenth Amendment substantial risk of harm claim. *B.K.*, 922 F.3d at 969. As the Tenth Circuit likewise concluded in a foster care reform case challenging Oklahoma's system, different outcomes for individual children do not matter to the liability determination when the plaintiffs' theory stresses a substantial risk of serious harm that all children face. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195–96 (10th Cir. 2010).

The *Elisa W.* plaintiffs center their claims on a due process risk of harm theory. The clear consensus among other Courts of Appeals is that such a theory of liability fully satisfies the requirement of commonality and can proceed on a class-wide basis. Defendants could only defeat commonality if they could show that, despite what appears to be an allegation of a common violation of a shared constitutional duty, the plaintiff were in fact asserting claims that would require wholly individual determinations for each child on the question of liability, as distinct from determinations of harm and the administration of an eventual remedy. *Cf. Sandoval v. County of Sonoma*, 2015 WL 4148261, at *8. The ruling of the District Court falls far short of making such a determination under the "rigorous analysis" required by *Wal-Mart*, which demands close attention to the content of the underlying substantive law.

# CONCLUSION

The District Court applied an erroneous standard of commonality that appears to confuse the shared nature of class plaintiffs' liability theory with differences in how individual children may have been harmed by defendants' alleged malfeasance. The court failed to undertake a careful examination of the plaintiffs' liability theory and failed to support its commonality ruling with evidentiary findings sufficient to satisfy the "rigorous analysis" that *Wal-Mart* requires. In all these respects, the court's ruling cannot stand.


Dated: April 26, 2022            Respectfully submitted,

                                             HOLWELL SHUSTER & GOLDBERG LLP

                                             By:   */s/ Kevin D. Benish*
                                                   Kevin D. Benish
                                                   Patrick J. Woods

                                             425 Lexington Ave, 14th Floor
                                             New York, New York 10017
                                             Telephone: (646) 837-5151
                                             Facsimile: (646) 837-5150
                                             kbenish@hsgllp.com

                                             Attorneys for *Amici Curiae*
                                             Professors David Marcus and
                                             Tobias Barrington Wolff

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 6,319 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font, using Microsoft Word 2013.

Dated:  April 26, 2022                    _/s/ Kevin D. Benish_____
                                          Kevin D. Benish