# 22-0007-cv

In The

## United States Court of Appeals

For The Second Circuit

_____

ELISA W., ET AL., PLAINTIFFS-APPELLANTS,

v.

THE CITY OF NEW YORK, ET AL., DEFENDANTS-
APPELLEES.

_____

*(For Full Caption See Inside Cover)*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 15-5273)
(THE HONORABLE KIMBA M. WOOD)

**JOINT APPENDIX
VOLUME I of XIII, PAGES A1-A285**

Marcia Robinson Lowry
A BETTER CHILDHOOD, INC.
   355 Lexington Avenue, Floor 16
   New York, NY 10017
   (646) 975-4456

Antony L. Ryan
Justin C. Clarke
Nicole M. Peles
CRAVATH, SWAINE & MOORE LLP
   Worldwide Plaza
   825 Eighth Avenue
   New York, NY 10019
   (212) 474-1000

*Attorneys for Plaintiffs-Appellants*

Hon. Silvia O. Hinds Radix
*Corporation Counsel*
*of the City of New York*
Richard Dearing
Claude S. Platton
Jamison Davies
   *of Counsel*
     100 Church Street
      New York, NY 10007
       (212) 356-2490

Barbara D. Underwood
*Solicitor General*
Ester Murdukhayeva
*Deputy Solicitor General*
Elizabeth A. Brody
*Assistant Solicitor General*
   *of Counsel*
     28 Liberty Street
      New York, NY 10005
       (212) 416-6167

*Attorneys for Defendants-Appellees*

ELISA W.; ALEXANDRIA R., BY HER NEXT FRIEND, ALISON MAX ROTHSCHILD; THIERRY E., BY HIS NEXT FRIEND, MICHAEL B. MUSHLIN; LUCAS T., XIMENA T., JOSE T.C. AND VALENTINA T.C., BY THEIR NEXT FRIEND, RACHEL FRIEDMAN; AYANNA J., BY HER NEXT FRIEND, MEYGHAN MCCREA; OLIVIA AND ANA-MARIA R., BY THEIR NEXT FRIEND, DAWN CARDI; XAVION M., BY HIS NEXT FRIEND, MICHAEL B. MUSHLIN; DAMEON C., BY HIS NEXT FRIEND, REVEREND DOCTOR GWENDOLYN HADLEY-HALL; TYRONE M., BY HIS NEXT FRIEND, BISHOP LILLIAN ROBINSON-WILTSHIRE; BRITTNEY W., BY HER NEXT FRIEND, SHAMARA MILLS; MIKAYLA G., BY HER NEXT FRIEND, MICHAEL B. MUSHLIN; MYLS J. AND MALIK M., BY THEIR NEXT FRIEND, ELIZABETH HENDRIX; AND EMMANUEL S. AND MATTHEW V., BY THEIR NEXT FRIEND, SAMUEL D. PERRY, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL OTHERS SIMILARLY SITUATED.

*PLAINTIFFS-APPELLANTS,*

– V. –

THE CITY OF NEW YORK; SHEILA J. POOLE, COMMISSIONER OF THE NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES, IN HER OFFICIAL CAPACITY,

*DEFENDANTS-APPELLEES,*

NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES; STATE OF NEW YORK; NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES; AND DAVID HANSEL, COMMISSIONER OF THE NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES, IN HIS OFFICIAL CAPACITY,

*DEFENDANTS.*

# TABLE OF CONTENTS

Page

**DISTRICT COURT FILINGS**
(S.D.N.Y. 15-cv-05273)

Docket Report ................................................................................................ A1

Class Action Complaint for Injunctive and Declaratory Relief (Dkt. 1) ............................... A91

Notice of Motion for Class Certification (Dkt. 75) ................................................. A202

Amended Class Action Complaint for Injunctive and Declaratory Relief (Dkt. 91) ............. A204

Children's Advocates' Notice of Motion to Intervene for the Limited Purpose of
Objecting to the Proposed Settlement (Dkt. 180) ........................................................ A333

Parent Advocates' Notice of Motion to Intervene for the Limited Purpose of
Objecting to the Consent Decree (Dkt. 181) .............................................................. A335

Declaration of Charles J. Hamilton in Support of Parent Advocate's Motion to
Intervene for the Limited Purpose of Objecting to the Settlement (Dkt. 183) ...................... A337

Exhibit B – Expert Declaration of Professor Christine Gottlieb in Support of Parent
Advocates' Motion to Intervene and Object to the Proposed Settlement (Dkt. 183-2) ........ A340

Affirmation of Karen J. Freedman in Support of the Motion to Intervene and
Objections to the Proposed Settlement (Dkt. 184) ...................................................... A358

Affirmation of Tamara S. Stickler in Support of the Motion to Intervene and
Objections to the Proposed Settlement (Dkt. 185) ...................................................... A363

Objections of Legal Aid Society, et al. to the Proposed Settlement (Dkt. 187) ................... A372

Exhibit C – Supplemental Declaration of Lee Dorrance Prochera in Support of Final
Approval of the Proposed Consent Decree (Dkt. 225-3) ............................................... A402

Declaration of Charles J. Hamilton in Support of the Parent Advocate Intervenors'
Opposition to the Motion for Final Approval of Settlement (Dkt. 235) .............................. A413

Expert Declaration of Dr. John Mattingly in Support of the Parent Advocates'
Opposition to the Motion for Final Approval of Settlement (Dkt. 236) .............................. A415

Supplemental Expert Declaration of Professor Christine Gottlieb in Support of the
Parent Advocates' Opposition to the Motion for Final Approval of Settlement (Dkt.
237) ....................................................................................................... A423

Memorandum Opinion & Order on Motion for Final Approval of Settlement (Dkt.
259) ....................................................................................................... A435

Opinion & Order on City of New York's Motion to Dismiss (Dkt. 278) .............................. A456

Page

Order Denying Motion for Class Certification (Dkt. 282)........................................ A478

Notice of Partial Voluntary Dismissal (Dkt. 343) .................................................... A482

Declaration of M. Lowry in Opposition to Defendants' Cross-Motion to Dismiss
(Dkt. 370) ................................................................................................................. A485

Declaration of Elisa W. – FILED UNDER SEAL (Dkt. 371) .................................. A488

Preliminary Joint Pre-Trial Statement (Dkt. 379).................................................... A489

Memorandum Opinion and Order on Motion for Partial Summary Judgment (Dkt.
392)............................................................................................................................ A543

Memorandum Opinion and Order on City of New York's Motion for Partial Summary
Judgment (Dkt. 397)................................................................................................. A548

Report and Recommendation (Dkt. 416) .................................................................. A553

Order Adopting Recommendation (Dkt. 418) .......................................................... A600

Notice of Renewed Motion for Class Certification (Dkt. 439).................................. A602

Memorandum of Law in Support of Plaintiffs' Renewed Motion for Class
Certification (Dkt. 440)............................................................................................ A605

Appendix 1 – FILED UNDER SEAL (Dkt. 440-1) ................................................. A675

Declaration of Marcia Robinson Lowry in Support of Plaintiff Children's Renewed
Motion for Class Certification (Dkt. 441)................................................................ A676

Declaration of Julie A. North in Support of Plaintiff Children's Renewed Motion for
Class Certification (Dkt. 442) .................................................................................. A680

Exhibit 1 – Executive Summary of Dr. Caroline Long Burry (Dkt.442-1) ............. A698

Exhibit 2 – Expert Report of David Brodzinsky, Ph.D. (Dkt. 442-2) ..................... A1193

Exhibit 3 – Excerpt of the Deposition Transcript of Karen Abreu-Rosano (Dkt. 442-3)...... A1242

Exhibit 6 – Excerpt of the Deposition Transcript of Julie Farber (Dkt. 442-6)..................... A1261

Exhibit 7 – Excerpt of the Deposition Transcript of Ronni Fuchs (Dkt. 442-7) .................. A1281

Exhibit 9 – FILED UNDER SEAL (Dkt. 442-9) .................................................... A1316

Exhibit 10 – Excerpt of the Deposition Transcript of the State of NY Office of
Children & Family Services by Renee Hallock (Dkt. 442-10)................................. A1317

Exhibit 12 – Excerpt of the 30(b)(6) Deposition Transcript of Graham Windham (Dkt.
442-12) ..................................................................................................................... A1331

Page

Exhibit 13 – Excerpt of the 30(b)(6) Deposition Transcript of Catholic Guardian Services by Ann McCabe (Dkt. 442-13) ................................................................. A1345

Exhibit 15 – FILED UNDER SEAL (Dkt. 442-15) ................................................ A1352

Exhibit 16 – Excerpt of the Deposition Transcript of David Nish (Dkt. 442-16) ................. A1353

Exhibit 17 - Excerpt of the Deposition Transcript of Daniela Pogue (Dkt. 442-17)............. A1368

Exhibit 18 - Excerpt of the Deposition Transcript of OCFS by Sheila Poole (Dkt. 442-18) ....................................................................................................................... A1377

Exhibit 19 - Excerpt of the Deposition Transcript of Carla Riccobono (Dkt. 442-19).......... A1385

Exhibit 20 - Excerpt of the Deposition Transcript of Alan Sputz (Dkt. 442-20) ................. A1393

Exhibit 21 - Excerpt of the Deposition Transcript of Laura Velez (Dkt. 442-21)................. A1398

Exhibit 22 - Excerpt of the Deposition Transcript of Andrew White (Dkt. 442-22) ............ A1416

Exhibit 23 - Excerpt of the 30(b)(6) Deposition Transcript of Seamen's Society by Lyschel Wilkerson (Dkt. 442-23) ..................................................................... A1470

Exhibit 25 – FILED UNDER SEAL (Dkt. 442-25) ................................................ A1475

Exhibit 26 – FILED UNDER SEAL (Dkt. 442-26) ................................................ A1476

Exhibit 27 – Purchase of Regular Residential Care Services (Dkt. 442-27) ......................... A1477

Exhibit 29 – City of New York Permanency Planning Policy and Procedure #2013/03 (Dkt. 442-29)....................................................................................................... A1558

Exhibit 31 – 2011 Foster Care Quality Assurance Standards (Dkt. 442-31)......................... A1582

Exhibit 32 – Placement System Talking Points (Dkt. 442-32)............................................. A1809

Exhibit 35 – Trial Discharge Review Initiative (Dkt. 442-35).............................................. A1811

Exhibit 40 – Assessment of Improved Outcomes for Children (Dkt. 442-40)...................... A1839

Exhibit 43 – Email from B. Doran to A. White et al. re: "Timeliness of Permanency Reports Submission" (Dkt. 442-43) ................................................................. A1903

Exhibit 46 – September 16, 2015 IOC Workgroup Meeting Minutes (Dkt. 442-46) ........... A1910

Exhibit 47 – No Time to Wait Initiative (Dkt. 442-47)....................................................... A1915

Exhibit 50 – Chart re: "Selected Major ACS Child Welfare System Reform Projects Currently Underway" (Dkt. 442-50) ........................................................... A1919

Exhibit 51 – Placement Module – Major Placement Issues and Recommendations (Dkt. 442-51)....................................................................................................... A1925

Page

Exhibit 56 – October 16, 2015 Foster Care Directors' Meeting Minutes (Dkt. 442-56) ....... A1930

Exhibit 60 – FILED UNDER SEAL (Dkt. 442-60) ................................................................ A1937

Exhibit 61 –September 6, 2016 Catholic Guardian Presentation re: "Moving the Dial -
Reflecting on Initial Insights from the Rapid Permanency Reviews" (Dkt. 442-61) ............. A1938

Exhibit 63 – Chart re: "Collaborative Quality Improvement: FY17 Annual Data Sheet
for Foster Care" (Dkt. 442-63) ............................................................................................. A1958

Exhibit 65 – Chart re: "Committee: Strengthening Reunification Efforts" (Dkt. 442-
65) ..........................................................................................................................................
A1964

Exhibit 66 – Email from J. Roth to B. Miller re: "NTTW Adoption/KG Subsidy
Process Follow Up" (Dkt. 442-66) ....................................................................................... A1970

Exhibit 67 – Document re: "GANNT Chart Creation" (Dkt. 442-67) ................................... A1974

Exhibit 68 – Improved Outcomes for Children 2017 ACS Re-Approval Report and
Request (Dkt. 442-68) ........................................................................................................... A1989

Exhibit 69 – June 2016 Presentation re: "FPS Monthly Report" (Dkt. 442-69) ................... A2037

Exhibit 73 – Performance Evaluation Meeting Summary Report (Dkt. 442-73) .................. A2130

Exhibit 86 – Voluntary Agency Review: Process Guidelines for Regional Office Staff
(Dkt. 442-86) ......................................................................................................................... A2143

Exhibit 88 – Email from L. Velez to R. Toomer re: "from Pat B on First IOC Report"
(Dkt. 442-88) ......................................................................................................................... A2149

Exhibit 93 – ACS Requirements – Placements Project Charter (Dkt. 442-93) ..................... A2151

Exhibit 97 – March 18, 2016 Voluntary Agency Quarterly Site Visit Report: New
Alternatives for Children (NAC) (Dkt. 442-97) .................................................................... A2172

Exhibit 98 – May 13, 2016 Voluntary Agency Quarterly Site Visit Report: New
Alternatives for Children (NAC) (Dkt. 442-98) .................................................................... A2174

Exhibit 100 – Chart re: "CFSR 3: Wave 4" (Permanency and Safety Indicators) (Dkt.
442-100) ................................................................................................................................. A2177

Exhibit 102 – Chart re: "CFSR Round 3 Performance Outcome by Indicator and
Wave" (Dkt. 442-102) ........................................................................................................... A2206

Exhibit 108 – DOI Investigation of Child Fatalities and Other Injuries Reveals Legal
and  Practice Violations by the City Administration for Children's Services (Dkt. 442-
108) ......................................................................................................................................... A2211

Exhibit 109 – Suffolk County Supreme Court Special Grand Jury – Grand Jury
Report (Dkt. 442-109) ........................................................................................................... A2248

Page

Exhibit 113 – April 2017 Presentation re: "Ensuring Long-Lasting Permanency and Well-Being" (Dkt. 442-113) ........................................................................................ A2335

Exhibit 115 – New York City Administration for Children's Services – Health and Safety of Children In Foster Care (Dkt. 442-115)...................................................... A2355

Exhibit 117 – ACS Foster Care Strategic Blueprint FY 2019-FY 2023 & Findings from the Rapid Permanency Reviews (Dkt. 442-117) ................................................ A2383

Exhibit 118 – Rising Ground & Edwin Gould – A New Day (Dkt. 442-118) ...................... A2446

Exhibit 119 – DOI Report Finds the City Administration for Children's Services Did Not Sufficiently Hold Foster Care Providers Accountable for Safety of Children in their Care (Dkt. 442-119)............................................................................................ A2450

Exhibit 120 – February 2019 Preliminary Mayor's Management Report (Dkt. 442-120)......................................................................................................................... A2467

Exhibit 121 – Audit Report on the Oversight of the Administration for Children's Services' Certification Process of Foster Parents (Dkt. 442-121)............................... A2842

Declaration of Shamara Mills in Support of Plaintiffs' Motion to Substitute Shamara Mills as a Next Friend (Dkt. 466)....................................................................... A2879

Declaration of Julie Farber in Support of City Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 490) ................................... A2881

Declaration of Andrew White in Support of City Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 491) ................................... A2906

Declaration of Allon Yaroni in Support of City Defendants' Opposition to Plaintiffs' Reenewed Motion for Class Certification (Dkt. 492) ................................. A2927

City Defendant's Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 493) ................................................................... A2932

City's Exhibit B – August 28, 2020 Report on Sample Typicality of Fred Wulezyn, Ph.D. (Dkt. 495)....................................................................................................... A3014

Declaration of Nancy Thomson in Support of City Defendants' Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 496)................................... A3035

State Defendant's Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 497) ................................................................... A3038

Declaration of Lisa Ghartey Ogundimu in Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 498) ................................................................... A3083

Exhibit B - Letter from S. Poole to D. Hansell (Dkt. 498-2) .................................. A3096

Page

Exhibit C – Administrative Directive of Child Welfare and Community Services re: "Uploading Documents/Photos to CONNECTIONS" (Dkt. 498-3) ........................................ A3099

Exhibit D – Administrative Directive of Bureau of Child Welfare and Community Services re: "Placement Module Phase 3 – Searching/Matching Function" (Dkt. 498-4) ................................................................................................................................. A3105

Letter from J. North to Judge Wood re: Addressing Administrative Issues (Dkt. 500) ........ A3115

September 30, 2020 Scheduling Order (Dkt. 501) ............................................................ A3120

Margaret A. Burt, Esq. Report on Plaintiffs' Experts' Report, and Review of Select Plaintiff-Children's Case Files (Dkt. 507) ...................................................................... A3121

Brief of Amici Curiae Parent Advocates in Opposition to Plaintiffs' Renewed Motion for Class Certification (Dkt. 531) .................................................................................. A3195

Reply in Support of Plaintiffs' Renewed Motion for Class Certification (Dkt. 533) ............ A3253

Exhibit 3 – Excerpt of the Deposition Transcript of Carla Riccobono (Dkt. 534-3) ............ A3300

Exhibit 5 – Excerpt of the Deposition Transcript of Shanna Gonzalez (Dkt. 534-5) ........... A3303

Exhibit 6 – Excerpt of the Deposition Transcript of Julie Farber (Dkt. 534-6) ................... A3306

Exhibit 10 – Letter from S. Buchalter to N. Peles (Dkt. 534-10) ................................... A3309

Exhibit 11 – Letter from J. Pines to N. Peles (Dkt. 534-11) ........................................ A3316

**APPEALS COURT FILINGS**
(2nd Circ. 21-2262)

Petition for Permission to Appeal Order Denying Class Certification (Dkt. 1) .................... A3325

Order Granting Petitioners' Request to Appeal (Dkt. 37) ....................................... A3383

STAYED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:15-cv-05273-KMW-SLC

Elisa W. et al v. The City Of New York , et al          Date Filed: 07/08/2015
Assigned to: Judge Kimba M. Wood                        Jury Demand: None
Referred to: Magistrate Judge Sarah L Cave              Nature of Suit: 440 Civil Rights: Other
Cause: 42:1983 Civil Rights Act                         Jurisdiction: Federal Question

**Plaintiff**

**Ayanna J.**                          represented by   **Brittany Lynn Sukiennik**
*by her next friend, Meyghan McCrea*                    Cravath, Swaine & Moore LLP
                                                        825 Eighth Avenue
                                                        New York, NY 10019
                                                        (212)-474-1828
                                                        Fax: (212)-474-3700
                                                        Email: bsukiennik@cravath.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Claire Botnick**
                                                        Cravath, Swaine and Moore LLP
                                                        825 8th Ave
                                                        New York, NY 10023
                                                        (212)-474-1109
                                                        Email: cbotnick@cravath.edu
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Daniel Slifkin**
                                                        Cravath, Swaine & Moore LLP
                                                        825 Eighth Avenue
                                                        New York, NY 10019
                                                        (212) 474-1000
                                                        Fax: (212) 474-3700
                                                        Email: dslifkin@cravath.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Justin Conrad Clarke**
                                                        Cravath Swaine & Moore LLP
                                                        825 Eighth Ave.
                                                        New York, NY 10019
                                                        (212)-474-1184
                                                        Email: jcclarke@cravath.com
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Marcia Robinson Lowry**
                                                        A Better Childhood, Inc.
                                                        355 Lexington Avenue
                                                        Floor16
                                                        New York, NY 10017
                                                        646-795-4463

Email: mlowry@abetterchildhood.org
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
Cravath, Swaine & Moore, LLP
825 Eighth Ave.
New York, NY 10019
(212)-474-1110
Email: mjamison@cravath.com
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1624
Fax: (212) 474-3700
Email: npeles@cravath.com
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
Mayer Brown LLP
1999 K Street, NW
Washington DC, DC 20006
202-263-3262
Email: rlamorte@cravath.com
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
A Better Childhood
1095 Hardscrabble Road
Chappaqua, NY 10514
(347)-687-2063
Email: sjaffe@abetterchildhood.org
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
212-474-1000
Email: sreents@cravath.com
*ATTORNEY TO BE NOTICED*

**Julie A North**
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
Fax: (212) 474-3700
Email: jnorth@cravath.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

A0002

**Dameon C.**
*by his next friend, Reverend Doctor*
*Gwendolyn Hadley-Hall*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Letitia James**
*the Public Advocate for the City of New*
*York*
*TERMINATED: 12/04/2019*

represented by **Jennifer L. Levy**
New York State Attorney General
28 Liberty St.
New York, NY 10005
212-416-8450
Email: jlevy@pubadvocate.nyc.gov
*TERMINATED: 01/02/2019*

**Molly Anne Thomas-Jensen**

Everytown Law
450 Lexington Ave
Ste PO #4184
New York, NY 10017
646-324-8226
Email: mthomasjensen@everytown.org
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Olivia R.**
*by their next friend, Dawn Cardi*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**

A0004

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Valentina T.C.**
*by their next friend, Rachel Friedman*

              represented by     **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew V.**
*by their next friend, Samuel D. Perry,
Individually and on behalf of a class of all
others similarly situated*

              represented by     **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Mikayla G.
*by her next friend, Michael B. Mushlin*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**Myls J.**
*by their next friend, Elizabeth Hendrix*

represented by    **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

Plaintiff

**Jose T.C.**
*by their next friend, Rachel Friedman*

represented by    **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lucas T.**
*by their next friend, Rachel Friedman*

represented by    **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Emmanuel S.**
*by their next friend, Samuel D. Perry,*
*Individually and on behalf of a class and all*
*others similarly situated*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ximena T.**
*by their next friend, Rachel Friedman*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Malik M.**
*by their next friend, Elizabeth Hendrix*

represented by    **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Elisa W.**                          represented by    **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alexandria R.**                                    represented by   **Brittany Lynn Sukiennik**
*by her next friend, Alison Max Rothschild*                          (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

                                                  **Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thierry E.**                                       represented by   **Brittany Lynn Sukiennik**
*by his next friend Michael B. Mushlin*                              (See above for address)
                                                                     *ATTORNEY TO BE NOTICED*

**Claire Botnick**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ana-Maria R.**
*by their next friend, Dawn Cardi*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Xavion M.**
*by his next friend, Michael B. Mushlin*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

Nicole Marie Peles
(See above for address)
*ATTORNEY TO BE NOTICED*

Rachel Jennifer Lamorte
(See above for address)
*ATTORNEY TO BE NOTICED*

Sarah W Jaffe
(See above for address)
*ATTORNEY TO BE NOTICED*

Scott Bartron Reents
(See above for address)
*ATTORNEY TO BE NOTICED*

Julie A North
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tyrone M.**
*by his next friend, Bishop Lillian Robinson-Wiltshire*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

Case 22-7, Document 124, 08/09/2022, 3363349, Page25 of 294

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brittney W.**
*by her next friend, Shamara Mills*

represented by **Brittany Lynn Sukiennik**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Claire Botnick**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Slifkin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Justin Conrad Clarke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcia Robinson Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly Montgomery Jamison**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicole Marie Peles**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rachel Jennifer Lamorte**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah W Jaffe**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Scott Bartron Reents**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Julie A North**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The City of New York**                    represented by    **Agnetha Elizabeth Jacob**
New York City Law Department
100 Church Street
New York, NY 10007
212-356-0881
Fax: 212-788-0940
Email: ajacob@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Ian William Forster**
New York City Law Department, General
Litigation Division
100 Church Street
New York, NY 10007
(212) 356-2624
Email: iforster@law.nyc.gov
*TERMINATED: 04/12/2022*

**Jonathan L. Pines**
NYC Law Department, Office of the
Corporation Counsel
100 Church Street
New York, NY 10007
(212) 788-0933
Fax: (212) 788-0940
Email: jpines@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Lauren Almquist Lively**
New York City Law Department
100 Church Street
New York, NY 10007
(212)-356-0885
Email: llively@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Neil Anthony Giovanatti**
New York City Law Department
100 Church Street Room 2663
New York, NY 10007
(212)-356-0886
Fax: (212)-788-3770
Email: giovanattin@michigan.gov
*ATTORNEY TO BE NOTICED*

**Sharon Vicky Sprayregen**
New York City Law Department

A0017

100 Church St.
New York, NY 10007
212-356-0873
Email: ssprayre@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**New York City Administration for Childrens Services**

represented by **Ian William Forster**
(See above for address)
*TERMINATED: 04/12/2022*

**Jonathan L. Pines**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren Almquist Lively**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neil Anthony Giovanatti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Vicky Sprayregen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**State Of New York**

represented by **Jennifer C. Simon**
New York State Office of The Attorney
General
28 Liberty Street, 19th Floor
New York, NY 10005
212-416-8086
Email: jennifer.simon@ag.ny.gov
*LEAD ATTORNEY*

**Antoinette W Blanchette**
NYS Office of the Attorney General
28 Liberty Street
New York, NY 10005
212-416-8595
Fax: 212-416-6009
Email: Antoinette.Blanchette@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Samantha Leigh Buchalter**
New York State Office of the Attorney
General (28 Liberty)
28 Liberty Street, 15th Floor
New York, NY 10005
212-416-6582
Fax: 212-416-6009

Email: samantha.buchalter@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**New York State Office of Children and**
**Family Services**
*TERMINATED: 01/27/2017*

represented by **Jennifer C. Simon**
(See above for address)
*LEAD ATTORNEY*

**Antoinette W Blanchette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samantha Leigh Buchalter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gladys Carrion**
*Commissioner of the New York City*
*Administration for Childrens Services, in*
*her official capacity*
*TERMINATED: 12/04/2019*

represented by **Ian William Forster**
(See above for address)
*TERMINATED: 04/12/2022*

**Jonathan L. Pines**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren Almquist Lively**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Neil Anthony Giovanatti**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sharon Vicky Sprayregen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Hansel**
*Commissioner of the New York City*
*Administration for Children's Services, in*
*his official capacity*

**Defendant**

**The New York State Office of Children**
**and Family Services**

**Defendant**

**Sheila J. Poole**
*Acting Commissioner of the New York State*
*Office of Children and Family Services, in*
*her official capacity*

represented by **Jennifer C. Simon**
(See above for address)
*TERMINATED: 02/02/2017*
*LEAD ATTORNEY*

Case 22-7, Document 124, 08/09/2022, 3362349, Page29 of 294

**Antoinette W Blanchette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cara Brown Chomski**
U.S. Equal Employment Opportunity
Commission
33 Whitehall Street 5th Floor
New York, NY 10004
929-506-5275
Email: cara.chomski@eeoc.gov
*ATTORNEY TO BE NOTICED*

**Roderick Leopold Arz**
New York State Office of the Attorney
General (28 Liberty)
28 Liberty Street, 15th Floor
New York, NY 10005
212-416-8633
Fax: 212-416-6009
Email: Roderick.Arz@ag.ny.gov
*ATTORNEY TO BE NOTICED*

**Samantha Leigh Buchalter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nominal Defendant**

**Non-party agency**

**ADR Provider**

**Non-party agency**

**Intervenor**

**The Legal Aid Society**       represented by **Celia Goldwag Barenholtz**
Cooley LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 479-6330
Fax: (212) 202-4711
Email: cbarenholtz@cooley.com
*ATTORNEY TO BE NOTICED*

**Kara C Wilson**
Cooley LLP (NY)
1114 Avenue of the Americas
New York, NY 10036
(212)-479-6545
Fax: (212)-479-6275
Email: kwilson@cooley.com
*ATTORNEY TO BE NOTICED*

**Lisa Freeman**

Case 22-7, Document 124, 08/09/2022, 3363349, Page30 of 294

The Legal Aid Society
199 Water Street
New York, NY 10038
212 577 7982
Fax: 646 616 4982
Email: lafreeman@legal-aid.org
*ATTORNEY TO BE NOTICED*

**Stephanie B Turner**
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001-8602
973-978-9253
Email: sturner@cooley.com
*ATTORNEY TO BE NOTICED*

**Tamara A. Steckler**
The Legal Aid Society
199 Water Street
New York, NY 10038
(212)-577-3502
Fax: (212)-577-3521
Email: tasteckler@legal-aid.org
*ATTORNEY TO BE NOTICED*

**Theresa Beth Moser**
The Legal Aid Society (Juvenile Rights
Division )
199 Water Street
New York, NY 10038
(212)-577-3284
Fax: (212)-577-3520
Email: tbmoser@legal-aid.org
*ATTORNEY TO BE NOTICED*

**Victoria Anna Foltz Cordova**
Faegre Drinker Biddle & Reath LLP
One Logan Square
Suite 2000
Philadelphia, PA 19103
215-988-1191
Email: vfoltz@cooley.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Lawyers for Children, Inc.**      represented by    **Betsy Kramer**
Lawyers For Children
110 Lafayette Street
New York, NY 10013
(212)-966-6420
Email: bkramer@lawyersforchildren.org
*ATTORNEY TO BE NOTICED*

**Celia Goldwag Barenholtz**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Kara C Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Karen J. Freedman**
Lawyers for Children, Inc.,
110 Lafayette St
8th Flr.
New York, NY 10013
(212)-966-6420
Fax: (212)-966-0531
Email: kfreedman@lawyersforchildren.org
*ATTORNEY TO BE NOTICED*

**Stephanie B Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Victoria Anna Foltz Cordova**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**The Children's Law Center of New York**    represented by **Celia Goldwag Barenholtz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kara C Wilson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephanie B Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Victoria Anna Foltz Cordova**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor**
**Center for Family Representation**    represented by **Audra Jan Soloway**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
212-373-3289
Fax: 212-492-0289
Email: asoloway@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Jordan Hamilton**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
(914)-262-9708
Fax: (212)-492-0936
Email: chamilton@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Daniel H. Levi**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP (NY)
1285 Avenue of the Americas
New York, NY 10019
212-373-3497
Fax: 212-492-0497
Email: dlevi@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Luke Xavier Flynn-Fitzsimmons**
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of The Americas
New York, NY 10019
(212)-373-3338
Fax: (212)-492-0338
Email: lflynn-fitzsimmons@paulweiss.com
*TERMINATED: 03/05/2020*

**Intervenor**

**Bronx Defenders**
represented by **Audra Jan Soloway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Jordan Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel H. Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Luke Xavier Flynn-Fitzsimmons**
(See above for address)
*TERMINATED: 03/05/2020*

**Intervenor**

**Brooklyn Defender Service**
represented by **Audra Jan Soloway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

A0023

**Charles Jordan Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel H. Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Luke Xavier Flynn-Fitzsimmons**
(See above for address)
*TERMINATED: 03/05/2020*

__Intervenor__

**Neighborhood Defender Service of Harlem**     represented by     **Audra Jan Soloway**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Jordan Hamilton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel H. Levi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Luke Xavier Flynn-Fitzsimmons**
(See above for address)
*TERMINATED: 03/05/2020*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/08/2015 | 1 | COMPLAINT against Gladys Carrion, New York City Administration for Childrens Services, New York State Office of Children and Family Services, SHEILA J. POOLE, State Of New York, The City Of New York,. Document filed by XAVION M., THIERRY E., DAMEON C., BRITTNEY W., ALEXANDRIA R, TYRONE M., AYANNA J., ELISA W, Letitia James, OLIVIA and ANA-MARIA R.. (Attachments: # 1 Appendix A, # 2 Exhibit 1)(North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 2 | REQUEST FOR ISSUANCE OF SUMMONS as to The City of New York, re: 1 Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to New York City Administration for Children's Services, re: 1 Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 4 | REQUEST FOR ISSUANCE OF SUMMONS as to Gladys Carrion, re: 1 Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 5 | REQUEST FOR ISSUANCE OF SUMMONS as to The State of New York, re: 1 |

| | | |
|---|---|---|
| | | Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to The New York State Office of Children and Family Services, re: 1 Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Sheila J. Poole, re: 1 Complaint,. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 8 | CIVIL COVER SHEET filed. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 9 | MOTION to Certify Class . Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W..(North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 10 | DECLARATION of Marcia Robinson Lowry in Support re: 9 MOTION to Certify Class .. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 11 | DECLARATION of Julie A. North in Support re: 9 MOTION to Certify Class .. Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | 12 | MEMORANDUM OF LAW in Support re: 9 MOTION to Certify Class . . Document filed by DAMEON C., THIERRY E., AYANNA J., Letitia James, TYRONE M., XAVION M., ALEXANDRIA R, OLIVIA and ANA-MARIA R., ELISA W, BRITTNEY W.. (North, Julie) (Entered: 07/08/2015) |
| 07/08/2015 | | Case Opening Fee Paid electronically via Pay.gov: for 1 Complaint,. Filing fee $ 400.00. Pay.gov receipt number 0208-11125169, paid on 7/8/2015. (laq) (Entered: 07/08/2015) |
| 07/09/2015 | | **\*\*\*NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Julie A. North. The party information for the following party/parties has been modified: Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Shiela J. Poole, Alexanddria R., Ana-Maria R., The City of New York, Brittney W. The information for the party/parties has been modified for the following reason/reasons: party name was entered in all caps. (laq)** (Entered: 07/09/2015) |
| 07/09/2015 | | **\*\*\*NOTICE TO ATTORNEY REGARDING CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Julie North. The following case opening statistical information was erroneously selected/entered: Cause of Action code 42cv1983dr. The following correction(s) have been made to your case entry: the Cause of Action code has been modified to 42cv1983. (laq)** (Entered: 07/09/2015) |
| 07/09/2015 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Laura Taylor Swain. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and |

| | | review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (laq) (Entered: 07/09/2015) |
|---|---|---|
| 07/09/2015 | | Magistrate Judge Henry B. Pitman is so designated. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | | Case Designated ECF. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 13 | ELECTRONIC SUMMONS ISSUED as to Gladys Carrion. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 14 | ELECTRONIC SUMMONS ISSUED as to City of New York. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 15 | ELECTRONIC SUMMONS ISSUED as to New York State Office of Children and Family Services. (laq) (Main Document 15 replaced on 7/9/2015) (laq). (Entered: 07/09/2015) |
| 07/09/2015 | 16 | ELECTRONIC SUMMONS ISSUED as to Sheila J. Poole. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 17 | ELECTRONIC SUMMONS ISSUED as to New York City Administration for Childrens Services. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 18 | ELECTRONIC SUMMONS ISSUED as to State Of New York. (laq) (Entered: 07/09/2015) |
| 07/09/2015 | 19 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. Gladys Carrion served on 7/9/2015, answer due 7/30/2015. Service was accepted by B. Mazyck, New York City Law Department. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 20 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. City of New York served on 7/9/2015, answer due 7/30/2015. Service was accepted by B. Mazyck, New York City Law Department. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 21 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. New York City Administration for Childrens Services served on 7/9/2015, answer due 7/30/2015. Service was accepted by B. Mazyck, New York City Law Department. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 22 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. State Of New York served on 7/9/2015, answer due 7/30/2015. Service was accepted by Bryant Gordon, Office of the Attorney General of the State of New York. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 23 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. New York State Office of Children and Family Services served on 7/9/2015, answer due 7/30/2015. Service was accepted by Kerri Barber, Child Welfare Services. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 24 | SUMMONS RETURNED EXECUTED Summons and Complaint, served. Sheila J. Poole served on 7/9/2015, answer due 7/30/2015. Service was accepted by Kerri Barber, Child Welfare Services. Document filed by Dameon C.; Alexandria R.; ELISA W; Xavion M.; Thierry E.; Brittney W.; Tyrone M.; Ayanna J.; Letitia James; Ana-Maria R.. (North, Julie) (Entered: 07/09/2015) |

| 07/09/2015 | 25 | CERTIFICATE OF SERVICE of NOTICE OF MOTION FOR CLASS CERTIFICATION, DECLARATION OF MARCIA ROBINSON LOWRY IN SUPPORT OF PLAINTIFF CHILDRENS MOTION FOR CLASS CERTIFICATION, DECLARATION OF JULIE A. NORTH IN SUPPORT OF PLAINTIFF CHILDRENS MOTION FOR CLASS CERTIFICATION and MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHILDRENS MOTION FOR CLASS CERTIFICATION served on Gladys Carrion, Commissioner of the New York City Administration for Children's Services, in her official capacity; The City of New York; The New York City Administration for Children's Services on 7/9/15. Service was accepted by B. Mazyck at the New York City Law Department and Bryant Gordon at The Office of the Attorney General for the State of New York. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 07/09/2015) |
|---|---|---|
| 07/09/2015 | 26 | CERTIFICATE OF SERVICE of NOTICE OF MOTION FOR CLASS CERTIFICATION, DECLARATION OF MARCIA ROBINSON LOWRY IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION, DECLARATION OF JULIE A. NORTH IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION and MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION served on The New York State Office of Children and Family Services on 7/9/15. Service was accepted by Kerri Barber, Child Welfare Services. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 07/09/2015) |
| 07/09/2015 | 27 | CERTIFICATE OF SERVICE of NOTICE OF MOTION FOR CLASS CERTIFICATION, DECLARATION OF MARCIA ROBINSON LOWRY IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION, DECLARATION OF JULIE A. NORTH IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION and MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CHILDREN'S MOTION FOR CLASS CERTIFICATION served on Sheila J. Poole, Acting Commissioner of the New York State Office of Children and Family Services, in her official capacity on 7/9/15. Service was accepted by Kerri Barber, Child Welfare Services. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 07/09/2015) |
| 07/15/2015 | 28 | NOTICE OF APPEARANCE by Jennifer L. Levy on behalf of Letitia James. (Levy, Jennifer) (Entered: 07/15/2015) |
| 07/15/2015 | 29 | NOTICE OF APPEARANCE by Neil Anthony Giovanatti on behalf of Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 07/15/2015) |
| 07/15/2015 | 30 | NOTICE OF APPEARANCE by Marcia Robinson Lowry on behalf of Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (Lowry, Marcia) (Entered: 07/15/2015) |
| 07/16/2015 | 32 | INITIAL CONFERENCE ORDER: Initial Conference set for 10/8/2015 at 11:30 AM in Courtroom 12D, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain. (See Order.) (Signed by Judge Laura Taylor Swain on 7/16/2015) (ajs) (Entered: 07/17/2015) |
| 07/17/2015 | 31 | NOTICE OF APPEARANCE by Lauren Almquist Lively on behalf of Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Lively, Lauren) (Entered: 07/17/2015) |

| 07/21/2015 | 33 | ORDER terminating 9 Motion to Certify Class. It is hereby ORDERED, that the above-referenced motion is hereby TERMINATED for purposes of the Court's docket, without prejudice to reinstatement upon application, upon notice to adverse parties and accompanied by the requisite certification; it is further ORDERED, that no response to the motion is required unless a reinstatement application is granted, in which case the time to respond of any adverse party will be calculated from the date of service of the order of reinstatement and in accordance with Local Civil Rule 6.1 of the United States District Court for the Southern District of New York. (As set forth within this Order.) (Signed by Judge Laura Taylor Swain on 7/20/2015) (ajs) (Entered: 07/21/2015) |
|---|---|---|
| 07/23/2015 | 34 | NOTICE OF APPEARANCE by Jonathan L. Pines on behalf of Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Pines, Jonathan) (Entered: 07/23/2015) |
| 07/27/2015 | 35 | CERTIFICATE OF SERVICE of Initial Conference Order filed July 16th, 2015 served on City of New York; New York City Administration for Children's Services; State Of New York; New York State Office of Children and Family Services; Gladys Carrion, Commissioner of the New York City Administration for Children's Services, in her official capacity; Sheila J. Poole, Acting Commissioner of the New York State Office of Children and Family Services, in her official capacity on July 27, 2014. Service was made by Mail. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 07/27/2015) |
| 07/28/2015 | 36 | FIRST LETTER MOTION for Extension of Time to File Answer addressed to Judge Laura Taylor Swain from Lauren Almquist Lively dated July 28, 2015. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Lively, Lauren) (Entered: 07/28/2015) |
| 07/28/2015 | 37 | CONSENT LETTER MOTION for Extension of Time to File Answer addressed to Judge Laura Taylor Swain from William H. Bristow III dated July 28, 2015. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Bristow, William) (Entered: 07/28/2015) |
| 07/29/2015 | 38 | ORDER granting 36 Letter Motion for Extension of Time to Answer. The request is granted. DE #36 resolved. (Signed by Judge Laura Taylor Swain on 7/29/2015) (kl) (Entered: 07/29/2015) |
| 07/29/2015 | 39 | ORDER granting 37 Letter Motion for Extension of Time to Answer. The request is granted. DE #37 resolved. (Signed by Judge Laura Taylor Swain on 7/29/2015) (kl) (Entered: 07/29/2015) |
| 08/24/2015 | 40 | LETTER MOTION for Local Rule 37.2 Conference addressed to Judge Laura Taylor Swain from Julie A. North dated August 24, 2015. Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(North, Julie) (Entered: 08/24/2015) |
| 09/01/2015 | 41 | MEMO ENDORSEMENT on re: 40 LETTER MOTION for Local Rule 37.2 Conference addressed to Judge Laura Taylor Swain from Julie A. North dated August 24, 2015. filed by Alexandria R., Brittney W., Olivia R., Tyrone M., Xavion M., Ana-Maria R., Thierry E., Ayanna J., ELISA W, Dameon C. ENDORSEMENT: This discovery dispute is now referred to Magistrate Judge Pitman. Counsel are requested to contact Judge Pitman's Chambers promptly to request the conference. SO ORDERED. (Signed by Judge Laura Taylor Swain on 8/31/2015) (ajs) (Entered: 09/01/2015) |
| 09/01/2015 | 42 | ORDER OF REFERENCE TO A MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive |

| | | |
|---|---|---|
| | | Motion/Dispute: Discovery dispute specified in joint letter of August 24, 2015. (Docket Entry No. 40.) Referred to Magistrate Judge Henry B. Pitman. Motions referred to Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 9/1/2015) (ajs) (Entered: 09/01/2015) |
| 09/02/2015 | 43 | LETTER MOTION for Local Rule 37.2 Conference *(Pursuant to Judge Swain's September 1, 2015 Orders - Docket Nos. 41 and 42)* addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated September 2, 2015. Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(North, Julie) (Entered: 09/02/2015) |
| 09/08/2015 | | A discovery conference is set for 9/14/2015 at 04:00 PM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (bh) (Entered: 09/08/2015) |
| 09/14/2015 | 44 | NOTICE OF APPEARANCE by Nicole Marie Peles on behalf of Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (Peles, Nicole) (Entered: 09/14/2015) |
| 09/14/2015 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 9/14/2015. (bh) (Entered: 09/14/2015) |
| 09/24/2015 | 45 | LETTER MOTION to Adjourn Conference addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated September 24, 2015. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Simon, Jennifer) (Entered: 09/24/2015) |
| 09/24/2015 | 46 | LETTER MOTION for Extension of Time *under Proposed Modification of Initial Conf. Order* addressed to Judge Laura Taylor Swain from Jonathan Pines dated September 24, 2015. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix Initial Conference Order dated 7/16/15)(Pines, Jonathan) (Entered: 09/24/2015) |
| 09/26/2015 | 47 | LETTER MOTION for Conference re: 32 Order for Initial Pretrial Conference, 46 LETTER MOTION for Extension of Time *under Proposed Modification of Initial Conf. Order* addressed to Judge Laura Taylor Swain from Jonathan Pines dated September 24, 2015., 45 LETTER MOTION to Adjourn Conference addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated September 24, 2015. addressed to Judge Laura Taylor Swain from Nicole M. Peles dated 9/26/15. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(Peles, Nicole) (Entered: 09/26/2015) |
| 09/28/2015 | 48 | ORDER granting 45 Letter Motion to Adjourn Conference. The foregoing scheduled changes are approved. SO ORDERED. Pretrial Conference set for 1/8/2016 at 10:30 AM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 9/25/2015) (ajs) (Entered: 09/28/2015) |
| 10/06/2015 | 49 | ORDER: A conference having been held in this matter on September 14, 2015 during which a dispute concerning the protective order was discussed, after hearing counsel for all parties, for the reasons stated on the record in open court, it is hereby ORDERED that: 1. Plaintiffs' application to require the inclusion of an anti-retaliatory provision in the protective order is denied without prejudice to renewal for good cause shown. If plaintiffs have reason to believe that defendants are engaging in retaliatory conduct, they are encouraged to bring such conduct to my attention promptly. (Signed by Magistrate Judge Henry B. Pitman on 10/6/2015) Copies Sent By Chambers. (lmb) (Entered: 10/06/2015) |
| 10/20/2015 | 50 | SETTLEMENT AGREEMENT . Document filed by Letitia James.(Levy, Jennifer) (Entered: 10/20/2015) |

| 10/22/2015 | [51] | ORDER: A proposed Consent Decree resolving the above-captioned action as against the State Defendants was filed on the electronic docket on October 20, 2105. (Docket Entry No. 50.) This Consent Decree calls for certification of the proposed class in connection with settlement. The parties are hereby reminded that the settlement of a certified class action requires approval under Federal Rule of Civil Procedure 23(e), through procedures including notice, a hearing and the submission of evidence establishing that the settlement is fair, reasonable and adequate. The parties are hereby directed to consult with each other and propose to the Court by October 26, 2015, a schedule for the necessary motion practice. The proposal must be set forth in a letter filed on the ECF system, with a courtesy copy provided to Chambers as required by the Individual Practice Rules of the undersigned. (Signed by Judge Laura Taylor Swain on 10/22/2015) (mro) (Entered: 10/23/2015) |
|---|---|---|
| 10/23/2015 | [52] | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** LETTER MOTION for Conference *regarding disclosure of Plaintiff Children's identities to their Family Court attorneys, parents/guardians, and parents'/guardians' attorneys --* addressed to Judge Laura Taylor Swain from Jonathan Pines dated 10/23/15. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) Modified on 10/27/2015 (ldi). (Entered: 10/23/2015) |
| 10/23/2015 | [53] | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** AMENDED LETTER MOTION for Conference *(supplying previously omitted exhibit)* addressed to Judge Laura Taylor Swain from Jonathan Pines dated 10/23/15. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # [1] Appendix Advocates' Press Statement)(Pines, Jonathan) Modified on 10/27/2015 (ldi). (Entered: 10/23/2015) |
| 10/25/2015 | [54] | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU -** SECOND LETTER MOTION for Conference *(2d amended letter, with exhibit)* addressed to Judge Laura Taylor Swain from Jonathan Pines dated October 23, 2015. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # [1] Appendix Advocates Groups' Press Statement')(Pines, Jonathan) Modified on 10/26/2015 (db). (Entered: 10/25/2015) |
| 10/26/2015 | [55] | TRANSCRIPT of Proceedings re: Discovery Hearing held on 9/14/2015 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Shari Riemer, (518) 581-8973. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 11/19/2015. Redacted Transcript Deadline set for 11/30/2015. Release of Transcript Restriction set for 1/27/2016.(ca) (Entered: 10/26/2015) |
| 10/26/2015 | [56] | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 09/14/2015 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(ca) (Entered: 10/26/2015) |
| 10/26/2015 | | **\*\*\*NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Jonathan L. Pines to RE-FILE Document [54] SECOND LETTER MOTION for Conference *(2d amended letter, with exhibit)* addressed to Judge Laura Taylor Swain from Jonathan Pines dated October 23, 2015. Use the event type Letter found under the event list Other Documents. (db)** (Entered: 10/26/2015) |

Case 22-7, Document 124, 08/09/2022, 3363349, Page40 of 294

| 10/26/2015 | 57 | FOURTH LETTER addressed to Judge Laura Taylor Swain from Jonathan Pines dated October 23, 2015 re: Disclosure of Plaintiff Children's names to their Fam. Ct. lawyers, parents/guardians & their Fam. Ct. lawyers. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix Advocate Groups' Press Statement)(Pines, Jonathan) (Entered: 10/26/2015) |
|---|---|---|
| 10/26/2015 | 58 | JOINT LETTER addressed to Judge Laura Taylor Swain from Nicole M. Peles dated October 26, 2015 re: October 22, 2015 Order regarding scheduling of events relating to the proposed Consent Decree on behalf of Plaintiffs and State Defendants. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(Peles, Nicole) (Entered: 10/26/2015) |
| 10/26/2015 | 59 | LETTER addressed to Judge Laura Taylor Swain from Nicole M. Peles dated October 26, 2015 re: City Defendants' October 23, 2015 request to disclose the identities of Named Plaintiff Children (Dkt. No. 57). Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (Attachments: # 1 Exhibit A)(Peles, Nicole) (Entered: 10/26/2015) |
| 10/27/2015 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Jonathan L. Pines to RE-FILE Document 52 LETTER MOTION for Conference *regarding disclosure of Plaintiff Children's identities to their Family Court attorneys, parents/guardians, and parents'/guardians' attorneys -- addressed to Judge Laura Taylor Swain from Jonathan,* 53 AMENDED LETTER MOTION for Conference *(supplying previously omitted exhibit)* addressed to Judge Laura Taylor Swain from Jonathan Pines dated 10/23/15. Use the event type Letter found under the event list Other Documents. (ldi)** (Entered: 10/27/2015) |
| 10/27/2015 | 60 | LETTER addressed to Judge Laura Taylor Swain from Vaughn C. Williams dated 10/27/15 re: the October 23, 2015 Request by the City of New York. Document filed by The Legal Aid Society, Lawyers for Children, Inc., The Children's Law Center of New York.(Goldstein, Heidi) (Entered: 10/27/2015) |
| 10/27/2015 | 61 | MEMO ENDORSEMENT on re: 58 Letter, filed by Alexandria R., Brittney W., Olivia R., Tyrone M., Xavion M., Ana-Maria R., Thierry E., Letitia James, Ayanna J., ELISA W, Dameon C. ENDORSEMENT: The proposed schedule for initiation of the motion practice is approved. The parties' proposed preliminary approval order should make provision for the setting of the additional dates identified above., ( Motions due by 11/13/2015.) (Signed by Judge Laura Taylor Swain on 10/27/2015) (lmb) (Entered: 10/27/2015) |
| 10/28/2015 | 62 | **FILING ERROR - DEFICIENT DOCKET ENTRY - FILER ERROR (See #63)** LETTER addressed to Judge Laura Taylor Swain from Nicole M. Peles dated October 28, 2015 re: responding to October 27, 2015 letter from Vaughn Williams (ECF docket 160). Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Peles, Nicole) Modified on 10/28/2015 (kj). (Entered: 10/28/2015) |
| 10/28/2015 | 63 | LETTER addressed to Judge Laura Taylor Swain from Nicole M. Peles dated October 28, 2015 re: the October 27, 2015 letter from Vaughn Williams (Dkt. No. 60). Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Peles, Nicole) (Entered: 10/28/2015) |
| 10/29/2015 | 64 | ORDER: This matter will be referred to Magistrate Judge Henry B. Pitman for a conference regarding the notice procedure and structure for objections associated with the |

| | | |
|---|---|---|
| | | anticipated motion for class certification. Judge Pitman's Chambers will contact the parties to schedule a conference at a time convenient to all parties. (As further set forth in this Order.) (Signed by Judge Laura Taylor Swain on 10/29/2015) (spo) (Entered: 10/29/2015) |
| 10/29/2015 | 65 | ORDER OF REFERENCE TO A MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute Conference regarding notice procedure and structure for objections associated with anticipated motion for class certification. (See Docket Entry Nos. 51 , 61 .) Referred to Magistrate Judge Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 10/29/2015) (spo) (Entered: 10/29/2015) |
| 10/30/2015 | 66 | ORDER: It is my understanding that the parties have reached a tentative settlement in this matter which includes certification of what is currently a putative class. Given the nature of the plaintiffs and the nature of the allegations, this action appears to present unusual issues concerning the method by which notice will be provided to class members and the method by which objections and opt-out notices will be received. Among other things, it is not clear to me to whom notice should be provided nor is it clear how objections should be received. Presumably, objections and opt-out notices must be submitted in a manner that preserves the anonymity of infant class members. Counsel are directed to confer concerning these issues (and any other related issues) and to submit a joint letter to me concerning these matters no later than November 16, 2015. If the parties are unable to agree on a joint proposal, the joint letter should contain each side's proposal. (Signed by Magistrate Judge Henry B. Pitman on 10/30/2015) (kgo) (Entered: 10/30/2015) |
| 11/05/2015 | 67 | NOTICE OF APPEARANCE by Molly Anne Thomas-Jensen on behalf of Letitia James. (Thomas-Jensen, Molly) (Entered: 11/05/2015) |
| 11/06/2015 | 68 | LETTER MOTION for Extension of Time to File *Joint Motion for Preliminary Approval and Joint Letter addressed to Magistrate Judge Henry Pitman and* addressed to Judge Laura Taylor Swain from Nicole M. Peles dated November 6, 2015. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(Peles, Nicole) (Entered: 11/06/2015) |
| 11/09/2015 | 69 | ORDER granting 68 Letter Motion for Extension of Time to File. Application granted. (Signed by Magistrate Judge Henry B. Pitman on 11/9/2015) (lmb) (Entered: 11/09/2015) |
| 11/09/2015 | | Set/Reset Deadlines: Motions due by 12/11/2015. (lmb) (Entered: 11/09/2015) |
| 11/12/2015 | 70 | LETTER MOTION for Extension of Time to File Answer re: 1 Complaint, addressed to Judge Laura Taylor Swain from Jonathan Pines dated November 12, 2015. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. Return Date set for 12/4/2015 at 11:59 PM.(Pines, Jonathan) (Entered: 11/12/2015) |
| 11/12/2015 | 71 | LETTER addressed to Judge Laura Taylor Swain from Nicole M. Peles dated November 12, 2015 re: City Defendants' November 12, 2015 request for a two week adjournment of the deadline to respond to the Complaint (ECF No. 70). Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(Peles, Nicole) (Entered: 11/12/2015) |
| 11/12/2015 | 72 | ORDER granting 70 Letter Motion for Extension of Time to Answer. City Defendant must respond to the Complaint by December 4, 2015. DE #70 resolved. (City of New York answer due 12/4/2015.) (Signed by Judge Laura Taylor Swain on 11/12/2015) (spo) (Entered: 11/12/2015) |
| 11/17/2015 | 73 | LETTER MOTION for Extension of Time *Regarding Dates Set by Initial Conference Order* addressed to Judge Laura Taylor Swain from Jonathan Pines dated 11/17/2015. |

| | | |
|---|---|---|
| | | Document filed by City of New York.(Pines, Jonathan) (Entered: 11/17/2015) |
| 11/18/2015 | 74 | ORDER granting 73 Letter Motion for Extension of Time. The proposed schedule is approved. The initial pretrial conference will be held on January 22, 2016, at 11:45 AM. DE #73 resolved. (Signed by Judge Laura Taylor Swain on 11/18/2015) (spo) (Entered: 11/18/2015) |
| 11/18/2015 | | Set/Reset Hearings: Initial Conference set for 1/22/2016 at 11:45 AM before Judge Laura Taylor Swain. (spo) (Entered: 11/18/2015) |
| 11/20/2015 | 75 | MOTION to Certify Class . Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(North, Julie) (Entered: 11/20/2015) |
| 11/20/2015 | 76 | MEMORANDUM OF LAW in Support re: 75 MOTION to Certify Class . . Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 11/20/2015) |
| 11/20/2015 | 77 | DECLARATION of Julie A. North in Support re: 75 MOTION to Certify Class .. Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 11/20/2015) |
| 11/20/2015 | 78 | DECLARATION of Marcia Robinson Lowry in Support re: 75 MOTION to Certify Class .. Document filed by Dameon C., Thierry E., Ayanna J., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W.. (North, Julie) (Entered: 11/20/2015) |
| 11/24/2015 | 79 | PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material... (Signed by Judge Laura Taylor Swain on 11/24/2015) (lmb) (Entered: 11/24/2015) |
| 12/04/2015 | 80 | JOINT LETTER MOTION for Extension of Time *for Various Deadlines due to Anticipated Filing of Amended Complaint* addressed to Judge Laura Taylor Swain from Jonathan Pines dated December 4, 2015. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 12/04/2015) |
| 12/07/2015 | 81 | ORDER granting 80 Letter Motion for Extension of Time for Various Deadlines due to Anticipated Filing of Amended Complaint. The foregoing requests are granted. DE #80 resolved. SO ORDERED. (Amended Pleadings due by 12/28/2015.) (Signed by Judge Laura Taylor Swain on 12/7/2015) (kko) (Entered: 12/07/2015) |
| 12/11/2015 | 82 | LETTER MOTION for Extension of Time to File *preliminary approval papers and joint letter addressed to Magistrate Judge Henry Pitman and* addressed to Judge Laura Taylor Swain from Nicole M. Peles dated December 11, 2015. Document filed by Dameon C., Thierry E., Ayanna J., Letitia James, Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., ELISA W, Brittney W..(Peles, Nicole) (Entered: 12/11/2015) |
| 12/14/2015 | 83 | ORDER granting 82 Letter Motion for Extension of Time to File. Application granted. (Signed by Magistrate Judge Henry B. Pitman on 12/14/2015) (lmb) (Entered: 12/14/2015) |
| 12/14/2015 | 84 | MEMO ENDORSEMENT on re: 82 LETTER MOTION for Extension of Time to File *preliminary approval papers and joint letter addressed to Magistrate Judge Henry Pitman and* addressed to Judge Laura Taylor Swain from Nicole M. Peles dated December 11, 2015. filed by Alexandria R., Brittney W., Olivia R., Tyrone M., Xavion M., Ana-Maria R., Thierry E., Letitia James, Ayanna J., ELISA W, Dameon C. ENDORSEMENT: The foregoing schedule modifications are approved, DE #82 |

| | | |
|---|---|---|
| | | resolved. (Signed by Judge Laura Taylor Swain on 12/14/2015) (mro) (Entered: 12/15/2015) |
| 12/28/2015 | 86 | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** - AMENDED COMPLAINT amending 1 Complaint, against All Defendants.Document filed by Olivia R., Dameon C., Alexandria R., ELISA W, Xavion M., Thierry E., Brittney W., Tyrone M., Ayanna J., Letitia James, Ana-Maria R., Valentina T.C., Matthew V., Mikayla G., Myls J., Jose T.C., Lucas T., Emmanuel S., Ximena T., Malik M.. Related document: 1 Complaint, filed by Alexandria R., Brittney W., Tyrone M., Xavion M., Ana-Maria R., Thierry E., Letitia James, Ayanna J., ELISA W, Dameon C.. (Attachments: # 1 Appendix A to Amended Complaint, # 2 Exhibit 1 to Amended Complaint)(North, Julie) Modified on 12/29/2015 (moh). (Entered: 12/28/2015) |
| 12/28/2015 | 87 | MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., ELISA W, Brittney W..(North, Julie) (Entered: 12/28/2015) |
| 12/28/2015 | 88 | MEMORANDUM OF LAW in Support re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., ELISA W, Brittney W.. (North, Julie) (Entered: 12/28/2015) |
| 12/28/2015 | 89 | DECLARATION of Marcia Robinson Lowry in Support re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., ELISA W, Brittney W.. (North, Julie) (Entered: 12/28/2015) |
| 12/28/2015 | 90 | DECLARATION of Julie A. North in Support re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., ELISA W, Brittney W.. (North, Julie) (Entered: 12/28/2015) |
| 12/29/2015 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Julie North to RE-FILE Document No. 86 Amended Complaint. The filing is deficient for the following reason(s): the All Defendant radio button was selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (moh)** (Entered: 12/29/2015) |
| 12/29/2015 | 91 | AMENDED COMPLAINT amending 1 Complaint, against Gladys Carrion, City of New York, New York City Administration for Childrens Services, New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.Document filed by Olivia R., Myls J., Dameon C., Mikayla G., Alexandria R., Emmanuel S., ELISA W, Xavion M., Thierry E., Valentina T.C., Brittney W., Matthew V., Lucas T., Tyrone M., Malik M., Ayanna J., Ximena T., Letitia James, Jose T.C., Ana-Maria R.. Related document: 1 Complaint, filed by Alexandria R., Brittney W., Tyrone M., Xavion M., Ana-Maria R., Thierry E., Letitia James, Ayanna J., ELISA W, Dameon C.. (Attachments: # 1 Appendix A to Amended Complaint, # 2 Exhibit 1 to Amended Complaint)(North, Julie) (Entered: 12/29/2015) |
| 01/18/2016 | 93 | JOINT LETTER MOTION for Extension of Time *to File Response to Complaint, to* |

| | | |
|---|---|---|
| | | *Adjourn City Defs' Opp. to Class Certification, and to Re-Schedule Meet & Confer re: Initial Conference Order Obligations;* addressed to Judge Laura Taylor Swain from Jonathan Pines dated January 18, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 01/18/2016) |
| 01/19/2016 | 94 | ORDER granting 93 Letter Motion for Extension of Time to File Response to Complaint, to Adjourn City Defs' Opp. to Class Certification, and to Re-Schedule Meet & Confer re: Initial Conference Order Obligations. The proposed schedule is approved. (Signed by Judge Laura Taylor Swain on 1/19/2016) (kko) (Entered: 01/19/2016) |
| 01/19/2016 | | Set/Reset Deadlines: Gladys Carrion answer due 2/19/2016; City of New York answer due 2/19/2016; New York City Administration for Childrens Services answer due 2/19/2016. (kko) (Entered: 01/19/2016) |
| 01/20/2016 | 95 | MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 01/20/2016) |
| 01/20/2016 | 96 | MEMORANDUM OF LAW in Support re: 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Appendix A, # 5 Appendix B)(North, Julie) (Entered: 01/20/2016) |
| 01/21/2016 | 97 | ORDER: In light of the pending motion practice in this case, the initial pretrial conference currently scheduled for Friday, January 22, 2016, at 11:45 a.m. is hereby adjourned to Thursday, March 31,2016 at 11:00 a.m. (Initial Conference set for 3/31/2016 at 11:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 1/21/2016) (spo) (Entered: 01/21/2016) |
| 01/25/2016 | 98 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** NOTICE OF VOLUNTARY DISMISSAL Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, the plaintiff(s) and their counsel(s), hereby give notice that the above-captioned action is voluntarily dismissed, against the defendant(s) All Defendants. Document filed by Letitia James. (Levy, Jennifer) Modified on 1/26/2016 (jk). (Entered: 01/25/2016) |
| 01/25/2016 | 99 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated January 25, 2016 re: Response pursuant to the Court's October 30, 2015 Order (ECF no. 66). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., New York State Office of Children and Family Services, Sheila J. Poole, Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., State Of New York, Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 01/25/2016) |
| 01/26/2016 | | **\*\*\*NOTE TO ATTORNEY TO E-MAIL DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Jennifer Levy to E-MAIL Document No. 98 Notice of voluntary dismissal to judgments@nysd.uscourts.gov. This document is not filed via ECF. (jk)** (Entered: 01/26/2016) |
| 01/26/2016 | 100 | NOTICE OF APPEARANCE by Rachel Jennifer Lamorte on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria |

| | | R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Lamorte, Rachel) (Entered: 01/26/2016) |
|---|---|---|
| 01/27/2016 | 101 | NOTICE OF VOLUNTARY DISMISSAL PURSUANT TO F.R.C.P. 41(a)(1)(A)(i) PLEASE TAKE NOTICE THAT pursuant to F.R.C.P. 41(a)(1) (A)(i) of the Federal Rules of Civil Procedure, counsel for the Plaintiff Public Advocate for the City of New York, Letitia James, hereby gives notice that the abovecaptioned action is voluntarily dismissed, without prejudice against the Defendants the CITY OF NEW YORK, the NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES; and GLADYS CARRION, Commissioner of the New York City Administration for Children's Services, in her official capacity. (Signed by Judge Laura Taylor Swain on 1/27/2016) (spo) (Entered: 01/27/2016) |
| 01/29/2016 | 102 | LETTER MOTION for Extension of Time *and for Scheduling of Parties' Motions, or, Alternatively, for Conference to Discuss Same* addressed to Judge Laura Taylor Swain from Jonathan Pines dated January 29, 2016., LETTER MOTION for Conference re: 91 Amended Complaint,,, 96 Memorandum of Law in Support of Motion,, 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*., 88 Memorandum of Law in Support of Motion, 90 Declaration in Support of Motion, 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*., 89 Declaration in Support of Motion, addressed to Judge Laura Taylor Swain from Jonathan Pines dated January 29, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 01/29/2016) |
| 02/01/2016 | 103 | LETTER RESPONSE in Opposition to Motion addressed to Judge Laura Taylor Swain from Julie A. North dated February 1, 2016 re: 102 LETTER MOTION for Extension of Time *and for Scheduling of Parties' Motions, or, Alternatively, for Conference to Discuss Same* addressed to Judge Laura Taylor Swain from Jonathan Pines dated January 29, 2016. LETTER MOTION for Conference re: 91 Amended Complaint,,, 96 Memorandum of Law in Support of Motion,, 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*., 88 Memorandum of Law i . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 02/01/2016) |
| 02/03/2016 | 104 | SUPPLEMENTAL LETTER MOTION for Conference re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*., 89 Declaration in Support of Motion, 96 Memorandum of Law in Support of Motion,, 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*., 88 Memorandum of Law in Support of Motion, 90 Declaration in Support of Motion, 103 Response in Opposition to Motion,,, 102 LETTER MOTION for Extension of Time *and for Scheduling of Parties' Motions, or, Alternatively, for Conference to Discuss Same* addressed to Judge Laura Taylor Swain from Jonathan Pines dated January 29, 2016. LETTER MOTION for Conference re: 91 Amended Complaint,,, 96 Memorandum of Law in Support of Motion,, 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*., 88 Memorandum of Law i addressed to Judge Laura Taylor Swain from Jonathan Pines dated February 3, 2016., LETTER MOTION for Extension of Time addressed to Judge Laura Taylor Swain from Jonathan Pines dated February 3, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 02/03/2016) |
| 02/04/2016 | 105 | ORDER terminating 102 Letter Motion for Extension of Time; terminating 102 Letter Motion for Conference; terminating 104 Letter Motion for Conference; terminating 104 Letter Motion for Extension of Time. The Court's determinations as to the issues raised |

| | | are as follows: Any submissions in opposition to the pending motion for preliminary approval of Plaintiffs' proposed settlement with the State Defendants (Docket Entry No. 95) must be filed by February 8, 2016. Any reply papers must be filed by February 16, 2016. Such submissions, if any, should address the issues that the submitter believes are pertinent to preliminary approval, bearing in mind that there will be an opportunity for opposition submissions in connection with final approval. City Defendants' request for postponement of their time to respond to the Complaint is denied, as is their request for a blanket stay of discovery concerning the claims against them and of the motion practice concerning the proposed settlement with the State Defendants. The scheduled approved by the Court's January 19, 2016, letter endorsement (Docket Entry No. 94) remains in effect. This Order resolves Docket Entry Numbers 102 and 104. SO ORDERED. (Signed by Judge Laura Taylor Swain on 2/3/2016) (kl) (Entered: 02/04/2016) |
|---|---|---|
| 02/04/2016 | | Set/Reset Deadlines: Responses due by 2/8/2016 Replies due by 2/16/2016. (kl) (Entered: 02/04/2016) |
| 02/08/2016 | 106 | MEMORANDUM OF LAW in Opposition re: 95 MOTION to Approve Settlement ("Notice of Motion for Preliminary Approval of Settlement"). . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Pines, Jonathan) (Entered: 02/08/2016) |
| 02/08/2016 | 107 | **FILING ERROR - DEFICIENT DOCKET ENTRY(SEE 108 Declaration) -** DECLARATION of Jonathan Pines in Opposition re: 95 MOTION to Approve Settlement ("Notice of Motion for Preliminary Approval of Settlement").. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Exhibit A: Politico article dated October 29, 2015, # 2 Exhibit B: Legal Aid Society Press Statement on Behalf of Children and Parent Advocate Orgs., # 3 Exhibit C: G.K. Order of Preliminary Approval (N.D. OK), # 4 Exhibit D: "Exhibit A" to G.K. Order)(Pines, Jonathan) Modified on 2/9/2016 (db). (Entered: 02/08/2016) |
| 02/09/2016 | 108 | DECLARATION of Jonathan Pines in Opposition re: 95 MOTION to Approve Settlement ("Notice of Motion for Preliminary Approval of Settlement").. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Exhibit A: Politico article dated October 29, 2015, # 2 Exhibit B: Legal Aid Society Press Statement on Behalf of Children and Parent Advocate Orgs., # 3 Exhibit C: G.K. Order of Preliminary Approval (N.D. OK), # 4 Exhibit D: "Exhibit A" to G.K. Order)(Pines, Jonathan) (Entered: 02/09/2016) |
| 02/11/2016 | 109 | LETTER addressed to Judge Laura Taylor Swain from Steckler, Tamara; Freedman, Karen; Simmons, Karen dated February 11, 2016 re: Plaintiffs' Motion for Preliminary Approval of Settlement. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society.(Freeman, Lisa) (Entered: 02/11/2016) |
| 02/12/2016 | 110 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated February 12, 2016 re: the February 11, 2016 letter from Tamara Steckler, Karen Freedman, and Karen Simmons (Dkt. No. 109). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 02/12/2016) |
| 02/16/2016 | 111 | NOTICE OF APPEARANCE by Jennifer C. Simon on behalf of New York State Office of Children and Family Services, Sheila J. Poole, State Of New York. (Simon, Jennifer) (Entered: 02/16/2016) |
| 02/16/2016 | 112 | REPLY MEMORANDUM OF LAW in Support re: 95 MOTION to Approve Settlement ("Notice of Motion for Preliminary Approval of Settlement"). . Document filed by |

Case 22-7, Document 124, 08/10/2022, 3363349, Page47 of 294

| | | |
|---|---|---|
| | | Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1 [Proposed] Order Preliminarily Approving Settlement)(North, Julie) (Entered: 02/16/2016) |
| 02/16/2016 | 113 | DECLARATION of Julie A. North in Support re: 95 MOTION to Approve Settlement *("Notice of Motion for Preliminary Approval of Settlement")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A: Declaration of Lee Dorrance Prochera, # 2 Exhibit B: Conference Call Invitation)(North, Julie) (Entered: 02/16/2016) |
| 02/19/2016 | 114 | MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Lively, Lauren) (Entered: 02/19/2016) |
| 02/19/2016 | 115 | MEMORANDUM OF LAW in Support re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*. . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Lively, Lauren) (Entered: 02/19/2016) |
| 02/19/2016 | 116 | DECLARATION of Lauren Almquist Lively in Support re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*.. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Lively, Lauren) (Entered: 02/19/2016) |
| 02/19/2016 | 117 | ANSWER to 91 Amended Complaint,,,,. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Giovanatti, Neil) (Entered: 02/19/2016) |
| 03/04/2016 | 118 | ORDER: The Court has received and reviewed the Plaintiff and State Defendants' (the "Moving Parties") January 20, 2016, motion for preliminary approval of the proposed settlement agreement in this case, including approval of the class notice and definition of certified class. (See Docket Entry Nos. 95-96.) The Court has also received and reviewed the submissions in opposition to the Moving Parties' motion for preliminary approval by the City Defendants, The Legal Aid Society, Lawyers For Children and the Childrens Law Center. (See Docket Entry Nos. 106, 108, 109.) The parties are hereby directed to appear for a conference concerning the motion on Monday, March 14, 2016 at 3:00 p.m. (As further set forth in this Order.) (Status Conference set for 3/14/2016 at 03:00 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 3/4/2016) (cf) (Entered: 03/04/2016) |
| 03/07/2016 | 119 | MEMORANDUM OF LAW in Opposition re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 03/07/2016) |
| 03/07/2016 | 120 | MEMORANDUM OF LAW in Opposition re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*. . Document filed by Letitia James. (Levy, Jennifer) (Entered: 03/07/2016) |
| 03/07/2016 | 121 | DECLARATION of Jennifer Levy in Opposition re: 114 MOTION to Dismiss *Plaintiff |

| | | |
|---|---|---|
| | | *Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA.*. Document filed by Letitia James. (Attachments: # [1] Exhibit A, # [2] Exhibit B, # [3] Exhibit C, # [4] Exhibit D, # [5] Exhibit E, # [6] Exhibit F, # [7] Exhibit G, # [8] Exhibit H, # [9] Exhibit I, # [10] Exhibit J, # [11] Exhibit K, # [12] Exhibit L, # [13] Exhibit M)(Levy, Jennifer) (Entered: 03/07/2016) |
| 03/09/2016 | [122] | CONSENT LETTER MOTION to Adjourn Conference addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated March 9, 2016. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Simon, Jennifer) (Entered: 03/09/2016) |
| 03/10/2016 | [123] | ORDER granting [122] Letter Motion to Adjourn Conference. The hearing is adjourned to Tuesday, April 5, 2016, at 4:00 p.m. The parties to the proposed amended consent decree should endeavor to file proposed revisions to the notice by Friday, April 1, 2016. (Status Conference set for 4/5/2016 at 04:00 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 3/10/2016) (spo) (Entered: 03/10/2016) |
| 03/10/2016 | [124] | LETTER addressed to Judge Laura Taylor Swain from Neil Giovanatti dated March 10, 2016 re: the production of nonparties' confidential information in the Named Plaintiff Children's case files. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Giovanatti, Neil) (Entered: 03/10/2016) |
| 03/11/2016 | [125] | MEMO ENDORSEMENT on re: [124] Letter, filed by Gladys Carrion, New York City Administration for Childrens Services, City of New York. ENDORSEMENT: This and all other discovery disputes are now referred to Magistrate Judge Pitman. The parties are directed to contact Judge Pitman's chambers. (Signed by Judge Laura Taylor Swain on 3/11/2016) (cf) (Entered: 03/11/2016) |
| 03/11/2016 | [126] | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute: ALL DISCOVERY DISPUTES (DOC # 124 and all other discovery disputes). Referred to Magistrate Judge Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 3/11/2016) (tn) (Entered: 03/11/2016) |
| 03/14/2016 | [127] | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated March 14, 2016 re: the production of nonparties' confidential information in the Named Plaintiff Children's case files. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Giovanatti, Neil) (Entered: 03/14/2016) |
| 03/14/2016 | [128] | LETTER MOTION for Extension of Time to File Response/Reply as to [116] Declaration in Support of Motion, [114] MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA.*, [115] Memorandum of Law in Support of Motion, addressed to Judge Laura Taylor Swain from Jonathan Pines dated March 14, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 03/14/2016) |
| 03/15/2016 | [129] | ORDER granting [128] LETTER MOTION for Extension of Time to File Response/Reply as to [116] Declaration in Support of Motion, [114] MOTION to Dismiss Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA., 115 Memorandum of Law in Support of Motion, addressed to Judge Laura Taylor Swain from Jonathan Pines dated March 14, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. The requested adjournment is granted. DE #128 resolved. So ordered. (Replies due by 3/24/2016). (Signed by Judge Laura Taylor Swain on 3/14/2016) (rjm) (Entered: 03/15/2016) |
| 03/15/2016 | [130] | ORDER. The initial pretrial conference in this matter presently scheduled for Thursday, March 31, 2016, at 11:00 a.m. is hereby adjourned to Thursday, May 6, 2016, at 10:00 |

| | | a.m. This adjournment does not affect the conference regarding Plaintiffs' and State Defendants' settlement approval motion, which remains scheduled for Tuesday, April 5, 2016, at 4:00 p.m. (Initial Conference set for 5/6/2016 at 10:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 3/14/2016) (rjm) (Entered: 03/15/2016) |
|---|---|---|
| 03/16/2016 | 131 | NOTICE OF APPEARANCE by Antoinette W Blanchette on behalf of New York State Office of Children and Family Services, Sheila J. Poole, State Of New York. (Blanchette, Antoinette) (Entered: 03/16/2016) |
| 03/18/2016 | 132 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated March 18, 2016 re: response to Mr. Giovanatti's March 10, 2016 letter regarding the production of nonparties' confidential information contained in the plaintiff foster children's case files. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1)(North, Julie) (Entered: 03/18/2016) |
| 03/23/2016 | 133 | LETTER MOTION for Leave to File Excess Pages *in City Defendants' Reply Memorandum* addressed to Judge Laura Taylor Swain from Lauren Almquist Lively dated March 23, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Lively, Lauren) (Entered: 03/23/2016) |
| 03/24/2016 | 134 | ORDER granting 133 Letter Motion for Leave to File Excess Pages. The request is granted. Docket Entry number 133 is resolved. (Signed by Judge Laura Taylor Swain on 3/22/2016) (spo) (Entered: 03/24/2016) |
| 03/24/2016 | 135 | REPLY MEMORANDUM OF LAW in Support re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA.* . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Lively, Lauren) (Entered: 03/24/2016) |
| 04/01/2016 | 136 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - LETTER MOTION for Conference *proposing additional agenda item* addressed to Judge Laura Taylor Swain from Jonathan Pines dated April 1, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) Modified on 4/4/2016 (db). (Entered: 04/01/2016) |
| 04/01/2016 | 137 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 1, 2016 re: the Court's March 4, 2016 Order (ECF No. 118). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A) (North, Julie) (Entered: 04/01/2016) |
| 04/04/2016 | 138 | ORDER re: 124 Letter, filed by Gladys Carrion, New York City Administration for Childrens Services, City of New York, 132 Letter,, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T.: that within ten days of the date of this Order, counsel are directed to submit simultaneous letters addressing whether the foregoing categories of information are relevant to the claims or defenses and the feasability of redacting these categories of information. (Signed by Magistrate Judge Henry B. Pitman on 4/4/2016) Copies Transmitted By Chambers. (tn) (Entered: 04/04/2016) |
| 04/04/2016 | 139 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 4, 2016 re: City Defendants' April 1, 2016 letter (ECF No. 136). Document filed by Dameon C., |

| | | |
|---|---|---|
| | | Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 04/04/2016) |
| 04/04/2016 | 140 | LETTER addressed to Judge Laura Taylor Swain from Audra J. Soloway dated April 4, 2016 re: preliminary approval conference. Document filed by Center for Family Representation, Bronx Defenders, Brooklyn Defender Service, Neighborhood Defender Service of Harlem.(Soloway, Audra) (Entered: 04/04/2016) |
| 04/04/2016 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Jonathan L. Pines to RE-FILE Document 136 LETTER MOTION for Conference *proposing additional agenda item* addressed to Judge Laura Taylor Swain from Jonathan Pines dated April 1, 2016. Use the event type Letter found under the event list Other Documents. (db) (Entered: 04/04/2016) |
| 04/04/2016 | 141 | LETTER addressed to Judge Laura Taylor Swain from Jonathan Pines dated April 1, 2016 re: Proposed Additional Agenda Item for April 5, 2016, Conference. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 04/04/2016) |
| 04/05/2016 | 142 | ORDER terminating 75 Motion to Certify Class. In light of Plaintiffs' filing of an Amended Motion for Class Certification on December 28, 2015 (Docket Entry No. 87), the Court respectfully requests that the Clerk terminate Plaintiff's original Motion for Class Certification (Docket Entry No. 75). (Signed by Judge Laura Taylor Swain on 4/1/2016) (spo) (Entered: 04/05/2016) |
| 04/05/2016 | 143 | LETTER addressed to Judge Laura Taylor Swain from Tamara Steckler, Karen Freedman and Karen Simmons dated April 5, 2016 re: Plaintiffs' April 1, 2016 Letter (ECF No. 137). Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society.(White, Caroline) (Entered: 04/05/2016) |
| 04/05/2016 | | Minute Entry for proceedings held before Judge Laura Taylor Swain: Motion Hearing held on 4/5/2016 re: 136 LETTER MOTION for Conference *proposing additional agenda item* addressed to Judge Laura Taylor Swain from Jonathan Pines dated April 1, 2016 filed by Gladys Carrion, New York City Administration for Childrens Services, City of New York. Court reporter Eve Giniger present.MOTION HRG held. As stated on the record today, the Court will grant the preliminary approval of the settlement between named Plaintiff children and State Defendants. Approval will be granted upon receipt of an acceptable revised Proposed Notice and a Proposed Order granting preliminary approval. The Court also expects to receive either an amended Consent Decree or a supplemental rider to the present Consent Decree. Once the discovery issue between counsel for the Plaintiffs and for the City are resolved, the Court will set a schedule for the remainder of the briefing with respect to the motion for class certification. (lan) (Entered: 04/11/2016) |
| 04/13/2016 | 144 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 13, 2016 re: the Named Plaintiff Children's Amended Motion for Class Certification. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1)(North, Julie) (Entered: 04/13/2016) |
| 04/14/2016 | 145 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Specific Non-Dispositive Motion/Dispute: Discovery and scheduling issues raised in Doc # 144. Referred to |

| | | Magistrate Judge Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 4/14/2016) (spo) (Entered: 04/14/2016) |
|---|---|---|
| 04/14/2016 | 146 | MEMO ENDORSEMENT on re: 144 Letter re: The Named Plaintiff Children's Amended Motion for Class Certification, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: The protective order and scheduling issues raised in this letter are now referred to Magistrate Judge Pitman. The parties are directed to contact his chambers promptly to request a conference. (Signed by Judge Laura Taylor Swain on 4/14/2016) (spo) (Entered: 04/14/2016) |
| 04/14/2016 | 147 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated April 14, 2016 re: the Court's April 4, 2016 Order (ECF No. 138). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1)(North, Julie) (Entered: 04/14/2016) |
| 04/15/2016 | 148 | LETTER MOTION for Local Rule 37.2 Conference addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated April 15, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 04/15/2016) |
| 04/15/2016 | 149 | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated April 15, 2016 re: Response to Plaintiffs' Letter dated 4/13/16 (Dkt. 144). Document filed by Gladys Carrion, City of New York.(Pines, Jonathan) (Entered: 04/15/2016) |
| 04/15/2016 | 150 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 15, 2016 re: the Court's April 5, 2016 Minute Entry. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Proposed Consent Decree)(North, Julie) (Entered: 04/15/2016) |
| 04/18/2016 | 151 | TRANSCRIPT of Proceedings re: conference held on 4/5/2016 before Judge Laura Taylor Swain. Court Reporter/Transcriber: Eve Giniger, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/12/2016. Redacted Transcript Deadline set for 5/23/2016. Release of Transcript Restriction set for 7/21/2016.(McGuirk, Kelly) (Entered: 04/18/2016) |
| 04/18/2016 | 152 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 4/5/16 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 04/18/2016) |
| 04/19/2016 | 153 | ORDER: The Court has received and reviewed Plaintiffs' Proposed Order Preliminarily Approving the Settlement, which includes the Proposed Notice to class members. (Submitted via email to Orders & Judgments Clerk; Proposed Notice also at Docket Entry No. 150, Attachment # 1, Ex. A (ECF pps. 25-31 ).) The Court directs Plaintiffs to edit the Proposed Notice in accordance with the revisions annexed hereto and submit an |

Case 22-7, Document 124, 08/09/2022, 3363349, Page52 of 294

| | | |
|---|---|---|
| | | updated version to the Court promptly. (Signed by Judge Laura Taylor Swain on 4/19/2016) (mro) (Entered: 04/20/2016) |
| 04/22/2016 | 154 | ORDER PRELIMINARILY APPROVING SETTLEMENT granting 95 Motion to Approve Settlement. IT IS HEREBY ORDERED AS FOLLOWS: The Court preliminarily approves the Consent Decree as being fair, reasonable and adequate, subject to the rights of Class Members to challenge the fairness, reasonableness or adequacy of the Settlement Agreement and to show cause, if any exists, why a final judgment dismissing this case against State Defendants and all released claims should not be entered following a fairness hearing. The Class is conditionally certified for purposes of providing notice pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2). The Court enters the below schedule for approval of the settlement as further set forth in this Order. (Signed by Judge Laura Taylor Swain on 4/22/2016) (spo) (Entered: 04/22/2016) |
| 04/22/2016 | | Set/Reset Deadlines: Motions due by 7/15/2016. Responses due by 7/22/2016. Replies due by 7/29/2016. Fairness Hearing set for 8/5/2016 at 10:30 AM before Judge Laura Taylor Swain. (spo) (Entered: 04/22/2016) |
| 04/25/2016 | 155 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 25, 2016 re: the Court's April 22, 2016 Order (ECF No. 154). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Proposed Notice)(North, Julie) (Entered: 04/25/2016) |
| 04/26/2016 | 156 | MEMO ENDORSEMENT on re: 155 Letter re: The Court's April 22, 2016 Order (ECF No. 154), filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandra R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: The referenced Notice, a copy of which is attached to this endorsed order, is approved. (Signed by Judge Laura Taylor Swain on 4/26/2016) (spo) (Entered: 04/26/2016) |
| 04/29/2016 | 157 | PRELIMINARY PRETRIAL STATEMENT . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 04/29/2016) |
| 05/05/2016 | 158 | ORDER: The initial pretrial conference currently scheduled for Friday, May 6, 2016, at 10:00 a.m. is hereby rescheduled to Friday, May 13,2016, at 2:45 p.m. (Initial Conference set for 5/13/2016 at 02:45 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 5/5/2016) (spo) (Entered: 05/05/2016) |
| 05/10/2016 | | A discovery conference is set for 5/23/2016 at 2:30 PM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (bh) (Entered: 05/10/2016) |
| 05/13/2016 | | Minute Entry for proceedings held before Judge Laura Taylor Swain: Initial Pretrial Conference held on 5/13/2016. Court Reporter Pamela Utter present. IPTC held. PTC Scheduling Order to follow. Case is referred to MJ Pitman for GPT. (Order to follow.) Status report due in 2 weeks. FPTC is scheduled for 2/9/2018 at 11:00am. ( Final Pretrial Conference set for 2/9/2018 at 11:00 AM in Courtroom 12D, 500 Pearl Street, NY 10007 before Judge Laura Taylor Swain.) (lan) (Entered: 05/16/2016) |
| 05/16/2016 | 159 | PRE-TRIAL SCHEDULING ORDER: Amended Pleadings due by 7/29/2016. Joinder of Parties due by 7/29/2016. Motions due by 11/10/2017. Expert Discovery due by 9/29/2017. Discovery due by 6/30/2017. Final Pretrial Conference set for 2/9/2018 at 11:00 AM in Courtroom 12D, 500 Pearl Street, New York, NY 10007 before Judge Laura |

Case 22-7, Document 124, 08/10/2022, 3362349, Page53 of 294

| | | |
|---|---|---|
| | | Taylor Swain. (Signed by Judge Laura Taylor Swain on 5/13/2016) (spo) (Entered: 05/16/2016) |
| 05/16/2016 | 160 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement). Referred to Magistrate Judge Henry B. Pitman. Motions referred to Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 5/13/2016) (spo) Modified on 5/20/2016 (spo). (Entered: 05/16/2016) |
| 05/16/2016 | 161 | JOINT ELECTRONIC DISCOVERY SUBMISSION NO. 1 AND ORDER: Regarding procedures to be followed that shall govern the handling of confidential material. (Signed by Judge Laura Taylor Swain on 5/13/2016) (spo) (Entered: 05/16/2016) |
| 05/16/2016 | 162 | RULE 502(d) STIPULATION & ORDER: Regarding procedures to be followed that shall govern the handling of confidential material. (Signed by Judge Laura Taylor Swain on 5/16/2016) (spo) (Entered: 05/16/2016) |
| 05/19/2016 | | REMARK: NOTICE OF SETTLEMENT OF CLASS ACTION LAWSUIT, in English and Spanish, sent to SDNY CJA panel members via email on 5/17/2016. (mt) (Entered: 05/19/2016) |
| 05/23/2016 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 5/23/2016. (bh) (Entered: 05/23/2016) |
| 05/24/2016 | 163 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated May 24, 2016 re: Proposed Amended Protective Order. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Text of Proposed Order Amended Protective Order)(Giovanatti, Neil) (Entered: 05/24/2016) |
| 05/26/2016 | 164 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated May 26, 2016 re: City Defendants' proposed Amended Protective Order (ECF No. 163-1). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(North, Julie) (Entered: 05/26/2016) |
| 05/27/2016 | 165 | TRANSCRIPT of Proceedings re: Discovery Hearing held on 5/23/2016 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Shari Riemer, (518) 581-8973. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/20/2016. Redacted Transcript Deadline set for 6/30/2016. Release of Transcript Restriction set for 8/29/2016.(ca) (Entered: 05/27/2016) |
| 05/27/2016 | 166 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 05/23/2016 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(ca) (Entered: 05/27/2016) |
| 05/27/2016 | 167 | STATUS REPORT. *in response to Court's Pre-Trial Scheduling Order dated May 13, 2016, titled "Report Concerning Plans For A Public Event Notification Website"* Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., |

Case 22-7, Document 124, 08/10/2022, 3363349, Page54 of 294

| | | |
|---|---|---|
| | | Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 05/27/2016) |
| 05/31/2016 | 168 | TRANSCRIPT of Proceedings re: conference held on 5/13/2016 before Judge Laura Taylor Swain. Court Reporter/Transcriber: Pamela Utter, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/24/2016. Redacted Transcript Deadline set for 7/5/2016. Release of Transcript Restriction set for 9/1/2016. (McGuirk, Kelly) (Entered: 05/31/2016) |
| 05/31/2016 | 169 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a conference proceeding held on 5/13/16 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/31/2016) |
| 06/01/2016 | 170 | AMENDED PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...(As further set forth in this Order.) (Signed by Magistrate Judge Henry B. Pitman on 5/31/2016) (cf) (Entered: 06/01/2016) |
| 06/07/2016 | 171 | FIRST LETTER MOTION for Extension of Time *to respond to Plaintiffs' discovery demands* addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated June 7, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Giovanatti, Neil) (Entered: 06/07/2016) |
| 06/07/2016 | 172 | NOTICE of Intent to Request Redaction by Julie A North re 168 Transcript,,.(North, Julie) (Entered: 06/07/2016) |
| 06/08/2016 | 173 | LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated June 8, 2016 re: 171 FIRST LETTER MOTION for Extension of Time *to respond to Plaintiffs' discovery demands* addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated June 7, 2016. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 06/08/2016) |
| 06/08/2016 | 174 | LETTER REPLY to Response to Motion addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated June 8, 2016 re: 171 FIRST LETTER MOTION for Extension of Time *to respond to Plaintiffs' discovery demands* addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated June 7, 2016. . Document filed by Gladys Carrion, City of New York. (Pines, Jonathan) (Entered: 06/08/2016) |
| 06/09/2016 | 175 | ORDER granting in part and denying in part 171 Letter Motion for Extension of Time. The City defendants' application for an extension of time to respond to plaintiffs' first request for the production of documents and first set of interrogatories is granted in part and denied in part. I appreciate that there are multiple deadlines coming up in this matter, but I also appreciate that the Law Department is fortunate to have a large number of talented attorneys. According to its web site, the Law Department has approximately 730 attorneys and 690 "support professionals" -- far more professional and paraprofessional personnel than most metropolitan law firms. The City defendants' current application does not disclose how many attorneys it currently has assigned to this matter or nor does it explain why it is unable to assign more attorneys to work on this matter. I conclude that the proposed schedule set forth in plaintiffs' June 8 letter is generally reasonable and adopt it with a slight, 7-day adjustment. The City defendants are to respond to the |

| | | |
|---|---|---|
| | | discovery requests to which they are asserting only general objections no later than July 1, 2016 (a 22-day extension). For those discovery request for which the City defendants do not have general objections, the City defendants are to respond no later than July 21, 2016; to the extent that the City defendants are producing documents in response to plaintiffs' discovery requests, the documents are also to be produced by July 21, 2016. (Signed by Magistrate Judge Henry B. Pitman on 6/9/2016) (lmb) (Entered: 06/09/2016) |
| 06/13/2016 | 176 | Federal Rules of Civil Procedures - Rule 5d Memo: The following document(s): Petition to Reject Settlement / Motion to Opt Out of Class Action cannot be immediately filed because: Non Party Filing. Document(s) forwarded to Judge Laura Taylor Swain for approval on 06/13/2016. (ca) (Entered: 06/13/2016) |
| 06/16/2016 | 178 | ORDER: The City Defendants' objections to the disclosure of the HIV/AIDS status are sustained with respect to non-parties and overruled with respect to the named plaintiffs. The City Defendants are to produce the named plaintiffs' case files on a rolling basis; production of the case files shall be completed by June 30, 2016. The City Defendants' are to file their opposition to the named plaintiffs' motion for class certification by June 30, 2016. The named plaintiffs' are to file their reply to the City Defendants' opposition to class certification by July 14, 2016. Set Deadlines/Hearing as to 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*. :( Responses due by 6/30/2016, Replies due by 7/14/2016.) (Signed by Magistrate Judge Henry B. Pitman on 6/16/2016) Copies Transmitted by Chambers. (tro) (Entered: 06/17/2016) |
| 06/20/2016 | 179 | ENDORSED LETTER addressed to Ms. Krajick from Julie A. North dated 6/13/2016 re: I respectfully request that you inform the Clerk for the Criminal Justice Act Panel for the Southern District of New York of this URL and pass along my request that the existence of and URL for this website be shared with all attorneys who represent children or parents in New York State Family Court proceedings in New York City. ENDORSEMENT: The Clerk of Court is respectfully requested to share the URL and the foregoing request with the member of the CJA Panel. SO ORDERED. (Signed by Judge Laura Taylor Swain on 6/20/2016) (kl) Modified on 6/21/2016 (kl). (Entered: 06/20/2016) |
| 06/21/2016 | 180 | MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement*. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society.(Barenholtz, Celia) (Entered: 06/21/2016) |
| 06/21/2016 | 181 | MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree*. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem.(Soloway, Audra) (Entered: 06/21/2016) |
| 06/21/2016 | 182 | MEMORANDUM OF LAW in Support re: 181 MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree*. . Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 06/21/2016) |
| 06/21/2016 | 183 | DECLARATION of Charles J. Hamilton in Support re: 181 MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree*.. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Certificate of Service)(Soloway, Audra) (Entered: 06/21/2016) |
| 06/21/2016 | 184 | AFFIRMATION of Karen J. Freedman in Support re: 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement*.. Document filed by Lawyers |

| | | |
|---|---|---|
| | | for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Barenholtz, Celia) (Entered: 06/21/2016) |
| 06/21/2016 | 185 | AFFIRMATION of Tamara A. Steckler in Support re: 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement.*. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Barenholtz, Celia) (Entered: 06/21/2016) |
| 06/21/2016 | 187 | Objection *to the Proposed Settlement*. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Entered: 06/21/2016) |
| 06/21/2016 | 188 | MEMORANDUM OF LAW in Support re: 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement*. . Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Attachments: # 1 Exhibit)(Barenholtz, Celia) (Entered: 06/21/2016) |
| 06/21/2016 | 189 | NOTICE OF APPEARANCE by Celia Goldwag Barenholtz on behalf of Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Barenholtz, Celia) (Entered: 06/21/2016) |
| 06/21/2016 | 190 | NOTICE OF APPEARANCE OF PRO BONO COUNSEL by Victoria Anna Foltz on behalf of Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society (Foltz, Victoria) (Entered: 06/21/2016) |
| 06/21/2016 | 191 | NOTICE OF APPEARANCE OF PRO BONO COUNSEL by Stephanie B Turner on behalf of Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society (Turner, Stephanie) (Entered: 06/21/2016) |
| 06/21/2016 | 192 | NOTICE OF APPEARANCE OF PRO BONO COUNSEL by Kara Corinne Wilson on behalf of Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society (Wilson, Kara) (Entered: 06/21/2016) |
| 06/21/2016 | | ***STRICKEN DOCUMENT. Deleted document number 186 from the case record. The document was stricken from this case pursuant to 201 Order on Motion for Leave to File Document. (cf)** Modified on 6/27/2016 (cf). (Entered: 06/27/2016) |
| 06/22/2016 | 193 | NOTICE OF APPEARANCE by Lisa Freeman on behalf of The Legal Aid Society. (Freeman, Lisa) (Entered: 06/22/2016) |
| 06/22/2016 | 194 | NOTICE OF APPEARANCE by Tamara A. Steckler on behalf of The Legal Aid Society. (Steckler, Tamara) (Entered: 06/22/2016) |
| 06/22/2016 | 195 | NOTICE OF APPEARANCE by Theresa Beth Moser on behalf of The Legal Aid Society. (Moser, Theresa) (Entered: 06/22/2016) |
| 06/22/2016 | 196 | NOTICE OF APPEARANCE by Betsy Kramer on behalf of Lawyers for Children, Inc.. (Kramer, Betsy) (Entered: 06/22/2016) |
| 06/22/2016 | 197 | NOTICE OF APPEARANCE by Karen J. Freedman on behalf of Lawyers for Children, Inc.. (Freedman, Karen) (Entered: 06/22/2016) |
| 06/24/2016 | 198 | LETTER MOTION for Leave to File Corrected Affirmation of Karen P. Simmons *and to strike the current Simmons Affirmation (ECF No. 186) from the docket* addressed to Judge Laura Taylor Swain from Celia Goldwag Barenholtz dated June 24, 2016. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society.(Barenholtz, Celia) (Entered: 06/24/2016) |
| 06/24/2016 | 199 | ORDER: The Court has received, from interested parties, two motions to intervene for the purpose of objecting to the proposed settlement agreement in this case. (See Docket |

| | | |
|---|---|---|
| | | Entry Nos. 180-81.) In view of the short time between the motion filing dates and the fairness hearing scheduled for August 5, 2016, the parties are directed to file any opposition to the intervention motions no later than Friday, July 1, 2016. Any reply briefs must be filed no later than Thursday, July 7, 2016. Set Deadlines/Hearing as to 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement*, 181 MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree*: Responses due by 7/1/2016, Replies due by 7/7/2016. (Signed by Judge Laura Taylor Swain on 6/24/2016) (tn) (Entered: 06/24/2016) |
| 06/27/2016 | 200 | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Julie North dated 6/21/2016 re: redactions proposed by Named Plaintiff Children. ENDORSEMENT: The Court has reviewed the proposed redactions and the counter-proposed redactions. The Court will direct the Court Reporter to make the city's proposed redactions and in addition, to redact the parent's name and the initials of children that appear on lines 12, 16 and 17 of page 11 of the transcript. The unredacted version is directed to be filed under seal. (Signed by Judge Laura Taylor Swain on 6/27/2016) (cf) (Entered: 06/27/2016) |
| 06/27/2016 | | Transmission to Sealed Records Clerk. Transmitted re: 200 Endorsed Letter to the Sealed Records Clerk for the sealing or unsealing of document or case. (cf) (Entered: 06/27/2016) |
| 06/27/2016 | 201 | ORDER granting 198 Letter Motion for Leave to File Document. The requests are granted. DE #198 resolved. (Signed by Judge Laura Taylor Swain on 6/27/2016) (cf) (Entered: 06/27/2016) |
| 06/28/2016 | 202 | AFFIRMATION of Karen P. Simmons in Support re: 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement*.. Document filed by Lawyers for Children, Inc., The Children's Law Center of New York, The Legal Aid Society. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Barenholtz, Celia) (Entered: 06/28/2016) |
| 06/28/2016 | 203 | CONSENT LETTER MOTION for Leave to File Excess Pages addressed to Judge Laura Taylor Swain from Lauren Almquist Lively dated June 28, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Lively, Lauren) (Entered: 06/28/2016) |
| 06/29/2016 | 204 | ORDER granting 203 Letter Motion for Leave to File Excess Pages. The request is granted. DE # 203 resolved. (Signed by Judge Laura Taylor Swain on 6/28/2016) (cf) (Entered: 06/29/2016) |
| 06/30/2016 | 205 | MEMORANDUM OF LAW in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*. . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 206 | DECLARATION of Jacqueline McKnight in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*.. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 207 | DECLARATION of Kerri Smith in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*.. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 208 | DECLARATION of Jonathan Pines in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*.. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. |

| | | (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Giovanatti, Neil) (Entered: 06/30/2016) |
|---|---|---|
| 06/30/2016 | 209 | DECLARATION of Christopher J. Mucciaccio in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")..* Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 210 | DECLARATION of Suzanne Niedzwiecki-Lattime in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")..* Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 211 | DECLARATION of Jenny Woo in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")..* Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Entered: 06/30/2016) |
| 06/30/2016 | 212 | DECLARATION of Ron Cerreta in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")..* Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 06/30/2016 | 213 | DECLARATION of Diane Bahrenburg in Opposition re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")..* Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 06/30/2016) |
| 07/01/2016 | 214 | RESPONSE to Motion re: 180 MOTION to Intervene *for the Limited Purpose of Objecting to The Proposed Settlement.*, 181 MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree.* . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/01/2016) |
| 07/07/2016 | 215 | REPLY to Response to Motion re: 181 MOTION to Intervene *for the Limited Purpose of Objecting to the Consent Decree.* . Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/07/2016) |
| 07/12/2016 | 216 | MEMORANDUM ORDER granting 180 Motion to Intervene; granting 181 Motion to Intervene. In light of the foregoing, the Court grants both the Parent Advocates' and the Children's Advocates' unopposed motions for intervention for substantially the reasons set forth in their respective memoranda of law. (See Docket Entry Nos. 182, 188.) The Parent Advocates and Children's Advocates are permitted to intervene in this action for the limited purpose of objecting to the proposed settlement agreement between the Plaintiffs and the State Defendants. The Parent Advocates must file their objections to the proposed settlement no later than Friday, July 22, 2016. This Memorandum Order resolves Docket Entry Numbers 180 and 181. (Signed by Judge Laura Taylor Swain on 7/12/2016) (kko) (Entered: 07/12/2016) |
| 07/12/2016 | 217 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE 218 Letter Motion) -** LETTER MOTION for Leave to File Excess Pages *for memoranda of law and replies* addressed to Judge Laura Taylor Swain from Julie A. North dated July 12, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., |

| | | |
|---|---|---|
| | | Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) Modified on 7/13/2016 (db). (Entered: 07/12/2016) |
| 07/12/2016 | 218 | LETTER MOTION for Leave to File Excess Pages *for memoranda of law and replies* addressed to Judge Laura Taylor Swain from Julie A. North dated July 12, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/12/2016) |
| 07/13/2016 | 219 | ORDER terminating 217 Letter Motion for Leave to File Excess Pages; granting 218 Letter Motion for Leave to File Excess Pages. The requests are granted. DE #217 resolved. (Signed by Judge Laura Taylor Swain on 7/12/2016) (cf) (Entered: 07/13/2016) |
| 07/14/2016 | 220 | REPLY MEMORANDUM OF LAW in Support re: 87 MOTION to Certify Class *("Notice of Amended Motion for Class Certification")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/14/2016) |
| 07/14/2016 | 221 | Objection *to the Proposed Settlement*. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/14/2016) |
| 07/14/2016 | 222 | DECLARATION of Charles J. Hamilton re: 221 Objection (non-motion) . Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Soloway, Audra) (Entered: 07/14/2016) |
| 07/15/2016 | 223 | MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/15/2016) |
| 07/15/2016 | 224 | MEMORANDUM OF LAW in Support re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/15/2016) |
| 07/15/2016 | 225 | DECLARATION of Julie A. North in Support re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(North, Julie) (Entered: 07/15/2016) |
| 07/15/2016 | 226 | DECLARATION of Marcia Robinson Lowry in Support re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/15/2016) |
| 07/19/2016 | 227 | LETTER MOTION for Extension of Time addressed to Judge Laura Taylor Swain from Jonathan Pines dated July 19, 2016., LETTER MOTION for Leave to File Excess Pages |

Case 22-7, Document 124, 08/10/2022, 3362349, Page60 of 294

| | | |
|---|---|---|
| | | addressed to Judge Laura Taylor Swain from Jonathan Pines dated July 19, 2016.( Return Date set for 8/5/2016 at 10:30 AM.) Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 07/19/2016) |
| 07/20/2016 | 228 | LETTER RESPONSE in Opposition to Motion addressed to Judge Laura Taylor Swain from Julie A. North dated July 20, 2016 re: 227 LETTER MOTION for Extension of Time addressed to Judge Laura Taylor Swain from Jonathan Pines dated July 19, 2016. LETTER MOTION for Leave to File Excess Pages addressed to Judge Laura Taylor Swain from Jonathan Pines dated July 19, 2016. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/20/2016) |
| 07/21/2016 | 229 | NOTICE OF APPEARANCE by Sarah W Jaffe on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Jaffe, Sarah) (Entered: 07/21/2016) |
| 07/21/2016 | 230 | ORDER granting 227 Letter Motion for Leave to File Excess Pages. The page limit extension is granted. The brief must be filed by July 22, 2016 (Friday). The declaration must be filed no later than July 25, 2016 (Monday.) All other scheduling remains in place. DE #227 resolved. (Signed by Judge Laura Taylor Swain on 7/20/2016) (cf) (Entered: 07/21/2016) |
| 07/21/2016 | 238 | LETTER from Angeline Montauban dated 7/20/2016 re: Speaking at August 5th Hearing. (rdz) (Entered: 07/26/2016) |
| 07/22/2016 | 231 | MEMORANDUM OF LAW in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Giovanatti, Neil) (Entered: 07/22/2016) |
| 07/22/2016 | 232 | DECLARATION of Jonathan Pines in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Giovanatti, Neil) (Entered: 07/22/2016) |
| 07/22/2016 | 233 | LETTER addressed to Judge Laura Taylor Swain from Jonathan Pines dated July 22, 2016 re: Apprising Court of No Further Opposition Submission from City Defendants. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 07/22/2016) |
| 07/22/2016 | 234 | MEMORANDUM OF LAW in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. . Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/22/2016) |
| 07/22/2016 | 235 | DECLARATION of Charles J. Hamilton in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Attachments: # 1 Exhibit A)(Soloway, Audra) (Entered: 07/22/2016) |
| 07/22/2016 | 236 | DECLARATION of Dr. John Mattingly in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by |

A0051

| | | |
|---|---|---|
| | | Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/22/2016) |
| 07/22/2016 | 237 | DECLARATION of Professor Christine Gottlieb in Opposition re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*.. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/22/2016) |
| 07/26/2016 | 239 | LETTER MOTION for Leave to File Excess Pages *for reply briefs* addressed to Judge Laura Taylor Swain from Julie A. North dated July 26, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/26/2016) |
| 07/27/2016 | 240 | ORDER granting 239 Letter Motion for Leave to File Excess Pages. The requested page limit extension is granted. (Signed by Judge Laura Taylor Swain on 7/26/2016) (cf) (Entered: 07/27/2016) |
| 07/28/2016 | 242 | LETTER from Angeline Montauban dated 7/28/2016 re: OCFS Settlement hearing August 5, 2016. (kl) (Entered: 07/29/2016) |
| 07/29/2016 | 241 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - LETTER MOTION to Compel City Defendants to produce addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated July 29, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) Modified on 8/10/2016 (db). (Entered: 07/29/2016) |
| 07/29/2016 | 243 | NOTICE OF APPEARANCE by Audra Jan Soloway on behalf of Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Soloway, Audra) (Entered: 07/29/2016) |
| 07/29/2016 | 244 | NOTICE OF APPEARANCE by Daniel H. Levi on behalf of Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Levi, Daniel) (Entered: 07/29/2016) |
| 07/29/2016 | 245 | NOTICE OF APPEARANCE by Luke Xavier Flynn-Fitzsimmons on behalf of Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Flynn-Fitzsimmons, Luke) (Entered: 07/29/2016) |
| 07/29/2016 | 246 | NOTICE OF APPEARANCE by Charles Jordan Hamilton on behalf of Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Hamilton, Charles) (Entered: 07/29/2016) |
| 07/29/2016 | 247 | REPLY MEMORANDUM OF LAW in Support re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/29/2016) |
| 07/29/2016 | 248 | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - LETTER RESPONSE in Opposition to Motion addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated July 29, 2016 re: 241 LETTER MOTION to Compel City Defendants to produce addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated July 29, 2016. . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Exhibit Plaintiffs' |

| | | |
|---|---|---|
| | | First Document Requests)(Pines, Jonathan) Modified on 8/10/2016 (db). (Entered: 07/29/2016) |
| 08/01/2016 | 249 | LETTER RESPONSE in Support of Motion addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated August 1, 2016 re: 241 LETTER MOTION to Compel City Defendants to produce addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated July 29, 2016. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(North, Julie) (Entered: 08/01/2016) |
| 08/01/2016 | 250 | ORDER: The following time limits will apply to arguments and oral objections regarding the proposed settlement (including any arguments regarding standing to object) at the fairness hearing that will be held at 10:30 a.m. on Friday, August 5, 2016, in Courtroom 12D, 500 Pearl Street, New York, New York 10007. (As further set forth in this Order.) (Signed by Judge Laura Taylor Swain on 8/1/2016) (cf) (Entered: 08/01/2016) |
| 08/03/2016 | 251 | LETTER addressed to Judge Laura Taylor Swain from Molly Thomas-Jensen dated August 3, 2016 re: Request that Plaintiff James be allowed to address the Court. Document filed by Letitia James.(Thomas-Jensen, Molly) (Entered: 08/03/2016) |
| 08/04/2016 | 252 | MEMO ENDORSEMENT on re: 251 Letter filed by Letitia James. ENDORSEMENT: Ms James may participate in the Proponents' time allotment. (Signed by Judge Laura Taylor Swain on 8/4/2016) (cf) (Entered: 08/04/2016) |
| 08/05/2016 | | Minute Entry for proceedings held before Judge Laura Taylor Swain: Fairness Hearing held on 8/5/2016. Court Reporter Tara Jones present. FAIRNESS HEARING held. As stated on the record, the Court takes the proposed settlement under advisement and the parties will be notified when a written decision has been rendered. (lan) (Entered: 08/08/2016) |
| 08/05/2016 | 255 | LETTER addressed to Judge Laura Taylor Swain from Angeline Montauban re: My full testimony a testimony from a mother. (rdz) (Entered: 08/10/2016) |
| 08/08/2016 | 253 | ORDER: The City defendants are ordered (1) to complete their production of documents in response to plaintiffs' May 6, 2016 document request no later than August 18, 2016 and (2) to commence immediately the production of documents that the City defendants state they will produce in their July 29, 2016 letter (Docket Item 248). Because this the second time I have had to order the City defendants to produce documents in response to plaintiffs' May 6, 2016 document request, further disobedience by the City defendants will result in the imposition of sanctions. See Fed.R.Civ.P. 37(b). (As further set forth in this Order) (Signed by Magistrate Judge Henry B. Pitman on 8/8/2016) Copies Sent By Chambers. (lmb) (Entered: 08/09/2016) |
| 08/11/2016 | 257 | ORDER: For the reasons stated in a sealed order of the Court dated August 11, 2016, the Clerk of Court is requested to remove docket entry no. 256 from the public docket, and file that document under seal. (Signed by Judge Laura Taylor Swain on 8/11/2016) (cf) (Entered: 08/11/2016) |
| 08/11/2016 | | Transmission to Sealed Records Clerk. Transmitted re: 257 Order, to the Sealed Records Clerk for the sealing or unsealing of document or case. (cf) (Entered: 08/11/2016) |
| 08/11/2016 | 258 | SEALED DOCUMENT placed in vault.(mps) (Entered: 08/11/2016) |
| 08/12/2016 | 259 | MEMORANDUM OPINION & ORDER re: 223 MOTION to Approve Settlement *("Notice of Motion for Final Approval of Settlement")*. filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., |

Case 22-7, Document 124, 08/03/2022, 3363349, Page63 of 294

Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. Plaintiff's motion for approval of the proposed Consent Decree is denied and the conditional certification of the Plaintiff class is vacated. This Memorandum Opinion and Order resolves Docket Entry No. 223. A pretrial conference in this matter will be held on October 13, 2016, at 2:00 p.m. The parties must submit an updated joint preliminary pre-trial statement in accordance with the Initial Conference Order (docket entry no. 32) in advance of that conference. This case remains referred to Magistrate Judge Pitman for general pre-trial management. (As further set forth in this Order.) (Pretrial Conference set for 10/13/2016 at 02:00 PM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 8/12/2016) (cf) (Entered: 08/12/2016)

| | | |
|---|---|---|
| 08/15/2016 | 260 | LETTER MOTION to Stay re: 253 Order,, 259 Memorandum & Opinion, Set Hearings,,,,,,,, *City Defs' Letter Motion for Stay of Discovery* addressed to Judge Laura Taylor Swain from Jonathan Pines dated August 15, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 08/15/2016) |
| 08/16/2016 | 261 | LETTER MOTION for Extension of Time *or, in the alternative, stay of discovery* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated August 16, 2016. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services.(Pines, Jonathan) (Entered: 08/16/2016) |
| 08/16/2016 | 262 | LETTER RESPONSE in Opposition to Motion addressed to Judge Laura Taylor Swain from Julie A. North dated August 16, 2016 re: 261 LETTER MOTION for Extension of Time *or, in the alternative, stay of discovery* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated August 16, 2016., 260 LETTER MOTION to Stay re: 253 Order,, 259 Memorandum & Opinion, Set Hearings,,,,,,,, *City Defs' Letter Motion for Stay of Discovery* addressed to Judge Laura Taylor Swain from Jonathan Pines dated August 15, 2016. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 08/16/2016) |
| 08/16/2016 | 264 | ORDER denying 260 Letter Motion to Stay. The City Defendants' application to stay discovery is denied. Judge Swain's comments concerning the adequacy of plaintiffs' counsel's investigation of the particular circumstances of the named plaintiff children and counsel's assessment of the named plaintiff children's claims were all made in the context of the motion to approve the settlement with the State Defendants and, in particular, were addressing the issue of whether the settlement was reached after meaningful discovery. Judge Swain was not asked to address whether "the claims, defenses, and other legal contentions [in the amended complaint were] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law" or whether "the factual contentions [in the amended complaint] have evidentiary support or.. will likely have evidentiary support after a reasonable opportunity for further investigation or discovery...." Fed.R.Civ. P. 11 (b) (2), (3). In short, Judge Swain was not assessing whether there was a violation of the Rule 11(b)'s implied certifications, and the City Defendants' attempt to contort her words into a finding of a Rule 11 violation divorces the words from the context in which they were made. Whether counsel's discovery and investigation is sufficient to justify approval of a class action settlement is a different, more demanding inquiry than whether counsel's pre-suit investigation satisfied Rule 11. It is also noteworthy that the City Defendants, who have substantial knowledge of the named plaintiff children's circumstances and the allegations made in the amended complaint, have never even suggested that the amended complaint was so baseless that Rule 11 sanctions were warranted. The fact that the City Defendants never commenced the procedures set forth in Rule 11(c) that must precede a motion for Rule 11 sanctions |

| | | casts doubt on the veracity of their newly asserted arguments. I appreciate that the City Defendants deny plaintiffs' material allegations. Nevertheless, in the absence of a showing that the allegations in the amended complaint were asserted in bad faith and were utterly baseless in law and fact, there is no basis for the stay of discovery sought by the City Defendants. The annexed application is, therefore, denied. (Signed by Magistrate Judge Henry B. Pitman on 8/16/2016) Copies Sent By Chambers. (lmb) (Entered: 08/17/2016) |
|---|---|---|
| 08/17/2016 | [261](#) | LETTER REPLY to Response to Motion addressed to Judge Laura Taylor Swain from Jonathan Pines dated August 17, 2016 re: 261 LETTER MOTION for Extension of Time *or, in the alternative, stay of discovery* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated August 16, 2016., 260 LETTER MOTION to Stay re: 253 Order,, 259 Memorandum & Opinion, Set Hearings,,,,,,,, *City Defs' Letter Motion for Stay of Discovery* addressed to Judge Laura Taylor Swain from Jonathan Pines dated August 15, 2016. . Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Pines, Jonathan) (Entered: 08/17/2016) |
| 08/17/2016 | [265](#) | ORDER granting 261 Letter Motion for Extension of Time. Given the City Defendants' representations concerning their efforts to complete their document production, I shall extend their time to complete their production of documents to September 16, 2016. The City Defendants are to make their production on a rolling basis. In addition, until their production is complete, the City Defendants are to submit status reports to my chambers every Friday, staring on August 19, 2016, describing the efforts they have made to complete production in the preceding week. (Signed by Magistrate Judge Henry B. Pitman on 8/17/2016) (mro) (Entered: 08/18/2016) |
| 08/19/2016 | [266](#) | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonatan Pines dated August 19, 2016 re: Status Update Letter # 1. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix Rachel Kaufman Status Update and Explanatory Memorandum)(Pines, Jonathan) (Entered: 08/19/2016) |
| 08/22/2016 | [267](#) | TRANSCRIPT of Proceedings re: argument held on 8/5/2016 before Judge Laura Taylor Swain. Court Reporter/Transcriber: Tara Jones, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 9/15/2016. Redacted Transcript Deadline set for 9/26/2016. Release of Transcript Restriction set for 11/25/2016. (McGuirk, Kelly) (Entered: 08/22/2016) |
| 08/22/2016 | [268](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a argument proceeding held on 8/5/16 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 08/22/2016) |
| 08/25/2016 | [269](#) | LETTER MOTION to Seal Document 255 Letter, 238 Letter addressed to Judge Laura Taylor Swain from Julie A. North dated August 25, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 08/25/2016) |
| 08/26/2016 | [270](#) | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated August 26, 2016 re: City Defs' 2d Status Update. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix R. Kaufman - 2d update memorandum)(Pines, Jonathan) (Entered: 08/26/2016) |

Case 22-7, Document 124, 08/03/2022, 3363349, Page65 of 294

| | | |
|---|---|---|
| 08/29/2016 | 271 | NOTICE of Intent to Request Redaction re: 267 Transcript,,. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 08/29/2016) |
| 08/31/2016 | 272 | CONSENT LETTER MOTION to Adjourn Conference *set for October 13, 2016* addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated August 31, 2016. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Simon, Jennifer) (Entered: 08/31/2016) |
| 09/02/2016 | 273 | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated September 2, 2016 re: City Defs' 3d Status Update. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix R. Kaufman - 3d update memorandum)(Pines, Jonathan) (Entered: 09/02/2016) |
| 09/06/2016 | 274 | ORDER granting 269 Motion to Seal Document. The request is granted. For the foregoing reasons, the Clerk of Court is directed to remove the documents filed as ECF entries 238 and 255 from the public docket and file them under seal. (Signed by Judge Laura Taylor Swain on 9/6/2016) (cf) (Entered: 09/06/2016) |
| 09/06/2016 | | Transmission to Sealed Records Clerk. Transmitted re: 274 Order to the Sealed Records Clerk for the sealing or unsealing of document or case. (cf) (Entered: 09/06/2016) |
| 09/06/2016 | 275 | ORDER granting 272 Letter Motion to Adjourn Conference. The conference is adjourned to November 18, 2016, at 10:30 AM and the related deadlines are modified accordingly. DE # 272 resolved. Pretrial Conference set for 11/18/2016 at 10:30 AM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 9/6/2016) (cf) (Entered: 09/06/2016) |
| 09/06/2016 | 276 | SEALED DOCUMENT placed in vault.(mps) (Entered: 09/06/2016) |
| 09/09/2016 | 277 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated September 9, 2016 re: City Defs' 4th Status Update. Document filed by Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Attachments: # 1 Appendix R. Kaufman - 4th update memorandum)(Giovanatti, Neil) (Entered: 09/09/2016) |
| 09/12/2016 | 278 | OPINION AND ORDER re: 114 MOTION to Dismiss *Plaintiff Letitia James, Defendants ACS and Gladys Carrion, and all claims brought under the AACWA*. filed by Gladys Carrion, New York City Administration for Childrens Services, City of New York. For the foregoing reasons, City Defendants' motion is granted in part. City Defendants' motion is granted to the extent that it seeks to dismiss Plaintiffs' AACWA claims premised on 42 U.S.C. §§ 671(a)(10) and 671(a)(22) described in paragraphs 348(a) and (j) of the Amended Complaint, and on the purported rights described in paragraphs 348(c)-(f) of the Amended Complaint. City Defendants' motion is also granted to the extent that it seeks the dismissal of the claims asserted against ACS and Commissioner Carrion, without prejudice to the litigation of those claims as against the Defendant City. The motion is denied in all other respects. This Opinion and Order resolves Docket Entry Number 114. (As further set forth in this Order.) (Signed by Judge Laura Taylor Swain on 9/12/2016) (cf) (Entered: 09/12/2016) |
| 09/16/2016 | 279 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated September 16, 2016 re: City Defs' 5th Status Update; and request to extend City Defendants' deadline to produce emails on consent. Document filed by City of New York. (Attachments: # 1 Appendix R. Kaufman - 5th update memorandum)(Giovanatti, Neil) (Entered: 09/16/2016) |

| 09/20/2016 | 280 | ENDORSED LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated 9/15/2016 re: Na,ed P1aintiff Children propose to redact such confidential and individually identifying material in the publicly filed version of this transcript. ENDORSEMENT: The proposed redactions are approved. The highlighted copy showing the proposed redactions will be filed under seal. (Signed by Judge Laura Taylor Swain on 9/19/2016) (cf) (Entered: 09/20/2016) |
|---|---|---|
| 09/20/2016 | | Transmission to Sealed Records Clerk. Transmitted re: 280 Endorsed Letter to the Sealed Records Clerk for the sealing or unsealing of document or case. (cf) (Entered: 09/20/2016) |
| 09/23/2016 | 281 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated September 23, 2016 re: City Def's 6th Status Update. Document filed by City of New York. (Attachments: # 1 Appendix R. Kaufman - 6th update memorandum)(Giovanatti, Neil) (Entered: 09/23/2016) |
| 09/27/2016 | 282 | MEMORANDUM ORDER denying without prejudice 87 Motion to Certify Class. Plaintiffs' motion for class certification is denied without prejudice to renewal in a manner consistent with this Memorandum Order. This Memorandum Order resolves docket entry no. 87. This case remains referred to Magistrate Judge Pitman for general pre-trial management. The next pre-trial conference in this matter is scheduled for November 18, 2016, at 10:30 a.m. (As further set forth in this Order.). (Signed by Judge Laura Taylor Swain on 9/27/2016) (cf) (Entered: 09/27/2016) |
| 09/30/2016 | 283 | SEVENTH LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated September 30, 2016 re: City Defs' 7th Status Update Letter. Document filed by City of New York.(Pines, Jonathan) (Entered: 09/30/2016) |
| 10/03/2016 | 284 | MEMO ENDORSEMENT on re: 279 Letter, filed by City of New York. ENDORSEMENT: Given plaintiffs' consent, defendants' time to complete production of their emails is extended to 10/31/2016. Defendants' counsel are to continue submitting weekly progress reports. (Signed by Magistrate Judge Henry B. Pitman on 10/3/2016) (tro) (Entered: 10/03/2016) |
| 10/04/2016 | 285 | Redaction of 267 Transcript,, (McGuirk, Kelly) (Entered: 10/04/2016) |
| 10/04/2016 | 286 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a ARGUMENT REDACTED proceeding held on 8/5/16 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 10/04/2016) |
| 10/07/2016 | 287 | LETTER MOTION for Conference addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 7, 2016. Document filed by City of New York. (Attachments: # 1 Appendix Pls.' Document Requests to City Def., # 2 Appendix Pls' Subpoenas of Vol. Agencies)(Pines, Jonathan) (Entered: 10/07/2016) |
| 10/11/2016 | 288 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated October 11, 2016 re: in response to the City's status report submitted on Oct 7. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 10/11/2016) |
| 10/11/2016 | 289 | LETTER REPLY to Response to Motion addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 11, 2016 re: 287 LETTER MOTION for Conference |

| | | |
|---|---|---|
| | | addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 7, 2016. . Document filed by City of New York. (Pines, Jonathan) (Entered: 10/11/2016) |
| 10/21/2016 | 290 | TENTH LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated October 21, 2016 re: City Defs' 10th Status Update Letter. Document filed by City of New York.(Giovanatti, Neil) (Entered: 10/21/2016) |
| 10/28/2016 | 291 | LETTER MOTION for Extension of Time *of City Defendants' deadline to produce emails as set forth in the Court's Order (Dkt. No. 284) and 11th Status Update Letter* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 28, 2016. Document filed by City of New York.(Giovanatti, Neil) (Entered: 10/28/2016) |
| 10/28/2016 | 292 | CONSENT LETTER MOTION to Adjourn Conference *set for November 18, 2016* addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated October 28, 2016. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Simon, Jennifer) (Entered: 10/28/2016) |
| 10/31/2016 | 293 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated October 31, 2016 re: in response to to City Defendant's October 28, 2016 letter motion (ECF No. 291). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 10/31/2016) |
| 11/01/2016 | 294 | ORDER granting 292 Letter Motion to Adjourn Conference set for November 18, 2016. The conference is adjourned to December 19, 2016, at 11:00 AM and the related deadlines are modified accordingly. DE # 292 resolved. (Pretrial Conference set for 12/19/2016 at 11:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 11/1/2016) (cla) (Entered: 11/01/2016) |
| 11/04/2016 | 295 | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated November 4, 2016 re: 12th Update Letter. Document filed by City of New York.(Pines, Jonathan) (Entered: 11/04/2016) |
| 11/11/2016 | 296 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated November 11, 2016 re: 13th Update Letter. Document filed by City of New York. (Giovanatti, Neil) (Entered: 11/11/2016) |
| 11/16/2016 | 297 | MOTION for Summary Judgment *on Grounds of Mootness*. Document filed by City of New York.(Lively, Lauren) (Entered: 11/16/2016) |
| 11/16/2016 | 298 | MEMORANDUM OF LAW in Support re: 297 MOTION for Summary Judgment *on Grounds of Mootness*. . Document filed by City of New York. (Lively, Lauren) (Entered: 11/16/2016) |
| 11/16/2016 | 299 | DECLARATION of Lauren Almquist Lively in Support re: 297 MOTION for Summary Judgment *on Grounds of Mootness*.. Document filed by City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Lively, Lauren) (Entered: 11/16/2016) |
| 11/16/2016 | 300 | RULE 56.1 STATEMENT. Document filed by City of New York. (Lively, Lauren) (Entered: 11/16/2016) |
| 11/16/2016 | | A discovery conference is set for 11/28/2016 at 11:30 AM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (bh) (Entered: 11/16/2016) |
| 11/18/2016 | 301 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated November 18, 2016 re: 14th Update Letter. Document filed by City of New York. |

Case 22-7, Document 124, 08/01/2022, 3362349, Page68 of 294

| | | (Giovanatti, Neil) (Entered: 11/18/2016) |
|---|---|---|
| 11/21/2016 | 302 | LETTER MOTION for Extension of Time to File Response/Reply addressed to Judge Laura Taylor Swain from Julie A. North dated November 21, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/21/2016) |
| 11/21/2016 | 303 | LETTER MOTION to Adjourn Conference addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated November 21, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/21/2016) |
| 11/21/2016 | 304 | ORDER granting 302 Letter Motion for Extension of Time to File Response/Reply. The extension request is granted. DE # 302 resolved. Responses due by 12/12/2016 (Signed by Judge Laura Taylor Swain on 11/21/2016) (cf) (Entered: 11/21/2016) |
| 11/22/2016 | | The discovery conference is adjourned to 12/13/2016 at 10:00 AM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (bh) (Entered: 11/22/2016) |
| 12/02/2016 | 305 | CONSENT LETTER addressed to Judge Laura Taylor Swain from Jennifer C. Simon dated December 2, 2016 re: Scheduling of State Defendants' Time to Respond to the Amended Complaint. Document filed by New York State Office of Children and Family Services, Sheila J. Poole, State Of New York.(Simon, Jennifer) (Entered: 12/02/2016) |
| 12/02/2016 | 306 | LETTER addressed to Magistrate Judge Henry B. Pitman from Lauren Almquist Lively dated December 2, 2016 re: City Defendant's Status Update. Document filed by City of New York.(Lively, Lauren) (Entered: 12/02/2016) |
| 12/07/2016 | 307 | MEMO ENDORSEMENT on re: 305 Letter filed by New York State Office of Children and Family Services, State Of New York, Sheila J. Poole. ENDORSEMENT: The proposed schedule is approved. The conference is adjourned to May 26, 2017, at 10:00 a.m. and the related deadlines are modified accordingly. DE # 305 resolved. SO ORDERED., ( Motions due by 1/26/2016., Responses due by 2/13/2017, Replies due by 2/24/2017., Pretrial Conference set for 5/26/2017 at 10:00 AM before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 12/07/2016) (ama) (Entered: 12/07/2016) |
| 12/09/2016 | 308 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated December 9, 2016 re: 16th Update Letter. Document filed by City of New York. (Giovanatti, Neil) (Entered: 12/09/2016) |
| 12/12/2016 | 309 | MEMORANDUM OF LAW in Opposition re: 297 MOTION for Summary Judgment *on Grounds of Mootness*. *("Named Plaintiff Children's Memorandum Of Law In Opposition To City Defendant's Motion For Summary Judgment")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 12/12/2016) |
| 12/12/2016 | 310 | RESPONSE re: 300 Rule 56.1 Statement *("Named Plaintiff Children's Responses To City Defendant's Statement Of Facts Not In Dispute")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 12/12/2016) |

| 12/12/2016 | 311 | DECLARATION of Sarah Jaffe in Opposition re: 297 MOTION for Summary Judgment *on Grounds of Mootness.*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A to Jaffe Declaration (filed under seal), # 2 Exhibit B to Jaffe Declaration (filed under seal), # 3 Exhibit C to Jaffe Declaration (filed under seal), # 4 Exhibit D to Jaffe Declaration (filed under seal), # 5 Exhibit E to Jaffe Declaration (filed under seal), # 6 Exhibit F to Jaffe Declaration (filed under seal)) (North, Julie) (Entered: 12/12/2016) |
|---|---|---|
| 12/12/2016 | 312 | SEALED DOCUMENT placed in vault.(mps) (Entered: 12/13/2016) |
| 12/13/2016 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 12/13/2016. (bh) (Entered: 12/13/2016) |
| 12/19/2016 | 313 | LETTER MOTION for Leave to File Excess Pages addressed to Judge Laura Taylor Swain from Lauren Almquist Lively dated December 19, 2016. Document filed by City of New York.(Lively, Lauren) (Entered: 12/19/2016) |
| 12/19/2016 | 314 | REPLY MEMORANDUM OF LAW in Support re: 297 MOTION for Summary Judgment *on Grounds of Mootness*. . Document filed by City of New York. (Lively, Lauren) (Entered: 12/19/2016) |
| 12/19/2016 | 315 | REPLY AFFIRMATION of Lauren Almquist Lively in Support re: 297 MOTION for Summary Judgment *on Grounds of Mootness.*. Document filed by City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Lively, Lauren) (Entered: 12/19/2016) |
| 12/19/2016 | 316 | RULE 56.1 STATEMENT. Document filed by City of New York. (Lively, Lauren) (Entered: 12/19/2016) |
| 12/19/2016 | 317 | REPLY AFFIRMATION of Lauren Almquist Lively in Support re: 297 MOTION for Summary Judgment *on Grounds of Mootness.*. Document filed by City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Lively, Lauren) (Entered: 12/19/2016) |
| 12/20/2016 | 318 | SEALED DOCUMENT placed in vault.(rz) (Entered: 12/20/2016) |
| 12/20/2016 | 319 | ORDER granting 313 Letter Motion for Leave to File Excess Pages. The requested extension is granted. DE #313 resolved. (Signed by Judge Laura Taylor Swain on 12/20/2016) (kgo) (Entered: 12/20/2016) |
| 12/20/2016 | 320 | LETTER MOTION for Leave to File Sur-Reply *in Response to City Defendant's Reply Memorandum of Law in Support of Its Motion for Partial Summary Judgment (ECF No. 314)* addressed to Judge Laura Taylor Swain from Julie A. North dated December 20, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 12/20/2016) |
| 12/20/2016 | 321 | LETTER RESPONSE in Opposition to Motion addressed to Judge Laura Taylor Swain from Jonathan Pines dated December 20, 2016 re: 320 LETTER MOTION for Leave to File Sur-Reply *in Response to City Defendant's Reply Memorandum of Law in Support of Its Motion for Partial Summary Judgment (ECF No. 314)* addressed to Judge Laura Taylor Swain from Julie A. North dated Decem . Document filed by City of New York. (Attachments: # 1 Exhibit Parties' email exchange re: surreply)(Pines, Jonathan) (Entered: 12/20/2016) |
| 12/21/2016 | 322 | TRANSCRIPT of Proceedings re: Discovery Hearing held on 12/13/2016 before |

| | | Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 1/11/2017. Redacted Transcript Deadline set for 1/23/2017. Release of Transcript Restriction set for 3/21/2017.(anc) (Entered: 12/21/2016) |
|---|---|---|
| 12/21/2016 | 323 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 12/13/2016 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(anc) (Entered: 12/21/2016) |
| 12/21/2016 | 324 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated December 21, 2016 re: clarifying for the Court the Parties' correspondence regarding City Defendant's consent for a sur-reply (ECF No. 321). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit to December 21, 2016 letter)(North, Julie) (Entered: 12/21/2016) |
| 12/22/2016 | 325 | ORDER: Plaintiffs and defendant City of New York are to brief whether Monell discovery should be bifurdated. Defendants shall submit their brief on or before January 12, 2017. Plaintiffs shall submit their opposition brief by January 20, 2017. (As further set forth in this Order.) (Motions due by 1/12/2017., Responses due by 1/20/2017) (Signed by Magistrate Judge Henry B. Pitman on 12/21/2016) Copies Sent By Chambers. (cf) (Entered: 12/22/2016) |
| 12/22/2016 | 326 | ORDER granting 320 Letter Motion for Leave to File Document. The request to file a surreply is granted. DE # 320 resolved. (Signed by Judge Laura Taylor Swain on 12/21/2016) (mro) (Entered: 12/23/2016) |
| 12/23/2016 | 327 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated December 23, 2016 re: Named Plaintiff Children's intention to submit a sur-reply no later than December 29, 2016. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 12/23/2016) |
| 12/29/2016 | 328 | REPLY MEMORANDUM OF LAW in Opposition re: 297 MOTION for Summary Judgment *on Grounds of Mootness*. *("Named Plaintiff Children's Sur-Reply In Opposition To City Defendant's Motion For Summary Judgment")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 12/29/2016) |
| 01/12/2017 | 329 | MEMORANDUM OF LAW in Support re: 287 LETTER MOTION for Conference addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 7, 2016. . Document filed by City of New York. (Pines, Jonathan) (Entered: 01/12/2017) |
| 01/17/2017 | 330 | MOTION to Compel City Defendant's Responses to Named Plaintiff Children's Interrogatories . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 01/17/2017) |

| 01/17/2017 | 331 | MEMORANDUM OF LAW in Support re: 330 MOTION to Compel City Defendant's Responses to Named Plaintiff Children's Interrogatories . . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 01/17/2017) |
|---|---|---|
| 01/17/2017 | 332 | DECLARATION of Julie A. North in Support re: 330 MOTION to Compel City Defendant's Responses to Named Plaintiff Children's Interrogatories .. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit A to North Declaration, # 2 Exhibit B to North Declaration, # 3 Exhibit C to North Declaration, # 4 Exhibit D to North Declaration, # 5 Exhibit E to North Declaration, # 6 Exhibit F to North Declaration)(North, Julie) (Entered: 01/17/2017) |
| 01/19/2017 | 333 | LETTER addressed to Magistrate Judge Henry B. Pitman from Neil Giovanatti dated January 19, 2017 re: Requesting that the Court reject Plaintiffs' Motion to Compel for Plaintiffs' failure to comply with Local Rule 37.2 and Your Honor's Individual Practices. Document filed by City of New York.(Giovanatti, Neil) (Entered: 01/19/2017) |
| 01/20/2017 | 334 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated January 20, 2017 re: in response to City Defendant's letter of January 19, 2017. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 01/20/2017) |
| 01/20/2017 | 335 | MEMORANDUM OF LAW in Opposition re: 287 LETTER MOTION for Conference addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 7, 2016. *("Named Plaintiff Children's Memorandum Of Law In Opposition To City Defendant's Request For Bifurcation")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Text of Proposed Order)(North, Julie) (Entered: 01/20/2017) |
| 01/23/2017 | 336 | REPLY MEMORANDUM OF LAW in Support re: 287 LETTER MOTION for Conference addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated October 7, 2016. *in Support of City Def's Bifurcation Motion*. Document filed by City of New York. (Pines, Jonathan) (Entered: 01/23/2017) |
| 01/24/2017 | 337 | LETTER MOTION for Leave to File sur-reply addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated January 24, 2017. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 PROPOSED NAMED PLAINTIFF CHILDREN'S SUR-REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO CITY DEFENDANT'S REQUEST FOR BIFURCATION)(North, Julie) (Entered: 01/24/2017) |
| 01/24/2017 | | As a reminder, Oral Argument on the motion for bifurcation is set for 1/25/2017 at 10:00 AM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (bh) (Entered: 01/24/2017) |
| 01/25/2017 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 1/25/2017. Oral argument on the motion to compel scheduled for February 2, 2017 at 2:00 p.m. (bh) (Entered: 01/25/2017) |

| 01/26/2017 | 338 | NOTICE OF APPEARANCE by Samantha Leigh Buchalter on behalf of New York State Office of Children and Family Services, Sheila J. Poole, State Of New York. (Buchalter, Samantha) (Entered: 01/26/2017) |
|---|---|---|
| 01/26/2017 | 339 | ORDER denying 287 Letter Motion for Conference. A conference having been held in this matter on January 25, 2017, during which I heard oral argument concerning defendants' application to bifurcate custom and policy discovery, for the reasons stated on the record in open court, defendants' motion is denied. The Clerk of the Court is directed to mark Docket Item 287 as closed. (Signed by Magistrate Judge Henry B. Pitman on 1/25/2017) Copies Sent By Chambers. (cf) (Entered: 01/26/2017) |
| 01/26/2017 | 340 | MOTION to Dismiss *Plaintiff Letitia James and Plaintiffs' AACWA Claims*. Document filed by Sheila J. Poole.(Buchalter, Samantha) (Entered: 01/26/2017) |
| 01/26/2017 | 341 | MEMORANDUM OF LAW in Support re: 340 MOTION to Dismiss *Plaintiff Letitia James and Plaintiffs' AACWA Claims*. . Document filed by Sheila J. Poole. (Buchalter, Samantha) (Entered: 01/26/2017) |
| 01/26/2017 | 342 | ANSWER to 91 Amended Complaint,,,,. Document filed by Sheila J. Poole.(Buchalter, Samantha) (Entered: 01/26/2017) |
| 01/27/2017 | 343 | NOTICE OF PARTIAL VOLUNTARY DISMISSAL WITHOUT PREJUDICE PURSUANT TO FED R. CIV P. 41(a)(1)(A)(i): Pursuant to Fed R. Civ P. 41 (a)(1)(A)(i), and subject to approval of the Court, counsel for Plaintiffs hereby voluntarily dismiss without prejudice Defendants the STATE OF NEW YORK and the NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES from the above-captioned action. These Defendants have not filed an answer to either the complaint or the amended complaint nor filed a motion for summary judgment. SO ORDERED. *** Party New York State Office of Children and Family Services and State Of New York terminated. Signed by Judge Laura Taylor Swain on 1/26/2017) (ama) Modified on 1/27/2017 (ama). (Entered: 01/27/2017) |
| 01/31/2017 | 344 | PRE-CONFERENCE STATEMENT *in Advance of Rule 33.2 Informal Conference*. Document filed by City of New York.(Pines, Jonathan) (Entered: 01/31/2017) |
| 01/31/2017 | 345 | MOTION for Jennifer C. Simon to Withdraw as Attorney . Document filed by Sheila J. Poole.(Simon, Jennifer) (Entered: 01/31/2017) |
| 01/31/2017 | 346 | DECLARATION of Jennifer C. Simon in Support re: 345 MOTION for Jennifer C. Simon to Withdraw as Attorney .. Document filed by Sheila J. Poole. (Simon, Jennifer) (Entered: 01/31/2017) |
| 02/01/2017 | 347 | NOTICE OF APPEARANCE by Brittany Lynn Sukiennik on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Sukiennik, Brittany) (Entered: 02/01/2017) |
| 02/02/2017 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 2/2/2017. (bh) (Entered: 02/02/2017) |
| 02/02/2017 | 348 | MEMO ENDORSEMENT granting 345 Motion to Withdraw as Attorney. ENDORSEMENT: APPLICATION GRANTED. Attorney Jennifer C. Simon terminated (Signed by Magistrate Judge Henry B. Pitman on 2/1/2017) (cf) (Entered: 02/02/2017) |
| 02/03/2017 | 349 | ORDER granting 330 Motion to Compel. Plaintiffs' application to compel supplemental responses to their First Set of Interrogatories is granted. (As further set forth in this Order.) The Clerk of the Court is directed to mark Docket Item 330 closed. (Signed by |

| | | |
|---|---|---|
| | | Magistrate Judge Henry B. Pitman on 2/3/2017) Copies Sent By Chambers (cf) (Entered: 02/03/2017) |
| 02/08/2017 | 350 | TRANSCRIPT of Proceedings re: Discovery Hearing held on 1/25/2017 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/1/2017. Redacted Transcript Deadline set for 3/13/2017. Release of Transcript Restriction set for 5/9/2017.(anc) (Entered: 02/08/2017) |
| 02/08/2017 | 351 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 1/25/2017 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(anc) (Entered: 02/08/2017) |
| 02/13/2017 | 352 | MEMORANDUM OF LAW in Opposition re: 340 MOTION to Dismiss *Plaintiff Letitia James and Plaintiffs' AACWA Claims*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 02/13/2017) |
| 02/13/2017 | 353 | MEMORANDUM OF LAW in Opposition re: 340 MOTION to Dismiss *Plaintiff Letitia James and Plaintiffs' AACWA Claims*. . Document filed by Letitia James. (Levy, Jennifer) (Entered: 02/13/2017) |
| 02/23/2017 | 354 | TRANSCRIPT of Proceedings re: Discovery Hearing held on 2/2/2017 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 3/16/2017. Redacted Transcript Deadline set for 3/27/2017. Release of Transcript Restriction set for 5/24/2017.(jwh) (Entered: 02/23/2017) |
| 02/23/2017 | 355 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 2/2/2017 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(jwh) (Entered: 02/23/2017) |
| 02/24/2017 | 356 | REPLY MEMORANDUM OF LAW in Support re: 340 MOTION to Dismiss *Plaintiff Letitia James and Plaintiffs' AACWA Claims*. . Document filed by Sheila J. Poole. (Buchalter, Samantha) (Entered: 02/24/2017) |
| 03/22/2017 | | Terminate Transcript Deadlines re: 322 . (anc) (Entered: 03/22/2017) |
| 03/23/2017 | 357 | MOTION To Substitute Yusuf El Ashmawy As A Next Friend . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 03/23/2017) |
| 03/23/2017 | 358 | MEMORANDUM OF LAW in Support re: 357 MOTION To Substitute Yusuf El |

| | | |
|---|---|---|
| | | Ashmawy As A Next Friend . . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 03/23/2017) |
| 03/23/2017 | [359](#) | DECLARATION of Yusuf El Ashmawy in Support re: [357](#) MOTION To Substitute Yusuf El Ashmawy As A Next Friend .. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Letitia James, Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 03/23/2017) |
| 03/23/2017 | [360](#) | DECLARATION of Liza Camellerie in Support re: [357](#) MOTION To Substitute Yusuf El Ashmawy As A Next Friend .. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 03/23/2017) |
| 04/03/2017 | [361](#) | LETTER MOTION for Extension of Time *to respond to [357](#) Plaintiffs Motion to Substitute Yusuf El Ashmawy as a Next Friend* addressed to Judge Laura Taylor Swain from Agnetha E. Jacob dated 4/3/2017. Document filed by City of New York.(Jacob, Agnetha) (Entered: 04/03/2017) |
| 04/06/2017 | [362](#) | ORDER granting [361](#) Letter Motion for Extension of Time. APPLICATION GRANTED. (Signed by Magistrate Judge Henry B. Pitman on 4/6/2017) (cf) (Entered: 04/06/2017) |
| 04/06/2017 | | Set/Reset Deadlines: Responses due by 4/20/2017 (cf) (Entered: 04/06/2017) |
| 04/20/2017 | [363](#) | CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children*. Document filed by City of New York.(Jacob, Agnetha) (Entered: 04/20/2017) |
| 04/20/2017 | [364](#) | DECLARATION of Agnetha E. Jacob in Support re: [363](#) CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children*.. Document filed by City of New York. (Attachments: # [1](#) Exhibit Excerpts of transcript of proceedings held before Magistrate Judge Pitman on December 13, 2016)(Jacob, Agnetha) (Entered: 04/20/2017) |
| 04/20/2017 | [365](#) | MEMORANDUM OF LAW in Support re: [363](#) CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children. and in Opposition to [357](#) MOTION To Substitute Yusuf El Ashmawy As A Next Friend*. Document filed by City of New York. (Jacob, Agnetha) (Entered: 04/20/2017) |
| 04/25/2017 | [366](#) | LETTER MOTION for Extension of Time to File Response/Reply as to [357](#) MOTION To Substitute Yusuf El Ashmawy As A Next Friend ., [363](#) CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children*. addressed to Judge Laura Taylor Swain from Julie A. North dated April 25, 2017. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 04/25/2017) |
| 04/25/2017 | [367](#) | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 25, 2017 re: letter to City Defendant (copy to Judge Swain) pursuant to pursuant to Judge Swain's individual Rule A.2.b.iii informing City Defendant that Named Plaintiff Children will not seek leave to amend their Amended Complaint. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 04/25/2017) |
| 04/26/2017 | [368](#) | ORDER granting [366](#) Letter Motion for Extension of Time to File Response/Reply. APPLICATION GRANTED. BOTH MOTIONS WILL BE BEFORE ME. (Signed by |

| | | Magistrate Judge Henry B. Pitman on 4/26/2017) (ras) (Entered: 04/26/2017) |
|---|---|---|
| 04/26/2017 | | Set/Reset Deadlines as to 357 MOTION To Substitute Yusuf El Ashmawy As A Next Friend, 363 CROSS MOTION to Dismiss Next Friends of Additional Plaintiff Children. Replies due by 5/11/2017. Responses due by 5/11/2017 (ras) (Entered: 04/26/2017) |
| 05/11/2017 | 369 | MEMORANDUM OF LAW in Opposition re: 363 CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children. and In Support of Named Plaintiff Children's Motion to Substitute Yusuf El Ashmawy As A Next Friend (Dkt. 357)*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Addendum A - Field Center brief, # 2 Addendum B - National Association brief)(North, Julie) (Entered: 05/11/2017) |
| 05/11/2017 | 370 | DECLARATION of Marcia Robinson Lowry in Opposition re: 363 CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children.*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 05/11/2017) |
| 05/11/2017 | 371 | DECLARATION of Elisa W. (Filed Under Seal) in Opposition re: 363 CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children.*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 05/11/2017) |
| 05/11/2017 | 372 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated May 11, 2017 re: Under Seal Filing of the Elisa W. Declaration (Dkt. 371). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 05/11/2017) |
| 05/11/2017 | 373 | SEALED DOCUMENT placed in vault.(rz) (Entered: 05/12/2017) |
| 05/15/2017 | 374 | NOTICE OF APPEARANCE by Justin Conrad Clarke on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Clarke, Justin) (Entered: 05/15/2017) |
| 05/15/2017 | 375 | LETTER MOTION for Extension of Time *to reply to 369 - 371 Plaintiffs' opposition to Defendant's cross-motion* addressed to Magistrate Judge Henry B. Pitman from Agnetha E. Jacob dated 5/15/17. Document filed by City of New York.(Jacob, Agnetha) (Entered: 05/15/2017) |
| 05/16/2017 | 376 | ORDER granting 375 Letter Motion for Extension of Time. The City's time to serve and file a reply in further support of its motion to dismiss is extended to June 1, 2017. (HEREBY ORDERED by Magistrate Judge Henry B. Pitman)(Text Only Order) Copies of Notice of Electronic Filing Sent By Chambers. (Pitman, Henry) (Entered: 05/16/2017) |
| 05/18/2017 | 377 | NOTICE OF APPEARANCE by Claire Botnick on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Botnick, Claire) (Entered: 05/18/2017) |
| 05/18/2017 | 378 | NOTICE OF APPEARANCE by Molly Montgomery Jamison on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandra |

| | | R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Jamison, Molly) (Entered: 05/18/2017) |
|---|---|---|
| 05/19/2017 | 379 | JOINT PRELIMINARY PRETRIAL STATEMENT . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 05/19/2017) |
| 05/23/2017 | 380 | NOTICE OF APPEARANCE by Scott Bartron Reents on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Reents, Scott) (Entered: 05/23/2017) |
| 05/25/2017 | 381 | ORDER: Accordingly, and in light of the pending motion practice, the May 26, 2017, conference scheduled before the undersigned is cancelled, and the parties are directed to schedule a conference with Judge Pitman promptly to address the issues raised in their joint statement. SO ORDERED. (Signed by Judge Laura Taylor Swain on 5/24/2017) (ama) (Entered: 05/25/2017) |
| 05/26/2017 | 382 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated May 26, 2017 re: request for conference pursuant to the Court's May 25, 2017 Order (ECF No. 381). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 05/26/2017) |
| 06/01/2017 | 383 | REPLY MEMORANDUM OF LAW in Support re: 363 CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children*. . Document filed by City of New York. (Jacob, Agnetha) (Entered: 06/01/2017) |
| 07/14/2017 | 384 | NOTICE OF APPEARANCE by Roderick Leopold Arz on behalf of Sheila J. Poole. (Arz, Roderick) (Entered: 07/14/2017) |
| 07/17/2017 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Status Conference held on 7/17/2017. (ajc) (Entered: 07/17/2017) |
| 07/19/2017 | 385 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated July 19, 2017 re: Proposed Schedule. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/19/2017) |
| 07/21/2017 | 386 | ORDER: It is hereby ORDERED that: 1. Plaintiffs are permitted to take up to 30 depositions. This order is without prejudice to an application from plaintiffs to take additional depositions or to an application from a defendant for a protective order with respect to a particular deposition or depositions. 2. Provided that plaintiffs include proposed search terms in their document requests, the parties shall meet and confer concerning search terms within 30 days of the date on which a document request is served. 3. In an effort to ensure the prompt resolution of any discovery disputes that may arise in this matter, monthly discovery conferences will be held commencing on August 10, 2017 and at four-week intervals thereafter, i.e. September 7, 2017, October 5, 2017, November 2, 2017, etc. The conferences will commence at 3:00 p.m. Any party wishing to raise an issue at the conference is directed to file a letter describing the issue on the ECF system by 5:00 p.m. on the Monday preceding the conference; such letters shall be limited to a maximum of 1500 words in length and shall include a representation that counsel has had a viva voce conversation -- not merely an exchange of correspondence, emails or faxes -- with the adverse party in a good faith attempt to resolve the dispute |

Case 22-7, Document 124, 08/09/2022, 3363349, Page77 of 294

| | | without my intervention. Opposition letters shall not be submitted. If no letters are filed prior to the date of a scheduled conference, I shall assume that no discovery issues currently exist and that there is no need for a conference at that time. This Order does not preclude any party from seeking discovery conferences in addition to the regularly scheduled Thursday conferences. (Signed by Magistrate Judge Henry B. Pitman on 7/21/2017) (rj) (Entered: 07/24/2017) |
|---|---|---|
| 07/21/2017 | | Set/Reset Hearings: Discovery Hearing set for 8/10/2017 at 03:00 PM before Magistrate Judge Henry B. Pitman. Discovery Hearing set for 9/7/2017 at 03:00 PM before Magistrate Judge Henry B. Pitman. Discovery Hearing set for 10/5/2017 at 03:00 PM before Magistrate Judge Henry B. Pitman. Discovery Hearing set for 11/2/2017 at 03:00 PM before Magistrate Judge Henry B. Pitman. (rj) (Entered: 07/24/2017) |
| 08/03/2017 | 387 | TRANSCRIPT of Proceedings re: status conference held on 7/17/2017 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Shari Riemer, (518) 581-8973. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/24/2017. Redacted Transcript Deadline set for 9/5/2017. Release of Transcript Restriction set for 11/1/2017. (rro) (Entered: 08/03/2017) |
| 08/03/2017 | 388 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a status conference proceeding held on 7/17/2017 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.(rro) (Entered: 08/03/2017) |
| 08/10/2017 | 389 | NOTICE OF APPEARANCE by Cara Brown Chomski on behalf of Sheila J. Poole. (Chomski, Cara) (Entered: 08/10/2017) |
| 08/23/2017 | 390 | AMENDED RULE 502(d) STIPULATION & ORDER [AMENDED STIPULATION AND ORDER REGARDING THE DISCLOSURE OF PRIVILEGED INFORMATION]...regarding procedures to be followed that shall govern the handling of confidential material (See document). (Signed by Magistrate Judge Henry B. Pitman on 8/22/2017) (ras) (Entered: 08/23/2017) |
| 08/23/2017 | 391 | SECOND AMENDED PROTECTIVE ORDER...regarding procedures to be followed that shall govern the handling of confidential material...(As further set forth herein). (Signed by Magistrate Judge Henry B. Pitman on 8/22/2017) (ras) (Entered: 08/23/2017) |
| 09/01/2017 | 392 | MEMORANDUM OPINION AND ORDER: re: 297 MOTION for Summary Judgment on Grounds of Mootness filed by City of New York. Accordingly, because the Court has not yet made a final determination as to whether this case will proceed as a class action, Defendants' motion for partial summary judgment dismissing the six Plaintiffs' claims on the grounds of mootness is denied. This Memorandum Opinion and Order resolves docket entry no. 297. SO ORDERED. (Signed by Judge Laura Taylor Swain on 9/01/2017) (ama) (Entered: 09/01/2017) |
| 09/01/2017 | 393 | LETTER addressed to Magistrate Judge Henry B. Pitman from Samantha L. Buchalter dated September 1, 2017 re: Request for Extension of Time. Document filed by Sheila J. Poole.(Buchalter, Samantha) (Entered: 09/01/2017) |
| 09/01/2017 | 394 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated September 1, 2017 re: issues for discussion at the upcoming September 7, 2017 discovery conference. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., |

A0068

| | | |
|---|---|---|
| | | Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 09/01/2017) |
| 09/07/2017 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 9/7/2017. (ajc) (Entered: 09/07/2017) |
| 09/08/2017 | 395 | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated 9/8/17 re: Cases addressing non-production of non-responsive family members. Document filed by City of New York.(Pines, Jonathan) (Entered: 09/08/2017) |
| 09/11/2017 | 396 | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated September 11, 2017 re: Request For List Of Citations. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 09/11/2017) |
| 09/11/2017 | 397 | MEMORANDUM OPINION AND ORDER: re: 340 MOTION to Dismiss Plaintiff Letitia James and Plaintiffs' AACWA Claims filed by Sheila J. Poole. For the foregoing reasons, the Commissioner's motion to dismiss the Third Cause of Action is granted in part and denied in part. The Public Advocate's claims against theCommissioner in the Third Cause of Action are dismissed. The Named Plaintiff Childrens' claims against the Commissioner as described in paragraphs 348(a), (c), (d), (e), (f), and (j) of the AC are dismissed. The Commissioner's motion is denied in all other respects. This Memorandum Opinion and Order resolves docket entry no. 340. This case remains referred to Magistrate Judge Pitman for general pre-trial management. SO ORDERED. (Signed by Judge Laura Taylor Swain on 9/11/2017) (ama) (Entered: 09/11/2017) |
| 09/19/2017 | 398 | ORDER: It is hereby ORDERED that: The State Defendant's objection to producing documents sufficient to show the State Defendant's policies concerning the oversight of residential facilities is sustained. The State Defendant's request for an extension of time to September 15, 2017 to start the meet and confer process with Plaintiffs regarding the search terms that the State Defendant will use to identify electronically stored information that is potentially responsive to Plaintiffs' documents requests is granted...Plaintiffs' application to compel the City Defendants to produce non-responsive, non-privileged irrelevant documents that are attached to relevant, responsive documents is denied...Accordingly, plaintiff's application to compel the City Defendants to produce non-responsive, nonprivileged, irrelevant documents that are attached to relevant responsive documents is denied, and as further set forth herein. (Signed by Magistrate Judge Henry B. Pitman on 9/19/2017) Copies Transmitted By Chambers. (ras) (Entered: 09/20/2017) |
| 10/05/2017 | 399 | TRANSCRIPT of Proceedings re: Discovery Hearing held on 9/7/2017 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Shari Riemer, (518) 581-8973. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 10/26/2017. Redacted Transcript Deadline set for 11/6/2017. Release of Transcript Restriction set for 1/3/2018. (rro) (Entered: 10/05/2017) |
| 10/05/2017 | 400 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 9/7/2017 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.(rro) (Entered: 10/05/2017) |

Case 22-7, Document 124, 08/09/2022, 3363449, Page79 of 294

| | | |
|---|---|---|
| 10/30/2017 | [401](#) | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated October 30, 2017 re: July 21, 2017 Order (ECF No. 386). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 10/30/2017) |
| 11/01/2017 | [402](#) | NOTICE OF APPEARANCE by Daniel Slifkin on behalf of Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Slifkin, Daniel) (Entered: 11/01/2017) |
| 11/02/2017 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Discovery Hearing held on 11/2/2017. (ajc) (Entered: 11/02/2017) |
| 11/13/2017 | [403](#) | TRANSCRIPT of Proceedings re: Discovery Hearing held on 11/2/2017 before Magistrate Judge Henry B. Pitman. Court Reporter/Transcriber: Carole Ludwig, (212) 420-0771. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 12/4/2017. Redacted Transcript Deadline set for 12/14/2017. Release of Transcript Restriction set for 2/12/2018.(rro) (Entered: 11/13/2017) |
| 11/13/2017 | [404](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a Discovery Hearing proceeding held on 11/2/2017 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.(rro) (Entered: 11/13/2017) |
| 11/16/2017 | [405](#) | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated November 16, 2017 re: City Defendant's relevance and responsiveness objections. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/16/2017) |
| 11/22/2017 | [406](#) | JOINT LETTER MOTION for Leave to File Letter Brief addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated November 22, 2017. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/22/2017) |
| 11/27/2017 | [407](#) | ORDER: granting [406](#) Letter Motion for Leave to File Document. APPLICATION GRANTED. (Signed by Magistrate Judge Henry B. Pitman on 11/27/2017) (ap) (Entered: 11/27/2017) |
| 12/08/2017 | [408](#) | **FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU** - LETTER MOTION for Discovery *opposing production of ACS Draft Policies* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated December 8, 2017. Document filed by City of New York. (Attachments: # [1](#) Appendix Pls' First Request for Production of Documents)(Pines, Jonathan) Modified on 12/29/2017 (ldi). (Entered: 12/08/2017) |
| 12/08/2017 | [409](#) | LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated December 8, 2017 re: City Defendant's responsiveness and relevance objections. |

| | | |
|---|---|---|
| | | Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Elisa W.. (Attachments: # 1 Exhibit A to North Letter, # 2 Exhibit B to North Letter, # 3 Exhibit C to North Letter, # 4 Exhibit D to North Letter, # 5 Exhibit E to North Letter, # 6 Exhibit F to North Letter, # 7 Exhibit G to North Letter)(North, Julie) (Entered: 12/08/2017) |
| 12/11/2017 | 410 | LETTER RESPONSE in Support of Motion addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated December 11, 2017 re: 408 LETTER MOTION for Discovery *opposing production of ACS Draft Policies* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated December 8, 2017. *City Def's Response to Pls' counsel's letter of December 8, 2017*. Document filed by City of New York. (Pines, Jonathan) (Entered: 12/11/2017) |
| 12/29/2017 | | ***NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR. Notice to Attorney Jonathan L. Pines to RE-FILE Document 408 LETTER MOTION for Discovery *opposing production of ACS Draft Policies* addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated December 8, 2017. Use the event type Letter found under the event list Other Documents. (ldi)** (Entered: 12/29/2017) |
| 12/29/2017 | 411 | LETTER addressed to Magistrate Judge Henry B. Pitman from Jonathan Pines dated December 8, 2017 re: Relevance/Responsiveness of ACS Draft Policy Documents. Document filed by City of New York. (Attachments: # 1 Appendix Pls' First Request for Production of Documents)(Pines, Jonathan) (Entered: 12/29/2017) |
| 02/01/2018 | 412 | ORDER: The final pretrial conference currently scheduled for February 9, 2018, is hereby adjourned to Friday, February 23, 2018 at 12:00 p.m. in Courtroom 17C. SO ORDERED., ( Final Pretrial Conference set for 2/23/2018 at 12:00 PM in Courtroom 17C, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 2/01/2018) (ama) (Entered: 02/01/2018) |
| 02/14/2018 | 413 | JOINT LETTER MOTION to Adjourn Conference addressed to Judge Laura Taylor Swain from Julie A. North dated February 14, 2018. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 02/14/2018) |
| 02/16/2018 | 414 | ORDER: granting 413 Letter Motion to Adjourn Conference. The Final Pre-trial Conference is adjourned to March 15, 2019, at 11:00 AM and the related deadlines are modified accordingly. DE # 413 resolved. SO ORDERED. Final Pretrial Conference set for 3/15/2019 at 11:00 AM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 2/15/2018) (ama) (Entered: 02/16/2018) |
| 02/28/2018 | 415 | JOINT LETTER MOTION for Extension of Time *for completion of fact and expert discovery* addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated February 28, 2018. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 02/28/2018) |
| 02/28/2018 | 416 | REPORT AND RECOMMENDATION re: 357 MOTION To Substitute Yusuf El Ashmawy As A Next Friend, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T., 363 CROSS MOTION to Dismiss *Next Friends of Additional Plaintiff Children*, filed by City of New York. I respectfully recommend that City's motion to dismiss to dismiss |

| | | |
|---|---|---|
| | | Amy Mulzer, Rachel Friedman, Dawn Cardi, Michael B. Mushlin, Reverend Doctor Gwendolyn Hadley-Hall, Bishop Lillian Robinson-Wiltshire, Liza Camellerie, Elizabeth Hendrix, Samuel Perry as next friends be denied, that its motion to dismiss Elizabeth Barricelli as the next friend of Elisa W. be granted and that plaintiffs' motion to substitute Yusuf El Ashmawy in place of Liza Camellerie as the next friend of plaintiff Brittney W. be granted. If accepted, this Report and Recommendation closes Docket Items 357 and 363. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Laura Taylor Swain, United States District Judge, Room 1440, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Swain. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IDE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983). (Objections to R&R due by 3/14/2018.) (Signed by Magistrate Judge Henry B. Pitman on 2/28/2018) Copies Mailed By Chambers. (ras) (Entered: 02/28/2018) |
| 03/02/2018 | 417 | AMENDED ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for General Pretrial (includes scheduling, discovery, non-dispositive pretrial motions, and settlement) and Dispositive Motion (i.e., motion requiring a Report and Recommendation): docket entries 357 and 363. Referred to Magistrate Judge Henry B. Pitman. Motions referred to Henry B. Pitman. (Signed by Judge Laura Taylor Swain on 3/2/2018(NPT to 3/23/2017)) (mro) Modified on 3/2/2018 (mro). (Entered: 03/02/2018) |
| 03/20/2018 | 418 | ORDER: for 416 Report and Recommendations 357 Motion for Miscellaneous Relief, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T., 363 Motion to Dismiss filed by City of New York. Having reviewed Magistrate Judge Pitman's thorough and well-reasoned Report, to which no objection has been made, the Court finds no clear error. Therefore, the Court adopts the Report in its entirety. Accordingly, Defendants' Motion to Dismiss next friends Amy Mulzer, Rachel Friedman, Dawn Cardi, Michael B. Mushlin, Reverend Doctor Gwendolyn Hadley-Hall, Bishop Lillian Robinson-Wiltshire, Liza Camellerie, Elizabeth Hendrix, and Samuel Perry is denied. Defendants' Motion to Dismiss Elizabeth Barricelli as the next friend of Elisa W is granted. Plaintiffs' Motion to Substitute Yusuf El Ashmawy As Next Friend of Brittney W. is granted. The Clerk of Court is requested to update the docket accordingly. This Order resolves docket entry nos. 357 and 363. This case remains referred to Judge Pitman for general pretrial management, and as further set forth in this order. (Signed by Judge Laura Taylor Swain on 3/20/2018) (ap) Modified on 3/20/2018 (ap). Modified on 3/22/2018 (ap). (Entered: 03/20/2018) |
| 03/30/2018 | 419 | ORDER granting 415 Letter Motion for Extension of Time. APPLICATION GRANTED. (Signed by Magistrate Judge Henry B. Pitman on 3/29/2018) (ras) (Entered: 03/30/2018) |
| 03/30/2018 | | Set/Reset Deadlines: Expert Discovery due by 2/28/2019. Fact Discovery due by 11/29/2018. (ras) (Entered: 03/30/2018) |
| 04/25/2018 | 420 | NOTICE OF CHANGE OF ADDRESS by Samantha Leigh Buchalter on behalf of Sheila |

| | | |
|---|---|---|
| | | J. Poole. New Address: New York State Office of the Attorney General, 28 Liberty Street, New York, New York, United States 10005, 212-416-6582. (Buchalter, Samantha) (Entered: 04/25/2018) |
| 04/25/2018 | 421 | NOTICE OF CHANGE OF ADDRESS by Antoinette W Blanchette on behalf of Sheila J. Poole. New Address: New York State Office of the Attorney General, 28 Liberty Street, New York, NY, 10005, (212) 416-8595. (Blanchette, Antoinette) (Entered: 04/25/2018) |
| 04/25/2018 | 422 | NOTICE OF CHANGE OF ADDRESS by Roderick Leopold Arz on behalf of Sheila J. Poole. New Address: New York State Office of the Attorney General, 28 Liberty Street, New York, New York, 10005, (212) 416-8633. (Arz, Roderick) (Entered: 04/25/2018) |
| 04/25/2018 | 423 | NOTICE OF CHANGE OF ADDRESS by Cara Brown Chomski on behalf of Sheila J. Poole. New Address: New York State Office of the Attorney General, 28 Liberty Street, New York, New York, 10005, (212) 416-8177. (Chomski, Cara) (Entered: 04/25/2018) |
| 11/19/2018 | 424 | LETTER MOTION for Extension of Time *for completion of fact discovery on class certification* addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated November 19, 2018. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/19/2018) |
| 11/29/2018 | 425 | ORDER granting 424 Letter Motion for Extension of Time. THE SCHEDULE PROVIDED HEREIN IS APPROVED. SO ORDERED. (Signed by Magistrate Judge Henry B. Pitman on 11/29/2018) (ne) (Entered: 11/29/2018) |
| 11/29/2018 | | Set/Reset Deadlines: Fact Discovery due by 4/30/2019. (ne) (Entered: 11/29/2018) |
| 12/05/2018 | 426 | LETTER MOTION to Adjourn Conference *("Final Pretrial Conference scheduled for March 15, 2019")* addressed to Judge Laura Taylor Swain from Julie A. North dated December 5, 2018. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 12/05/2018) |
| 12/06/2018 | 427 | ORDER: granting 426 Letter Motion to Adjourn Conference. The Final Pretrial Conference is adjourned to December 20, 2019, at 2:00 p.m. as a control date and the related deadlines are suspended pending further Order of the Court. DE # 426 resolved. SO ORDERED. Final Pretrial Conference set for 12/20/2019 at 02:00 PM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 12/06/2018) (ama) (Entered: 12/06/2018) |
| 12/20/2018 | 428 | OPINION AND ORDER: Accordingly, for all the foregoing reasons, plaintiffs' application to compel the production of drafts of certain of defendants' policies is denied. (Signed by Magistrate Judge Henry B. Pitman on 12/20/2018) Copies Transmitted By Chambers. (ne) (Entered: 12/20/2018) |
| 12/31/2018 | 429 | FIRST MOTION for Jennifer Levy to Withdraw as Attorney *for Plaintiff Letitia James*. Document filed by Letitia James. (Attachments: # 1 Exhibit Proposed Order)(Levy, Jennifer) (Entered: 12/31/2018) |
| 01/02/2019 | 430 | ORDER GRANTING MOTION TO WITHDRAW JENNIFER LEVY AS A COUNSEL OF RECORD FOR PLAINTIFF granting 429 Motion to Withdraw as Attorney. IT IS HEREBY ORDERED that Jennifer Levy, Esq., is withdrawn as counsel of record for Plaintiff Letitia James. IT IS FURTHER ORDERED that Jennifer Levy, Esq., shall no longer receive electronic notices from the court's CM/ECF system in this proceeding. It is |

| | | |
|---|---|---|
| | | SO ORDERED. Attorney Jennifer L. Levy terminated. (Signed by Magistrate Judge Henry B. Pitman on 1/2/2019) (ne) (Entered: 01/02/2019) |
| 03/04/2019 | 431 | LETTER MOTION for Extension of Time *for Close of Fact Discovery on Class Certification* addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated March 4, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T.C., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 03/04/2019) |
| 03/05/2019 | 432 | ORDER granting 431 Letter Motion for Extension of Time. The within application is granted. Fact discovery is extended to May 31, 2019. The parties are to submit a proposed briefing schedule for plaintiffs' motion for class certification no later than June 30, 2019. SO ORDERED. (Signed by Magistrate Judge Henry B. Pitman on 3/5/2019) Copies Transmitted By Chambers. (ne) (Entered: 03/05/2019) |
| 03/05/2019 | | Set/Reset Deadlines: Fact Discovery due by 5/31/2019. (ne) (Entered: 03/05/2019) |
| 06/18/2019 | 433 | JOINT LETTER addressed to Magistrate Judge Henry B. Pitman from Julie A. North dated June 18, 2019 re: proposed briefing schedule for Plaintiffs' motion for class certification. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 06/18/2019) |
| 06/19/2019 | 434 | MEMO ENDORSEMENT on re: 433 Letter, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: THE SCHEDULE PROPOSED HEREIN IS APPROVED. SO ORDERED. (Motions due by 7/31/2019, Responses due by 10/31/2019, Replies due by 12/20/2019.) (Signed by Magistrate Judge Henry B. Pitman on 6/19/2019) (ne) (Entered: 06/19/2019) |
| 07/23/2019 | 435 | LETTER MOTION for Leave to File Excess Pages addressed to Judge Laura Taylor Swain from Julie A. North dated July 23, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/23/2019) |
| 07/24/2019 | 436 | ORDER: denying 435 Letter Motion for Leave to File Excess Pages. The requested extension is Denied. Plaintiffs are granted an extension of up to 60 pages in total for their opening brief as to both Defendants. SO ORDERED. (Signed by Judge Laura Taylor Swain on 7/24/2019) (ama) (Entered: 07/24/2019) |
| 07/29/2019 | 437 | LETTER MOTION to Seal Document addressed to Judge Laura Taylor Swain from Julie A. North dated July 29, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/29/2019) |
| 07/30/2019 | 438 | ORDER: granting 437 Motion to Seal Document. The request is granted insofar as it seeks to redact identifying information of Named Plaintiff Children in their memorandum of law and exhibits to the same. Named Plaintiff Children's request to file under seal certain excerpts of 30(b)(6) depositions of certain third-party agencies (the "Contract Agencies") is granted temporarily until August 14, 2019, by which date either the Named Plaintiff Children or the Contract Agencies must file a letter motion on ECF seeking leave for the continued sealing of these excerpts. The letter motion, which may be |

| | | |
|---|---|---|
| | | redacted if necessary, must identify any relevant provisions of the Second Amended Protective Order (docket entry no. 391), justify the request in light of the standards set forth in Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 11920 (2d Cir. 2006), and state whether the request is on consent and, if not, the substance of any opposing position(s). Unredacted courtesy copies of the letter motion and relevant deposition excerpts with all proposed redactions in highlighted form must be provided to Chambers. If no timely request seeking leave for continued sealing is filed, the excerpts shall be unsealed without further notice. Named Plaintiff Children are directed to serve a copy of this order upon the Contract Agencies no later than July 31, 2019. This Order resolves docket entry no. 437. SO ORDERED. (Signed by Judge Laura Taylor Swain on 7/30/2019) (ama) (Entered: 07/30/2019) |
| 07/30/2019 | | Set/Reset Deadlines: Motions due by 8/14/2019. (ama) (Entered: 07/30/2019) |
| 07/30/2019 | 439 | MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 07/30/2019) |
| 07/30/2019 | 440 | MEMORANDUM OF LAW in Support re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Appendix 1, # 2 Appendix 2, # 3 Appendix 3, # 4 Appendix 4)(North, Julie) (Entered: 07/30/2019) |
| 07/30/2019 | 441 | DECLARATION of Marcia Robinson Lowry in Support re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 07/30/2019) |
| 07/30/2019 | 442 | DECLARATION of Julie A. North in Support re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 |

|  |  | Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104, # 105 Exhibit 105, # 106 Exhibit 106, # 107 Exhibit 107, # 108 Exhibit 108, # 109 Exhibit 109, # 110 Exhibit 110, # 111 Exhibit 111, # 112 Exhibit 112, # 113 Exhibit 113, # 114 Exhibit 114, # 115 Exhibit 115, # 116 Exhibit 116, # 117 Exhibit 117, # 118 Exhibit 118, # 119 Exhibit 119, # 120 Exhibit 120, # 121 Exhibit 121)(North, Julie) (Entered: 07/30/2019) |
|---|---|---|
| 07/31/2019 | 443 | SEALED DOCUMENT placed in vault.(mhe) (Entered: 07/31/2019) |
| 08/01/2019 | 444 | LETTER MOTION to Seal Document *(letter requesting an extension of the class certification briefing schedule)* addressed to Judge Laura Taylor Swain from Julie A. North dated August 1, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 08/01/2019) |
| 08/05/2019 | 445 | JOINT LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated August 5, 2019 re: extension of class certification briefing schedule. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 08/05/2019) |
| 08/05/2019 | 446 | MEMO ENDORSEMENT: on re: 445 Letter filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T., ), ENDORSEMENT: The proposed schedule is approved and the request to withdraw the prior letters is Granted. DE # 445 resolved, DE # 444 withdrawn and terminated. SO ORDERED. Motions terminated: 444 LETTER MOTION to Seal Document (letter requesting an extension of the class certification briefing schedule) addressed to Judge Laura Taylor Swain from Julie A. North dated August 1, 2019 filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Jose T.C., Alexandria R., Mikayla G., Olivia R., Xavion M., Myls J., Ana-Maria R., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ( Responses due by 12/12/2019, Replies due by 1/31/2020.) (Signed by Judge Laura Taylor Swain on 8/05/2019) (ama) (Entered: 08/05/2019) |
| 08/14/2019 | 447 | LETTER addressed to Judge Laura Taylor Swain from Kristin L. Williams dated 08/13/2019 re: Order to Unseal Testimony. Document filed by Non-party agency. (Williams, Kristin) (Entered: 08/14/2019) |
| 08/14/2019 | 448 | LETTER addressed to Judge Laura Taylor Swain from Non-party agency dated 08/13/2019 re: Order to Unseal Testimony. Document filed by Non-party agency. (Williams, Kristin) (Entered: 08/14/2019) |
| 08/15/2019 | 449 | ORDER: The temporary sealing of the deposition excerpts is hereby continued until September 6, 2019. If no timely joint report is filed, the excerpts shall be unsealed without further notice. Named Plaintiff Children are directed to serve a copy of this Order upon CHFS and HSVS, and to file a certificate attesting to such service, no later than August 16, 2019. SO ORDERED. (Signed by Judge Laura Taylor Swain on 8/15/2019) (ks) (Entered: 08/15/2019) |
| 08/15/2019 | 450 | CERTIFICATE OF SERVICE of the Order of the Court (ECF No. 449) served on Kristin L. Williams on August 15, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., |

| | | Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Winograd, Max) (Entered: 08/15/2019) |
|---|---|---|
| 09/06/2019 | 451 | LETTER addressed to Judge Laura Taylor Swain from Non-party agency dated 09/06/2019 re: Continued Sealing of Deposition Excerpts Filed Under Seal. Document filed by Non-party agency.(Williams, Kristin) (Entered: 09/06/2019) |
| 09/11/2019 | 452 | ORDER: The Court hereby grants the agencies a third and final opportunity to offer more than conclusory statements demonstrating the need for continued sealing. The third-party agencies must file no later than September 20, 2019, a submission (1) explaining the specific deposition testimony they seek to file under seal, (2) demonstrating why that testimony will "cause embarrassment and harm," "damage [the agencies'] relationship with ACS," or "damage the trust and security the families have in their foster services," and (3) describing how continued sealing or redaction is necessary to preserve higher values beyond the third-party agencies' mere desire not to disclose this information to the public. To the extent that the agencies contend that the supplemental explanatory material includes material that itself meets the high standard for sealing or protection, the statement may be filed on ECF in redacted form with the unredacted version delivered for chambers and served on Named Plaintiff Children. The Court will review and rule on whether that material may remain sealed in conjunction with its ruling on whether the deposition excerpts that are the subject of the Named Plaintiff Childrens application may remain sealed. The temporary sealing of the deposition excerpts is hereby continued until September 23, 2019. If no timely supplemental submission is filed, the excerpts shall be unsealed without further notice. Named Plaintiff Children are directed to serve a copy of this Order upon CHFS and HSVS, and to file a certificate attesting to such service, no later than September 12, 2019. And as set forth herein. SO ORDERED. (Signed by Judge Laura Taylor Swain on 9/11/2019) (ama) (Entered: 09/11/2019) |
| 09/11/2019 | 453 | CERTIFICATE OF SERVICE of the Order of the Court (ECF No. 452) served on Kristin L. Williams on September 11, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Coleman, Amanda) (Entered: 09/11/2019) |
| 09/20/2019 | 454 | LETTER addressed to Judge Laura Taylor Swain from Non-party agency dated 9/20/19 re: In Response to Court Order. Document filed by Non-party agency.(Williams, Kristin) (Entered: 09/20/2019) |
| 09/24/2019 | 455 | MEMO ENDORSEMENT: on re: 454 Letter filed by Non-party agency. ENDORSEMENT: The Court appreciates the Agencies' concerns but finds no proper legal basis for maintaining the referenced excerpts under seal. Plaintiff are directed to file them on the ECF docket by September 30, 2019. SO ORDERED. (Signed by Judge Laura Taylor Swain on 9/23/2019) (ama) (Entered: 09/24/2019) |
| 09/25/2019 | 456 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated September 25, 2019 re: filing of previously sealed deposition excerpts pursuant to order of September 24, 2019 (ECF No. 455). Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 9--Gonzalez Excerpts, # 2 Exhibit 15--Munoz Excerpts)(North, Julie) (Entered: 09/25/2019) |
| 10/02/2019 | | Magistrate Judge Sarah L. Cave is so redesignated. (ad) (Entered: 10/02/2019) |
| 10/02/2019 | | NOTICE OF REASSIGNMENT OF A REFERRAL TO ANOTHER MAGISTRATE JUDGE. The referral in the above entitled action has been reassigned to Magistrate Judge Sarah L. Cave, for General Pretrial (includes scheduling, discovery, non-dispositive |

| | | |
|---|---|---|
| | | pretrial motions, and settlement). Magistrate Judge Henry B. Pitman no longer referred to the case. Motions referred to Sarah L. Cave. (ad) (Entered: 10/02/2019) |
| 10/02/2019 | 457 | NOTICE OF APPEARANCE by Sharon Vicky Sprayregen on behalf of Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Sprayregen, Sharon) (Entered: 10/02/2019) |
| 10/03/2019 | 458 | NOTICE OF APPEARANCE by Ian William Forster on behalf of Gladys Carrion, City of New York, New York City Administration for Childrens Services. (Forster, Ian) (Entered: 10/03/2019) |
| 10/23/2019 | 459 | LETTER MOTION to Seal Document addressed to Judge Laura Taylor Swain from Julie A. North dated October 23, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 10/23/2019) |
| 10/24/2019 | 460 | ORDER denying 459 Motion to Seal Document. The general request is denied, without prejudice to a motion, consistent with paragraph A.5 of the individual practices rules of the undersigned, demonstrating the need for redaction of specific identifying or medical information. DE # 459 resolved. (Signed by Judge Laura Taylor Swain on 10/24/2019) (ras) (Entered: 10/24/2019) |
| 10/25/2019 | 461 | LETTER MOTION to Seal Document addressed to Judge Laura Taylor Swain from Julie A. North dated October 25, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 10/25/2019) |
| 11/01/2019 | 462 | ORDER granting 461 LETTER MOTION to Seal Document addressed to Judge Laura Taylor Swain from Julie A. North dated October 25, 2019. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W. The request is granted. DE #461 resolved. So ordered. (Signed by Judge Laura Taylor Swain on 11/1/2019) (rjm) Transmission to Sealed Records Clerk for processing. (Entered: 11/01/2019) |
| 11/01/2019 | 463 | MOTION to Substitute Michael B. Mushlin and Shamara Mills as Next Friends . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W..(North, Julie) (Entered: 11/01/2019) |
| 11/01/2019 | 464 | MEMORANDUM OF LAW in Support re: 463 MOTION to Substitute Michael B. Mushlin and Shamara Mills as Next Friends . . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14)(North, Julie) (Entered: 11/01/2019) |
| 11/01/2019 | 465 | DECLARATION of Michael B. Mushlin in Support re: 463 MOTION to Substitute Michael B. Mushlin and Shamara Mills as Next Friends .. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 11/01/2019) |

| | | |
|---|---|---|
| 11/01/2019 | 466 | DECLARATION of Shamara Mills in Support re: 463 MOTION to Substitute Michael B. Mushlin and Shamara Mills as Next Friends .. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (North, Julie) (Entered: 11/01/2019) |
| 12/04/2019 | 467 | MEMO ENDORSEMENT on NOTICE OF MOTION TO SUBSTITUTE MICHAEL B. MUSHLIN AND SHAMARA MILLS AS NEXT FRIENDS: granting 463 Motion for SUBSTITUTE MICHAEL B. MUSHLIN AND SHAMARA MILLS AS NEXT FRIENDS. ENDORSEMENT: The within Motion for the substitution of Ms. Mills as next friend to Brittany W. and for the substitution of Ms. Mushlin as next friend to Mikayla G. and Thierry E. is Granted, and the Clerk of Court is directed to update the caption as set forth above. DE # 463 resolved. SO ORDERED. (Signed by Judge Laura Taylor Swain on 12/04/2019) (ama) (Entered: 12/04/2019) |
| 12/06/2019 | 468 | JOINT LETTER addressed to Judge Laura Taylor Swain from Jonathan Pines dated December 6, 2019 re: extension of filing schedule for opposition and reply papers relating to Plaintiffs' pending Motion for Class Certification. Document filed by City of New York.(Forster, Ian) (Entered: 12/06/2019) |
| 12/10/2019 | 469 | MEMO ENDORSEMENT: on re: 468 Letter filed by The City of New York. ENDORSEMENT: In light of the need for time for further discussions, the Clerk of Court is directed to terminate the pending motion (DE # 439) without prejudice to restoration for completion of briefing, by letter request on or after April 1, 2020, for approval by briefing according to the above schedule. SO ORDERED., ( Responses due by 4/13/2020, Replies due by 5/29/2020.), Motions terminated: 439 MOTION to Certify Class ("Notice of Renewed Motion for Class Certification") filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. (Signed by Judge Laura Taylor Swain on 12/06/2019) (ama) (Entered: 12/10/2019) |
| 12/13/2019 | 470 | ORDER: The final pretrial conference currently scheduled for December 20, 2019, is hereby adjourned to Friday, March 13, 2020 at 2:00 p.m. in Courtroom 17C. (Final Pretrial Conference set for 3/13/2020 at 02:00 PM in Courtroom 17C, 500 Pearl Street, New York, NY 10007 before Judge Laura Taylor Swain.) (Signed by Judge Laura Taylor Swain on 12/13/2019) (cf) (Entered: 12/13/2019) |
| 02/27/2020 | 471 | LETTER MOTION to Adjourn Conference *(Final PTC currently 3/13/20 @ 2:00)* addressed to Judge Laura Taylor Swain from Jonathan Pines dated February 27, 2020. Document filed by The City of New York..(Pines, Jonathan) (Entered: 02/27/2020) |
| 02/28/2020 | 472 | ORDER: granting 471 Letter Motion to Adjourn Conference. The FPTC is adjourned to October 2, 2020 at 2:00 p.m. as a control date. The parties must file a joint status report by July 31, 2020. DE # 471 resolved. SO ORDERED. Final Pretrial Conference set for 10/2/2020 at 02:00 PM before Judge Laura Taylor Swain. (Signed by Judge Laura Taylor Swain on 2/28/2020) (ama) (Entered: 02/28/2020) |
| 03/04/2020 | 473 | PROPOSED ORDER FOR WITHDRAWAL OF ATTORNEY. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem..(Flynn-Fitzsimmons, Luke) (Entered: 03/04/2020) |
| 03/05/2020 | 474 | NOTICE AND ORDER FOR WITHDRAWAL OF COUNSEL re: 473 Proposed Order for Withdrawal of Attorney: The Clerk of Court is respectfully directed to terminate Attorney Luke Xavier Flynn-Fitzsimmons' appearance as attorney for Intervenors Brooklyn Defender Services, The Bronx Defenders, Center for Family Representation, Inc., and Neighborhood Defender Service of Harlem. (Attorney Luke Xavier Flynn- |

| | | |
|---|---|---|
| | | Fitzsimmons terminated.) (Signed by Magistrate Judge Sarah L Cave on 3/5/2020) (jwh) (Entered: 03/05/2020) |
| 03/16/2020 | 475 | SCHEDULING ORDER: It is hereby ORDERED, pursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), that all depositions in this action may be taken via telephone, videoconference, or other remote means, and may be recorded by any reliable audio or audiovisual means. This order does not dispense with the requirements set forth in Fed. R. Civ. P. 30(b)(5), including the requirement that ("[u]nless the parties stipulate otherwise") the deposition be "conducted before an officer appointed or designated under Rule 28," and that the deponent be placed under oath by that officer. For avoidance of doubt, however, a deposition will be deemed to have been conducted "before" an officer so long as that officer attends the deposition via the same remote means (e.g., telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants. It is further ORDERED, pursuant to Fed. R. Civ. P. 16(b)(4), that all unexpired deadlines for the completion of fact depositions, fact discovery, expert depositions, expert discovery, and/or all discovery are hereby EXTENDED for a period of 30 days, together with all post-discovery deadlines previously set by this Court. Nothing in this Order prevents the parties from seeking to further modify the pretrial schedule in this action in light of the COVID-19 pandemic (or for any other good cause). Prior to seeking such relief, the parties must, as always, meet and confer (via remote means) in a good faith effort to reach agreement on how best to fulfil the goals of Rule 1 while avoiding unnecessary health risks. On receipt of this order, each party is directed to ensure that all other parties in this action are aware of the order, particularly if this action involves a pro se party. SO ORDERED. (Signed by Magistrate Judge Sarah L Cave on 3/16/2020) (ama) (Entered: 03/16/2020) |
| 03/17/2020 | 476 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated March 17, 2020 re: Amended Exhibit 1 to ECF Docket No. 442. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit Amended Exhibit 1 (Redacted) to the Declaration of Julie A. North in Support).(North, Julie) (Entered: 03/17/2020) |
| 03/19/2020 | 477 | MEMO ENDORSEMENT: on re: 476 Letter filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: The foregoing application to file an amended version of Exhibit 1 to DE 442 with the corrected redacted exhibit is granted. The implicit motion to file under seal the unredacted exhibit with access permitted only to the Court and counsel for named parties is also granted. The unredacted exhibit must be filed under seal electronically, linked to this authorizing order in accordance with the Court's ECF rules. DE # 476 resolved. SO ORDERED. (Signed by Judge Laura Taylor Swain on 3/18/2020) (ama) (Entered: 03/19/2020) |
| 03/19/2020 | 478 | ***SELECTED PARTIES***NOTICE of Amended Exhibit 1 re: 477 Memo Endorsement, Set Deadlines/Hearings,,,,,,. Document filed by Olivia R., Myls J., Dameon C., Alexandria R., Emmanuel S., Elisa W., Valentina T.C., Matthew V., Lucas T., Malik M., Mikayla G., Xavion M., Thierry E., Brittney W., Tyrone M., Ayanna J., Ximena T., Jose T.C., Ana-Maria R., David Hansel, New York City Administration for Childrens Services, Sheila J. Poole, State Of New York, The City of New York, The New York State Office of Children and Family Services. Motion or Order to File Under Seal: 477 . (North, Julie) (Entered: 03/19/2020) |
| 04/13/2020 | 479 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated April 13, |

| | | 2020 re: request for an extension for restoration of the briefing schedule on behalf of all parties. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 04/13/2020) |
|---|---|---|
| 04/14/2020 | 480 | MEMO ENDORSEMENT on re: 479 Letter, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: The schedule proposed above is approved. DE #479 resolved. SO ORDERED. ( Responses due by 6/15/2020, Replies due by 7/31/2020.) (Signed by Judge Laura Taylor Swain on 4/14/2020) (va) (Entered: 04/14/2020) |
| 06/05/2020 | 481 | LETTER addressed to Judge Laura Taylor Swain from Julie A. North dated June 5, 2020 re: restoration of the briefing schedule. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 06/05/2020) |
| 06/08/2020 | 482 | MEMO ENDORSEMENT on re: 481 Letter, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: The request is granted and the proposed briefing schedule is approved. The motion for class certification (DE # 439) is deemed refiled on June 8,2020. DE # 481 resolved. SO ORDERED., ( Responses due by 8/31/2020, Replies due by 9/18/2020.) (Signed by Judge Laura Taylor Swain on 6/08/2020) (ama) (Entered: 06/08/2020) |
| 07/16/2020 | 483 | PROPOSED STIPULATION AND ORDER. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Appendix A--Minimum Technical Requirements for Remote Depositions).(North, Julie) (Entered: 07/16/2020) |
| 07/17/2020 | 484 | STIPULATED ORDER REGARDING REMOTE DEPOSITIONS. It is ORDERED that the Remote Depositions shall proceed subject to the following rules and procedures, which have been agreed upon by the Parties: Pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure, Remote Depositions will be conducted before a Court Reporter who shall have all of the authority of an officer appointed or authorized under Rule 28 to take Depositions. Remote Depositions shall be conducted using the Remote Deposition Video and Exhibit Platforms, and shall be accessed only through a secured connection to protect confidential information. In order to facilitate reliable use of the Remote Deposition Video and Exhibit Platforms, each attorney shall be responsible for acquiring, maintaining, and utilizing computer, audio, and video equipment that meets the minimum requirements set forth in Appendix A. The Parties stipulate that the language set forth below shall be included in oral deposition notices served pursuant to Rule 30(b)(1) and provides sufficient notice with respect to Remote Depositions as further set forth in this Stipulation. Except as otherwise provided herein, the Remote Depositions shall in all ways be governed by the rules regarding depositions by oral examination set forth in Rule 30 of the Federal Rules of Civil Procedure. The Remote Depositions shall satisfy the Parties and each Witnesss obligations to make the Witness available for deposition to the same extent as if the depositions had been conducted in person. Except as otherwise provided in this Stipulated Order or as otherwise agreed by the parties, no Participant shall permit anyone who is not a Participant to hear or view the Remote Deposition while it is being conducted. No Participant shall communicate or attempt to communicate with |

Case 22-7, Document 124, 08/09/2022, 3363349, Page91 of 294

| | | |
|---|---|---|
| | | the Witness while the Remote Deposition is on the record through any means other than the Remote Deposition Video and Exhibit Platforms, except that the Videographer or Operator may communicate with the Witness to resolve technical issues through means other than the Remote Deposition Video and Exhibit Platforms. Notwithstanding this provision, subject to all otherwise applicable rules, including Federal Rule of Civil Procedure 30(d)(1), the Defending Attorney may communicate privately with the Witness by any means any time during breaks in the Remote Deposition or if the Court Reporter otherwise suspends the Remote Deposition. This Stipulated Order also shall govern any Remote Depositions of non-Party witnesses and as further set forth in this Stipulation. IT IS SO ORDERED. (Signed by Magistrate Judge Sarah L Cave on 7/17/20) (yv) (Entered: 07/17/2020) |
| 07/22/2020 | | NOTICE OF CASE REASSIGNMENT to Judge Kimba M. Wood. Judge Laura Taylor Swain is no longer assigned to the case..(wb) (Entered: 07/22/2020) |
| 07/29/2020 | 485 | LETTER MOTION for Extension of Time to File Response/Reply as to 482 Memo Endorsement, Set Deadlines/Hearings,,,, *and All Parties' Joint Status Update Letter* addressed to Judge Kimba M. Wood from Jonathan Pines dated July 29, 2020. Document filed by The City of New York..(Pines, Jonathan) (Entered: 07/29/2020) |
| 08/04/2020 | 486 | ORDER granting 485 Letter Motion for Extension of Time to File Response/Reply. On July 29, 2020, the City Defendant submitted a letter to the Court on behalf of the parties, seeking to resolve a dispute regarding the date on which the Defendants' papers in opposition to Plaintiffs' Renewed Motion for Class Certification will be due. (ECF No. 485.) The Court adopts the briefing schedule proposed by Plaintiffs. The City Defendant shall file its opposition by August 31, 2020. The State Defendant shall file its opposition by September 21, 2020. Plaintiffs shall file their reply by October 9, 2020. SO ORDERED. Responses due by 9/21/2020. Replies due by 10/9/2020. (Signed by Judge Kimba M. Wood on 8/4/2020) (va) (Entered: 08/04/2020) |
| 08/21/2020 | 487 | LETTER MOTION for Leave to File Excess Pages *on behalf of State and City Defendants* addressed to Judge Kimba M. Wood from Jonathan Pines dated August 21, 2020. Document filed by The City of New York..(Pines, Jonathan) (Entered: 08/21/2020) |
| 08/24/2020 | 488 | ORDER granting 487 LETTER MOTION for Leave to File Excess Pages on behalf of State and City Defendants addressed to Judge Kimba M. Wood from Jonathan Pines dated August 21, 2020. Document filed by The City of New York. The City Defendant's requested is GRANTED. The City Defendant's memorandum in opposition to Plaintiffs' motion for class certification shall be limited to 75 pages, and the State Defendant's memorandum in opposition shall be limited to 40 pages. SO ORDERED. (Signed by Judge Kimba M. Wood on 8/24/2020) (rjm) (Entered: 08/24/2020) |
| 08/31/2020 | 489 | DECLARATION of Jonathan Pines in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")..* Document filed by The City of New York. (Attachments: # 1 Exhibit C (Metro News article), # 2 Exhibit D (Long Dep. excerpt), # 3 Exhibit E (Long Dep. excerpt), # 4 Exhibit F (Long Dep. excerpt), # 5 Exhibit G (Long Dep. excerpt), # 6 Exhibit H (CGS Dep. excerpt), # 7 Exhibit I (Children's Village Dep. excerpt), # 8 Exhibit J (Graham Windham Dep. excerpt), # 9 Exhibit K (Little Flower Dep. excerpt), # 10 Exhibit L (HHS ACF letter 6/23/20)).(Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 490 | DECLARATION of Julie Farber in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")..* Document filed by The City of New York..(Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 491 | DECLARATION of Andrew White in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")..* Document filed by The City of |

A0082

| | | |
|---|---|---|
| | | New York..(Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 492 | DECLARATION of Allon Yaroni in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by The City of New York. (Attachments: # 1 Exhibit Yaroni-A (Reas. Efforts Chart))).(Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 493 | MEMORANDUM OF LAW in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. *with Appendix (City's 2016 Memo of Law in Opp to Class Certification, De 205)*. Document filed by The City of New York. (Attachments: # 1 Appendix City Def's 2016 Memo in Opp to Class Certification)). (Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 494 | RESPONSE in Opposition to Motion re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. *Margaret Burt Expert Report*. Document filed by The City of New York..(Pines, Jonathan) (Entered: 08/31/2020) |
| 08/31/2020 | 495 | RESPONSE in Opposition to Motion re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. *Fred Wulczyn Expert Report*. Document filed by The City of New York..(Pines, Jonathan) (Entered: 08/31/2020) |
| 09/01/2020 | 496 | DECLARATION of Nancy Thomson in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by The City of New York..(Pines, Jonathan) (Entered: 09/01/2020) |
| 09/21/2020 | 497 | MEMORANDUM OF LAW in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. . Document filed by Sheila J. Poole.. (Buchalter, Samantha) (Entered: 09/21/2020) |
| 09/21/2020 | 498 | DECLARATION of Lisa Ghartey Ogundimu in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by Sheila J. Poole. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E).(Buchalter, Samantha) (Entered: 09/21/2020) |
| 09/21/2020 | 499 | DECLARATION of Samantha L. Buchalter in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by Sheila J. Poole. (Attachments: # 1 Exhibit F, # 2 Exhibit G).(Buchalter, Samantha) (Entered: 09/21/2020) |
| 09/29/2020 | 500 | JOINT LETTER addressed to Judge Kimba M. Wood from Julie A. North dated September 29, 2020 re: case scheduling. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 09/29/2020) |
| 09/30/2020 | 501 | SCHEDULING ORDER: Completion of Plaintiffs' Document Productions due by 10/30/2020. Defendants File Daube1t Motion due by November 30, 2020. Plaintiffs File Opposition to Daubert due by December 14, 2020. Defendants File Reply In Support of Daubert Motion Due December 21, 2020 Completion of City Defendants' February 6, 2021 Document Productions due by 2/6/2021. Close of Expert Depositions due by 3 weeks after close of City Defendants' document productions. The pretrial conference scheduled for October 2, 2020 is adjourned.The conference shall take place seven days after the issuance of an orderon Plaintiffs' motion for class certification.Plaintiffs' request to file additional pages in reply to City and StateDefendants' opposition briefs is granted. (Motions due by 11/30/2020. Responses due by 12/14/2020 Replies due by 12/21/2020.) (Signed by Judge Kimba M. Wood on 9/30/2020) (rro) (Entered: 09/30/2020) |
| 11/25/2020 | 502 | FIRST LETTER MOTION for Extension of Time *to file Daubert motion (on consent)* |

| | | addressed to Judge Kimba M. Wood from Sharon Sprayregen dated November 25, 2020. Document filed by The City of New York..(Sprayregen, Sharon) (Entered: 11/25/2020) |
|---|---|---|
| 11/27/2020 | 503 | AMENDED SCHEDULING ORDER granting 502 Letter Motion for Extension of Time. City Defendant's request for an extension to the deadline for filing a Daubert motion (ECF No. 502) is granted. Motions due by 12/30/2020. (nb) (Entered: 11/30/2020) |
| 11/27/2020 | | Set/Reset Deadlines: Responses due by 1/13/2021 Replies due by 1/21/2021. (nb) (Entered: 11/30/2020) |
| 12/29/2020 | 504 | LETTER MOTION for Extension of Time *on consent to file the Daubert motion, and joint request to supplement DE 503* addressed to Judge Kimba M. Wood from Sharon Sprayregen dated December 29, 2020. Document filed by The City of New York.. (Sprayregen, Sharon) (Entered: 12/29/2020) |
| 12/30/2020 | 505 | SECOND AMENDED SCHEDULING ORDER: Motions due by 1/11/2021. Responses due by 1/25/2021. Defendants File Reply in Support of Daubert Motion due 2/2/2021. Completion of City Defendants' Document Productions 2/6/2021. Deposition due by 3/1/2021. Replies due by 3/22/2021. City Defendant's request for an extension to the deadline for filing a Daubert motion and to supplement the November 27, 2020 Scheduling Order is granted. (ECF No. 504.) Counsel are advised that further extensions to the deadline for filing a Daubert motion shall not be granted absent a showing of good cause. SO ORDERED. (Signed by Judge Kimba M. Wood on 12/30/2020) (va) (Entered: 12/30/2020) |
| 01/07/2021 | 506 | LETTER addressed to Judge Kimba M. Wood from Ian William Forster dated January 7, 2021 re: City Defendant's amended expert reports to be filed separately, originally filed at Dkt. Nos. 494 and 495. Document filed by The City of New York..(Forster, Ian) (Entered: 01/07/2021) |
| 01/07/2021 | 507 | NOTICE of Amended Margaret Burt Expert Report re: 494 Response in Opposition to Motion, 506 Letter,. Document filed by The City of New York..(Forster, Ian) (Entered: 01/07/2021) |
| 01/07/2021 | 508 | NOTICE of Amended Fred Wulczyn Expert Report re: 506 Letter, 495 Response in Opposition to Motion. Document filed by The City of New York..(Forster, Ian) (Entered: 01/07/2021) |
| 01/08/2021 | 509 | LETTER MOTION for Leave to File Excess Pages *on consent* addressed to Judge Kimba M. Wood from Sharon Sprayregen dated January 8, 2021. Document filed by The City of New York..(Sprayregen, Sharon) (Entered: 01/08/2021) |
| 01/08/2021 | 510 | ORDER granting 509 Letter Motion for Leave to File Excess Pages. Granted. SO ORDERED. (Signed by Judge Kimba M. Wood on 1/8/2021) (va) (Entered: 01/08/2021) |
| 01/11/2021 | 511 | MOTION to Disqualify *pursuant to Fed. R. Evid. 702*. Document filed by The City of New York..(Sprayregen, Sharon) (Entered: 01/11/2021) |
| 01/11/2021 | 512 | MEMORANDUM OF LAW in Support re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.* . Document filed by The City of New York..(Sprayregen, Sharon) (Entered: 01/11/2021) |
| 01/11/2021 | 513 | DECLARATION of Jonathan Pines in Support re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702..* Document filed by The City of New York. (Attachments: # 1 Exhibit A, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E).(Sprayregen, Sharon) (Entered: 01/11/2021) |
| 01/11/2021 | 514 | ***SELECTED PARTIES***DECLARATION of Jonathan Pines in Support re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702..* Document filed by The City of |

|            |     |                                                                                                                                                                                                                                                                                                                                                                                                                                                  |
|------------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | New York, Bronx Defenders, Brooklyn Defender Service, Dameon C., Center for Family Representation, Thierry E., Mikayla G., David Hansel, Ayanna J., Myls J., Lawyers for Children, Inc., Malik M., Tyrone M., Xavion M., Neighborhood Defender Service of Harlem, New York City Administration for Childrens Services, Non-party agency, Sheila J. Poole, Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., State Of New York, Lucas T., Ximena T., Jose T.C., Valentina T.C., The Children's Law Center of New York, The Legal Aid Society, The New York State Office of Children and Family Services, Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit B)Motion or Order to File Under Seal: 477 .(Sprayregen, Sharon) (Entered: 01/11/2021) |
| 01/13/2021 | 515 | MOTION to Amend/Correct 513 Declaration in Support of Motion, *Amd. Ex. E Amd. Anastas Rept. (incl. CV)*. Document filed by The City of New York..(Sprayregen, Sharon) (Entered: 01/13/2021)                                                                                                                                                                                                                                                         |
| 01/15/2021 | 516 | LETTER MOTION for Extension of Time addressed to Judge Kimba M. Wood from Julie A. North dated January 15, 2021. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 [Proposed] Third Amended Scheduling Order).(North, Julie) (Entered: 01/15/2021) |
| 01/16/2021 | 518 | ORDER granting 516 Letter Motion for Extension of Time. Granted. Because Plaintiffs have demonstrated good cause for a limited extension of the deadline to oppose City Defendant's Daubert motion, the request is granted. In addition, Plaintiffs' request to file up to five additional pages in opposition to the Daubert motion is granted. SO ORDERED. (Signed by Judge Kimba M. Wood on 1/16/2021) (va) (Entered: 01/19/2021)                     |
| 01/16/2021 |     | Set/Reset Deadlines: Deposition due by 2/8/2021. Responses due by 2/22/2021. Replies due by 3/1/2021. (va) (Entered: 01/19/2021)                                                                                                                                                                                                                                                                                                                   |
| 01/16/2021 | 519 | THIRD AMENDED SCHEDULING ORDER: Deposition of Dr. Jeane W. Anastas due 2/8/2021. Plaintiffs file Opposition to Daubert Motion 2/22/2021. Defendants file Reply in Support of Daubert Motion 3/1/2021. Expert Deposition due by 3/1/2021. Replies due by 3/22/2021. SO ORDERED. (Signed by Judge Kimba M. Wood on 1/16/2021) (va) (Entered: 01/19/2021)                                                                                                 |
| 01/19/2021 | 517 | LETTER addressed to Judge Kimba M. Wood from Jonathan Pines dated January 19, 2021 re: Plaintiffs' request for expert discovery. Document filed by The City of New York..(Pines, Jonathan) (Entered: 01/19/2021)                                                                                                                                                                                                                                    |
| 02/23/2021 | 520 | MEMORANDUM OF LAW in Opposition re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.* . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Statement of Technical Failure).(North, Julie) (Entered: 02/23/2021)                    |
| 02/23/2021 | 521 | **FILING ERROR - DEFICIENT DOCKET ENTRY (SEE DOCUMENT #523) -** DECLARATION of Julie A. North in Opposition re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6 (Part I), # 7 Exhibit 6 (Part II), # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12).(North, Julie) Modified on 2/24/2021 (ldi). (Entered: 02/23/2021) |

| 02/23/2021 | 522 | **FILING ERROR - ELECTRONIC FILING FOR NON-ECF DOCUMENT -** MOTION to Amend/Correct 521 Declaration in Opposition to Motion,, *Including Exhibit 11*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) Modified on 2/24/2021 (ldi). (Entered: 02/23/2021) |
|---|---|---|
| 02/24/2021 | | **\*\*\*NOTE TO ATTORNEY TO RE-FILE DOCUMENT - NON-ECF DOCUMENT ERROR. Note to Attorney Julie A North: Document No. 522 Exhibit is not filed via ECF. Exhibits are only added as attachments. (ldi)** (Entered: 02/24/2021) |
| 02/24/2021 | 523 | DECLARATION of Julie A. North in Opposition re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.*. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6 (Part I), # 7 Exhibit 6 (Part II), # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12).(North, Julie) (Entered: 02/24/2021) |
| 02/26/2021 | 524 | LETTER MOTION for Extension of Time to File Response/Reply as to 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.*, 520 Memorandum of Law in Opposition to Motion, 523 Declaration in Opposition to Motion,, addressed to Judge Kimba M. Wood from Jonathan Pines dated February 26, 2021. Document filed by The City of New York.. (Pines, Jonathan) (Entered: 02/26/2021) |
| 02/26/2021 | 525 | ORDER granting 524 Letter Motion for Extension of Time to File Response/Reply re 524 LETTER MOTION for Extension of Time to File Response/Reply as to 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.*, 520 Memorandum of Law in Opposition to Motion, 523 Declaration in Opposition to Motion,, addres, 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.* GRANTING. SO ORDERED. Replies due by 3/3/2021. (Signed by Judge Kimba M. Wood on 2/26/2021) (va) (Entered: 02/26/2021) |
| 03/03/2021 | 526 | REPLY MEMORANDUM OF LAW in Support re: 511 MOTION to Disqualify *pursuant to Fed. R. Evid. 702.* . Document filed by The City of New York..(Pines, Jonathan) (Entered: 03/03/2021) |
| 03/12/2021 | 527 | LETTER MOTION for Conference *(Pre-Motion Conference)* addressed to Judge Kimba M. Wood from Audra J. Soloway dated March 12, 2020. Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem. (Attachments: # 1 Amicus Brief).(Soloway, Audra) (Entered: 03/12/2021) |
| 03/12/2021 | 528 | LETTER MOTION for Extension of Time *to file Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion for Class Certification from March 22, 2021 to April 1, 2021* addressed to Judge Kimba M. Wood from Julie A. North dated March 12, 2021. Document filed by Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 03/12/2021) |
| 03/16/2021 | 529 | LETTER MOTION for Extension of Time *to file Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion for Class Certification from March 22, 2021 to April 1, 2021 and in RESPONSE to D.E. 527* addressed to Judge Kimba M. Wood from Julie A. North dated March 16, 2021. Document filed by Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 03/16/2021) |

| 03/21/2021 | 530 | ORDER granting 527 Letter Motion for Conference addressed to Judge Kimba M. Wood from Audra J. Soloway dated March 12, 2021; 528 LETTER MOTION for Extension of Time *to file Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion for Class Certification from March 22, 2021 to April 1, 2021* addressed to Judge Kimba M. Wood from Julie A. North dated March 12; 529 LETTER MOTION for Extension of Time *to file Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion for Class Certification from March 22, 2021 to April 1, 2021 and in RESPONSE to D.E. 527* addressed to Judge Kimba M. Wood from Ju ; granting 528 Letter Motion for Extension of Time; granting 529 Letter Motion for Extension of Time. It is hereby ORDERED that: 1. The Parent Advocates' request is GRANTED. The Parent Advocates shall submit the proposed amicus curiae brief by March 22, 2021. 2. Plaintiffs' request to modify the briefing schedule is GRANTED. On or before April 1, 2021, Plaintiffs shall submit the Reply in Support of Plaintiffs' Renewed Motion for Class Certification. Because Plaintiffs may wish to respond to the Parent Advocates' amicus curiae brief, Plaintiffs may submit up to five additional pages. 3. On or before April 8, 2021, the City and State Defendants may each file a five-page surreply to Plaintiffs' Reply in Support of Plaintiffs' Renewed Motion for Class Certification. 4. The Clerk of Court is respectfully directed to terminate the letter motions at ECF Nos. 527, 528, and 529. SO ORDERED. (Signed by Judge Kimba M. Wood on 3/21/2021) (va) (Entered: 03/22/2021) |
|---|---|---|
| 03/21/2021 | | Set/Reset Deadlines: Replies due by 4/1/2021. Surreplies due by 4/8/2021. (va) (Entered: 03/22/2021) |
| 03/22/2021 | 531 | BRIEF re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. . Document filed by Bronx Defenders, Brooklyn Defender Service, Center for Family Representation, Neighborhood Defender Service of Harlem..(Soloway, Audra) (Entered: 03/22/2021) |
| 04/01/2021 | 532 | LETTER MOTION to Seal *confidential information contained in Reply Ex. 9* addressed to Judge Kimba M. Wood from Julie A. North dated April 1, 2021. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 04/01/2021) |
| 04/01/2021 | 533 | REPLY MEMORANDUM OF LAW in Support re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*. . Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(North, Julie) (Entered: 04/01/2021) |
| 04/01/2021 | 534 | DECLARATION of Julie A. North in Support re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*., 532 LETTER MOTION to Seal *confidential information contained in Reply Ex. 9* addressed to Judge Kimba M. Wood from Julie A. North dated April 1, 2021.. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9 (Redacted), # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15).(North, Julie) (Entered: 04/02/2021) |
| 04/02/2021 | 535 | ***SELECTED PARTIES***REDACTION *Exhibit 9 - sealed version* by Olivia R., Myls J., Dameon C., Alexandria R., Emmanuel S., Elisa W., Valentina T.C., Matthew V., Lucas T., Malik M., Mikayla G., Xavion M., Thierry E., Brittney W., Tyrone M., Ayanna |

Case 22-7, Document 124, 08/09/2022, 3363349, Page97 of 294

| | | |
|---|---|---|
| | | J., Ximena T., Jose T.C., Ana-Maria R., Sheila J. Poole, The City of New York.Motion or Order to File Under Seal: 532 .(North, Julie) (Entered: 04/02/2021) |
| 04/03/2021 | 536 | ORDER granting 532 Letter Motion to Seal. SO ORDERED. (Signed by Judge Kimba M. Wood on 4/3/2021) (cf) (Entered: 04/05/2021) |
| 04/07/2021 | 537 | LETTER MOTION for Leave to File Excess Pages addressed to Judge Kimba M. Wood from Jonathan Pines dated April 7, 2021. Document filed by The City of New York.. (Pines, Jonathan) (Entered: 04/07/2021) |
| 04/07/2021 | 538 | ORDER: granting 537 Letter Motion for Leave to File Excess Pages. SO ORDERED. (Signed by Judge Kimba M. Wood on 4/07/2021) (ama) (Entered: 04/08/2021) |
| 04/08/2021 | 539 | REPLY MEMORANDUM OF LAW in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification"). State Defendant's Surreply Memorandum of Law in Further Opposition to Plaintiffs' Renewed Motion for Class Certification*. Document filed by Sheila J. Poole..(Buchalter, Samantha) (Entered: 04/08/2021) |
| 04/08/2021 | 540 | DECLARATION of Samantha L. Buchalter in Opposition re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification")*.. Document filed by Sheila J. Poole. (Attachments: # 1 Exhibit H).(Buchalter, Samantha) (Entered: 04/08/2021) |
| 04/08/2021 | 541 | RESPONSE in Opposition to Motion re: 439 MOTION to Certify Class *("Notice of Renewed Motion for Class Certification"). (City Def's Surreply Memorandum)*. Document filed by The City of New York..(Pines, Jonathan) (Entered: 04/08/2021) |
| 09/03/2021 | 542 | OPINION & ORDER: re: 511 MOTION to Disqualify pursuant to Fed. R. Evid. 702 filed by The City of New York, 504 LETTER MOTION for Extension of Time on consent to file the Daubert motion, and joint request to supplement DE 503 addressed to Judge Kimba M. Wood from Sharon Sprayregen dated December 29, 2020 filed by The City of New York, 515 MOTION to Amend/Correct 513 Declaration in Support of Motion, Amd. Ex. E Amd. Anastas Rept. (incl. CVfiled by The City of New York. It goes without saying that any allegations regarding potential harm to children in foster care are of grave concern. The question here, however, is whether the named Plaintiffs have met their burden to demonstrate (among other things) that there are questions of law or fact common to a class of all children who are or will be in the foster care system of New York City, and that the named Plaintiffs are typical representatives of such a broad class. Because the Court finds that Plaintiffs have not offered sufficient evidence to satisfy that burden, the motion for class certification is denied. By September 13, 2021, the parties must file a joint letter addressing the next steps in this litigation. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 504, 511, and 515. SO ORDERED. (Signed by Judge Kimba M. Wood on 9/03/2021) (ama) (Entered: 09/03/2021) |
| 09/13/2021 | 543 | JOINT LETTER addressed to Judge Kimba M. Wood from Julie A. North dated September 13, 2021 re: Next Steps in Litigation per the Courts September 3, 2021 Order [ECF No. 542]. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W... (North, Julie) (Entered: 09/13/2021) |
| 09/15/2021 | 544 | MEMO ENDORSEMENT on re: 543 Letter, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: Plaintiff's request is granted. Further proceedings are stayed until after the Second Circuit resolves Plaintiff's motion for leave |

| | | to appeal. The parties shall file a joint status update informing the Court of the Second Circuit's decision within three (3) days of such decision. Within seven (7) days of the decision, the parties shall file a joint letter proposing next steps in the case. SO ORDERED. (Signed by Judge Kimba M. Wood on 9/15/2021) (va) (Entered: 09/15/2021) |
|---|---|---|
| 09/15/2021 | | Case Stayed. (va) (Entered: 09/20/2021) |
| 01/04/2022 | 545 | ORDER of USCA (Certified Copy) USCA Case Number 21-2262. Petitioners request, pursuant to Federal Rule of Civil Procedure 23(f), leave to appeal the district courts order denying Petitioners motion for class certification. Upon due consideration, it is hereby ORDERED that the petition is GRANTED. See Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134 (2d Cir. 2001). Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Certified: 1/4/2022. (tp) (Entered: 01/04/2022) |
| 01/07/2022 | 546 | LETTER addressed to Judge Kimba M. Wood from Justin C. Clarke dated January 7, 2022 re: Second Circuit's Ruling on Named Plaintiff Children's Rule 23(f) Petition per the Court's September 15, 2021 Order. Document filed by Dameon C., Thierry E., Mikayla G., Ayanna J., Myls J., Malik M., Tyrone M., Xavion M., Alexandria R., Ana-Maria R., Olivia R., Emmanuel S., Lucas T., Ximena T., Jose T.C., Valentina T.C., Matthew V., Brittney W., Elisa W...(Clarke, Justin) (Entered: 01/07/2022) |
| 01/10/2022 | 547 | MEMO ENDORSEMENT: on re: 546 Letter, filed by Lucas T., Brittney W., Emmanuel S., Tyrone M., Thierry E., Ayanna J., Malik M., Alexandria R., Jose T.C., Olivia R., Mikayla G., Xavion M., Ana-Maria R., Myls J., Valentina T.C., Dameon C., Elisa W., Matthew V., Ximena T. ENDORSEMENT: Plaintiff request is Granted. Further proceedings are stayed until after the Second Circuit resolves Plaintiff's appeal. The parties shall file a joint status letter informing the Court of the Second Circuit decision within three (3) days of such decision. Within seven (7) days of the decision, the parties shall file a joint letter proposing next steps in the case. SO ORDERED. (Signed by Judge Kimba M. Wood on 1/10/2022) (ama) (Entered: 01/10/2022) |
| 01/18/2022 | 548 | MANDATE of USCA (Certified Copy) USCA Case Number 21-2262. Petitioners request, pursuant to Federal Rule of Civil Procedure 23(f), leave to appeal the district courts order denying Petitioners motion for class certification. Upon due consideration, it is hereby ORDERED that the petition is GRANTED. See Sumitomo Copper Litigation v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134 (2d Cir. 2001)... Catherine O'Hagan Wolfe, Clerk USCA for the Second Circuit. Issued As Mandate: 01/18/2022..(nd) (Entered: 01/18/2022) |
| 01/18/2022 | | Appeal Record Sent to USCA (Electronic File). USCA Case Number 22-007, Certified Indexed record on Appeal Electronic Files for 545 USCA Order granting 23 (f), were transmitted to the U.S. Court of Appeals..(nd) Modified on 1/18/2022 (nd). (Entered: 01/18/2022) |
| 01/18/2022 | | Appeal Fee Due re: 545 USCA Order. $505.00 Appeal fee due..(nd) (Entered: 01/18/2022) |
| 01/20/2022 | | USCA Appeal Fees received. $ 505.00 wire transfer receipt number 690008 on 1/19/2022 re: 545 USCA Order Rule 23f Appeal. (tp) (Entered: 01/20/2022) |
| 04/11/2022 | 549 | MOTION for Ian William Forster to Withdraw as Attorney . Document filed by The City of New York..(Forster, Ian) (Entered: 04/11/2022) |
| 04/12/2022 | 550 | ORDER granting 549 MOTION for Ian William Forster to Withdraw as Attorney. Attorney Ian William Forster's Motion to Withdraw as counsel for Defendant City of New York (ECF No. 549) is GRANTED. The Clerk of Court is respectfully directed to close ECF No. 549. SO ORDERED. Attorney Ian William Forster terminated. (Signed by Magistrate Judge Sarah L Cave on 4/12/2022) (jca) (Entered: 04/12/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 08/09/2022 10:35:54 | | | |
| **PACER Login:** | jclarkecsm | **Client Code:** | 60909-092-15821 |
| **Description:** | Docket Report | **Search Criteria:** | 1:15-cv-05273-KMW-SLC |
| **Billable Pages:** | 30 | **Cost:** | 3.00 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ELISA W., by her next friend, Elizabeth
Barricelli; ALEXANDRIA R., by her next
friend, Alison Max Rothschild; THIERRY E., by
his next friend, Amy Mulzer; AYANNA J., by her
next friend, Meyghan McCrea; OLIVIA and ANA-
MARIA R., by their next friend, Dawn Cardi;
XAVION M., by his next friend, Michael B.
Mushlin; DAMEON C., by his next friend,
Reverend Doctor Gwendolyn Hadley-Hall;
TYRONE M., by his next friend, Bishop Lillian
Robinson-Wiltshire; and BRITTNEY W., by her
next friend, Liza Camellerie, individually and on
behalf of a class of all others similarly situated,
and LETITIA JAMES, the Public Advocate for
the City of New York,

                                                    Plaintiffs,

                    -against-

THE CITY OF NEW YORK; the NEW YORK
CITY ADMINISTRATION FOR CHILDREN'S
SERVICES; GLADYS CARRIÓN, Commissioner
of the New York City Administration for
Children's Services, in her official capacity; the
STATE OF NEW YORK; the NEW YORK
STATE OFFICE OF CHILDREN AND FAMILY
SERVICES; and SHEILA J. POOLE, Acting
Commissioner of the New York State Office of
Children and Family Services, in her official
capacity,

                                                    Defendants.

15 Civ. _____

**CLASS ACTION COMPLAINT FOR
INJUNCTIVE AND
DECLARATORY RELIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

PARTIES .........................................................................................................................5

    I.    The Named Plaintiff Children.............................................................................5

    II.    The Public Advocate for the City of New York ...............................................36

    III.    Defendants ..........................................................................................................39

JURISDICTION AND VENUE .....................................................................................41

CLASS ACTION ALLEGATIONS ...............................................................................41

STRUCTURE OF THE NEW YORK CITY CHILD WELFARE SYSTEM...............45

FACTUAL ALLEGATIONS REGARDING SYSTEMIC DEFICIENCIES
PLAGUING NEW YORK CITY'S FOSTER CARE SYSTEM AND
RESULTING HARM TO PLAINTIFF CHILDREN .....................................................56

    I.    DEFENDANTS ARE CAUSING IRREPARABLE HARM TO
        CHILDREN IN ACS CUSTODY. ....................................................................59

        A.    Defendants Fail To Protect Children in ACS Custody from
            Maltreatment. .........................................................................................59

        B.    Defendants Fail To Provide Children in ACS Custody with
            Permanent Homes and Families Within a Reasonable Time...................60

        C.    Defendants Fail To Provide Foster Placements and Services
            that Ensure the Well-Being of Children in ACS Custody. ......................65

    II.    DEFENDANTS HAVE FAILED TO REMEDY THE SYSTEMIC
        DEFICIENCIES PLAGUING NEW YORK CITY'S CHILD
        WELFARE SYSTEM ........................................................................................70

        A.    City Defendants Fail To Exercise Adequate and
            Meaningful Oversight over Contract Agencies. .....................................71

        B.    Defendants Fail To Ensure an Adequately Staffed and
            Appropriately Trained Child Welfare Workforce....................................73

        C.    Defendants' Processes for Making Foster Placements in
            New York City Are Deficient. ................................................................77

        D.    ACS Fails To Ensure that Meaningful Case Plans and
            Service Plans for Foster Children Are Developed and
            Implemented. ..........................................................................................80

        E.    Defendants Fail To Ensure Timely Adjudication of Family
            Court Proceedings Involving Children in Foster Care.............................89

CAUSES OF ACTION ...................................................................................................93

FIRST CAUSE OF ACTION .........................................................................................93

SECOND CAUSE OF ACTION ....................................................................................94

THIRD CAUSE OF ACTION ...................................................................95

FOURTH CAUSE OF ACTION ..............................................................97

FIFTH CAUSE OF ACTION ...................................................................99

PRAYER FOR RELIEF ........................................................................101

ii

A0093

## PRELIMINARY STATEMENT

1.      Foster care is supposed to be safe and temporary.  For children in New York
City's foster care system, it is neither.  Children in New York City's foster care system are in one
of the most dangerous foster care systems in the country, and they spend longer in foster care
than do foster children almost anywhere else in the country.  The emotional damage—and, far
too often, abuse—suffered by these children at the hands of a system designed to keep them safe
is unacceptable.  That the responsible state and city officials have known about these problems
and done nothing to fix them is inexcusable.

2.      Ten named plaintiffs, all children in foster care in New York City, bring this
lawsuit as a civil rights action on behalf of all children who are now or will be in the foster care
custody of the Commissioner of New York City's Administration for Children's Services
("ACS") ("Plaintiff Children").  They seek both declaratory and injunctive relief against the city
and state agencies and officials responsible for violating their rights under the United States
Constitution, federal law, and New York state law and regulations.  Plaintiff Letitia James, as
Public Advocate for the City of New York, who has received myriad constituent complaints
concerning foster care, brings this lawsuit seeking injunctive and declaratory relief against the
City Defendants to ensure that ACS promptly remedies the systemic failures that have been
plaguing New York City's foster care system for too long.

3.      Defendants are the City of New York ("City"), ACS, Gladys Carrión,
Commissioner of ACS, in her official capacity (collectively, "City Defendants"); the State of
New York, the New York State Office of Children and Family Services ("OCFS"), and Sheila J.
Poole, Acting Commissioner of OCFS, in her official capacity (collectively, "State Defendants").

4.      Through a pattern and practice of long-standing and well-documented action and inaction, Defendants—who are responsible for protecting New York City's foster children—fail to keep these children safe.  And, instead of ensuring that New York City's foster children grow up in safe, permanent families, Defendants' policies and customs cause far too many children to grow up in the custody of the state, without a home or family to call their own:

a.      New York City children make up the majority of children in foster care in New York State, which has one of the worst rates of maltreatment in foster care of any jurisdiction in this country.

b.      Children in foster care in New York City spend two times as much time in state custody as children in the rest of New York State, and over double the amount of time in state custody as children in the rest of the nation.

c.      It takes longer to return New York City children in foster care to their parents than in the rest of New York State and the rest of the nation.  The most recent federal data available shows that New York City performs worse on this measure than all but five other states and territories.

d.      It takes longer for a foster child to be adopted in New York City than anywhere else in the country.  New York City has performed worse on this measure than every state since at least 2007.

e.      Many children who are without a permanent home never get adopted at all and leave the foster care system only when they get too old to stay in it any longer.  Approximately 1,000 children "age out" of the foster care system each year, often winding up homeless and without any adult with whom they have a permanent connection.

A0095

5.      New York City's child welfare system is causing devastating, ongoing and long-lasting harm to New York City children in its care:

     a.      Children who are separated from their parents to whom they could be returned weep at the end of visits with their parents but continue to live in foster care well beyond the time they could be returned home.

     b.      Parents whose children are removed because they need services are unable to gain access to the right services and thus are unable to regain custody of their children.

     c.      Children who cannot be safely returned to their parents languish in foster care, many moving from place to place, growing older and more damaged by their experiences, not knowing to which adults to form attachments, or trusting no adults at all.

     d.      Children traumatized by the disruptions in their young lives do not know where they will be living from one month to the next, or whether there are any adults on whom they can rely.  Often by the time a decision is made about what the plan should be for their future, they are irreparably damaged by their experiences in foster care.

6.      These consequences are the result of systemic deficiencies in which:

     a.      The state agency, OCFS, is responsible for foster care across New York State and for ensuring that federal foster care funds are spent as required by the governing federal statutes and state statutes and regulations

A0096

consistent with federal law, but neither monitors nor enforces those laws
and regulations.

b.      The city agency, ACS, in whose legal custody all foster children are
placed, delegates its responsibility for the day-to-day care of these
children by contract to 29 agencies (the "Contract Agencies"), paying
hundreds of millions of dollars to the Contract Agencies for foster care
services but failing to ensure they meet minimum professional standards
or provide adequate and meaningful oversight to ensure compliance with
federal and state law and the applicable contracts.

c.      The damage that is being done to children in foster care in New York City
as a direct result of these structural failures in the New York City child
welfare system is both avoidable and a violation of these children's
statutory and constitutional rights.

7.      The illegal conduct of which Plaintiffs complain has plagued New York City's
foster care system for far too long—a fact well known to Defendants, all of whom have been in a
position to change it.

8.      Plaintiffs seek a ruling from this Court that the structural deficiencies and long-
standing actions and inactions described in this complaint violate the statutory and constitutional
rights of all children dependent on the New York City foster care system for their safety, their
well-being and their futures.  They seek an equitable injunction against the responsible city and
state officials and agencies named as Defendants in this lawsuit, directing that appropriate relief
be granted so that New York City's foster children are no longer irreparably harmed by the

4

system that is supposed to protect them.  These children have a right to a safe and nurturing childhood.  Plaintiffs ask this Court to protect that right.

## PARTIES

**I.   The Named Plaintiff Children**

**Elisa W.**

9.      Plaintiff Elisa W. is a 16 year old girl in the twelfth grade.  ACS removed her from her biological mother when she was approximately four years old.  She has been in ACS custody for the past 12 years—over two thirds of her life.

10.      Plaintiff Elisa W. appears through her next friend, Elizabeth Barricelli.  Ms. Barricelli has been an elementary school teacher for over 30 years and currently teaches elementary school science at a public school in Brooklyn.  Ms. Barricelli taught Elisa W. from 2006 to 2010 when Elisa W. was in elementary school and they recently reconnected.  Ms. Barricelli is familiar with Elisa W.'s background and education.  Ms. Barricelli is truly dedicated to Elisa W.'s best interests.

11.      ACS removed Plaintiff Elisa W. from her biological mother when she was four years old because of allegations of physical abuse.  At the time, Elisa W.'s biological mother was approximately 19 years old and living in a mother-child foster placement in New York City.

12.      Over the past 12 years, ACS has shuffled Plaintiff Elisa W. through so many foster placements that she is unable to account for all of them—a direct result of ACS's failure to ensure an appropriate foster placement that could meet her needs.  In the last two years alone, Elisa W. has been in four foster placements.  Elisa W. has attended at least seven schools over the course of her young life.

5

13.    Plaintiff Elisa W. has a reported history of physical and suspected sexual abuse while in ACS custody.

14.    In the first foster placement Plaintiff Elisa W. can remember, she was sexually abused by the nephew of her then-foster mother.  She was just six years old at the time.  She did not report the incident to anyone because she did not want to get in trouble.  At this same placement, Elisa W. was subjected to other physical, psychological and emotional abuse, including being forced by her then-foster mother to sleep in a bug-infested bedroom and being forced to walk around the foster home naked after bathing.  Once, Plaintiff Elisa W.'s then-foster mother beat her and denied her food as punishment for purportedly telling her biological mother that she was being beaten by her foster mother; however, the allegation had been made by the foster mother's own daughter pretending to be Elisa W.  Upon information and belief, Elisa W.'s then-foster mother would allow family members with violent criminal records in the home.  Elisa W. reports feeling like "just a total stranger" in this foster placement.

15.    In approximately 2006, Elisa W. was placed in another foster placement, and again suffered severe physical, psychological and emotional abuse, including sexual abuse by multiple relatives of her then-foster mother.  Elisa W.'s teachers made multiple reports of physical abuse to her caseworker, including when Elisa W.'s then-foster mother punched her in the face.  Upon information and belief, neither the Contract Agency nor ACS took any action in response to these reports.  Her then-foster mother neglected Elisa W., who often went to school unkempt and underfed; her teacher at the time, her next friend Ms. Barricelli, often had to buy Elisa W. snacks during the school day and maintained a clean uniform at school for her.  Plaintiff Elisa W. remained in this abusive foster placement for five years—a direct result of ACS's failure to ensure that the Contract Agency to which ACS had delegated day-to-day care of this

6

young girl was keeping her safe.  On April 28, 2014, Plaintiff Elisa W. was assigned to a

different Contract Agency when it was determined she needed "therapeutic foster placements".

Although Plaintiff Elisa W. is from New York City, the Contract Agency first placed her in a

home in Suffolk County and then in a home in Nassau County.  However, at the time—and to

this day—the only person Elisa W. considers a friend lives in New York City.

16.     As a result of the great emotional damage Elisa W. has suffered while in ACS

custody for the past 12 years, this young girl has suffered and continues to suffer from a variety

of mental health problems.  Her diagnoses include depression, bipolar disorder and post-

traumatic stress disorder.  She has been on anti-depressants and mood stabilizers since she was

11 years old.  In July 2014, Elisa W. requested she be placed in a mental health facility because

of her mental health concerns.  Elisa W. remained there for two months.  Since her

hospitalization, she has been placed on heavy doses of psychotropic medication; she reports that,

as a result, she can barely string a sentence together and no longer looks people in the eye

because she gets nervous.

17.     In addition to failing to keep Plaintiff Elisa W. free from physical, psychological

and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate

steps consistent with professional standards to place Elisa W. in a permanent home.  Twice,

Plaintiff Elisa W.'s biological mother conditionally surrendered her parental rights so Elisa W.

could be adopted.  Neither adoption was ever finalized.  In approximately 2010, Plaintiff Elisa

W.'s aunt expressed interest in adopting Elisa W.  This adoption was not finalized.  In 2012,

after Plaintiff Elisa W. already had been in foster care for approximately eight years, her

biological mother's parental rights were terminated.  Although her aunt has been considered as

an adoptive resource since then, the Contract Agency, ACS and Plaintiff Elisa W.'s law guardian

A0100

have not taken steps to pursue this possibility or sought out other non-relative adoption possibilities for Plaintiff Elisa W. to finally have a permanent home and family to call her own. Indeed, Elisa W. fears that she will "age out" of foster care—where she has spent the last 12 years being abused, neglected and shuffled from place to place—and return to living with her biological mother.  Elisa W. fears that if this happens she will be unable to attend college.

18.     Plaintiff Elisa W. describes her stay in foster care by noting that when she was younger she did well in school and had an extensive vocabulary, but now, as a result of her experiences in foster care and medication regimen, she has difficulty concentrating.  She expresses great frustration that the Contract Agency and ACS are unresponsive to her requests for driving lessons and a state identification card—normal requests for a 16 year old girl.  For the 12 years Elisa W. has been in foster care, the Contract Agency, ACS and Plaintiff Elisa W.'s law guardian have been making decisions about her life but, as she puts it—"no one ever asks me what I want".

19.     During the 12 years that Plaintiff Elisa W. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home.  ACS has further failed to exercise meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Elisa W. has suffered and continues to suffer

8

irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own.  Because of Defendants' actions and inactions, Plaintiff Elisa W. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Alexandria R.**

20.     Plaintiff Alexandria R. is a 12 year old girl in the fifth grade.  ACS removed her from her biological mother's home on August 9, 2007.  Plaintiff Alexandria R.'s permanency goal currently is to be returned to her parent.  She has been in the custody of ACS for the past eight years—over two thirds of her life.

21.     Plaintiff Alexandria R. appears through her next friend, Alison Max Rothschild.  Ms. Rothschild is the director of a private school in New York City.  Ms. Rothschild knows Alexandria R. and her current foster parents, and is familiar with her background including her education.  Ms. Rothschild is truly dedicated to Alexandria R.'s best interests.

22.     Upon information and belief, this is Plaintiff Alexandria R.'s second time in foster care.  Upon information and belief, ACS removed her from her biological mother a few months after she was born, placed her in a kinship foster placement with her maternal great-grandmother for three and a half years and returned her to her biological mother for a few months—only to remove her and again place her in foster care in 2007.

23.     Plaintiff Alexandria R. is not the only child that ACS has removed from her biological mother and placed into foster care.  Plaintiff Alexandria R. has six siblings:  (1) a 15 year old sister, Andrea R.; (2) a 13 year old brother, Kavon L.; (3) an 11 year old brother, Russell

9

W.; (4) a nine year old brother, Anton W.; (5) a seven year old sister, Naomi M.W.; and (6) a 20 month old sister, Raquel W. All of her siblings are currently in foster care.

24.     In 2006, ACS opened a preventive services case involving Plaintiff Alexandria R.'s biological mother because then six year old Andrea R. had jumped out of a second floor window after being locked in her bedroom. In August 2007, ACS removed Plaintiff Alexandria R. and her then-living siblings from their home and placed them in ACS custody because their biological mother's boyfriend was physically abusing Alexandria R.'s brother, Kavon L. Now seven year old Naomi M.W. was born five months later and ACS took custody of her at birth. On or about May 13, 2015, ACS removed Plaintiff Alexandria R.'s youngest sister, 22 month old Raquel W., from their biological mother due to allegations of neglect.

25.     From 2007 to 2011, between the time she was four and eight years old, ACS bounced Plaintiff Alexandria R. from placement to placement due to its failure to ensure an appropriate foster placement that could meet her needs. During her first four years in ACS custody, ACS placed Plaintiff Alexandria R. in approximately eight different foster homes and with two different Contract Agencies. When she was approximately eight years old, Plaintiff Alexandria R. spent approximately six months in the mental health unit of a residential treatment facility. Her then-foster parents dropped her off, telling her they would return the next morning to pick her up, and never returned. As a result, Plaintiff Alexandria R. suffered severe emotional trauma, compounding the emotional harm she was already experiencing from being moved from place to place.

26.     ACS moved Plaintiff Alexandria R. to her current foster placement on November 11, 2011, when she was eight years old. She has now lived there for over three and a half years. At 12 years old, this is the longest she has ever lived in one place—a direct result of ACS's

A0103

failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

27. Plaintiff Alexandria R. has a reported history of physical and suspected sexual abuse.  Upon information and belief, the physical and suspected sexual abuse has taken place while Plaintiff Alexandria R. has been in ACS custody, and includes  physical abuse by her biological mother during an unsupervised visit at her then-foster home.

28. As a result of the great emotional damage Alexandria R. has suffered while in ACS custody for the past eight years, this young girl has suffered and continues to suffer from a variety of mental health problems.  Her diagnoses over the past eight years have only grown more serious during her time in foster care and have included adjustment disorder (2007), adjustment disorder with mixed disturbance emotions and conduct (*i.e.*, mood and behavioral problems) (2009), disorder of childhood (2009) and post-traumatic stress disorder (2014 to present).  She also suffers from learning disabilities and is behind her peers in school.

29. Since being placed in ACS custody, Plaintiff Alexandria R. has suffered severe emotional and behavioral problems, including physical aggression toward herself and others. She has an extreme distrust of people she views as "in the system", including her doctors and therapists.  She also has difficulty controlling her emotions.  As recently as late 2014, Plaintiff Alexandria R. became highly emotional and distraught, including hysterically crying and becoming physically aggressive, when her biological mother missed a family therapy appointment.

A0104

30.     In addition to failing to keep Plaintiff Alexandria R. free from physical, psychological and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Alexandria R. in a permanent home.  In approximately 2012, after she already had been in foster care for over four years, Plaintiff Alexandria R.'s permanency goal was changed to adoption and the Contract Agency to which ACS has delegated day-to-day responsibility for this child told this nine year old girl that she would be adopted by her foster parents.  However, the adoption did not take place, even though her foster parents remain interested in adopting her, and this has created serious additional damage to Alexandria R.'s emotional state.  She is now angry and does not understand why her foster parents have not been able to adopt her yet.

31.     In July 2013, Plaintiff Alexandria R.'s permanency goal was changed from adoption to return to parent.  Upon information and belief, this is because ACS attorneys failed to take necessary steps to obtain the termination of her biological mother's parental rights.

32.     After already languishing in foster care for almost eight years, and with none of her siblings currently living with her or her biological mother, Plaintiff Alexandria R.'s permanency goal currently is to be returned to her parent.  Plaintiff Alexandria R. reportedly lives in fear that she will be moved yet again by ACS and has been deeply harmed by the continuing uncertainty about where and how she will grow up.

33.     During the almost eight years that Plaintiff Alexandria R. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a

12

meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Alexandria R. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own.  Because of Defendants' actions and inactions, Plaintiff Alexandria R. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Thierry E.

34.     Plaintiff Thierry E. is a three year old boy.  ACS removed him from his biological mother on September 27, 2013.  His permanency goal currently is to be returned to his parent. He has been in ACS custody for the past 21 months—nearly half his life.

35.     Plaintiff Thierry E. appears through his next friend, Amy Mulzer.  Ms. Mulzer is an Acting Assistant Professor of Lawyering at New York University School of Law.  The primary focus of her research includes:  Adoption, Child Welfare, Family Law, Parental Rights and Poverty Law.  Prior to joining the lawyering faculty at NYU, Ms. Mulzer spent five years representing low-income parents whose children were in foster care or at risk of being placed in foster care, first as a staff attorney at Brooklyn Defender Services and then as an appellate attorney on the assigned counsel panel for the Appellate Division, Second Department.  Ms. Mulzer is truly dedicated to Thierry E.'s best interests.

13

Case 52-7 Document 121-08/10/2022  2262208  Page 116 of 294

36.     On or about August 15, 2013, Thierry E.'s mother, who has been a public school teacher for the past 11 years, called Safe Horizon, a domestic violence hotline, to request information about how she could remove Thierry E.'s biological father from her home.  Safe Horizon reported the call to the Statewide Central Register of Child Abuse and Maltreatment and ACS opened an investigation.  There was not and never has been any allegation that anyone abused Thierry E. or that his mother failed to provide him with appropriate, loving care.  On September 23, 2013, Thierry E.'s mother obtained an order of protection from the Family Court against Thierry E.'s father.  In her petition, she alleged that Thierry E.'s father had held a knife to her throat threatening to kill her, strangled her at least three times, punched her in the face and threw household furniture at her.  Thierry E.'s mother has not been in a relationship with Thierry E.'s father since September 2013 and does not intend to re-enter a relationship with him.

37.     ACS removed Plaintiff Thierry E. from his home on September 27, 2013, while his mother was at work, without taking necessary steps or making reasonable efforts to determine whether Thierry E. could remain safely at home with his mother.  His father was no longer living in the house.

38.     The Contract Agency to which ACS had delegated the day-to-day care of, and case planning responsibility for, Plaintiff Thierry E. first moved him to a foster placement far away from his mother's home and required visits to take place at the Contract Agency's office in the Bronx, even though he and his mother had lived in Manhattan.  Moreover, the foster mother spoke only Spanish and Thierry E., then two years old, did not speak any Spanish.  As a result, Thierry E.'s language and speech development was severely stunted.  Thierry E.'s mother had him evaluated in March 2014 and the speech therapist recommended speech therapy twice a week, but the Contract Agency refused to provide this service.

A0107

Case 22-7 Document 124 08/10/2022 3363208 Page 117 of 294

39.     On May 13, 2014, during a visit at the Contract Agency, Plaintiff Thierry E.'s mother noticed a severe rash while changing his diaper and reported this and other concerns to the Family Court.  On June 21, 2014, the Family Court ordered that Thierry E. be transferred to a new Contract Agency.  Thierry E. was moved to a second foster placement two days later.

40.     Plaintiff Thierry E. has now been in foster care for 21 months—nearly half his life.  This is a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be returned to his mother or, if that were not possible within a reasonable period of time, to ensure that he would grow up in a permanent family.

41.     Plaintiff Thierry E. has suffered emotional harm as a result of spending nearly half his life in ACS custody without a permanent family.  All indications are that he misses his mother very much.  At the end of his twice weekly visits with his mother, he cries uncontrollably.  When his mother expressed concern at this behavior, Thierry E.'s therapist told her that he had to "get used to it" because this was "his life now".

42.     ACS continues to fail to ensure that Plaintiff Thierry E. is receiving appropriate services.  Although Thierry E. currently receives therapy, Thierry E.'s mother has expressed concerns that the therapy being provided by the Contract Agency is focused on normalizing Thierry E.'s separation from his mother rather than trying to help him prepare to be returned to her care—even though his permanency goal remains to be returned to his parent.

43.     In addition to failing to keep Plaintiff Thierry E. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Thierry E. in a permanent home.

15

44.     Although ACS removed Plaintiff Thierry E. from his home over 20 months ago, there has been no fact-finding hearing or disposition of ACS's neglect petition against Thierry E.'s biological mother.  The fact-finding hearing has been postponed several times.

45.     Plaintiff Thierry E. had his first permanency hearing in December 2014—after he had already been in ACS custody for over a year.

46.     Plaintiff Thierry E.'s permanency goal remains to be returned to his parent.  His biological mother wants nothing more than to finally bring her son home.  She has completed parenting classes, domestic violence counseling and mental health evaluations in accordance with the two different Contract Agencies' instructions.  In documents filed with the Family Court, the Contract Agency has stated that Thierry E.'s mother "comes prepared to her visits with activities to do with her son and also tries to reinforce parenting skills that will help her son's vocabulary and pronunciation."

47.     Since his removal over 21 months ago, ACS has made no effort to ensure that this little boy is returned to the mother he misses, and that his permanency goal—reunification with his biological mother—is implemented as soon as possible.

48.     During the nearly two years that Plaintiff Thierry E. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS

16

has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Thierry E. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own.  Because of Defendants' actions and inactions, Plaintiff Thierry E. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Ayanna J.

49.     Plaintiff Ayanna J. is a two and a half year old girl.  ACS removed her from her biological mother on November 2, 2012—three days after she was born.  Her permanency goal currently is adoption.  She has been in ACS custody for the past two and a half years—virtually her entire life.

50.     Plaintiff Ayanna J. appears through her next friend, Meyghan McCrea.  Meyghan McCrea is an attorney in private practice in New York City.  She was previously employed as a Family Court Legal Services Attorney for ACS.  Ms. McCrea has known Ayanna J. since March 2013 and has had regular contact with her since that time.  Ms. McCrea has met Ayanna J.'s current foster parent and babysitter.  Ms. McCrea is truly dedicated to Ayanna J.'s best interests.

51.     Plaintiff Ayanna J. has two siblings:  (1) a nine year old sister, Alyssa L., and (2) a sister, Angela L., who was beaten to death by her biological mother's boyfriend in March 2010, when she was 19 months old.  Documents filed with the Family Court allege that, given Angela L.'s extensive injuries, Plaintiff's biological mother knew or should have known about the ongoing abuse that her daughter suffered.  These documents also allege that Plaintiff Ayanna J.'s

A0110

biological mother delayed seeking medical care for Angela L., lied to hospital staff about the source of the child's injuries and instructed her other daughter, Alyssa L., who was then three and a half years old, to lie about what had occurred.

52.     The day after Angela L. died, ACS filed a petition against Ayanna J.'s biological mother alleging severe and repeated abuse.  In October 2012, the Family Court made a finding of abuse against Ayanna J.'s biological mother.  On appeal in June 2014, the New York State Appellate Division found that Ayanna J.'s biological mother "severely abused [Angela L.] and derivatively severely abused the subject child [Alyssa L.]".

53.     Plaintiff Ayanna J. was born after her sister Angela L. died.  Due to the prior finding of abuse against her biological mother, ACS placed Plaintiff Ayanna J. in custody and in her current foster placement on November 2, 2012—three days after she was born.  In March 2013, the Family Court made a finding of derivative abuse as to Ayanna J. and on September 30, 2014, the Family Court amended its finding to severe abuse as to Ayanna J. based on the Appellate Division's June 2014 finding.

54.     Since being placed in foster care two and a half years ago, Plaintiff Ayanna J. has had approximately eight caseworkers at the Contract Agency to which ACS has delegated her day-to-day care.

55.     While in the custody of ACS, Plaintiff Ayanna J. has had supervised visits with her biological mother and father at the Contract Agency.  During one such visit in September 2013, Plaintiff Ayanna J.'s biological father became angry and began screaming at Ayanna J.'s biological mother in front of Ayanna J., who was not even two years old at the time.  Upon information and belief, at least one Contract Agency visit was discontinued because Ayanna J.'s biological parents were fighting.  Ayanna J.'s biological father has not visited Plaintiff Ayanna J.

18

since April 2014.  Upon information and belief, visits at Ayanna J.'s biological mother's home were suspended after she threatened to physically assault a caseworker.  Ayanna J. continues to have supervised visits with her biological mother twice per week at the Contract Agency. During one such visit in July 2014, Ayanna J.'s biological mother allowed her biological father to speak with Plaintiff Ayanna J. over the phone despite such contact being prohibited.

56.    Plaintiff Ayanna J. has languished in the custody of ACS for the past two and a half years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

57.    As a result of her continued placement in ACS custody, Plaintiff Ayanna J. has suffered great emotional harm.  In 2013, Ayanna J. cried hysterically during supervised visits with her biological mother at the Contract Agency.  Now that she is older, Ayanna J. expresses the desire to not attend visits with her biological mother, will not leave her babysitter to visit with her biological mother, or will ask for her babysitter in the middle of a visit with her biological mother.  These visits have caused and continue to cause great stress, confusion and psychological harm to this young child.

58.    In addition to failing to keep Plaintiff Ayanna J. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Ayanna J. in a permanent home.

59.    On April 9, 2014, Plaintiff Ayanna J.'s permanency goal was changed from return to parent to adoption.  Her current foster parent has indicated a willingness to adopt her.

A0112

60.     A petition for termination of parental rights ("TPR") was filed on April 28, 2014, after Plaintiff Ayanna J. already had been in foster care for almost one and a half years.  The TPR proceedings were adjourned repeatedly due to ACS's failure to ensure that all parties were prepared for court on scheduled hearing dates to resolve the permanency issues in this case.  On April 27, 2015, almost a year after the TPR petition was filed, the assigned New York Family Court judge heard one day of testimony related to the TPR proceeding and continued the case until mid-June 2015.  The next day, that Family Court judge was reassigned to another court.  On June 22, 2015, Plaintiff Ayanna J.'s TPR proceeding was re-assigned to a new New York Family Court judge, who declared a mistrial and postponed a new trial until October 2015.

61.     After languishing in foster care for two and a half years, Plaintiff Ayanna J.'s permanency goal remains to be adopted.

62.     During the two and a half years that Plaintiff Ayanna J.  has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Ayanna J. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow

up and of believing that there is no family she can call her own.  Because of Defendants' actions and inactions, Plaintiff Ayanna J. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Olivia R. and Ana-Maria R.

63.     Plaintiff Olivia R. is a five year old girl in the first grade, and Plaintiff Ana-Maria R. is a four year old girl in pre-kindergarten.  ACS removed them from their biological mother's home on June 8, 2011.  The permanency goal for both children currently is adoption.  They have been in ACS custody for more than four years.

64.     Plaintiffs Olivia and Ana-Maria R. appear through their next friend, Dawn Cardi. Ms. Cardi is an attorney in private practice in New York City, specializing in criminal and family law.  She is appointed and has served as a certified Law Guardian in the First Department of the Appellate Division, representing children in complex family law proceedings.  She is truly dedicated to Olivia and Ana-Maria R.'s best interests.

65.     Upon information and belief, this is Plaintiffs Olivia and Ana-Maria R.'s second time in ACS custody.  Upon information and belief, ACS removed Plaintiffs Olivia and Ana-Maria R. from their biological parents in January 2011, they spent a few months in a foster placement and then ACS returned them home.  On June 8, 2011, when Olivia R. was two years old and Ana-Maria R. was eight months old, ACS again removed the girls from their home and placed them into ACS custody, reportedly due to domestic violence between their biological parents and their biological mother's alcohol and drug use.

A0114

66.     The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, Plaintiffs Olivia and Ana-Maria R. initially placed them in a non-kinship foster placement—the third place they had been moved to in six months.

67.     In March 2012, the Contract Agency returned Olivia and Ana-Maria R. to their biological mother on a trial discharge.  In June 2012, their biological mother dropped them off at the foster home where they had been living and did not return to pick them up.  She did not visit the children again until July 24, 2012.

68.     ACS has allowed Plaintiffs Olivia and Ana-Maria R. to be bounced in and out of foster care for almost the entirety of their young lives, and they now have been in ACS custody for the past four years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable these young girls to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to ensure that they can grow up in a permanent family.

69.     Plaintiffs Olivia and Ana-Maria R. have suffered physical and emotional abuse while in ACS custody.  In October 2013, Plaintiff Olivia R., who was four years old at the time, was sexually abused by her biological mother's friend during an unsupervised visit.  Plaintiff Ana-Maria R. was present during that abuse.  Although the Contract Agency was made aware of this abuse at that time, upon information and belief, neither the Contract Agency nor ACS took any action in response to the report.  More recently, Plaintiff Olivia R. reported the incident to her therapist, who (as a mandated reporter) informed the Statewide Central Register of Child Abuse and Maltreatment and the police, and an investigation is underway.  Plaintiffs Olivia and Ana-Maria R.'s biological mother has not visited with the children since November 26, 2014.

22

70.     As a result of the emotional harm they have suffered while in ACS custody for the past four years, Plaintiffs Olivia and Ana-Maria R. have suffered and continue to suffer from a variety of mental health problems.  Olivia R.'s diagnoses include Attention Deficit Hyperactivity Disorder, Developmental Coordination Disorder and Disruptive Behavior Disorder.  She is in a special education setting at school.  Ana-Maria R.'s diagnoses include Attention Deficit Hyperactivity Disorder, Anger Management, and Conduct Disorder.  She is being evaluated for placement in a special education setting at school.

71.     Since being placed in ACS custody, Plaintiffs Olivia and Ana-Maria R. have suffered severe emotional and behavioral problems.  Olivia R. has developed serious trust issues and she wets the bed before any visit with her biological mother.  Ana-Maria R. demonstrates severe hyperactivity and aggression.  At school, she often would hit her teacher, tear things off the wall or break other items.  In January 2015, her pre-kindergarten program would not allow her to attend classes until she was medicated for these behavioral problems.  She did not start receiving medication until June 2015.

72.     ACS has failed to ensure that Plaintiffs Olivia and Ana-Maria R. are provided with the necessary and appropriate services to ensure their physical, psychological and emotional well-being.  One of their caseworkers recommended that the girls enroll in Bridges to Health Program ("B2H")—a Medicaid waiver program that provides support for children in foster care who are medically fragile, have a developmental disability or are severely emotionally disturbed. Upon information and belief, when their foster mother initially requested these services, the Contract Agency declined to submit the request because an agency caseworker said "that's a lot of paperwork".  Upon information and belief, Plaintiffs Olivia and Ana-Maria R. still do not have B2H services.

23

73.     In addition to failing to keep Plaintiffs Olivia and Ana-Maria R. free from physical, psychological and emotional harm while in its custody, ACS also has failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Plaintiffs Olivia and Ana-Maria R. in a permanent home.

74.     Plaintiffs Olivia and Ana-Maria R.'s permanency goal was not changed from return to parent to adoption until March 1, 2014—after they had been in ACS custody for almost three years.  Olivia and Ana-Maria R.'s current foster mother has indicated a willingness to adopt them.  TPR petitions were filed approximately eight months later in November 2014. Upon information and belief, on May 28, 2015, the judge made an oral statement that parental rights would be terminated; however, because none of the attorneys present had drafted a proposed order, that ruling has not been finalized and Olivia and Ana-Maria R. are not yet freed for adoption.

75.     During the four years that Plaintiffs Olivia and Ana-Maria R. have been in the custody of ACS, Defendants repeatedly have violated their constitutional, statutory and contractual rights by failing to protect them from physical, psychological and emotional harm; by failing to provide services to ensure their physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable them to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to place them in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, these children.  As a direct result of Defendants' actions and inactions, Plaintiffs Olivia and Ana-Maria R. have suffered and continue to suffer irreparable

24

harm and continue to be subjected to the lasting emotional damage that is a consequence of children being harmed while in foster care, of not knowing where they will grow up and of believing that there is no family they can call their own.  Because of Defendants' actions and inactions, Plaintiffs Olivia and Ana-Maria R. are being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Xavion M.

76.     Plaintiff Xavion M. is a five year old boy in the first grade.  ACS removed him from his biological mother due to an allegation of neglect 15 days after he was born.  Plaintiff Xavion M.'s permanency goal currently is adoption.  He has been in ACS custody for over five years—nearly his entire life.

77.     Plaintiff Xavion M. appears through his next friend, Michael B. Mushlin.  Mr. Mushlin is a Law Professor at Pace University School of Law in New York City, where he has taught for the last 30 years.  His scholarship has included maltreatment of children in foster care. Previously, he worked as a public interest and civil rights lawyer for 15 years as a staff attorney with Harlem Assertion of Rights, Inc., as a staff attorney and Project Director of the Prisoners Rights Project of the Legal Aid Society, and as Associate Director of the Children's Rights Project of the American Civil Liberties Union.  He is truly dedicated to Xavion M.'s best interests.

78.     Plaintiff Xavion M. is not the only child that ACS has removed from his biological mother and placed into foster care.   Plaintiff Xavion M. has two siblings:  (1) a 12 year old brother, Vincent D., and (2) an 11 year old sister, Zahara D.  Plaintiff Xavion M.'s siblings have been in ACS custody for the past six years.  Upon information and belief, at least

25

one Family Court judge has referred to these two children as "unadoptable" and their permanency goals remain that they be returned to their parent.

79.     The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young boy first placed Plaintiff Xavion M. with a fictive kin foster parent, who was a friend of his biological mother.  On December 21, 2011, when Xavion M. was just two years old, he was moved to a second, non-kinship, foster placement.  When he arrived, he was anemic and malnourished.  He has resided in this foster placement for well over three years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

80.     Since being placed in foster care over five years ago, Plaintiff Xavion M. has had approximately four caseworkers at the Contract Agency to which ACS has delegated his care and case planning.

81.     Plaintiff Xavion M., who has been in ACS custody for over five years, has weekly supervised visits with his biological mother and older siblings.  Upon information and belief, Plaintiff Xavion M.'s brother hit and kicked him during a recent visit.

82.     The Contract Agency to which ACS has delegated the day-to-day care of, and case planning responsibility for, this boy has not provided Plaintiff Xavion M. with necessary services for his physical and emotional well-being.  Although his teacher recommended that an Individualized Education Program be written for him, Xavion M. has not received the evaluation necessary because his biological mother refuses to give consent.

A0119

83. As a result of the over five years that Plaintiff Xavion M. has spent in ACS custody, Xavion M. has suffered severe emotional damage. He has started to exhibit increased behavioral problems, including becoming aggressive and violent at home and at school; he also is having difficulty concentrating at school. At five years old, he will only sleep in the same bed as his foster mother and will not sleep through the night.

84. In addition to failing to keep Plaintiff Xavion M. free from physical, psychological and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Xavion M. in a permanent home.

85. On July 21, 2014—after Plaintiff Xavion M. had been in foster care for almost five years—Xavion's permanency goal was changed from return to parent to adoption. This goal change occurred only after the Family Court judge handling Xavion M. and his siblings' case instructed Xavion M.'s caseworkers at the Contract Agency to file a petition to terminate the parental rights of Xavion M.'s biological mother and begin adoption proceedings. Xavion M.'s current foster mother has indicated a willingness to adopt. Almost a year later, no TPR petition has been filed.

86. Despite the court's instruction, the Contract Agency plans to return Xavion M. to his biological mother after first returning Xavion M.'s older siblings to his mother on a trial basis. Indeed, papers filed in Family Court in March 2015 state that the "Agency is working with [biological mother] for reunification". At a family team conference on June 24, 2015, the Contract Agency said it will pursue granting Xavion M.'s biological mother unsupervised visits despite the fact that Xavion M.'s therapist has stated that Xavion M. is not ready for this and that Xavion M.'s permanency goal is adoption. The long-standing inconsistency in planning for this

child's future is increasing the insecurity and emotional damage this child is experiencing in foster care.

87.     During the over five years that Plaintiff Xavion M. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from physical, psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Xavion M. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Xavion M. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Dameon C.**

88.     Plaintiff Dameon C. is a four year old boy with special needs.  ACS removed him from his biological mother, who was then incarcerated, nine days after he was born.  His permanency goal currently is adoption.  He has been in ACS custody for over four years—nearly his entire life.

89.     Plaintiff Dameon C. appears through his next friend, Reverend Doctor Gwendolyn Hadley-Hall.  Reverend Doctor Hadley-Hall is an associate pastor at Christ Temple United Baptist Church in Brooklyn.  Prior to entering the ministry, Reverend Doctor Hadley-Hall was a teacher at public elementary schools in New York City for 30 years.  She is truly dedicated to Dameon C.'s best interests.

90.     The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this boy first placed Plaintiff Dameon C. in a foster placement.

91.     On Christmas Eve 2011, when Plaintiff Dameon C. was nine months old, he was returned to his mother on a trial basis when she was released from jail.  They were placed in a mother-child drug and alcohol rehabilitation center.  His former foster parent would often take Dameon C. for two to three weeks at a time with his biological mother's consent because Dameon C.'s behavior deteriorated drastically when he was moved to his mother's care.  He began banging his head, which he continues to do now at age four.  In July 2012, his biological mother was expelled from the rehabilitation center and Dameon C. was returned to his former foster placement, where he remains to this day.  He has been in foster care virtually his entire life—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

92.     While in ACS custody, Plaintiff Dameon C. has had regular visits with his biological mother.  In February 2014, when Dameon was almost three years old, his mother kicked him during the first unsupervised overnight visit at her drug treatment facility.  Although she is still permitted to have supervised visits with him, she did not have contact with Dameon C.

29

between December 2014 and April 23, 2015, at which time she began attending supervised visits

with Dameon C. again.  However, in recent weeks, Dameon C.'s biological mother has

disappeared from her drug treatment program and has not attended visits with him or contacted

him since.

93.    In addition to failing to keep Plaintiff Dameon C. safe from physical abuse and

emotional damage, ACS has also failed to ensure that he is provided with necessary services to

ensure his physical, psychological and emotional well-being.  Although he has been diagnosed

with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder, he was placed

on the waiting list for B2H.

94.    ACS also has failed to take reasonable and appropriate steps to place Plaintiff

Dameon C. in a permanent home.  Dameon C.'s permanency goal was not changed to adoption

until November 3, 2014—after he had already been in ACS custody for over three and a half

years.  A TPR petition was filed thereafter.  Plaintiff Dameon C.'s next court date had been

scheduled for June 2, 2015, but has been postponed until November 2015.

95.    During the over four years that Plaintiff Dameon C. has been in the custody of

ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by

failing to protect him from physical, psychological and emotional harm; by failing to provide

services to ensure his physical, psychological and emotional well-being; by failing to ensure the

provision of appropriate foster care placements consistent with professional standards or of a

meaningful, timely and appropriate plan to enable him to be safely returned to his biological

mother or, if that were not possible within a reasonable period of time, to place him in a

permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the

Contract Agencies to which ACS has delegated the day-to-day care of, and case planning

A0123

responsibility for, this child.  As a direct result of Defendants' actions and inactions, Dameon C. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Dameon C. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Tyrone M.

96.     Plaintiff Tyrone M. is a seven year old boy with special needs.  ACS removed him from his biological mother 12 days after he was born.  His permanency goal currently is adoption.  He has been in ACS custody for over seven years—nearly his entire life.

97.     Plaintiff Tyrone M. appears through his next friend, Bishop Lillian Robinson-Wiltshire.  Bishop Robinson-Wiltshire is the Senior Pastor and Overseer of Cathedral of Christ Community Ministries in Brooklyn.  Prior to entering the ministry 30 years ago, Bishop Robinson-Wiltshire was a family counselor and worked with families dealing with abuse and neglect.  Bishop Robinson-Wiltshire has also served as a foster parent to older children.  She is truly dedicated to Tyrone M.'s best interests.

98.     Twelve days after he was born, ACS removed Plaintiff Tyrone M. from his biological mother when she tested positive for cocaine after giving birth to him.

99.     The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young boy first placed Plaintiff Tyrone M. in a kinship foster placement with his aunt.  On June 23, 2014, ACS removed him from his aunt's home after she failed a random drug screening.  The Contract Agency then placed him in a non-kinship foster

placement where he currently resides. Plaintiff Tyrone M. has now spent his entire life in ACS custody—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

100. ACS also has also failed to keep Plaintiff Tyrone M. free from physical, psychological, and emotional harm while in its custody. When he arrived at his current foster placement, his health and behavior indicated severe neglect. He suffered from severe dental problems. He went to sleep in his clothing every night because in his previous foster placement he had not been provided with such basic care as being taught to undress or change into pajamas before bed.

101. As a result of the emotional harm he has suffered while in ACS custody for the past seven years, Plaintiff Tyrone M. suffered and continues to suffer from a variety of mental health problems. His diagnoses include Pervasive Developmental Disorder, Developmental Coordination Disorder, Communication Disorder and Attention Deficit Hyperactivity Disorder. Tyrone M. also exhibits severe behavioral problems and often becomes violent at school and throws chairs or pencils. As a result, his school has barred him from eating in the lunchroom with other students and from attending school-sponsored field trips.

102. ACS has also failed to ensure that Plaintiff Tyrone M. is provided with the necessary services to ensure his physical and emotional well-being. For example, although his Individualized Education Program states that he is required to receive psychological counseling outside of school, upon information and belief, it has taken the Contract Agency over a year to even begin the process for getting Tyrone M. mental health services.

A0125

103.     In addition to failing to keep Plaintiff Tyrone M. physically free from harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Plaintiff Tyrone M. in a permanent home.

104.     After almost seven years in foster care, his biological mother recently voluntarily surrendered her parental rights.  Although he is now free to be adopted, it is not clear that he will be adopted by his current foster parent and, upon information and belief, the Contract Agency, ACS and Plaintiff Tyrone M.'s law guardian have not sought out other adoption possibilities for Plaintiff Tyrone M. to have a permanent home and family to call his own.

105.     During the over seven years that Plaintiff Tyrone M. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from physical, psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Tyrone M. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Tyrone M. is being deprived of the

opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Brittney W.**

106.    Plaintiff Brittney W. is a six year old girl with special needs.  ACS removed her from her biological mother and placed her into ACS custody on May 10, 2011.  Her permanency goal currently is to be returned to her parent.  She has been in ACS custody for over four years— most of her life.

107.    Plaintiff Brittney W. appears through her next friend, Liza Camellerie.  Ms. Camellerie is an attorney in private practice in New York City.  She currently serves on the assigned panel for Family Court in Manhattan, representing children and parents in Article 10 cases, among others.  She also spent six years as a Family Court Legal Services ("FCLS") Attorney for ACS, four of which were spent as a supervisor to 25 to 30 other FCLS attorneys.  Ms. Camellerie is truly dedicated to Brittney W.'s best interests.

108.    Shortly after Plaintiff Brittney W. was born, a report was called in to the Statewide Central Register of Child Abuse and Maltreatment alleging that her biological mother's own mental incapacity and developmental delays prevented her from caring for her infant daughter.  Brittney W. was placed into voluntary kinship care with her biological mother's niece by agreement with ACS.

109.    On May 10, 2011, when Plaintiff Brittney W. was two years old, ACS remanded her into custody because her mother's niece could no longer care for Brittney W.

110.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young girl then placed Plaintiff Brittney W. in a non-kinship foster placement.  She has been residing in this foster placement for over four years—a direct

34

result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

111.    After over four years in foster care, Plaintiff Brittney W.'s permanency goal is to be returned to her parent.  Upon information and belief, Plaintiff Brittney W.'s lawyer does not think that her biological mother's mental incapacities allow her to provide appropriate care for Brittney W.  Upon information and belief, the Contract Agency to which ACS has delegated the care and case planning responsibility for this child has taken the position that Brittney W.'s biological mother can provide care if she has 24-hour medical support.  Upon information and belief, because Brittney's W.'s doctor reports that there is no reason why 24-hour support is medically necessary, the Contract Agency is trying to arrange for Brittany W.'s biological mother to have medical and other support during daytime hours.  Brittney W.'s current foster mother has indicated a willingness to adopt.  No TPR petition has been filed.

112.    During the four years that Plaintiff Brittney W. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.

35

As a direct result of defendants' actions and inactions, Brittney W. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own.  Because of Defendants' actions and inactions, Plaintiff Brittney W. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

***

113.    All of Defendants' actions and inactions as described herein substantially depart from accepted professional judgment and constitute deliberate indifference to the harms, risk of harms and violations of legal rights suffered by the Named Plaintiff Children.

## II.    The Public Advocate for the City of New York

114.    Plaintiff Letitia James is the Public Advocate for the City of New York (the "Public Advocate").  In this capacity, the Public Advocate ensures that the city government serves its citizens by exercising oversight of city agencies, investigating citizen complaints regarding city services, and making proposals or seeking relief to address perceived shortcomings or failures.

115.    Just two months into her tenure, the Public Advocate introduced a law, Int. 0104-2014, that would require ACS to report information related to youth in the foster care system on an annual basis.  This law ensures that the City monitors which supports and resources these young adults use and identifies ongoing educational barriers they experience and problems they might encounter with homelessness or law enforcement.  In September 2014, the Office of the Public Advocate issued a policy report concerning youth "aging out" of the foster care system.

36

The report provided recommendations to improve data collection, access to housing, and coordination of services for young people aging out of the system. On September 30, 2014, Int. 0104-2014 was signed into law.

116. On an ongoing basis, the Office of the Public Advocate Constituent Affairs Department ("the Constituent Affairs Department") receives complaints from constituents in all five boroughs alleging deficiencies and lapses in responsibilities by both ACS and Contract Agencies. Constituent complaints alleged, for instance, failure to investigate allegations of abuse of children in ACS custody, failure to initiate timely TPR proceedings, failure to follow proper procedures when removing children from their family home or foster home, failure to provide required services for both biological parents and foster children, failure to honor ACS vouchers and potentially retaliatory practices against those who complained directly to ACS or Contract Agencies. In total, the Constituent Affairs Department has received 259 complaints regarding ACS since January 1, 2014.

117. As a result of ongoing complaints, the Public Advocate identified ACS as an agency whose practices warrant investigation.

118. Upon learning that New York City keeps children in foster care longer than almost every jurisdiction in the country, the Office of the Public Advocate began to examine obstacles to permanency and established a hotline to hear directly from foster children and their advocates about their experiences.

119. In November 2014, the Office of the Public Advocate requested a copy of all contracts ACS holds with individual Contract Agencies; on November 17, 2014, ACS responded with electronic copies of all the contracts it has with the 29 Contract Agencies. On or about February 6, 2015, the Office requested all data collected by ACS used to produce "Scorecard"

evaluations (*see infra* ¶¶ 214–17) of the Contract Agencies from 2012 to 2014, in addition to the

Scorecard evaluations themselves and any related documentation.  After receiving no response,

the Office of the Public Advocate repeated the request on February 27, 2015.  A meeting was

held on March 11, 2015, at which the document request was made for a third time and denied by

ACS.

120.    On or about April 1, 2015, the Office of the Public Advocate sent a letter to ACS

threatening legal action if they did not comply with the data request and also requested access to

ACS's Legal Tracking System in order to investigate constituent complaints concerning

significant delays and inefficiencies occurring in Family Court proceedings in which ACS is

involved.  Following this correspondence, ACS provided Scorecard evaluations, but did not

provide the underlying data used to produce them, or the other requested information.

121.    Also in April 2015, the Office of the Public Advocate launched a multilingual

hotline to learn first-hand from children and their advocates about the current barriers to

receiving better services while in foster care and obtaining a safe and permanent home.

Participants in the hotline were asked to complete a survey.  The survey's questions varied based

on the type of respondent—typically a child, birth parent or foster parent—and asked about the

child's trajectory in foster care, permanency planning, services provided and cases of

maltreatment in care.

122.    Combining anecdotal reports from the hotline and publicly available data, the

Office of the Public Advocate identified several deficiencies including, but not limited to, ACS

removal of children without proper court process, failure to identify and provide adequate

services for parents of children in care and subsequent delays in reunification, failure to place

children appropriately and thus creating instability, failure of ACS and the Contract Agencies to

A0131

be prepared for court dates, failure of ACS to recruit, train and support adoptive placements,

failure to engage in concurrent planning, failure to protect children from maltreatment and failure

to provide adequate health and mental health services to children in care.  Those deficiencies and

recommendations for addressing them were cited in a report that was issued on July 2, 2015.

## III.    Defendants

123.    Defendant City of New York ("City") was, and is, a municipal entity created and

authorized under the laws of the State of New York.  It is authorized by law to maintain and

ultimately is responsible for the New York City Administration for Children's Services, which

acts as its agent in the area of protecting the safety and welfare of children in the City.  The City

assumes the risks incidental to the maintenance of the New York City Administration for

Children's Services and its employment of attorneys, caseworkers and others.

124.    Defendant New York City Administration for Children's Services ("ACS") was,

and is, a municipal agency of the City responsible for protecting the safety and welfare of all

children in New York City.  At all times relevant hereto, the officials, agents and employees of

ACS were acting under the color of state law in the course and scope of their duties and

functions as agents, servants, employees and officials of ACS and otherwise performed and

engaged in conduct incidental to the performance of their lawful duties.  The officials, agents and

employees were acting for, and on behalf of, ACS at all times relevant herein with the power and

authority vested in them as agents and employees of ACS and the City and incidental to their

lawful pursuit of their duties as officials, employees and agents of ACS.

125.    Defendant Gladys Carrión is Commissioner of ACS and is sued solely in her

official capacity.  She is responsible for ACS's policies, practices and operations, and for

ensuring that ACS and the private agencies with which it contracts comply with all applicable

federal and state laws, pursuant to the Charter of the City of New York, Chapter 24-B §§ 615 and

617. All children in foster care in New York City are in the custody of Defendant Carrión, and

she is responsible for ensuring their health, safety and well-being, including, but not limited to,

their freedom from maltreatment while in state custody and their placement in a permanent home

within a reasonable period of time.

126.    Defendant State of New York ("State") was, and is, a governmental entity. It is

authorized by law to maintain and is ultimately responsible for the New York State Office of

Children and Family Services, which acts as its agent in the area of foster care, adoption and

adoption assistance for children in New York State. The State assumes the risks incidental to the

maintenance of the New York State Office of Children and Family Services.

127.    Defendant New York State Office of Children and Family Services ("OCFS")

was, and is, an agency of the State responsible for programs involving foster care, adoption and

adoption assistance for children in New York State. At all times relevant hereto, the officials,

agents and employees of OCFS were acting under the color of state law in the course and scope

of their duties and functions as agents, servants, employees and officials of OCFS and otherwise

performed and engaged in conduct incidental to the performance of their lawful duties. The

officials, agents and employees were acting for, and on behalf of, OCFS at all times relevant

herein with the power and authority vested in them as agents and employees of OCFS and the

State and incidental to their lawful pursuit of their duties as officials, employees and agents of

OCFS.

128.    Defendant Sheila J. Poole is Acting Commissioner of OCFS and is sued solely in

her official capacity. She is responsible for the policies, practices and operation of OCFS, for

ensuring OCFS's compliance with all applicable federal and state law, pursuant to New York

40

State Social Services Law §§ 11 and 17, and for providing oversight to all social services

districts in the state.

## JURISDICTION AND VENUE

129.    This action arises under the Constitution and laws of the United States, including

42 U.S.C. § 1983.  The Court has jurisdiction over the federal claims pursuant to 28 U.S.C.

§§ 1331 and 1343(a).  The Court may exercise supplemental jurisdiction over the claims based

on New York law pursuant to 28 U.S.C. § 1367(a).

130.    This Court has jurisdiction to issue declaratory and injunctive relief pursuant to

28 U.S.C. §§ 2201 and 2002 and Rule 57 of the Federal Rules of Civil Procedure.

131.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because the claims

arise in this district.  Although OCFS and ACS are responsible for children from all five

boroughs of New York City, including those in the Eastern District of New York, the

Commissioner of ACS has custody of all Plaintiff Children, and ACS's administrative and

managerial functions are operated out of its headquarters, which is located in the Southern

District of New York.

## CLASS ACTION ALLEGATIONS

132.    This action is properly maintained as a class action pursuant to Rules 23(a) and

23(b)(2) of the Federal Rules of Civil Procedure.

133.    The general class is defined as all children who are now or will be in the foster

care custody of the Commissioner of New York City's Administration for Children's Services

("Plaintiff Children" or the "Class").

134.    The Class is sufficiently numerous to make joinder impracticable.  As of April 2015, there were  approximately 11,137 children in the foster care custody of the Commissioner of ACS.

135.    The questions of fact and law raised by Named Plaintiff Children's claims are common to and typical of those of each putative member of the Class whom they seek to represent.  The Named Plaintiff Children and Plaintiff Children rely on Defendants for foster care services in New York City and wholly depend on the State and City Defendants for provision of those services.  Defendants' long-standing and well-documented actions and inactions substantially depart from accepted professional judgment and constitute deliberate indifference to the harm, risk of harm and violations of legal rights suffered by the Named Plaintiff Children and Plaintiff Children.

136.    Questions of fact common to the Class include:

a.    whether State and City Defendants fail to protect Plaintiff Children from physical, psychological and emotional harm;

b.    whether State and City Defendants fail to ensure meaningful case plans to enable Plaintiff Children to be safely returned to their parents or, if that were not possible within a reasonable period of time, to place them in permanent homes;

c.    whether State and City Defendants fail to provide foster care placements and services that ensure Plaintiff Children's well-being; and

d.    whether ACS fails to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

42

137.    Questions of law common to the Class include:

    a.    whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's substantive rights under the due process clause of the Fourteenth Amendment to the United States Constitution;

    b.    whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's right to a permanent home and family under the First, Ninth and Fourteenth Amendments to the United States Constitution;

    c.    whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's rights under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997;

    d.    whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's rights under New York State Social Services Law and regulations adopted pursuant thereto; and

    e.    whether City Defendants' actions and inactions violate Plaintiff Children's rights as third party beneficiaries to the contracts between the City Defendants and the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

138.    The violations of law and resulting harms averred by Named Plaintiffs are typical of the legal violations and harms and/or risk of harms experienced by all Plaintiff Children in the Class.

43

139.   Named Plaintiffs will fairly and adequately protect the interests of the Class that they seek to represent.  Named Plaintiffs and Plaintiff Children are represented by the following attorneys who are competent and experienced in class action litigation, child welfare litigation and complex civil litigation:

     a.     Marcia Robinson Lowry, an attorney with A Better Childhood, Inc., a non-profit legal advocacy organization, who has substantial experience and expertise in federal child welfare class actions nationally; and

     b.     Attorneys from Cravath, Swaine & Moore LLP, including attorney Julie A. North, a Member of the Firm, who has significant experience in complex litigation in state and federal courts throughout the United States.

Plaintiff Children's attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Class through trial and any appeals. Each Named Plaintiff appears by a next friend pursuant to Federal Rule of Civil Procedure 17(c), and each next friend is sufficiently familiar with the facts of the child's situation and dedicated to the child's best interests to fairly and adequately represent the child's best interests in this litigation.

140.   Defendants have acted or failed to act on grounds generally applicable to all members of the Class, necessitating class-wide declaratory and injunctive relief.  Counsel for Plaintiff Children know of no conflict among the Class members.

44

## STRUCTURE OF THE NEW YORK CITY CHILD WELFARE SYSTEM

141.    Children in foster care in New York City are in the legal custody of the Commissioner of ACS (currently, Defendant Carrión) ("ACS custody").  At all times, ACS maintains legal custody and legal responsibility for all children in foster care in New York City.

142.    Pursuant to its Charter, the City of New York and Defendant Carrión, as Commissioner of ACS, are responsible for ensuring that ACS complies with federal and state law.

143.    New York State provides funding to New York City that is spent on child welfare services, and, through OCFS, is responsible for overseeing ACS and ensuring that ACS complies with all applicable federal and state laws.  OCFS is also responsible for ensuring that ACS complies with all elements of the state plans (which OCFS signs as a condition of receiving child welfare funds from the United States Department of Health and Human Services) that document how the state will comply with certain core policies and procedures intended to, among other things, either enable children in foster care to be reunited with their families and/or ensure timely efforts to find a permanent home for children who cannot be reunited with their families.

144.    Pursuant to the Constitution and federal and state statutory law, ACS, as the custodian of children in foster care in New York City, is required to:

      a.    Protect each child in foster care from physical, psychological and emotional harm, U.S. Const. amend. XIV;

      b.    Provide to each child in foster care the services necessary to ensure his or her physical, psychological and emotional well-being, U.S. Const. amend. XIV;

45

c.    Provide to each child in foster care conditions, treatment and care consistent with the purpose and assumptions of custody, U.S. Const. amend. XIV;

d.    Ensure that each child in foster care is not maintained in custody longer than is necessary to accomplish the purpose of custody, U.S. Const. amend. XIV;

e.    Provide each child in foster care with a permanent home and family within a reasonable period of time, U.S. Const. amends. I, IX, XIV;

f.    Place each child in foster care in a foster placement that conforms to nationally recommended professional standards, 42 U.S.C. § 671(a)(10);

g.    Provide for each child in foster care a written case plan that includes a plan to provide safe, appropriate and stable foster care placements and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

h.    Provide for each child in foster care a written case plan that ensures that the child receives safe and proper care while in foster care and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

i.    Provide for each child in foster care a written case plan that ensures the provision of services to facilitate reunification or, where that is not possible, a permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

j.    Provide for each child in foster care, where reunification is not possible or appropriate, a written case plan that ensures the location of an adoptive or

A0139

other permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(E);

k.    Provide for each child in foster care a written case plan that ensures the educational stability of the child while in foster care and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(G);

l.    Maintain a case review system in which each child in foster care has a case plan designed to achieve safe, appropriate and stable foster care placements, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

m.    Maintain a case review system in which the status of each child in foster care is reviewed every six months by a court, or person responsible for case management, for purposes of determining the safety of the child, the continuing necessity and appropriateness of the foster placement, the extent of compliance with the permanency plan and the projected date of permanency, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C);

n.    Maintain a case review system that ensures that for each child that has been in foster care for 15 of the most recent 22 months, ACS files a petition to terminate the parental rights of the child's parents and concurrently identifies, recruits, processes and approves a qualified family for an adoption, or documents compelling reasons for determining that filing such a petition would not be in the best interest of the child, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675 (5)(E);

o.    Provide to each child in foster care quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22);

47

p.    Timely create meaningful and appropriate Family Assessment and Service
      Plans, New York State Social Services Law § 409-e;

q.    Timely plan and complete meaningful and appropriate Family Assessment
      and Service Plan reviews, New York State Social Services Law § 409-e
      and N.Y. Comp. Codes R. & Regs. tit. 18, § 430.12;

r.    Place each child in a foster placement that meets standards for continuity
      and appropriate level of placement, N.Y. Comp. Codes R. & Regs. tit. 18,
      § 430.11;

s.    File a petition to terminate parental rights for each child who has been in
      foster care for 15 out of the most recent 22 months or, where applicable,
      appropriately document an exception, New York State Social Services
      Law § 384-b, N.Y. Comp. Codes R. & Regs. tit. 18, §§ 430.12 and 431.9;
      and

t.    Provide each child in foster care who has been freed for adoption with
      meaningful and appropriate adoption services, including evaluation of the
      child's placement and pre-placement needs, recruitment of and a home
      study for prospective adoptive parents, placement planning, supervision
      and post-adoption services, New York State Social Services Law §§ 372-b,
      372-e and N.Y. Comp. Codes R. & Regs. tit. 18, § 421.8.

145.   By contract, ACS has delegated the care of the City's children in foster care to
agencies ("Contract Agencies").  ACS currently has entered into valid and enforceable contracts
with 29 Contract Agencies.  The contracts into which ACS has entered with each of the Contract
Agencies (referred to herein as the "Agreements") require the Contract Agencies to comply with

48

all applicable ACS policies, as well as state and federal law.  The Agreements also require the Contract Agencies to provide comprehensive foster care services as defined in the Agreements.[1]

146.    Regardless of the terms of the Agreements, by law, ACS at all times maintains legal custody of and legal responsibility for all children in foster care in New York City.  However, ACS has failed and continues to fail to ensure the protection of Plaintiff Children's rights under federal and state constitutional and statutory law.

147.    Children in New York City enter foster care in one of two ways—they can be voluntarily placed into foster care by their parents,[2] or they can be removed from their parents by ACS.  Most children in foster care in New York City have been removed from their parents.  When children are removed from their parents, the removal is either (a) pursuant to a Family Court finding that the child is in danger of abuse or neglect if left with his or her parents or (b) on an emergency basis, subject to a later finding by the Family Court that the child would have been in danger of abuse or neglect if he or she had been left with his or her legal parents.  In both cases, the Family Court must hold a fact-finding hearing to determine whether the child was in danger of being abused or neglected if left with his or her parents.  After the fact-finding hearing, the Family Court holds a disposition hearing to determine whether the child can safely be returned home or should remain in foster care pending the completion of certain actions (*e.g.*, treatment for drug or alcohol addiction, anger management classes, etc.).

---

[1] Each Agreement between the Contract Agency and ACS is for a particular set of foster placement services. Therefore, one Contract Agency may have multiple Agreements with ACS, each for a different type of placement. Appendix A lists, to the best of our information and belief, the Agreements which were current as of November 2014 (*see* ¶ 119) and that are still in force today.

[2] Unless otherwise specified, the term "parents" as used herein refers to the person(s) who have legal custody or legal responsibility for the child prior to his or her entry into foster care, and may include biological parents, grandparents, adoptive parents or other legal guardians.

49

148.    Once a child enters foster care, ACS "places" the child with a Contract Agency, to which ACS delegates the day-to-day care of, and case planning responsibility for, the child. Upon information and belief, placement with a Contract Agency is determined largely by which Contract Agency has availability when placement is sought, not by a determination of the child's health, safety or permanency needs, or of the ability of a potential available placement to meet those needs.

149.    The Contract Agency with which the child has been placed then assigns the child a foster placement, which can be either a traditional home-like setting or residential facility.[3] Upon information and belief, foster placements are determined largely by availability at the time the placement is sought, not by a determination of the child's health, safety or permanency needs, or of the ability of a potential available placement to meet those needs.

150.    Once a child is placed with a Contract Agency, caseworkers employed by that Contract Agency are responsible for generating and recommending a case plan for the child.

151.    Pursuant to federal and state law, ACS is required to ensure that a case plan meeting statutory criteria and professional standards is prepared for each child in foster care.  In New York, these case plans are referred to as Family Assessment and Service Plans ("FASP"). Each child's FASP must describe, among other things, the child's physical and mental health needs, the child's permanency goal, the services necessary to meet the child's physical and mental needs as identified in the case plan and the services necessary to help the child achieve his or her permanency goal as identified in the case plan.

---

[3] Residential facilities include boarding homes, group homes, group residences, and institutions or residential treatment facilities.  Residential facilities are the most restrictive settings, usually intended for the placement of older children with severe clinical, medical, mental and/or behavioral problems.

152.   Pursuant to state and federal law, ACS also is responsible for ensuring that each child's case plan is implemented, and for providing each child in its custody with the services necessary to meet the child's physical and mental needs as identified in the case plan and the services necessary to help the child achieve his or her permanency goal as identified in the case plan.

153.   ACS delegates the preparation of such case plans and the provision of such services to the Contract Agency with which the child has been placed.  However, ACS fails to ensure that the Contract Agencies prepare meaningful and appropriate FASPs for each child in ACS custody, as required by state law.  ACS also fails to ensure that the Contract Agencies provide the services necessary to meet both the child's physical and mental needs and to help the child achieve his or her permanency goal (as identified in the case plan), as required by law.

154.   Foster care is intended to be temporary—a short-term placement until a child can be safely reunified with his or her parents or, where that is not possible, placed into another stable, permanent home.

155.   Accordingly, federal and state law require ACS to ensure that each child in foster care has a "permanency goal" and that reasonable efforts are made to reach each child's established permanency goal within a reasonable period of time.  There are five possible permanency goals:  (1) return to parent; (2) adoption; (3) legal guardianship or kinship guardianship; (4) placement with a relative; and (5) another planned permanent living arrangement ("APPLA"), the permanency goal given to children who will "age out" of the foster care system.

156.   ACS delegates case planning responsibility, including assigning permanency goals and making reasonable efforts toward permanency goals, to the Contract Agency with

51

which each child in ACS custody has been placed.  However, ACS fails to ensure that the

Contract Agencies engage in meaningful and appropriate permanency planning, as required by

federal and state law.

157.    Federal law requires ACS to ensure that caseworkers engage in concurrent

planning, so that each child in ACS custody has a primary permanency goal and a secondary

permanency goal, both of which the caseworker must work toward simultaneously.  For

example, if a child's primary permanency goal is "return to parent" and the secondary

permanency goal is "adoption", concurrent planning requires simultaneous provision of

necessary services so that the child can be returned home safely and recruitment of potential

adoptive parents in the event the child is unable to be returned home safely.  The purpose of

concurrent planning is to limit the harm caused to the child by a lengthy stay in foster care by

ensuring that the child is placed into a permanent home within a reasonable period of time.

158.    ACS delegates case planning responsibility, including engaging in concurrent

planning, to the Contract Agency with which each child in ACS custody has been placed.

However, ACS fails to ensure that the Contract Agencies engage in meaningful and appropriate

concurrent planning, as required by federal law.

159.    Federal and state law require ACS to ensure that a child's case plan is periodically

reviewed to ensure that the child's permanency goal is appropriate and that progress is being

made toward safely returning the child to his or her parent or, if that were not possible within a

reasonable period of time, placing the child in a permanent home.  By state statute, an initial

FASP review must be held between 60 and 90 days after the child is placed in foster care, and

subsequent FASP reviews must be held no less than every six months thereafter.  ACS must

ensure that the caseworker and all relevant persons, including, but not limited to, the parents of

A0145

the child, relatives, the foster parent and the child, if old enough, participate in the FASP reviews. However, ACS fails to ensure that meaningful and appropriate FASP reviews occur as required by state law.

160. By state statute, a permanency hearing must be held in the Family Court within eight months of a child's removal from his or her parents and every six months thereafter, and that permanency hearing must be completed within 30 days. The purpose of permanency hearings is to provide each child in ACS custody with timely judicial review of the child's permanency goal and whether progress has been made toward achieving that goal.

161. Because ACS fails to ensure that all parties are prepared for court and that Contract Agencies submit necessary paperwork in a timely fashion, such permanency hearings often are not completed within the time period required by state law. In many if not most instances, the permanency hearings are held before the Family Court has even made a determination about whether the parent from whom the child was removed has in fact neglected or abused the child.

162. Federal and state law provide that ACS must, after a child is removed from his or her parents, make a reasonable effort to preserve family relationships, which includes providing services to the child's parents. Federal law and policy dictate that the preferred course of action is to reunify the child with his or her parents.

163. ACS has delegated its responsibility to make reasonable efforts to reunify each child in its custody with his or her parents to the Contract Agency with which the child has been placed. However, ACS fails to ensure that reasonable efforts are being made or that necessary services are being provided to enable children in ACS custody to be returned home within a reasonable period of time, as required by federal and state law.

A0146

164.    Even while efforts are being made to reunify a child with his or her parents, federal law and professional standards also require ACS to ensure that concurrent planning—*i.e.*, to pursue another permanency option for the child in the event that the child cannot safely be returned to his or her parents (*see supra* ¶ 157)—occurs.  That means that ACS should not wait months or years until reunification efforts have failed to begin alternative permanency planning, including identifying other potential permanent homes for the child.

165.    Federal and state law require ACS to determine within a reasonable period of time whether or not a child in foster care can be safely and appropriately returned to his or her parents, and if not, to initiate a petition to terminate parental rights so that the child is legally available to be adopted.  ACS has delegated the responsibility for making that determination to the Contract Agency with which each child in ACS custody has been placed.  However, ACS fails to ensure that the Contract Agency makes that determination within a reasonable time, as required by federal and state law.

166.    Under federal and state law, ACS must file a petition to terminate parental rights ("TPR") when a child has been in foster care for 15 of the previous 22 months, subject to certain exceptions that must be documented.  Under state law, ACS must file a TPR petition (a) within 30 days of establishing a primary permanency goal of "adoption"; (b) within 60 days of completing a FASP that documents abandonment or permanent neglect of a child; and (c) within 60 days of a judicial determination that a child was abandoned.  ACS has delegated its responsibility to file TPR petitions to the Contract Agency with which each child in its custody has been placed.  However, ACS fails to ensure that TPR petitions are filed within the time periods required by federal and state law.

167.     Once parental rights have been terminated and a child in ACS custody is considered "freed" for adoption, state statutory law and regulations require ACS to take a number of additional steps to place that child into a permanent home, including (a) timely acting on applications by persons looking to adopt children; (b) initiating and completing adoption studies (evaluations of an applicant's ability to be an adoptive parent) within certain time periods; (c) placing children in adoptive homes within certain time periods; and (d) finalizing adoptions within certain time periods.  However, as the concept of concurrent planning (*see supra* ¶ 157) makes clear, ACS should have been identifying other potential permanent homes for the child well before the child is freed for adoption.  ACS has delegated these responsibilities to the Contract Agency with which each child in its custody has been placed; however, ACS fails to ensure that the necessary and appropriate steps are taken to develop an appropriate pool of adoptive families and to place children who have been freed for adoption into adoptive homes, as required by state law.

168.     Although ACS has delegated the provision of comprehensive foster care services in New York City to 29 Contract Agencies, that delegation does not and cannot supplant ACS's responsibilities to Plaintiff Children under federal and state law.  ACS has legal custody of all children in foster care in New York City.  ACS accordingly has legal responsibility for ensuring that the rights of all children in foster care in New York City are protected—which ACS has failed, and continues to fail, to do.

**FACTUAL ALLEGATIONS REGARDING SYSTEMIC DEFICIENCIES
PLAGUING NEW YORK CITY'S FOSTER CARE SYSTEM AND
RESULTING HARM TO PLAINTIFF CHILDREN**

169.     The experiences and current situations of the Named Plaintiff Children as described above are neither unusual nor aberrational.  Rather, they are merely examples that are far too typical of the irreparable harm being suffered by all children in ACS custody.

170.     Defendants are harming Plaintiff Children by:

      a.     failing to protect Plaintiff Children from physical, psychological and emotional harm;

      b.     failing to ensure the development and implementation of meaningful case plans to enable Plaintiff Children to be safely returned to their parents or, if that were not possible within a reasonable period of time, to place them in permanent homes; and

      c.     failing to provide foster care placements and services to ensure Plaintiff Children's well-being.

171.     These harms are a direct result of Defendants' long-standing and well documented actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years:

      a.     ACS fails to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

A0149

b.   ACS fails to ensure that Contract Agency caseworkers are assigned
caseloads and receive appropriate training consistent with professional
standards.

c.   ACS fails to provide a system for making foster placements consistent
with federal and state law and minimum professional standards.

d.   ACS fails to ensure case and service plans are developed and implemented
consistent with federal and state law and minimum professional standards.

e.   ACS fails to take all necessary and available action to ensure timely
adjudication of family court proceedings involving children in ACS
custody consistent with federal and state law and minimum professional
standards.

All of Defendants' actions and inactions as described herein substantially depart from accepted
professional judgment and constitute deliberate indifference to the harm, risk of harm and
violations of legal rights suffered by Plaintiff Children.

172.   Put simply, as a result of Defendants' failures, caseworkers employed by the
Contract Agencies to which ACS has delegated the care of Plaintiff Children often are
inexperienced, undertrained, under-supervised, overworked and underpaid; case planning often is
sloppy and ineffective; there are not enough suitable and appropriate foster and pre-adoptive
placements to meet Plaintiff Children's needs; and a lack of urgency and accountability pervades
New York City's foster care system.

173.   Defendants have long been aware of these systemic failures and the resulting
harm to the vulnerable children in ACS custody.  Since 2000, OCFS has undergone two federal
performance audits of the New York State child welfare system, known as Child and Family

57

Services Reviews ("CFSR"). These reviews are conducted by the United States Department of Health and Human Services to assess the performance of child welfare systems across the country, including the outcomes achieved for children, to identify areas in which systemic improvement is required to assure appropriate outcomes for children, and to implement corrective actions where outcomes for children are found to be deficient. States are evaluated on seven outcome indicators of safety, permanency and well-being—the unequivocal goals of all foster care systems pursuant to federal statutory law—and on seven systemic factors that affect the state's capacity to deliver foster care services effectively.

174.     The two federal audits completed to date revealed myriad areas in which the New York State foster care system was causing harm to the children in its care, and that New York State's foster care system was getting worse. The first CFSR audit, which was published in 2002, found that New York State failed to conform to federal expectations in five of the seven safety, permanency and well-being indicators, and in three of the seven systemic factors. Seven years later, New York State performed worse. During the second CFSR audit, which was published in 2009, the federal government determined that New York State failed to conform to federal expectations in all seven safety, permanency and well-being indicators, and in five of the seven systemic factors. New York State's CFSR results are heavily influenced by New York City's child welfare system, which accounted for well over 60% of children in foster care in New York State in both 2002 and 2009.

175.     Notwithstanding having had 13 years to improve performance since the first CFSR audit of New York State, Defendants continue to place New York City children in ACS custody at significant risk of harm. The most recent federal data available shows that children in

58

New York State spend longer in foster care and are more likely to be maltreated while in foster care than children in virtually all other states.

176.     Defendants are not acting with sufficient urgency to address these known failures or to meet their legal obligations to protect the children in New York City's foster care system.

## I.     DEFENDANTS ARE CAUSING IRREPARABLE HARM TO CHILDREN IN ACS CUSTODY.

### A.     Defendants Fail To Protect Children in ACS Custody from Maltreatment.

177.     Maltreatment of children in foster care is a significant problem in New York City.

178.     New York City currently accounts for almost 60% of children in foster care in New York State, which lags far behind the nation with respect to the protection of children in foster care.

179.     Based on the most recent federal data available, New York State ranks 46th out of 48 states and territories for instances of substantiated or indicated maltreatment of children while in foster care.  Put simply, children in New York are more likely to be harmed while under the state's protection than children in virtually every other state.

180.     New York State has had a high rate of maltreatment in foster care for years.  In both the 2002 and 2009 CFSRs, the federal government found that New York State did not meet the national standard for the rate of maltreatment in foster care.  Based on the most recent federal data available, New York State did not meet the national standard for 2013.

181.     Upon information and belief, the high rate of maltreatment in care in New York State is largely driven by maltreatment of children in ACS custody in New York City, which accounts for the majority of children in foster care in New York State.

182.     All investigations of maltreatment, including those pertaining to children in foster care custody, begin with a call to the Statewide Central Register of Child Abuse and

A0152

Maltreatment ("SCR"). According to ACS, in 2014, SCR received 1,987 reports of maltreatment of children in ACS custody (*i.e.*, children in foster care in New York City). ACS's Office of Special Investigation investigates reports of maltreatment made to the SCR, including those for children already in foster care; a report of maltreatment is "substantiated" when sufficient evidence is found to support a determination that a child was in fact maltreated. Of the 1,987 reports of maltreatment in foster care received by SCR in 2014, 28% were substantiated. The Children's Bureau of the federal government does not publish comparable data.

183. The high rate of maltreatment of children in ACS custody is a direct result of Defendants' long-standing and well-documented actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years. ACS's failure to ensure that Plaintiff Children are protected from maltreatment substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the risk of harm to Plaintiff Children.

B. **Defendants Fail To Provide Children in ACS Custody with Permanent Homes and Families Within a Reasonable Time.**

184. Foster care is intended to be temporary. Children who do not grow up in stable family environments are less likely to complete their education, to form healthy relationships or to be otherwise prepared to live healthy, satisfying adult lives. Accordingly, federal and state law and professional standards dictate that foster children should be placed in permanent homes as quickly as is safely possible, whether with their parents, another relative or an adoptive family.

185. But ACS allows Plaintiff Children to languish for years in foster care without permanent homes or families to call their own. Indeed, the most recent federal data available shows that New York City lags far behind the rest of New York State and the nation as a whole

60

in placing children in foster care custody in permanent homes. As a result, children spend longer in foster care custody in New York City than virtually everywhere else in the nation.

1.   Defendants Fail To Ensure Children Are Timely and Safely Reunified with Their Parents.

186.   Federal and state law provide that ACS must, in the first instance, make reasonable efforts to preserve a child's relationship with his or her family. After a child is removed from home due to allegations of abuse or neglect, federal and state law and policy dictate that the preferred course of action is to reunify the child with his or her parents. Reunification, however, is only appropriate where the reason for removal has been addressed through appropriate services to the family so that the child's safety is assured. As a result, ACS must ensure the provision of appropriate and effective services[4] so that children in ACS custody can safely return home.

187.   ACS fails to ensure that children in ACS custody are safely returned to their parents within a reasonable period of time.

a.   It takes longer to return children in foster care to their parents in New York City than in the rest of New York State and the rest of the nation as a whole. The most recent federal data available shows that children in New York City had spent a median of over a year—12.6 months—in foster care before being reunified with their parents, while children in the rest of New York State spent a median of 10.8 months, and children in the rest of the nation spent a median of 8.6 months in foster care prior to reunification.

---

[4] Necessary reunification services, which should be established and set forth in the child's case plan, may include psychological evaluations and/or care, substance abuse treatment, parenting classes or assistance, or assistance with accessing adequate housing.

A0154

b.      New York City takes longer to return children in foster care to their parents than all but five other states and territories.  Based on the most recent available federal data comparing the median number of days children spent in foster care prior to being returned to their parents, New York City ranks 48th of 53 jurisdictions.

188.    ACS also fails to ensure that children are <u>safely</u> returned to their parents. Children who are eventually reunified with their legal parents too often re-enter foster care due to further abuse or neglect.  In 2014, 13.9% of foster care placements in New York City were of children who had been in foster care within the previous three years.  Failed reunifications cause harm to children both as a result of additional maltreatment—in the worst cases, severe injury or even death—and the trauma that accompanies repeated family separation.

2.      <u>Defendants Fail To Ensure a Timely Permanent Home for Children in ACS Custody when Reunification Is Not Possible.</u>

189.    When a child cannot be returned safely to his or her parents, federal and state law require ACS to promptly find children in its custody alternative permanent homes, typically through adoption or kinship guardianship.

190.    However, ACS fails to secure timely adoptions for too many children in its custody who cannot safely be returned to their parents.  Instead, these children languish in ACS custody for years without a permanent home or family to call their own.

a.      For children who cannot be safely returned to their parents, it takes longer to be adopted in New York City than in the rest of New York State.  It also takes longer to be adopted in New York City than in *every other state in the nation*.

62

b.      Children who were adopted in New York City in 2013 spent a median of
55.8 months—over 4.5 years—in foster care prior to adoption.  In
contrast, children in the rest of New York State spent almost two years
less time—a median of 32.6 months—in foster care prior to being
adopted, and children in the rest of the nation spent less than half that
amount of time—a median of 26.9 months—in foster care prior to being
adopted.

c.      Based on the most recent available federal data comparing the median
number of days children spent in foster care prior to being adopted, New
York City *ranks dead last*—a fact that has been true since at least 2007.

191.    The City Defendants are well aware that it takes over 4.5 years for a child to be
adopted in New York City.  The City has published that fact for the past five years in its Mayor's
Management Reports.

3.  Defendants' Failure To Provide Children in ACS Custody Permanent
Homes Within a Reasonable Period of Time Causes Irreparable Harm.

192.    Research has shown that permanent homes and families are critical to ensuring a
child's healthy development and continue to confer benefits that contribute to the child's success
throughout life.  Being placed with a permanent family helps infants with brain development;
young children with self esteem, healthy attachment and behavior regulation; and adolescents
with independence and healthy boundary-setting.  Parental support and a stable, familiar
environment also help children cope after traumatic experiences.

193.    Conversely, research has shown that children suffer when they grow up in state
custody without the protective effects of a permanent home and family.  Each year,

63

approximately 1,000 young people "age out" of New York City's foster care system, the vast majority on their own with virtually no safety net. These children suffer irreparable harm. Research has shown that children who "age out" of foster care are more likely than their peers to be unemployed, homeless and incarcerated as adults; are more likely to have drug dependence and post-traumatic stress disorder; and are less likely to have graduated high school, attended college, or to have a savings or checking account.

194.    Too frequently, caseworkers push children to accept the permanency goal of APPLA—the goal given to children who will "age out" of the foster care system—at young ages, often failing to explore other options, such as adoption or placement with a relative. ACS allows too many children who cannot safely be returned home to be deemed "unadoptable" without making reasonable efforts to search for or secure permanent homes for those children. ACS also fails to explore alternative permanency options for older teens who may express that they do not want to be adopted but who would nevertheless benefit from a permanent and stable adult connection.

195.    Defendants have long been aware of the harm children suffer when they do not grow up in a permanent home or have a permanent family. In February 2011, Defendant OCFS sent ACS and the Contract Agencies an informational letter stating that "children who have a significant connection to an adult generally fare better" and that "[s]tudies of youth who leave foster care without a safe, permanent family reveal consistently negative life outcomes." However, Defendants have made no meaningful efforts to improve permanency for Plaintiff Children.

196.    ACS's failure to provide Plaintiff Children with permanent homes within a reasonable period of time is a direct result of Defendants' long-standing and well-documented

actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years.  ACS's failure to ensure that Plaintiff Children are placed in permanent homes within a reasonable period of time substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the risk of harm to Plaintiff Children.

     C.     **Defendants Fail To Provide Foster Placements and Services that Ensure the Well-Being of Children in ACS Custody.**

     197.     Federal and state law and professional standards require ACS to ensure foster care services are provided in a manner that ensures the well-being of each child in ACS custody.

     198.     Federal and state law and professional standards require ACS to ensure that each child in ACS custody is placed in the most appropriate, least restrictive placement available.  The abrupt and overwhelming change of being removed from his or her parents and placed into ACS custody can further traumatize a child.  In the process of initial placement, children are removed, often abruptly, from familiar surroundings and lose everything known and comforting.  Research has shown that change of this magnitude has a detrimental effect on brain and neurological function and other negative physiological effects.[5]  Accordingly, foster placements should be based on an assessment of the individual child's needs and should promote stability and continuity by placing children with relatives, keeping children in their communities and schools, and keeping siblings together whenever possible.

---

[5] This is one reason why children, especially very young children, often regress in their development and behaviors (*e.g.*, toilet training, talking, etc.) after being removed from their parents.  Separation from family, and the resulting attachment disruption, may intensify these negative physiological effects and is particularly devastating for younger children.

199.     Instead, ACS further harms Plaintiff Children by putting them in inappropriate foster placements ill-equipped to meet their needs, which results in far too many children being shuffled from foster placement to foster placement:

    a.    In December 2011, ACS published data stating that 14% of children then in ACS custody had experienced more than six transfers while in foster care; and additional 16% had been shuffled from between three and five placements.

    b.    More recently, in July 2015, the Public Advocate published a report, finding that 26% of the foster children surveyed had experienced five or more transfers while in ACS custody.

200.     Being shuffled from foster placement to foster placement negatively affects a child's well-being.  Children may be dropped off at a new place with no explanation for where they are going and why.  This degree of turbulence can lead to emotional trauma and attachment disorders, and causes children to lose all sense of stability and security.  Frequent moves may result in children losing contact with siblings, other family members, friends and adults in their community who may have been involved in their lives.

201.     Multiple placements can also cause educational interruptions and compromise the child's ability to finish school.  Federal statutory law and reasonable professional standards require ACS to make reasonable efforts to keep children in the same school whenever possible.

202.     As a result, for too many children in ACS custody, moving foster placements means changing schools, losing teachers and friends.  In 2009, Children's Rights, a national advocacy organization for abused and neglected children, ACS and the Legal Aid Society Juvenile Rights Practice conducted a study of children in New York City's foster care system

66

(referred to herein as "The Long Road Home Study").[6]   The Long Road Home Study found that 30% of children studied had experienced at least one school transfer within the past year and that children who had experienced more than one placement move in a one-year period were significantly more likely to have experienced a school transfer as well.

203.    The failure to provide educational stability—like the failure to provide placement stability—further damages children in ACS custody.  School is often the one place where children who are being abused or neglected at home feel safe, so changing schools can be traumatic.  Research has also shown that children in foster care have lower standardized test scores, poorer academic performance and higher rates of grade retention, absenteeism, tardiness, truancy and dropout than their peers.  According to data from the New York City Department of Education, foster youth in 8th grade score significantly lower than their peers in English and math.

204.    Federal and state law also require ACS to ensure that all children in its legal custody receive the necessary services to ensure their well-being.  This includes adequate medical, dental and mental health assessments and follow-up care; educational assessments and services; independent living services; substance abuse treatment; or family planning services, as needed.

205.    However, ACS fails to ensure that all children in its custody are provided with these essential services to ensure their well-being:

a.    New York City fails to meet the national standard for providing adequate medical, dental and mental health care.  In the 2009 CFSR, for example,

---

[6] The results of this study were published in a November 2009 report entitled "The Long Road Home:  A Study of Children Stranded in New York City Foster Care".

the federal government determined that only 73% of children in New York City received adequate services to meet their physical and mental health needs—well below the national benchmark of 95%.

b.    The Long Road Home Study found that ACS failed to ensure the provision of necessary mental health services for a substantial number of children in its custody—16% of children studied who needed a mental health assessment, 19% of children studied who needed individual therapy and 11% of children studied who needed psychotropic medication had not received those critical mental health services within the past year.  The study also found that many children who needed the B2H Medicaid waiver program did not receive it because caseworkers failed to make timely referrals or because there were not enough slots in the program.

206.    These services are critical to the well-being of children in ACS custody, who are particularly vulnerable to irreparable physical, psychological and emotional damage from ACS's failure to provide necessary services.  Children in foster care custody often have experienced severe and chronic trauma, including physical or sexual abuse, neglect and domestic or community violence, as well as other stressors such as extreme poverty or parental substance abuse.  Research has shown that children exposed to repeated traumatic stress or pervasive neglect, including children removed from their home due to abuse or neglect, manifest increased physical, psychological and emotional problems later in life.  Being placed in and left to languish in foster care without a permanent home or family further compounds these problems.

207.    According to the National Child Traumatic Stress Network, exposure to trauma derails development in children of all ages.  Young children (five and younger) may experience

68

sensitivity to noise, avoidance of contact, heightened startle response, confusion about what is

dangerous and who to go to for protection, and fear of being separated from familiar people and

places.  School-aged children (ages six to 12) may exhibit emotional swings, learning problems,

specific anxieties and fears, attention seeking behavior and reversion to younger behaviors.

Adolescents (13 to 21) may have difficulty imagining or planning for the future, over- or under-

estimate danger, display inappropriate aggression, and engage in reckless and/or self-destructive

behaviors.

208.    Accordingly, it is critical that all children in ACS custody are properly assessed

and receive necessary services as soon as possible to facilitate their recovery from the trauma

they already have experienced.  However, ACS fails to ensure that all children in its custody are

provided with these critical services within a reasonable period of time.

209.    ACS also fails to ensure that the quality of services being provided to Plaintiff

Children is consistent with professional standards.  Upon information and belief, many Contract

Agencies do not directly provide services; instead, they refer foster children to other service

providers with which the City contracts.  However, upon information and belief, the City

Defendants do not exercise adequate and meaningful oversight over these service providers.

Upon information and belief, most mental health services provided to children in ACS custody

are ineffective and of poor quality, but ACS continues to renew contracts with these substandard

service providers while the few quality service providers have lengthy waiting lists.

210.    ACS's failure to provide Plaintiff Children with appropriate foster care

placements consistent with professional standards and services to ensure their physical,

psychological and emotional well-being is a direct result of Defendants' long-standing and well-

documented actions and inactions and Defendants' failure to remedy structural and systemic

deficiencies that have plagued New York City's foster care system for years.  These failures substantially depart from accepted professional judgment and demonstrate a deliberate indifference to the risk of harm to Plaintiff Children.

## II.   DEFENDANTS HAVE FAILED TO REMEDY THE SYSTEMIC DEFICIENCIES PLAGUING NEW YORK CITY'S CHILD WELFARE SYSTEM

211.   The harms described in ¶¶ 177–210 are a direct result of Defendants' long-standing and well-documented actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years, including:

     a.    the City Defendants' failure to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children to ensure foster care services are provided consistent with federal and state law and minimum professional standards;

     b.    ACS's failure to ensure that Contract Agency caseworkers are assigned caseloads and receive appropriate training consistent with professional standards;

     c.    ACS's failure to provide a system for making foster placements consistent with federal and state law and minimum professional standards;

     d.    ACS's failure to ensure case and service plans are developed and implemented consistent with federal and state law and minimum professional standards; and

    e.      ACS's failure to take all necessary and available action to ensure timely adjudication of family court proceedings involving children in ACS custody consistent with federal and state law and minimum professional standards.

These failures substantially depart from accepted professional judgment and demonstrate a deliberate indifference to the harm, risk of harm and violations of rights suffered by Plaintiff Children.

    A.    City Defendants Fail To Exercise Adequate and Meaningful Oversight over Contract Agencies.

212.    By contract, ACS delegates its responsibility to provide children in its custody with foster care services to Contract Agencies.  However, ACS at all times maintains legal custody of and legal responsibility for all children in foster care in New York City.  ACS thus has an obligation to Plaintiff Children to ensure that Contract Agencies are providing foster care services consistent with all applicable law and professional standards.  ACS fails to do so.

213.    Instead, ACS does not meaningfully supervise Contract Agencies or hold them accountable for underperformance.  As a result, ACS shirks its legal obligations to Plaintiff Children while the City pays millions of dollars to Contract Agencies for the provision of foster care services without ensuring that those services are adequately provided to Plaintiff Children.

214.    Under the Agreements, ACS is expressly required to supervise, monitor, audit and review the activities of the Contract Agencies.  Currently, ACS conducts an annual evaluation, called "Scorecard", of each Contract Agency to evaluate process, practice and outcome indicators in safety, permanency and well-being.  According to ACS's 2014 Scorecard Methodology, the Scorecard evaluation involves reviewing a combination of case-specific and

aggregate data.  Each Contract Agency then receives a letter grade (from A to F) indicating its performance for safety, for permanency and for well-being.

215.    The Scorecard evaluations are flawed and ineffective for at least the following reasons:

   a.    ACS fails to measure several key performance metrics.  For example, ACS has failed to develop Scorecard measures to evaluate whether Contract Agencies are successfully engaging in concurrent planning and whether Contract Agencies are making efforts to recruit non-kinship foster parents and adoptive parents.

   b.    Upon information and belief, the results of the Scorecard evaluations do not accurately reflect each Contract Agency's performance in providing foster care services to children in ACS custody.

   c.    ACS's performance standards are simply too low—upon information and belief, the majority of Contract Agencies receive "passing" grades even though New York City has one of the worst foster care systems in the nation.

216.    ACS also fails to hold Contract Agencies accountable for underperformance on the Scorecard evaluations.  According to ACS's 2014 Scorecard Methodology, ACS's Agency Program Assistance team ("APA") analyzes the Scorecard data to identify areas of strength and weakness for each Contract Agency and works collaboratively with each Contract Agency and with ACS to improve performance.  APA sets benchmarks throughout the year for each Contract Agency; however these benchmarks are *relative* and set by taking into account the Contract Agency's current performance, ACS standards and system-wide performance.

72

217. When performance is "considerably or persistently poor", APA can use "accountability mechanisms" in order to drive performance. However, ACS does not adequately use its accountability mechanisms to ensure appropriate performance of the Contract Agencies. ACS's failure to make Scorecard data publicly available further decreases accountability.

218. As a direct result of ACS's failure to meaningfully oversee the Contract Agencies, Plaintiff Children suffer irreparable harm because there simply are no consequences for the failure to protect them from physical, psychological and emotional harm; the failure to enable them to be safely returned to their parents or, if that were not possible within a reasonable period of time, to place them in permanent homes; and the failure to provide them with appropriate foster placements and necessary services to ensure their well-being.

B.    Defendants Fail To Ensure an Adequately Staffed and Appropriately Trained Child Welfare Workforce.

219. No foster care system can effectively perform its basic functions absent a well-trained, experienced and adequately staffed workforce. In New York City, ACS has delegated its obligation to care for the children in state custody to Contract Agencies, who in turn employ the caseworkers that directly interact with children in foster care and their families. However, ACS fails to ensure that these caseworkers are adequately trained, supervised and staffed, consistent with professional standards.

1.    Defendants Fail To Ensure Caseworkers Are Adequately Trained and Supervised.

220. Caseworkers must be fluent in governing policy and procedure and familiar with current best practices. Consistent with professional standards, a foster care system should require pre-service training, which must be completed before caseworkers can carry an active caseload, and mandatory annual in-service training designed to refresh caseworkers in basic

73

policy and procedure and to teach advances in policy and in the field. In addition, it is critical to ensure appropriate supervision.

221.     ACS fails to ensure that Contract Agency caseworkers receive adequate training or supervision. In 2009, the Long Road Home Study, which was performed in conjunction with ACS, found that a substantial proportion of caseworkers had not received any training before being given responsibility for a caseload of foster children. That same study also found that the quality of caseworker supervision at Contract Agencies was questionable.

### 2. Caseworkers Carry Unmanageable Caseloads.

222.     Child welfare research has shown that high caseworker caseloads negatively impact children in foster care. Caseworkers with high caseloads have less time to interact with children, families and service providers and provide meaningful and appropriate case plans, necessary services, and timely casework and decision-making. It is therefore critical that caseworkers have manageable caseloads.

223.     However, in New York City, ACS fails to ensure that all Contract Agency caseworkers carry caseloads consistent with professional standards.

224.     The Child Welfare League of America ("CWLA"), a coalition of private and public agencies that develops child welfare policies and promotes sound child welfare practice, has established nationally recognized standards for caseworker caseloads. The standards governing foster care caseworkers limit caseloads to between 12 and 15 children per worker. The Council on Accreditation ("COA"), an accrediting body that partners with human service organizations to improve child welfare service delivery outcomes, recommends that caseloads for foster care caseworkers be limited to between eight and 15 children per worker, depending on the needs of the children.

A0167

225.    Upon information and belief, ACS fails to ensure that Contract Agencies comply with these caseload standards, and many caseworkers' caseloads in New York City exceed this standard by a wide margin.  The Long Road Home Study found that caseworker caseloads exceed recommended sizes.  Similarly, at a briefing in January 2013, a member of ACS's senior management under the previous administration stated that caseloads could range from 16 to 24 children, noting that this was far too high.

226.    Excessive caseloads overburden caseworkers and prevent them from performing casework consistent with federal and state law and professional standards.

227.    High caseloads also contribute to burnout and turnover among caseworkers. Research has shown that Contract Agency caseworker turnover is associated with children experiencing multiple placements, receiving fewer services, staying in foster care longer and failing to achieve permanency.  When a case changes hands from caseworker to caseworker, relationships are severed and valuable information is lost.  ACS does not publish system-wide data regarding foster care caseworker turnover; upon information and belief, ACS does not collect such data.  In 2006, the Council of Family and Child Caring Agencies reported Contract Agency caseworker turnover rates of 40%.  In 2009, the Long Road Home Study reported that caseworker turnover is a major barrier to permanency.  Upon information and belief, high foster care caseworker turnover rates persist.

3.    Defendants Fail To Ensure Regular Caseworker Visits To Children in Foster Homes or Congregate Care.

228.    Caseworkers must have regular face-to-face contact with children in foster care, parents, and foster parents or child care workers.  The primary purpose of these contacts is to ensure the safety and well-being of the children, to engage families in planning for their children, to assess the strengths and needs of all family members and caregivers, and to address the needs

75

of all family members and caregivers in order to move children out of foster care and into permanent homes.

229.    COA recommends that caseworkers meet separately with children, parents and foster parents at least once a month.  ACS policy requires a minimum of monthly contact between caseworkers and children in foster care.

230.    However, ACS fails to ensure that caseworkers are making sufficient contacts with children, parents and foster parents to ensure the safety and well-being of children in ACS custody.  The Long Road Home Study, which was prepared in conjunction with ACS in 2009, found that caseworkers did not maintain adequate contact with children, parents and foster parents.

231.    Moreover, upon information and belief, ACS fails to ensure that Contract Agencies make unannounced visits to ensure that children in ACS custody are protected from maltreatment.  Upon information and belief, ACS also fails to ensure that visits with children take place privately and out of the presence of the child's caretaker.

232.    ACS's failure to ensure that Contract Agency caseworkers maintain contact with key persons to ensure the safety and well-being of children in its care substantially departs from reasonable professional standards and demonstrates a deliberate indifference to the risk of harm to Plaintiff Children.

233.    As a direct result of ACS's failure to ensure that caseworkers maintain regular contact with children, parents and foster parents, Plaintiff Children frequently suffer harm because their assigned caseworkers are unable to meaningfully assess the child's safety and well-being and to provide necessary services to place the child into a permanent home.  ACS's failure to ensure that Contract Agency caseworkers make sufficient contacts with the children in ACS

A0169

custody substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the risk of harm to Plaintiff Children.

*** 

234.    As a direct result of Defendants' failure to ensure that the first point of contact for all Plaintiff Children—the Contract Agency caseworkers—are trained, supervised, staffed and performing visits consistent with professional standards, Plaintiff Children frequently suffer harm because their assigned caseworkers are ill-prepared to make the judgments necessary to promote their safety, permanency and well-being, unable to meaningfully address their complex and varied needs and unable to meaningfully assess the child's safety and well-being or provide necessary services.  ACS's failures as described above substantially depart from accepted professional judgment and demonstrate a deliberate indifference to the harm, risk of harm and violations of legal rights suffered by Plaintiff Children.

C.    Defendants' Processes for Making Foster Placements in New York City Are Deficient.

235.    When ACS removes a child from his or her parents, ACS is obligated to provide a safe temporary home for that child until he or she is discharged from foster care.  Federal and state law require ACS to ensure that each child in ACS custody is placed in the most appropriate, least restrictive placement available.  Professional standards dictate that foster placements be based on an assessment of the individual child's needs and promote stability and continuity by placing children with relatives, keeping children in their communities and schools, and keeping siblings together whenever possible.

236.    In order to meet the needs of a large and diverse foster care population, ACS must ensure the recruitment and maintenance of a sufficient number of homes to accommodate the

number of children currently in custody and additional children as they enter the system on an ongoing basis.  In addition, a sufficient array of placement types must be available to meet children's needs.  The types of placements will range from "basic" foster homes that provide ordinary parental care to children without heightened therapeutic needs, to more "therapeutic", "intensive" or "specialized" foster homes that receive additional training and support for the care of more high-needs children, to more highly structured or "restrictive" group homes and residential programs suitable for children who cannot yet thrive in a family setting.  In addition, placements may vary in terms of their likelihood to develop into permanent or adoptive homes if the child cannot safely be returned to his parents.

237.    Placement in a stable and appropriate foster home can be critical to a child's chances of securing a permanent home because a child who cannot safely be returned to his parent is most likely to be adopted by kin or a foster parent.

238.    However, ACS fails to ensure that Contract Agencies recruit and retain an adequate number and variety of placements to meet Plaintiff Children's needs.  In particular, ACS fails to ensure that a sufficient number of pre-adoptive homes are recruited and retained, particularly for children who cannot safely be returned to their parents but who are "hard to place" into adoptive homes, such as adolescents, children with health or behavioral problems and large sibling groups.

239.    Pursuant to the Agreements, the City pays each Contract Agency per diem payments for every day a child is in foster care, thus incentivizing Contract Agencies to keep children in care longer.  As a result, Contract Agencies may not pursue adoptive resources with urgency or offer sufficient resources for persons who are interested in adopting foster children.  Upon information and belief, Contract Agencies often tell individuals interested in adoption that

A0171

they are "in the business of fostering, not adoption"—even though ACS has delegated to them *both* the care of children who safely can be returned to their parents *and* the care of children in need of adoption and waiting desperately for a permanent home and family to call their own.

240.    The City and State Defendants have long been aware of, and have failed to fix, this systemic failure.  Indeed, Defendant Carrión recently admitted that ACS "really need[s] to do a better job of publicizing . . . we need to do more to get the message out that these children are waiting and that they need adoptive homes."  However, the City Defendants have recently taken actions that will make these problems worse—by defunding the only two voluntary service providers whose sole mission was to find adoptive homes for older and "hard to place" children in foster care.  During a March 2015 City Council meeting, Commissioner Carrión stated that the defunding of these two agencies "wasn't a great loss".

241.    ACS also lacks an effective system for appropriately matching Plaintiff Children with the most appropriate foster placement to meet their needs.  Upon information and belief, ACS does not assess a child's safety, health or permanency needs prior to placing the child with a Contract Agency.  Instead, ACS makes a blind placement decision based on which Contract Agency has availability at the time the placement is sought.  Upon information and belief, the Contract Agency does not assess a child's safety, health or permanency needs prior to placing the child into a foster placement.  Instead, the Contract Agency makes the determination based on which foster placement has availability at the time the placement is sought.

242.    Put simply, ACS fails to ensure that the children in its custody who cannot, or who are least likely to, return home safely are placed in pre-adoptive foster placements that are more likely to turn into permanent adoptive homes.  Instead, ACS places the child with whatever Contract Agency has availability at the time the placement is sought.

243.     Moreover, ACS also fails to ensure that children who are unlikely to be safely returned to their parents and who will not be adopted by kin or their current foster parent are quickly placed with Contract Agencies capable of individually recruiting adoptive parents.

244.     As a direct result of these failures, Plaintiff Children frequently are harmed because they are not placed in the best foster home to meet their safety and permanency needs. ACS's failure to recruit and retain a sufficient number of foster homes and to match children in its custody with foster placements that meet their needs substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the harm, risk of harm and violations of rights suffered by Plaintiff Children.

> D.     ACS Fails To Ensure that Meaningful Case Plans and Service Plans for Foster Children Are Developed and Implemented.

245.     Federal and state law require caseworkers to establish a permanency goal and to develop a strategic plan for achieving that goal.  This includes establishing a permanency goal, engaging in concurrent planning, developing and implementing service plans to promote reunification, and recruiting and securing an alternative permanent home for children who cannot be safely returned home.

246.     According to OCFS's own standards, caseworkers in New York State should establish a child's permanency goal within 30 days of the child entering the foster care system. However, by OCFS's own measure, nearly one-third of children entering foster care for the first time do not have a documented permanency goal within 90 days of admission.

247.     Federal and state law and policy require caseworkers in New York City to conduct concurrent permanency planning as soon as a child is taken into foster care, so that there is a primary permanency plan and a secondary permanency plan that caseworkers pursue simultaneously.  ACS fails to ensure that concurrent planning occurs.  Upon information and

80

belief, caseworkers do not begin to engage in non-reunification permanency planning until long after it becomes clear that the child's parents will not be able to safely care for the child.

248.    As a direct result of these systemic deficiencies, New York City's foster children stay in the system for far too long.  This is no secret to ACS.  ACS has been aware of rampant case planning deficiencies in New York City for years.

    a.    In the 2002 and 2009 CFSRs, the federal government concluded that appropriate permanency goals were not established in a timely manner for children in foster care in New York State.

    b.    Similarly, the Long Road Home Study, which was prepared in conjunction with ACS in 2009, found that children in ACS custody spent a long time in foster care before their permanency goal was changed to adoption, alternative permanency options were not adequately explored and concurrent planning was not sufficiently documented.

249.    As a direct result of Defendants' failures (as described in this section) to ensure the provision of meaningful and appropriate case plans, Plaintiff Children frequently grow up in ACS custody without a permanent home or family to call their own.  ACS's failure to ensure that meaningful and appropriate case planning occurs substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the harms, risk of harms, and violations of legal rights being suffered by Plaintiff Children.

    1.    <u>ACS Fails To Ensure Services Are Provided To Sustain Family Ties and Support Reunification When It Is Safely Possible.</u>

250.    After a child is removed from home due to abuse or neglect, federal and state law and policy dictate that the preferred course of action is to reunify the child with his or her

81

parents. Reunification, however, is only appropriate where the reason for removal has been addressed through appropriate services to the family so that the child's safety is assured. However, ACS fails to ensure the provision of meaningful case planning and effective services to support reunification:

    a.    ACS often fails to ensure that Contract Agencies involve parents in case planning and service planning for their children. In the 2009 CFSR, the federal government found that ACS had adequately assured family involvement in case and services planning in only 45% of cases—well below the national standard of 95%.

    b.    ACS fails to ensure that the reunification services required are adequately tailored to ensure that the child in ACS custody can safely be returned home. Often the services Contract Agencies require and refer parents to do not correspond to the conduct that led to the removal of the child from the home in the first place. For example, most parents are required to attend standardized anger management or parenting classes even though neither of those classes offer the particularized support that a parent may need. Upon information and belief, Contract Agencies do not evaluate services to determine if services better suited to a parent's needs are available or, if they do, it is not until after the parent has completed standardized classes. Upon information and belief, Family Court judges are often reluctant to return children to their parents where the issue giving rise to the initial removal has not been addressed.

82

c.    ACS fails to ensure that required services are evidence-based and represent recent innovations in the field.  For example, required mental health services often do not incorporate trauma-based practice or cognitive behavioral therapy.

d.    ACS fails to ensure that required services accomplish the purpose they purport to—ensuring children in ACS custody can be returned home within a reasonable period of time.  Upon information and belief, neither ACS nor the Contract Agencies perform regular evaluations of what services correspond to successful reunifications.

e.    ACS fails to ensure efficiency and coordination among multiple service providers, fails to ensure that required services are not duplicative of one another and fails to consider whether it is logistically possible for parents to comply with service plans (while also potentially searching for housing or employment, or working)—all of which delays children in foster care being returned to their parents.

f.    ACS fails to ensure services are available to parents so that children in ACS custody can be returned home within a reasonable period of time.  Contract Agencies frequently require parents to take a certain action or to obtain a certain service so that the child in foster care can return home, but that same parent is not provided with critical assistance in taking that action or obtaining that service.  For example, many parents are required to obtain permanent housing before their children in ACS custody can be returned.  However, ACS fails to provide assistance with completing

83

applications for public housing or expediting those applications. When mental health services are required, parents find they have no access to mental health services in their community or are unable to afford the appropriate services.

g.   ACS also fails to ensure alternative services are available to parents so that children in ACS custody can be returned home within a reasonable period of time. Upon information and belief, if suitable group classes do not exist, Contract Agencies do not seek out alternative arrangements, such as therapy or counseling, to meet a parent's needs more quickly.

251.   ACS's failure to ensure that reunification services are appropriately tailored, effective and sufficiently available prevents or delays reunification, even though many parents could resume custody of their children if the proper services were provided consistent with federal and state law and professional standards.

252.   These systemic failures have long been known to ACS. In 2003, the New York City Child Welfare Advisory Panel noted that ACS failed to ensure that parents knew how to get information about services or other issues, or whether or not someone from ACS or the Contract Agency was responsible for ensuring the service plan would be carried out and that services would be provided. The Long Road Home Study, which was conducted in 2009 in conjunction with ACS, found that substantial numbers of parents did not receive necessary reunification services due to both parents' lack of participation and casework failures.

253.   ACS has failed to address these problems and children in ACS custody have suffered as a direct result.

A0177

## 2. ACS Fails To Ensure Timely Adoptions.

254. When a child has been in foster care for 15 of the last 22 months, federal and state law require ACS to file a petition to terminate parental rights unless certain compelling circumstances exist and are documented. ACS has delegated its responsibility to timely file TPR petitions to the Contract Agencies. However, ACS fails to ensure that TPR petitions are timely filed consistent with federal and state law.

255. Defendants are well aware of this failure. In December 2011, ACS reported that New York City was failing to meet federal and state law standards for the overwhelming majority of children in ACS custody. For FY 2010—the most recent 12-month period for which this data is available—ACS reported that 94.9% of children who had been in ACS custody for the past 18 months did not have a TPR petition filed.

256. ACS's failure to file TPR petitions in accordance with the time periods set by federal and state law is not a new problem. In the 2002 CFSR, the federal government reported that in New York State, caseworker turnover, staffing shortages, transfer of cases and caseworkers' lack of familiarity with cases slowed down the TPR process. In the 2002 CFSR Report, the federal government also reported that delays in Family Court, including "lengthy adjournments", "w[ere] seen as the greatest barrier" to the timely termination of parental rights. In the 2009 CFSR, the federal government concluded that New York State met federal requirements regarding timely termination of parental rights in only 62% of cases reviewed—far less than the 90% required to meet the national standard—and was not consistent in documenting compelling reasons when a termination of parental rights petition was not filed. Upon information and belief, the CFSR results for New York State are heavily influenced by New York City's child welfare system, which accounted for over 60% of children in foster care in New York State in both 2002 and 2009.

85

257.     Once both parents' rights have been either voluntarily surrendered or terminated, a child is considered "freed" or legally available to be adopted into a permanent home and family.  New York State regulations require that a child be freed for adoption within 12 months of his or her permanency goal changing to adoption.

258.     However, ACS fails to ensure that children in its custody are freed for adoption within a reasonable time period.  In New York City, it takes longer for a child in foster care to be freed for adoption than anywhere else in the country.  Based on the most recent federal data available, it takes nearly two times longer to be freed for adoption in New York City than in the rest of New York State (42.2 months versus 22.1 months), and 2.5 times longer to be freed for adoption in New York City than in the rest of the nation (42.2 months versus 16.8 months).

259.     ACS also fails to act on applications from potential adoptive families within the time periods set by state law.

260.     When a foster parent or other person wants to adopt a child in foster care in New York City, he or she must submit an application.  By state law, an adoption application must be acted upon within six months and such action must be sufficiently documented.

261.     Then a potential adoptive parent must undergo an adoption study during which his or her fitness to be an adoptive parent is assessed.  Completion of adoption studies are subject to strict timelines under state law.  Priority for completion of an adoption study is determined by the characteristics of the child that the applicant seeks to adopt.  Those who seek to adopt children with the age, racial and other characteristics of the highest proportion of children waiting to be adopted are given first priority.  Second priority is given to those who seek to adopt photo-listed children.  All other applicants are given third priority.  For applicants with first priority, an adoption study should be offered within 30 days.  An adoption study must be

86

completed within four months of initiation, subject to appropriate documentation of an exception.

262.    When a foster parent applies to adopt a child, the adoption study must be completed within two months of application when the child is legally free for adoption or within four months of application when the child is not legally free for adoption.

263.    Pursuant to state law, ACS must place a child who has been legally freed for adoption in an adoptive home within six months, or document an appropriate exception.  State law also requires that adoptions be finalized within 12 months of the child placement in an adoptive home.

264.    Upon information and belief, ACS fails to ensure that Contract Agencies comply with the timelines set by state law for conducting adoption studies and acting on adoption applications.

265.    Upon information and belief, ACS fails to ensure that applications to become an adoptive parent are acted upon within six months as required by state law.

266.    Upon information and belief, ACS fails to ensure that Contract Agencies offer to complete adoption studies within six months.

267.    Upon information and belief, ACS fails to ensure that Contract Agencies offer to initiate adoption studies for those with first priority within 30 days.

268.    Upon information and belief, ACS fails to ensure that Contract Agencies complete adoption studies within four months of beginning the study or that an exception is appropriately documented.

269.     Upon information and belief, ACS fails to ensure that Contract Agencies complete adoption studies within two months of an application by a foster parent to adopt a child who is legally freed for adoption.

270.     Upon information and belief, ACS fails to ensure that Contract Agencies complete adoption studies within four months of an application by a foster parent to adopt a child who is not legally freed for adoption.

271.     Upon information and belief, ACS fails to ensure that Contract Agencies place children who have been legally freed for adoption into adoptive homes within six months, or that an exception is appropriately documented.

272.     ACS fails to ensure that children in its custody have finalized adoptions within 12 months of the child being placed in an adoptive home, as required by state law.  In September 2012, ACS reported that 72% of children did not have finalized adoptions within 12 months of being placed in an adoptive home.[7]

273.     Defendants' failures to ensure that Contract Agencies process adoption applications, conduct adoption studies, place children in adoptive homes and finalize adoptions within the time periods set by state law further delays providing these children in ACS custody— who likely have already been in foster care for many months or even years—with a permanent home and family.

---

[7] 517 of the 1,825 children (28%) in adoptive placements on March 31, 2011 were adopted within 12 months of being adoptively placed.

A0181

E.     Defendants Fail To Ensure Timely Adjudication of Family Court Proceedings
       Involving Children in Foster Care.

274.    Defendants' failure to ensure that Family Court proceedings are adjudicated in a

timely fashion consistent with state law contributes significantly to the length of time New York

City children spend in foster care without permanent homes and families.

275.    State law requires that a child who is placed into foster care have a permanency

hearing within eight months of being placed into foster care and every six months thereafter.

That hearing must be completed within 30 days.  The purpose of permanency hearings is to

monitor the child's safety and well-being, the family's progress, and efforts to return the child

home or to find the child another permanent home.  Upon information and belief, Defendants fail

to ensure that all children in ACS custody receive timely permanency hearings as required by

state law.

276.    The Long Road Home Study, which was prepared in 2009 in conjunction with

ACS, detailed the following findings with respect to delays in Family Court proceedings

involving children in ACS custody:

       a.      The length of time between a child's entry into foster care and the Family

               Court's completion of the fact-finding and disposition hearings was

               extremely long for many children;

       b.      Many children in ACS custody do not receive timely permanency hearings

               as required by state law;

       c.      The most common reasons for permanency hearing delays were that the

               Contract Agency had not submitted the permanency hearing report on

               time, that the Family Court did not have sufficient time for the hearing,

               that Contract Agency caseworkers were not present, that the permanency

89

hearing report did not sufficiently address the issues in the case, and that
ACS caseworkers were not present; and

d. Termination of parental rights proceedings were extremely delayed for
most children.

Additionally, the study noted that the number of adjournments and the length of time between adjournments of all types of Family Court proceedings contribute to children's lengthy stays in foster care in New York City. The published study stated:

> "[T]he Court gives ACS and the [Contract Agencies] many chances (and multiple hearing adjournments) to present evidence and provide necessary services to parents, even after they have been slow and negligent in doing so."

Finally, the study found that a lack of accountability in Family Court proceedings contributes to delays in placing children in ACS custody into permanent homes and families, stating:

> "The Court's decision-making is hampered by poor-quality casework by ACS and the [Contract Agencies]. The Court depends on ACS and the [Contract Agencies] to provide appropriate services to children and families and to inform the Court's decision-making through assessments of the children's progress toward permanency . . . [J]udges and referees expressed frustration with the quality of the agencies' case practices – and the fact that many caseworkers seem to see their role as only documenting parents' attendance at services rather than providing the Court with clinical assessments of parents' progress. In addition . . . the parties infrequently make applications or motions to the Court for relief to address pressing issues and try to move cases forward."

277.    In 2010, the New York County Lawyers' Association Task Force on the Family Court released a report recognizing two causes for delay in Family Court: (1) a shortage of Family Court judges and (2) a culture of delay. The Task Force made a number of recommendations to minimize delay and enhance the effectiveness of litigation, including:

A0183

a.  scheduling trials where a child has been removed within 45 days of the first appearance;

b.  requiring compliance with timely production and filing of documents, as well as attendance at status and trial conferences;

c.  scheduling times certain for trial conferences;

d.  holding trials in block times on consecutive days;

e.  refraining from adjourning trials for more than 30 days, and then only for good cause shown; and

f.  disciplining attorneys and other personnel who are unprepared, late or fail to appear.

278.  Defendants' failure to ensure that ACS and Contract Agency attorneys and caseworkers are appropriately staffed with caseloads consistent with professional standards and given necessary support further contributes to delays in Family Court proceedings.

279.  Upon information and belief, delays continue to plague the vast majority of Family Court proceedings involving children in ACS custody in New York City.

280.  Defendants' failures result in delays in Family Court proceedings involving children in ACS custody in New York City and include:

a.  the State's failure to ensure adequate judicial resources are devoted to Family Court in New York City;

b.  the State's failure to provide Family Court judges in New York City with sufficient resources, including referees or law clerks with social work experience;

91

c.       Defendants' failure to ensure that ACS and Contract Agency attorneys and caseworkers have caseloads consistent with professional standards;

d.       ACS's failure to ensure that attorneys and caseworkers appear at all Family Court proceedings prepared;

e.       ACS's failure to ensure that attorneys and caseworkers do not request adjournments absent good cause shown;

f.       ACS's failure to ensure that necessary paperwork is prepared in accordance with reasonable professional standards and submitted to the Family Court in a timely fashion; and

g.       ACS's failure to ensure that caseworkers are trained to give the Court detailed assessments of children and parents' progress in accordance with reasonable professional standards.

281.    A three- or six-month adjournment is a long time to a child in ACS custody who is struggling with the uncertainty and emotional harm of not knowing if or when he or she will be moved again and of not having a permanent home and family to call his or her own. Defendants have an obligation to ensure that all service providers, including caseworkers and attorneys, recognize the urgency of Family Court proceedings for Plaintiff Children, who are languishing in ACS custody.

282.    As a direct result of Defendants' failure to ensure that all reasonable efforts are made to ensure the timely adjudication of Family Court proceedings involving children in its custody, Plaintiff Children suffer harm by being forced to grow up in ACS custody rather than in a permanent home.  Defendants' failures substantially depart from reasonable professional

standards and demonstrate a deliberate indifference to the harms, risk of harms and violations of legal rights suffered by Plaintiff Children.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Substantive Due Process under the U.S. Constitution)**
**(Asserted by the Named Plaintiff Children and Plaintiff Children against Defendants)**

283.    Each of the foregoing allegations is incorporated as if fully set forth herein.

284.    A state assumes an affirmative duty under the Fourteenth Amendment to the United States Constitution to provide reasonable care to and to protect from harm a child it has taken into its foster care custody.

285.    The foregoing actions and inactions of Defendants City of New York, ACS, Gladys Carrión, in her official capacity, State of New York, OCFS and Sheila J. Poole, in her official capacity, constitute a policy, pattern, practice or custom that is inconsistent with the exercise of accepted professional judgment and amounts to deliberate indifference to the constitutionally protected liberty and privacy interests of all Named Plaintiff Children and Plaintiff Children.  As a result, all Named Plaintiff Children and Plaintiff Children have been, and are at risk of being, deprived of substantive due process rights conferred upon them by the Fourteenth Amendment to the United States Constitution.

286.    These substantive due process rights include, but are not limited to:

a.    the right to freedom from maltreatment while in foster care;

b.    the right to protection from unnecessary intrusions into the child's emotional well-being while in government custody;

93

    c.     the right to services necessary to prevent unreasonable and unnecessary intrusions into the child's emotional well-being while in government custody;

    d.     the right to conditions and duration of foster care reasonably related to the purpose of government custody;

    e.     the right to treatment and care consistent with the purpose and assumptions of government custody; and

    f.     the right not to be maintained in custody longer than is necessary to accomplish the purpose to be served by taking a child into government custody.

## SECOND CAUSE OF ACTION

**(First, Ninth and Fourteenth Amendments to the U.S. Constitution)**
**(Asserted by the Named Plaintiff Children and Plaintiff Children against Defendants)**

287.    Each of the foregoing allegations is incorporated as if fully set forth herein.

288.    The foregoing actions and inactions of Defendants City of New York, ACS, Gladys Carrión, in her official capacity, State of New York, OCFS and Sheila J. Poole, in her official capacity constitute a policy, pattern, practice or custom that is inconsistent with the exercise of professional judgment and amounts to deliberate indifference to Plaintiffs' constitutional rights.  As a result, all Named Plaintiff Children and Plaintiff Children have been, and are at risk of being, deprived of the right to a permanent home and family derived from the First Amendment right of association, the Ninth Amendment's reservation of rights to the people and the Fourteenth Amendment's substantive due process protections.

94

## THIRD CAUSE OF ACTION

**(The Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 670 *et seq.*)**
**(Asserted by the Named Plaintiff Children and Plaintiff Children against the State**
**Defendants and City Defendants and by the Public Advocate against the City Defendants)**

289.   Each of the foregoing allegations is incorporated as if fully set forth herein.

290.   The foregoing actions and inactions of Defendants City of New York, ACS,

Gladys Carrión, in her official capacity, State of New York, OCFS and Sheila J. Poole, in her

official capacity, constitute a policy, pattern, practice or custom of depriving the Named Plaintiff

Children and Plaintiff Children of the rights conferred upon them by the Adoption Assistance

and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997, to:

    a.    placement in a foster placement that conforms to nationally recommended

          professional standards, 42 U.S.C. § 671(a)(10);

    b.    a written case plan that includes a plan to provide safe, appropriate and

          stable foster care placements, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

    c.    a written case plan that ensures that the child receives safe and proper care

          while in foster care and implementation of that plan,

          42 U.S.C. §§ 671(a)(16), 675(1)(B);

    d.    a written case plan that ensures provision of services to parents, children

          and foster parents to facilitate reunification, or where that is not possible,

          the permanent placement of the child and implementation of that plan,

          42 U.S.C. §§ 671(a)(16), 675(1)(B);

    e.    a written case plan, where appropriate, that ensures the location of an

          adoptive or other permanent home for the child and implementation of that

          plan, 42 U.S.C. §§ 671(a)(16), 675(1)(E);

A0188

f.   a written case plan that ensures the educational stability of the child while
     in foster care and implementation of that plan,
     42 U.S.C. §§ 671(a)(16), 675(1)(G);

g.   a case review system in which each child has a case plan designed to
     achieve safe and appropriate foster care placements,
     42 U.S.C. §§ 671(a)(16), 675(5)(A);

h.   a case review system in which the status of the child is reviewed no less
     frequently than every six months by a court, or person responsible for case
     management, for purposes of determining the safety of the child,
     continuing necessity and appropriateness of the placement, extent of
     compliance with the permanency plan and projected date of permanency,
     42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C);

i.   a case review system that ensures that for each child that has been in foster
     care for 15 of the most recent 22 months, the state files a petition to
     terminate the parental rights of the child's parents and, concurrently,
     identifies, recruits, processes, and approves a qualified family for an
     adoption, or documents compelling reason for determining that filing such
     a petition would not be in the best interests of the child,
     42 U.S.C. §§ 671(a)(16), 675(5)(B), 675 (5)(E); and

j.   receive quality services to protect each child's safety and health,
     42 U.S.C. § 671(a)(22).

291.   As a direct result of the City Defendants' failure to comply with the Adoption

Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act

96

of 1997, the Office of the Public Advocate has been forced to expend resources investigating and

responding to complaints. The Defendants' continued failure to adhere to the provisions of the

law will result in the expenditure of similar resources in the future.

## FOURTH CAUSE OF ACTION

**(New York State Social Services Law)**
**(Asserted by the Named Plaintiff Children, Plaintiff Children and the Public Advocate**
**against the City Defendants)**

292.     Each of the foregoing allegations is incorporated as if fully set forth herein.

293.     The foregoing actions and inactions of Defendants City of New York, ACS,

Gladys Carrión, in her official capacity, State of New York, OCFS and Sheila J. Poole, in her

official capacity, constitute a deprivation of rights conferred on the Named Plaintiff Children and

Plaintiff Children by provisions of the New York State Social Services Law and regulations

adopted thereto, including:

a.     provision of various adoption services, such as evaluation of a child's

placement needs and pre-placement needs, recruitment of a home study

for prospective adoptive parents, placement planning and supervision, as

required under New York State Social Services Law § 372-b;

b.     timely action on adoption applications and documentation of all action

taken on such, as required under

New York State Social Services Law § 372-e;

c.     furnishing adoptive parent applicants with reasons for agency failure to act

on applications and denial of applications, as required under New York

State Social Services Law § 372-e;

97

d.      termination of parental rights for children in foster care for 15 out of the most recent 22 months and, where applicable, appropriate documentation of exceptions, as required under New York State Social Services Law § 384-b;

e.      timely completion of adoption home studies, as required under 18 N.Y. Comp. Codes R. & Regs. tit. 18, §§ 421.14, 421.15 and 421.19;

f.      timely and complete preparation and amendment of the FASP, as required under New York State Social Services Law § 409-e and 18 N.Y. Comp. Codes R. & Regs. tit. 18, §§ 428.6 and 428.7;

g.      placement in a foster placement that meets standards for continuity and appropriate level of placement, as required under 18 N.Y. Comp. R. & Regs. tit. 18, § 430.11;

h.      timely implementation of the FASP and timely occurrence and completion of FASP reviews, as required under 18 N.Y. Comp. Codes R. & Regs. tit. 18, § 430.12;

i.      timely initiation of proceedings to terminate parental rights, as required under 18 N.Y. Comp. Codes R. & Regs. tit. 18, §§ 430.12 and 431.9;

j.      timely placement in adoptive homes, as required under 18 N.Y. Comp. Codes R. & Regs. tit. 18, § 430.12; and

k.      timely completion of adoptions of children who are legally free for adoption, as required under 18 N.Y. Comp. Codes R. & Regs. tit. 18, § 430.12.

A0191

294.     As a direct result of the City Defendants' failure to comply with New York State

Social Services Law and regulations adopted thereto, the Office of the Public Advocate has been

forced to expend resources investigating and responding to complaints.  The Defendants'

continued failure to adhere to the provisions of the law will result in the expenditure of similar

resources in the future.

**FIFTH CAUSE OF ACTION**

**(Common Law Contract)**
**(Asserted by the Named Plaintiff Children, Plaintiff Children and the Public Advocate**
**against the City Defendants)**

295.     Each of the foregoing allegations is incorporated as if fully set forth herein.

296.     The Agreements for the purchase of foster care services between ACS and the

Contract Agencies constitute valid, binding and enforceable contracts.[8]

297.     The Public Advocate is a member of New York's City Council (the "Council").

Charter of the City of New York, Chapter 2 § 22.  The Council is charged with reviewing "on a

regular and continuous basis the activities of the agencies of the city, including their service

goals and performance and management efficiency."  Charter of the City of New York, Chapter

2 § 29(a)(2).  Further, the Council is charged with overseeing "patterns of contractual spending

by city agencies" and "procedures for evaluating contractor performance."  Charter of the City of

New York, Chapter 2 § 30(2), (4).

298.     Under the terms of the Agreements, ACS pays hundreds of millions of dollars to

Contract Agencies that agree to "provide comprehensive family foster care services as set forth

---

[8] To the best of our information and belief, the Agreements, which are listed in Appendix A, were current as of November 2014 (*see* ¶ 119) and are still in force today.  Attached hereto as Exhibit 1 is a copy of an excerpt of one such Agreement between ACS and a Contract Agency, which has been modified to include the relevant portion of the Agreement.  The Agreements are substantively identical from Contract Agency to Contract Agency, with the exception of the contracting parties and the contract amount.

in this Agreement, the Law, court orders and mandates, ACS Policies, the Fiscal Manual"[9] and several appendices to each Agreement. Agreement for the Purchase of Regular Family Foster Care Services Part II, Section 2.01(A) (General Requirements).

299. Under the terms of the Agreement—and by law—the management and supervisory staff of ACS, on behalf of the Commissioner of ACS, "has the ultimate responsibility for the protection and preservation of the welfare of each child receiving services", and "has the ultimate authority for making all decisions relative to the welfare of such child". Agreement for the Purchase of Regular Family Foster Care Services Part II, Section 4.01(A) (Responsibility and Authority of ACS and Procedure for Final Decisions on Issues Related to Services Provided to the Client).

300. City Defendants have breached and failed to enforce the Agreements, which were intended for the benefit of the Named Plaintiff Children and Plaintiff Children, and over which the Public Advocate has oversight.

301. The Agreements state that "ACS and the Contractor agree that the fundamental purpose of [the] Agreement is to provide the best available services, care and treatment to Foster Children who are entrusted to the Contractors care, and further ensure that the health, welfare and fundamental rights of the Foster Children shall be the guiding principle for all decisions which affect their lives". Agreement for the Purchase of Regular Family Foster Care Services Part II, Section 4.01(B) (Responsibility and Authority of ACS and Procedure for Final Decisions on Issues Related to Services Provided to the Client).

302. As a direct and causal result of City Defendants' breach of the Agreements, the Named Plaintiff Children and Plaintiff Children have been harmed.

---

[9] This language may differ to account for the type of foster placement services provided for in the Agreement but, in substance, the provisions are identical.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Children respectfully request that this Honorable Court:

a. Assert jurisdiction over this action;

b. Order that Plaintiff Children may maintain this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

c. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, declare unconstitutional and unlawful:

 1. Defendants' violation of Plaintiff Children's right to be free from harm under the Fourteenth Amendment to the United States Constitution;

 2. Defendants' violation of Plaintiff Children's rights under the First, Ninth and Fourteenth Amendments to the United States Constitution;

 3. Defendants' violation of Plaintiff Children's rights under the Adoption Assistance and Child Welfare Action of 1980, as amended by the Adoption and Safe Families Act of 1997, 42 U.S.C. § 670 *et seq.*;

 4. City Defendants' violation of Plaintiff Children's rights under New York Social Services Law and regulations adopted thereto; and

 5. City Defendants' violation of Plaintiff Children's rights under the Agreements with the Contract Agencies.

A0194

d.    Permanently enjoin Defendants from subjecting Plaintiff Children to
practices that violate their rights, including:

1.    Enjoin City Defendants from placing children with Contract
Agencies that do not maintain caseloads for all workers providing
direct supervision and planning for children that conform to
accepted professional standards, as developed by either the COA
and/or the CWLA, or a workload analysis conducted by ACS.
Require that ACS independently and periodically verify that every
Contract Agency meets and maintains the applicable caseload
standards and its verification process and that the results shall be
public information.

2.    Require City Defendants to develop a process for matching
children with Contract Agencies that takes into account the child's
need for permanence, the child's service needs, and the Agency's
demonstrated ability to provide timely permanence for children,
and timely and necessary individualized services for children and
families based on timelines set by ACS in accordance with federal
and state law and accepted professional standards.  Require that
ACS independently and periodically verify that each Contract
Agency meets and maintains the applicable standards set by ACS
and its verification process and that the results shall be public
information.

102

3.     Enjoin ACS from placing children in Contract Agencies that do not ensure that all workers receive training that OCFS and ACS shall approve and certify as meeting accepted professional training standards. Require that ACS independently and periodically verify that the approved training is being provided to all workers, and their verification process and that the results shall be public information.

4.     Enjoin ACS from placing children in any Contract Agency unless at least 90% of the case plans for children currently placed with the Agency (a) meet federal requirements (as set forth in 42 U.S.C. §§ 671(a)(16), 675(1)) and accepted professional standards as set by COA and/or CWLA, (b) are created in a timely fashion pursuant to applicable regulations and (c) are implemented consistent with professional standards. Require that ACS independently and periodically verify that each Contract Agency with which ACS places children meets such standards, and their verification process and that the results shall be public information.

5.     Enjoin ACS from placing children with any Contract Agency unless the Agency has demonstrated, and ACS has ascertained, that it conducts permanency planning, including concurrent planning, that it has the resources to provide individualized and effective reunification services and that it has the resources to develop and implement individualized adoptive recruitment for

103

A0196

children whose permanency goal is adoption. Require that, in conducting this assessment, ACS be guided by timelines to achieve permanency goals set by ACS in accordance with federal and state law and accepted professional standards. Require that ACS independently and periodically verify that each Contract Agency with which it places children shall meet these standards, and rank the agencies in their effectiveness in doing so. Require that their verification process and the results, including the Contract Agency rankings, shall be public information.

6.    Require that ACS develop and fund post-permanency services of sufficient duration to provide all possible support for the successful reunification, guardianship or adoption of foster children.

7.    Require that ACS ensure that its attorneys and attorneys employed by the Contract Agencies take all reasonable steps necessary (including not seeking adjournments except in extraordinary circumstances) to proceed to the adjudication and disposition in Article 10 proceedings within three months and, when a termination of parental rights process is necessary, to proceed to a disposition of that proceeding within four months of the petition being filed. Require that ACS collect and maintain detailed information on this, which shall be public record.

8.    Require that City and State Defendants regularly collect and independently verify the information necessary to determine the

A0197

Contract Agencies' compliance with the provisions of the state statutes and regulations enumerated in paragraph 293 above and provide public reports of each Agency's compliance with each of these requirements. Require that the Defendants require corrective action of any Contract Agency failing to achieve at least 75% compliance with these requirements for two continuous six-month periods, and shall terminate the contract of any Agency that fails to achieve at least 75% compliance for a two-year period.

9. Require that OCFS conduct annual case record reviews of a statistically significant sample of children in ACS custody to measure the degree to which children in ACS custody are receiving timely permanence, as required by state and federal law, and the degree to which they are being maltreated in care; issue annual public reports on the findings of these case record reviews; and require corrective action when necessary.

10. The Court shall appoint a Special Master either with special expertise in the areas covered by the Remedial Order, or who shall appoint an Expert Panel to report to the Special Master, to determine whether the standards developed by Defendants comport with acceptable professional standards, and to monitor and report on Defendants' compliance with their obligations as contained in the Court's Order. Plaintiffs shall have the right to enforce the provisions of the Court Order entered pursuant to Federal Rule of

105

Civil Procedure 65(d), and the Court shall have continuing

jurisdiction to oversee compliance with that Order.

e.      Award Plaintiff Children the reasonable costs and expenses incurred in the

prosecutions of this action, including reasonable attorneys' fees, pursuant

to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, and the Federal Rules of Civil

Procedure 23(e) and (h).

f.      Grant such other and further equitable relief as the Court deems just,

necessary and proper to protect Plaintiff Children from further harm while

in Defendants' custody in foster care.

Dated:  New York, NY
        July 8, 2015

Respectfully submitted,

by

*Marcia Robinson Lowry*

_____

Marcia Robinson Lowry

A Better Childhood, Inc.
1095 Hardscrabble Road
Chappaqua, NY 10514
(844) 422-2425
mlowry@abetterchildhood.org

CRAVATH, SWAINE & MOORE LLP

/s/ Julie A. North
_____

Julie A. North
Nicole M. Peles

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jnorth@cravath.com

*Attorneys for Plaintiffs Elisa W., by her next friend, Elizabeth Barricelli; Alexandria R., by her next friend, Alison Max Rothschild; Thierry E., by his next friend, Amy Mulzer; Ayanna J., by her next friend, Meyghan McCrea; Olivia and Ana-Maria R., by their next friend, Dawn Cardi; Xavion M., by his next friend, Michael B. Mushlin; Dameon C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; Tyrone M., by his next friend, Bishop Lillian Robinson-Wiltshire; and Brittney W., by her next friend, Liza Camellerie, individually and on behalf of a class of all others similarly situated,*

107

_____
Jennifer Levy

Public Advocate for the City of New York
1 Centre Street, 15th Floor
New York, NY 10007
(212) 669-2175
jlevy@pubadvocate.nyc.org

*Attorney for Plaintiff Letitia James, Public Advocate for the City of New York.*

108

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELISA W., by her next friend, Elizabeth Barricelli, *et al.*, | |
| Plaintiffs, | |
| -against- | |
| THE CITY OF NEW YORK, *et al.*, | |
| Defendants. | |

15 Civ. 5273 (LTS) (HBP)

**ORAL ARGUMENT REQUESTED**

## NOTICE OF MOTION FOR CLASS CERTIFICATION

PLEASE TAKE NOTICE that upon the declarations of Marcia Robinson Lowry and Julia A. North, both executed on November 20, 2015, and the accompanying Memorandum of Law in Support of Named Plaintiff Children's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Elisa W., by her next friend, Elizabeth Barricelli; Alexandria R., by her next friend, Alison Max Rothschild; Thierry E., by his next friend, Amy Mulzer; Ayanna J., by her next friend, Meyghan McCrea; Olivia and Ana-Maria R., by their next friend, Dawn Cardi; Xavion M., by his next friend, Michael B. Mushlin; Dameon C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; Tyrone M., by his next friend, Bishop Lillian Robinson-Wiltshire; and Brittney W., by her next friend Liza Camellerie, individually and on behalf of a class of all others similarly situated, by and through their attorneys, hereby move this Court, before Hon. Laura Taylor Swain, courtroom 12D, at Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY, for an order pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, certifying the following class: Children who are now or will be in the foster care custody of the New York City Administration for Children's Services, and granting such other and further relief as the Court deems just and proper.

Named Plaintiff Children have used best efforts to resolve informally the matters raised in this submission, consistent with this Court's Individual Practice Rule A.2.b, through both written and oral communications, but have been unable to do so.

Dated: New York, NY
November 20, 2015

*Marcia Robinson Lowry*

Marcia Robinson Lowry

A Better Childhood, Inc.
1095 Hardscrabble Road
Chappaqua, NY 10514
(844) 422-2425
mlowry@abetterchildhood.org

CRAVATH, SWAINE & MOORE LLP,

*Julie a North/RJX*

Julie A. North
Nicole M. Peles

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jnorth@cravath.com

*Attorneys for Plaintiffs Elisa W., by her next friend, Elizabeth Barricelli; Alexandria R., by her next friend, Alison Max Rothschild; Thierry E., by his next friend, Amy Mulzer; Ayanna J., by her next friend, Meyghan McCrea; Olivia and Ana-Maria R., by their next friend, Dawn Cardi; Xavion M., by his next friend, Michael B. Mushlin; Dameon C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; Tyrone M., by his next friend, Bishop Lillian Robinson-Wiltshire; and Brittney W., by her next friend, Liza Camellerie, individually and on behalf of a class of all others similarly situated.*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ELISA W., by her next friend, Elizabeth Barricelli; ALEXANDRIA R., by her next friend, Alison Max Rothschild; THIERRY E., by his next friend, Amy Mulzer; LUCAS T., XIMENA T., JOSE T.C. AND VALENTINA T.C., by their next friend, Rachel Friedman; AYANNA J., by her next friend, Meyghan McCrea; OLIVIA and ANA-MARIA R., by their next friend, Dawn Cardi; XAVION M., by his next friend, Michael B. Mushlin; DAMEON C., by his next friend, Reverend Doctor Gwendolyn Hadley-Hall; TYRONE M., by his next friend, Bishop Lillian Robinson-Wiltshire; BRITTNEY W., by her next friend, Liza Camellerie; MIKAYLA G., by her next friend, Amy Mulzer; MYLS J. AND MALIK M., by their next friend, Elizabeth Hendrix; and EMMANUEL S. AND MATTHEW V., by their next friend, Samuel D. Perry, individually and on behalf of a class of all others similarly situated, and LETITIA JAMES, the Public Advocate for the City of New York,

                                        Plaintiffs,

            -against-

THE CITY OF NEW YORK; the NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES; GLADYS CARRIÓN, Commissioner of the New York City Administration for Children's Services, in her official capacity; the STATE OF NEW YORK; the NEW YORK STATE OFFICE OF CHILDREN AND FAMILY SERVICES; and SHEILA J. POOLE, Acting Commissioner of the New York State Office of Children and Family Services, in her official capacity,

                                        Defendants.

15 Civ. 5273 (LTS) (HBP)

**AMENDED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

PARTIES ..............................................................................................................5

    I.      The Named Plaintiff Children.........................................................5

    II.     The Public Advocate for the City of New York ............................55

    III.    Defendants .....................................................................................58

JURISDICTION AND VENUE ............................................................................60

CLASS ACTION ALLEGATIONS ......................................................................60

STRUCTURE OF THE NEW YORK CITY CHILD WELFARE SYSTEM..............64

FACTUAL ALLEGATIONS REGARDING SYSTEMIC DEFICIENCIES
PLAGUING NEW YORK CITY'S FOSTER CARE SYSTEM AND
RESULTING HARM TO PLAINTIFF CHILDREN ...............................................75

    I.      DEFENDANTS ARE CAUSING IRREPARABLE HARM TO
          CHILDREN IN ACS CUSTODY. ................................................78

        A.     Defendants Fail To Protect Children in ACS Custody from
             Maltreatment. ................................................................78

        B.     Defendants Fail To Provide Children in ACS Custody with
             Permanent Homes and Families Within a Reasonable Time.....................79

        C.     Defendants Fail To Provide Foster Placements and Services
             that Ensure the Well-Being of Children in ACS Custody. ........................84

    II.     DEFENDANTS HAVE FAILED TO REMEDY THE SYSTEMIC
          DEFICIENCIES PLAGUING NEW YORK CITY'S CHILD
          WELFARE SYSTEM....................................................................89

        A.     City Defendants Fail To Exercise Adequate and
             Meaningful Oversight over Contract Agencies. ........................90

        B.     Defendants Fail To Ensure an Adequately Staffed and
             Appropriately Trained Child Welfare Workforce.....................92

        C.     Defendants' Processes for Making Foster Placements in
             New York City Are Deficient. ....................................................96

        D.     ACS Fails To Ensure that Meaningful Case Plans and
             Service Plans for Foster Children Are Developed and
             Implemented. ................................................................99

        E.     Defendants Fail To Ensure Timely Adjudication of Family
             Court Proceedings Involving Children in Foster Care............................107

CAUSES OF ACTION ........................................................................................112

FIRST CAUSE OF ACTION ..............................................................................112

SECOND CAUSE OF ACTION ..........................................................................113

THIRD CAUSE OF ACTION ............................................................................................114

FOURTH CAUSE OF ACTION ......................................................................................116

FIFTH CAUSE OF ACTION ...........................................................................................118

PRAYER FOR RELIEF ..................................................................................................119

ii

## PRELIMINARY STATEMENT

1.      Foster care is supposed to be safe and temporary.  For children in New York

City's foster care system, it is neither.  Children in New York City's foster care system are in one

of the most dangerous foster care systems in the country, and they spend longer in foster care

than do foster children almost anywhere else in the country.  The emotional damage—and, far

too often, abuse—suffered by these children at the hands of a system designed to keep them safe

is unacceptable.  That the responsible state and city officials have known about these problems

and done nothing to fix them is inexcusable.

2.      Nineteen named plaintiffs, all children in foster care in New York City, bring this

lawsuit as a civil rights action on behalf of all children who are now or will be in the foster care

custody of the Commissioner of New York City's Administration for Children's Services

("ACS") ("Plaintiff Children").  They seek both declaratory and injunctive relief against the city

and state agencies and officials responsible for violating their rights under the United States

Constitution, federal law, and New York state law and regulations.  Plaintiff Letitia James, as

Public Advocate for the City of New York, who has received myriad constituent complaints

concerning foster care, brings this lawsuit seeking injunctive and declaratory relief against the

State Defendants to ensure that ACS promptly remedies the systemic failures that have been

plaguing New York City's foster care system for too long.

3.      Defendants are the City of New York ("City"), ACS, Gladys Carrión,

Commissioner of ACS, in her official capacity (collectively, "City Defendants"); the State of

New York, the New York State Office of Children and Family Services ("OCFS"), and Sheila J.

Poole, Acting Commissioner of OCFS, in her official capacity (collectively, "State Defendants").

4.      Through a pattern and practice of long-standing and well-documented action and

inaction, Defendants—who are responsible for protecting New York City's foster children—fail

to keep these children safe.  And, instead of ensuring that New York City's foster children grow up in safe, permanent families, Defendants' policies and customs cause far too many children to grow up in the custody of the state, without a home or family to call their own:

a.  New York City children make up the majority of children in foster care in New York State, which has one of the worst rates of maltreatment in foster care of any jurisdiction in this country.

b.  Children in foster care in New York City spend two times as much time in state custody as children in the rest of New York State, and over double the amount of time in state custody as children in the rest of the nation.

c.  It takes longer to return New York City children in foster care to their parents than in the rest of New York State and the rest of the nation.  The most recent federal data available shows that New York City performs worse on this measure than all but five other states and territories.

d.  It takes longer for a foster child to be adopted in New York City than anywhere else in the country.  New York City has performed worse on this measure than every state since at least 2007.

e.  Many children who are without a permanent home never get adopted at all and leave the foster care system only when they get too old to stay in it any longer.  Approximately 1,000 children "age out" of the foster care system each year, often winding up homeless and without any adult with whom they have a permanent connection.

A0208

5. New York City's child welfare system is causing devastating, ongoing and long-lasting harm to New York City children in its care:

    a. Children who are separated from their parents to whom they could be returned weep at the end of visits with their parents but continue to live in foster care well beyond the time they could be returned home.

    b. Parents whose children are removed because they need services are unable to gain access to the right services and thus are unable to regain custody of their children.

    c. Children who cannot be safely returned to their parents languish in foster care, many moving from place to place, growing older and more damaged by their experiences, not knowing to which adults to form attachments, or trusting no adults at all.

    d. Children traumatized by the disruptions in their young lives do not know where they will be living from one month to the next, or whether there are any adults on whom they can rely. Often by the time a decision is made about what the plan should be for their future, they are irreparably damaged by their experiences in foster care.

6. These consequences are the result of systemic deficiencies in which:

    a. The state agency, OCFS, is responsible for foster care across New York State and for ensuring that federal foster care funds are spent as required by the governing federal statutes and state statutes and regulations

3

consistent with federal law, but neither monitors nor enforces those laws and regulations.

b.     The city agency, ACS, in whose legal custody all foster children are placed, delegates its responsibility for the day-to-day care of these children by contract to 29 agencies (the "Contract Agencies"), paying hundreds of millions of dollars to the Contract Agencies for foster care services but failing to ensure they meet minimum professional standards or provide adequate and meaningful oversight to ensure compliance with federal and state law and the applicable contracts.

c.     The damage that is being done to children in foster care in New York City as a direct result of these structural failures in the New York City child welfare system is both avoidable and a violation of these children's statutory and constitutional rights.

7.     The illegal conduct of which Plaintiffs complain has plagued New York City's foster care system for far too long—a fact well known to Defendants, all of whom have been in a position to change it.

8.     Plaintiffs seek a ruling from this Court that the structural deficiencies and long-standing actions and inactions described in this complaint violate the statutory and constitutional rights of all children dependent on the New York City foster care system for their safety, their well-being and their futures.  They seek an equitable injunction against the responsible city and state officials and agencies named as Defendants in this lawsuit, directing that appropriate relief be granted so that New York City's foster children are no longer irreparably harmed by the

4

system that is supposed to protect them. These children have a right to a safe and nurturing childhood. Plaintiffs ask this Court to protect that right.

## PARTIES

### I. The Named Plaintiff Children

### Elisa W.

9.     Plaintiff Elisa W. is a 17 year old girl in the twelfth grade. ACS removed her from her biological mother when she was approximately four years old. She has been in ACS custody for the past 13 years—over three quarters of her life.

10.     Plaintiff Elisa W. appears through her next friend, Elizabeth Barricelli. Ms. Barricelli has been an elementary school teacher for over 30 years and currently teaches elementary school science at a public school in Brooklyn. Ms. Barricelli taught Elisa W. from 2006 to 2010 when Elisa W. was in elementary school and they recently reconnected. Ms. Barricelli is familiar with Elisa W.'s background and education. Ms. Barricelli is truly dedicated to Elisa W.'s best interests.

11.     ACS removed Plaintiff Elisa W. from her biological mother when she was four years old because of allegations of physical abuse. At the time, Elisa W.'s biological mother was approximately 19 years old and living in a mother-child foster placement in New York City.

12.     Over the past 13 years, ACS has shuffled Plaintiff Elisa W. through so many foster placements that she is unable to account for all of them—a direct result of ACS's failure to ensure an appropriate foster placement that could meet her needs. In the last two years alone, Elisa W. has been in four foster placements. Elisa W. has attended at least seven schools over the course of her young life.

5

13.     Plaintiff Elisa W. has a reported history of physical and suspected sexual abuse while in ACS custody.

14.     In the first foster placement Plaintiff Elisa W. can remember, she was sexually abused by the nephew of her then-foster mother.  She was just six years old at the time.  She did not report the incident to anyone because she did not want to get in trouble.  At this same placement, Elisa W. was subjected to other physical, psychological and emotional abuse, including being forced by her then-foster mother to sleep in a bug-infested bedroom and being forced to walk around the foster home naked after bathing.  Once, Plaintiff Elisa W.'s then-foster mother beat her and denied her food as punishment for purportedly telling her biological mother that she was being beaten by her foster mother; however, the allegation had been made by the foster mother's own daughter pretending to be Elisa W.  Upon information and belief, Elisa W.'s then-foster mother would allow family members with violent criminal records in the home.  Elisa W. reports feeling like "just a total stranger" in this foster placement.

15.     In approximately 2006, Plaintiff Elisa W. was placed in another foster placement, and again suffered severe physical, psychological and emotional abuse, including sexual abuse by multiple relatives of her then-foster mother.  Elisa W.'s teachers made multiple reports of physical abuse to her caseworker, including when Elisa W.'s then-foster mother punched her in the face.  Upon information and belief, neither the Contract Agency nor ACS took any action in response to these reports.  Her then-foster mother neglected Elisa W., who often went to school unkempt and underfed; her teacher at the time, her next friend Ms. Barricelli, often had to buy Elisa W. snacks during the school day and maintained a clean uniform at school for her.  Elisa W. remained in this abusive foster placement for five years—a direct result of ACS's failure to ensure that the Contract Agency to which ACS had delegated day-to-day care of this young girl

A0212

was keeping her safe.  On April 28, 2014, Elisa W. was assigned to a different Contract Agency when it was determined she needed "therapeutic foster placements".  Although Elisa W. is from New York City, the Contract Agency first placed her in a home in Suffolk County and then in a home in Nassau County.  However, at the time—and to this day—the only person Elisa W. considers a friend lives in New York City.

16.     As a result of the great emotional damage Plaintiff Elisa W. has suffered while in ACS custody for the past 13 years, this young girl has suffered and continues to suffer from a variety of mental health problems.  Her diagnoses include depression, bipolar disorder and post-traumatic stress disorder.  She has been on anti-depressants and mood stabilizers since she was 11 years old.  In July 2014, Elisa W. requested she be placed in a mental health facility because of her mental health concerns.  Elisa W. remained there for two months.  Since her hospitalization, she has been placed on heavy doses of psychotropic medication; she reports that, as a result, she can barely string a sentence together and no longer looks people in the eye because she gets nervous.  On or about December 16, 2015, Elisa W. was voluntarily hospitalized for one day because of her mental health concerns.

17.     In addition to failing to keep Plaintiff Elisa W. free from physical, psychological and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Elisa W. in a permanent home.  Twice, Elisa W.'s biological mother conditionally surrendered her parental rights so Elisa W. could be adopted.  Neither adoption was ever finalized.  In approximately 2010, Elisa W.'s aunt expressed interest in adopting Elisa W.  This adoption was not finalized.  In 2012, after Elisa W. already had been in foster care for approximately eight years, her biological mother's parental rights were terminated.  Although Elisa W. has requested that her aunt be considered as an adoptive

A0213

resource, upon information and belief, the Contract Agency, ACS and Elisa W.'s law guardian have not taken steps to pursue this possibility or sought out other non-relative adoption possibilities for Elisa W. to finally have a permanent home and family to call her own. Indeed, Elisa W. fears that she will "age out" of foster care—where she has spent the last 13 years being abused, neglected and shuffled from place to place—and return to living with her biological mother. Elisa W. fears that if this happens she will be unable to attend college.

18.      Plaintiff Elisa W. describes her stay in foster care by noting that when she was younger she did well in school and had an extensive vocabulary, but now, as a result of her experiences in foster care and medication regimen, she has difficulty concentrating. Elisa W. is at risk of having to repeat the twelfth grade because of class days she misses for appointments made with doctors by the Contract Agency and Family Court appearances. She expresses great frustration that the Contract Agency and ACS are unresponsive to her requests for driving lessons and a state identification card—normal requests for a 17 year old girl. Although Elisa W. has told the supervisor at the Contract Agency that she wants to be like "normal kids" and go on school trips, the Contract Agency has denied her requests to go on such trips. For the 13 years Elisa W. has been in foster care, the Contract Agency, ACS and Plaintiff Elisa W.'s law guardian have been making decisions about her life but, as she puts it—"no one ever asks me what I want".

19.      During the 13 years that Plaintiff Elisa W. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful,

8

timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home. ACS has further failed to exercise meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Elisa W. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own. Because of Defendants' actions and inactions, Plaintiff Elisa W. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Alexandria R.**

20.     Plaintiff Alexandria R. is a 12 year old girl in the sixth grade. ACS removed her from her biological mother's home on August 9, 2007. She has been in the custody of ACS for the past eight years—over two thirds of her life.

21.     Plaintiff Alexandria R. appears through her next friend, Alison Max Rothschild. Ms. Rothschild is the director of a private school in New York City. Ms. Rothschild knows Alexandria R. and her current foster parents, and is familiar with her background including her education. Ms. Rothschild is truly dedicated to Alexandria R.'s best interests.

22.     Upon information and belief, this is Plaintiff Alexandria R.'s second time in foster care. Upon information and belief, ACS removed her from her biological mother a few months after she was born, placed her in a kinship foster placement with her maternal great-grandmother

9

for three and a half years and returned her to her biological mother for a few months—only to remove her and again place her in foster care in 2007.

23.     Plaintiff Alexandria R. is not the only child that ACS has removed from her biological mother and placed into foster care.  Alexandria R. has six siblings:  (1) a 15 year old sister, Andrea R.; (2) a 13 year old brother, Kavon L.; (3) an 11 year old brother, Russell W.; (4) a nine year old brother, Anton W.; (5) a seven year old sister, Naomi M.W.; and (6) a two year old sister, Raquel W.  All of her siblings are currently in foster care; five live in foster placements and Naomi M.W. has been returned to her biological father on a trial basis.

24.     In 2006, ACS opened a preventive services case involving Plaintiff Alexandria R.'s biological mother because then six year old Andrea R. had jumped out of a second floor window after being locked in her bedroom.  In August 2007, ACS removed Alexandria R. and her then-living siblings from their home and placed them in ACS custody because their biological mother's boyfriend was physically abusing Alexandria R.'s brother, Kavon L.  Now seven year old Naomi M.W. was born five months later and ACS took custody of her at birth.  On or about May 13, 2015, ACS removed Plaintiff Alexandria R.'s youngest sister, Raquel W., from their biological mother due to allegations of neglect.

25.     From 2007 to 2011, between the time she was four and eight years old, ACS bounced Plaintiff Alexandria R. from placement to placement due to its failure to ensure an appropriate foster placement that could meet her needs.  During her first four years in ACS custody, ACS placed Alexandria R. in approximately eight different foster homes and with two different Contract Agencies.  When she was approximately eight years old, Alexandria R. spent approximately six months in the mental health unit of a residential treatment facility.  Her then-foster parents dropped her off, telling her they would return the next morning to pick her up, and

A0216

never returned.  As a result, Alexandria R. suffered severe emotional trauma, compounding the emotional harm she was already experiencing from being moved from place to place.

26.     ACS moved Plaintiff Alexandria R. to her current foster placement on November 11, 2011, when she was eight years old.  She has now lived there for over four years.  At 12 years old, this is the longest she has ever lived in one place—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

27.     Plaintiff Alexandria R. has a reported history of physical and suspected sexual abuse.  Upon information and belief, the physical and suspected sexual abuse has taken place while Alexandria R. has been in ACS custody, and includes physical abuse by her biological mother during an unsupervised visit at her then-foster home.

28.     As a result of the great emotional damage Plaintiff Alexandria R. has suffered while in ACS custody for the past eight years, this young girl has suffered and continues to suffer from a variety of mental health problems.  Her diagnoses over the past eight years have only grown more serious during her time in foster care and have included adjustment disorder (2007), adjustment disorder with mixed disturbance emotions and conduct (*i.e.*, mood and behavioral problems) (2009), disorder of childhood (2009) and post-traumatic stress disorder (2014 to present).  She also suffers from learning disabilities and is behind her peers in school.

29.     Since being placed in ACS custody, Plaintiff Alexandria R. has suffered severe emotional and behavioral problems, including physical aggression toward herself and others. She has an extreme distrust of people she views as "in the system", including her doctors and

therapists. She also has difficulty controlling her emotions. As recently as late 2014, Alexandria R. became highly emotional and distraught, including hysterically crying and becoming physically aggressive, when her biological mother missed a family therapy appointment.

30.     In addition to failing to keep Plaintiff Alexandria R. free from physical, psychological and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Alexandria R. in a permanent home. In approximately 2012, after she already had been in foster care for over four years, Alexandria R.'s permanency goal was changed to adoption and the Contract Agency to which ACS has delegated day-to-day responsibility for this child told this nine year old girl that she would be adopted by her foster parents. However, the adoption did not take place at that time, even though her foster parents were interested in adopting her. This created serious additional damage to Alexandria R.'s emotional state, causing her anger and confusion as to why her foster parents have not been able to adopt her. Alexandria R. reportedly has lived in fear that she will be moved yet again by ACS and has been deeply harmed by the continuing uncertainty about where and how she will grow up.

31.     In July 2013, Plaintiff Alexandria R.'s permanency goal was changed from adoption to return to parent. Upon information and belief, this is because ACS attorneys failed to take necessary steps to obtain the termination of her biological mother's parental rights.

32.     On or about October 28, 2015, Plaintiff Alexandria R.'s biological mother voluntarily surrendered her parental rights on the condition that Alexandria R.'s current foster parents adopt her. Upon information and belief, the possibility of voluntarily surrendering her parental rights or pursuing an open adoption was not discussed with Alexandria R.'s biological mother until 2015—after Alexandria R. had already been in foster care for between seven and

A0218

eight years. Although Alexandria R.'s foster parents are pursuing adopting her, they have been unable to timely obtain the documents necessary to proceed with the adoption.

33.     During the eight years that Plaintiff Alexandria R. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home. ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Alexandria R. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own. Because of Defendants' actions and inactions, Plaintiff Alexandria R. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Thierry E.**

34.     Plaintiff Thierry E. is a four year old boy in pre-kindergarten. ACS removed him from his biological mother on September 27, 2013. His permanency goal currently is to be returned to his parent. He has been in ACS custody for more than two years—over half his life.

A0219

35.     Plaintiff Thierry E. appears through his next friend, Amy Mulzer.  Ms. Mulzer is an Acting Assistant Professor of Lawyering at New York University School of Law.  The primary focus of her research includes:  Adoption, Child Welfare, Family Law, Parental Rights and Poverty Law.  Prior to joining the lawyering faculty at NYU, Ms. Mulzer spent five years representing low-income parents whose children were in foster care or at risk of being placed in foster care, first as a staff attorney at Brooklyn Defender Services and then as an appellate attorney on the assigned counsel panel for the Appellate Division, Second Department.  Ms. Mulzer is truly dedicated to Thierry E.'s best interests.

36.     On or about August 15, 2013, Plaintiff Thierry E.'s biological mother, who has been a public school teacher for over a decade, called Safe Horizon, a domestic violence hotline, to request information about how she could remove Thierry E.'s biological father from her home. Safe Horizon reported the call to the Statewide Central Register of Child Abuse and Maltreatment and ACS opened an investigation.  There was not and never has been any allegation that anyone abused Thierry E. or that his biological mother failed to provide him with appropriate, loving care.  On September 23, 2013, Thierry E.'s biological mother obtained an order of protection from the Family Court against Thierry E.'s biological father.  In her petition, she alleged that Thierry E.'s biological father had held a knife to her throat threatening to kill her, strangled her at least three times, punched her in the face and threw household furniture at her.  Thierry E.'s biological mother has not been in a relationship with Thierry E.'s biological father since September 2013 and does not intend to re-enter a relationship with him.  Thierry E.'s biological father has since been diagnosed with a psychotic disorder.

37.     ACS removed Plaintiff Thierry E. from his home on September 27, 2013, while his biological mother was at work, without taking necessary steps or making reasonable efforts

14

to determine whether Thierry E. could remain safely at home with her. His biological father was no longer living in the house.

38.     The Contract Agency to which ACS had delegated the day-to-day care of, and case planning responsibility for, Plaintiff Thierry E. first moved him to a foster placement far away from his biological mother's home and required visits to take place at the Contract Agency's office in the Bronx, even though he and his biological mother had lived in Manhattan. Moreover, the foster mother spoke only Spanish and Thierry E., then two years old, did not speak any Spanish. As a result, Thierry E.'s language and speech development was severely stunted. Thierry E.'s biological mother had him evaluated in March 2014 and the speech therapist recommended speech therapy twice a week, but the Contract Agency refused to provide this service. When Thierry E. entered a pre-kindergarten program, he started speech therapy once a week.

39.     On May 13, 2014, during a visit at the Contract Agency, Plaintiff Thierry E.'s biological mother noticed a severe rash while changing his diaper and reported this and other concerns to the Family Court. On June 21, 2014, the Family Court ordered that Thierry E. be transferred to a new Contract Agency. Thierry E. was moved to a second foster placement two days later. This foster placement is in the Bronx, even though Thierry E. and his biological mother had lived in Manhattan. In approximately December 2015, Thierry E. reported to his biological mother that his foster parent hit him. Upon information and belief, an investigation of this report is underway.

40.     Plaintiff Thierry E. has now been in foster care for more than two years—over half his life. This is a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this

15

young boy to be returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he would grow up in a permanent family.

41.     Plaintiff Thierry E. has suffered emotional harm as a result of spending nearly half his life in ACS custody without a permanent family.  All indications are that he misses his biological mother very much.  At the end of his once weekly visits with her, he cries uncontrollably.  When she expressed concern at this behavior, Thierry E.'s therapist told her that he had to "get used to it" because this was "his life now".  Upon information and belief, Thierry E. is experiencing more anxiety the longer he is without a permanent family.

42.     ACS continues to fail to ensure that Plaintiff Thierry E. is receiving appropriate services.  Although Thierry E. currently receives therapy, Thierry E.'s biological mother has expressed concerns that the therapy being provided by the Contract Agency is focused on normalizing Thierry E.'s separation from her rather than trying to help him prepare to be returned to her care—even though his permanency goal remains to be returned to his parent.

43.     In addition to failing to keep Plaintiff Thierry E. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Thierry E. in a permanent home.

44.     Although ACS removed Plaintiff Thierry E. from his home over two years ago, there has been no disposition of ACS's neglect petition against Thierry E.'s biological mother. The fact-finding hearing began only in August 2015 after having been postponed several times. The fact-finding hearing then proceeded on non-consecutive dates in September, October and November 2015. The next fact-finding hearing date is in February 2016.

45.     Plaintiff Thierry E. had his first permanency hearing in December 2014—after he had already been in ACS custody for over a year.

46.     Plaintiff Thierry E.'s permanency goal remains to be returned to his parent.  His biological mother wants nothing more than to finally bring her son home.  She has completed parenting classes, domestic violence counseling and multiple mental health evaluations in accordance with the two different Contract Agencies' instructions.  In documents filed with the Family Court, the Contract Agency has stated that Thierry E.'s biological mother "comes prepared to her visits with activities to do with her son and also tries to reinforce parenting skills that will help her son's vocabulary and pronunciation."

47.     Since his removal over two years ago, ACS has made no effort to ensure that this little boy is returned to the mother he misses, and that his permanency goal—reunification with his biological mother—is implemented as soon as possible.

48.     During the over two years that Plaintiff Thierry E. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Thierry E. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own.  Because of Defendants' actions and

17

inactions, Plaintiff Thierry E. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Lucas T., Ximena T., Jose T.C. and Valentina T.C.

49.     Plaintiff Lucas T. is a seven year old boy in the second grade.  Plaintiff Ximena T. is a four year old girl in kindergarten.  Plaintiff Jose T.C. is a three year old boy.  Plaintiff Valentina T.C. is a one year old girl.  ACS removed these children from their biological mother on February 4, 2015.  Their permanency goal is to be returned to their parent.  They have been in ACS custody for the past ten months.

50.     Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. appear through their next friend, Rachel Friedman.  Ms. Friedman is a tenth grade English teacher in Manhattan and has been a teacher since 2008.  During her time as a teacher in New York City, Ms. Friedman has worked primarily with low-income students and has taught students that are or were previously in the custody of ACS.  Ms. Friedman is truly dedicated to Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s best interests.

51.     In November 2014, Lucas T., Ximena T., Jose T.C. and Valentina T.C. and their biological mother began living in a rented room in an apartment in Queens in which they did not have full use of the kitchen.  Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother cared for the children full time while Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological father worked and lived elsewhere.  Upon information and belief, because she did not have full use of a kitchen, Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother purchased cereal, fruit and prepared food for the children to eat.

A0224

52.    ACS removed Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. from

their biological parents on February 4, 2015, reportedly due to their biological parents' inability

to adequately supervise and provide guardianship to the children because the children were left

home unattended, they had poor hygiene and there was an insufficient amount of food and

formula at their home, without taking necessary steps or making reasonable efforts to determine

whether Lucas T., Ximena T., Jose T.C. and Valentina T.C. could remain safely at home with

their biological mother.  The children spent the night of February 4, 2015, at the Children's

Center.

53.    The Contract Agency to which ACS had delegated the day-to-day care of, and

case planning responsibility for, Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C.

first moved them to a foster placement in which the foster parents did not speak Spanish even

though Lucas T., Ximena T., Jose T.C. and Valentina T.C. speak Spanish almost exclusively.

Lucas T., the only one of his siblings in school at that time, was moved to a new school.

54.    Upon information and belief, in May 2015, during a visit at the Contract Agency,

Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother noticed

bruising and lacerations on the children and reported this and other concerns to the Contract

Agency.  On May 29, 2015, Lucas T., Ximena T., Jose T.C. and Valentina T.C. were removed

from their foster placement and placed in two separate foster placements—Lucas T. and Jose

T.C. are in one foster placement and Ximena T. and Valentina T.C. are in a second foster

placement.  Upon information and belief, Lucas T., Ximena T., Jose T.C. and Valentina T.C. see

each other only during visits with their biological mother at the Contract Agency.

55.    Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. have now been in

foster care for over ten months.  This is a direct result of ACS's failure to develop and implement

an appropriate case plan and provide appropriate services consistent with professional standards to enable these young children to be returned to their biological mother or, if that were not possible within a reasonable period of time, to ensure that they would grow up in a permanent family.

56.     Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. have suffered emotional harm as a result of spending the past ten months in ACS custody without a permanent family.  All indications are that they miss their biological mother very much.  They are very excited when they have their visits with their biological mother and ask when they can go home with her.

57.     In addition to failing to keep Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Lucas T., Ximena T., Jose T.C. and Valentina T.C. in a permanent home.

58.     Although ACS removed Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. from their home over ten months ago, there has been no fact-finding hearing or disposition of ACS's neglect petition against their biological parents.

59.     Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s permanency goal remains to be returned to their parent.  Their biological mother wants nothing more than to bring her children home.  In February 2015, Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s mother was told by ACS that she needed domestic relationship/family violence services, mental health/emotional stability services, parenting skills services and decision making/problem solving skills services.  There are no allegations of domestic violence in the neglect petition against her.  According to the service agency providing her services, she "is participating in the

A0226

entire service plan she has been assigned to". She completed a mental health evaluation in June 2015, and has completed parenting classes and domestic violence counseling. Upon information and belief, Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother was recently informed that she has to undergo another psychological evaluation, which she has completed.

60. Upon information and belief, soon after Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. were placed in ACS custody, the Contract Agency informed their biological mother that it could not expedite reunification because she did not have suitable housing. Upon information and belief, at that time, the Contract Agency provided her with no assistance to find suitable housing. Using her own limited resources, Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother secured a two bedroom apartment during the summer of 2015. Upon information and belief, she has had to move out of this housing because the home was the subject of foreclosure proceedings and was sold. Lucas T., Ximena T., Jose T.C. and Valentina T.C.'s biological mother now lives in a rented room in Queens. Upon information and belief, the Contract Agency has taken no steps to assist her in finding housing so her children can come home.

61. Since their removal over ten months ago, ACS has made no effort to ensure that these young children are returned to the mother they miss, and that their permanency goal— reunification with their biological parent—is implemented as soon as possible.

62. During the nearly one year that Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. have been in the custody of ACS, Defendants repeatedly have violated their constitutional, statutory and contractual rights by failing to protect them from psychological and emotional harm; by failing to provide services to ensure their physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements

A0227

consistent with professional standards or of a meaningful, timely and appropriate plan to enable them to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to place them in a permanent home. ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, these children. As a direct result of Defendants' actions and inactions, Lucas T., Ximena T., Jose T.C. and Valentina T.C. have suffered and continue to suffer irreparable harm and continue to be subjected to the lasting emotional damage that is a consequence of children being harmed while in foster care, of not knowing where they will grow up and of believing that there is no family they can call their own. Because of Defendants' actions and inactions, Plaintiffs Lucas T., Ximena T., Jose T.C. and Valentina T.C. are being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Ayanna J.

63.     Plaintiff Ayanna J. is a three year old girl in pre-kindergarten. ACS removed her from her biological mother on November 2, 2012—three days after she was born. Her permanency goal currently is adoption. She has been in ACS custody for over three years—virtually her entire life.

64.     Plaintiff Ayanna J. appears through her next friend, Meyghan McCrea. Meyghan McCrea is an attorney in private practice in New York City. She was previously employed as a Family Court Legal Services Attorney for ACS. Ms. McCrea has known Ayanna J. since March 2013 and has had regular contact with her since that time. Ms. McCrea has met Ayanna J.'s current foster parent and babysitter. Ms. McCrea is truly dedicated to Ayanna J.'s best interests.

22

65.     Plaintiff Ayanna J. has two siblings:  (1) a nine year old sister, Alyssa L., and (2) a sister, Angela L., who was beaten to death by her biological mother's boyfriend in March 2010, when she was 19 months old.  Documents filed with the Family Court allege that, given Angela L.'s extensive injuries, Ayanna J.'s biological mother knew or should have known about the ongoing abuse that her daughter suffered.  These documents also allege that Ayanna J.'s biological mother delayed seeking medical care for Angela L., lied to hospital staff about the source of the child's injuries and instructed her other daughter, Alyssa L., who was then three and a half years old, to lie about what had occurred.

66.     The day after Angela L. died, ACS filed a petition against Plaintiff Ayanna J.'s biological mother alleging severe and repeated abuse.  In October 2012, the Family Court made a finding of abuse against Ayanna J.'s biological mother.  On appeal in June 2014, the New York State Appellate Division found that Ayanna J.'s biological mother "severely abused [Angela L.] and derivatively severely abused the subject child [Alyssa L.]".

67.     Plaintiff Ayanna J. was born after her sister Angela L. died.  Due to the prior finding of abuse against her biological mother, ACS placed Ayanna J. in ACS custody and in her current foster placement on November 2, 2012—three days after she was born.  In March 2013, the Family Court made a finding of derivative abuse as to Ayanna J. and on September 30, 2014, the Family Court amended its finding to severe abuse as to Ayanna J. based on the Appellate Division's June 2014 finding.

68.     Since being placed in foster care over three years ago, Plaintiff Ayanna J. has had approximately thirteen caseworkers at the Contract Agency to which ACS has delegated her day-to-day care.  Upon information and belief, five of these caseworkers have been assigned to Ayanna J. in the last six months.

69.     While in the custody of ACS, Plaintiff Ayanna J. has had supervised visits with her biological mother and father at the Contract Agency.  During one such visit in September 2013, Ayanna J.'s biological father became angry and began screaming at Ayanna J.'s biological mother in front of Ayanna J.  Upon information and belief, at least one Contract Agency visit was discontinued because Ayanna J.'s biological parents were fighting.  Ayanna J.'s biological father has not visited her since April 2014.  Upon information and belief, visits at Ayanna J.'s biological mother's home were suspended after she threatened to physically assault a caseworker.  Ayanna J. continues to have supervised visits with her biological mother twice per week at the Contract Agency.  During one such visit in July 2014, Ayanna J.'s biological mother allowed her biological father to speak with Ayanna J. over the phone despite such contact being prohibited.

70.     Plaintiff Ayanna J. has languished in the custody of ACS for the past three years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

71.     As a result of her continued placement in ACS custody, Plaintiff Ayanna J. has suffered great emotional harm.  In 2013, Ayanna J. cried hysterically during supervised visits with her biological mother at the Contract Agency.  Now that she is older, Ayanna J. expresses the desire to not attend visits with her biological mother, will not leave her babysitter to visit with her biological mother, or will ask for her babysitter in the middle of a visit with her biological mother.  These visits have caused and continue to cause great stress, confusion and psychological harm to this young child.

24

72. In addition to failing to keep Plaintiff Ayanna J. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Ayanna J. in a permanent home.

73. On April 9, 2014, Plaintiff Ayanna J.'s permanency goal was changed from return to parent to adoption. Her current foster parent has indicated a willingness to adopt her.

74. A petition for termination of parental rights ("TPR") was filed on April 28, 2014, after Plaintiff Ayanna J. already had been in foster care for almost one and a half years. The TPR proceedings were adjourned repeatedly due to ACS's failure to ensure that all parties were prepared for court on scheduled hearing dates to resolve the permanency issues in this case. On April 27, 2015, almost a year after the TPR petition was filed, the assigned Family Court judge heard one day of testimony related to the TPR proceeding and continued the case until mid-June 2015. The next day, that Family Court judge was reassigned to another court. On June 22, 2015, Plaintiff Ayanna J.'s TPR proceeding was re-assigned to a new Family Court judge, who declared a mistrial and postponed a new trial. To date, no further testimony on this petition has been heard.

75. After languishing in foster care for three years, Plaintiff Ayanna J.'s permanency goal remains to be adopted.

76. During the over three years that Plaintiff Ayanna J. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that

A0231

were not possible within a reasonable period of time, to place her in a permanent home. ACS

has further failed to exercise adequate and meaningful oversight over the Contract Agencies to

which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.

As a direct result of Defendants' actions and inactions, Ayanna J. has suffered and continues to

suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a

consequence of a child being harmed while in foster care, of not knowing where she will grow

up and of believing that there is no family she can call her own. Because of Defendants' actions

and inactions, Plaintiff Ayanna J. is being deprived of the opportunity for a childhood that is

reasonably free from harm and that provides the opportunity for stability and healthy

development.

### Olivia R. and Ana-Maria R.

77.     Plaintiff Olivia R. is a six year old girl in the first grade, and Plaintiff Ana-Maria

R. is a five year old girl in kindergarten. ACS removed them from their biological mother's

home on June 8, 2011. The permanency goal for both children currently is adoption. They have

been in ACS custody for more than four years.

78.     Plaintiffs Olivia and Ana-Maria R. appear through their next friend, Dawn Cardi.

Ms. Cardi is an attorney in private practice in New York City, specializing in criminal and family

law. She is appointed and has served as a certified Law Guardian in the First Department of the

Appellate Division, representing children in complex family law proceedings. She is truly

dedicated to Olivia and Ana-Maria R.'s best interests.

79.     Upon information and belief, this is Plaintiffs Olivia and Ana-Maria R.'s second

time in ACS custody. Upon information and belief, ACS removed Olivia and Ana-Maria R.

from their biological parents in January 2011, they spent a few months in a foster placement and

then ACS returned them home.  On June 8, 2011, when Olivia R. was two years old and Ana-Maria R. was eight months old, ACS again removed the girls from their home and placed them into ACS custody, reportedly due to domestic violence between their biological parents and their biological mother's alcohol and drug use.

80.      The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, Plaintiffs Olivia and Ana-Maria R. initially placed them in a non-kinship foster placement—the third place they had been moved to in six months.

81.      In March 2012, the Contract Agency returned Plaintiffs Olivia and Ana-Maria R. to their biological mother on a trial basis.  In June 2012, their biological mother dropped them off at the foster placement where they had been living and did not return to pick them up.  She did not visit the children again until July 24, 2012.

82.      ACS has allowed Plaintiffs Olivia and Ana-Maria R. to be bounced in and out of foster care for almost the entirety of their young lives, and they now have been in ACS custody for the past four years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable these young girls to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to ensure that they can grow up in a permanent family.

83.      Plaintiffs Olivia and Ana-Maria R. have suffered physical and emotional abuse while in ACS custody.  In October 2013, Olivia R., who was four years old at the time, was sexually abused by her biological mother's friend during an unsupervised visit.  Ana-Maria R. was present during that abuse.  Although the Contract Agency was made aware of this abuse at that time, upon information and belief, neither the Contract Agency nor ACS took any action in response to the report.  More recently, Olivia R. reported the incident to her therapist, who (as a

27

mandated reporter) informed the Statewide Central Register of Child Abuse and Maltreatment and the police, and an investigation is underway. Olivia and Ana-Maria R.'s biological mother has not visited with the children since November 26, 2014.

84.    As a result of the emotional harm they have suffered while in ACS custody for the past four years, Plaintiffs Olivia and Ana-Maria R. have suffered and continue to suffer from a variety of mental health problems. Olivia R.'s diagnoses include Attention Deficit Hyperactivity Disorder, Developmental Coordination Disorder and Disruptive Behavior Disorder. She is in a special education setting at school. Ana-Maria R.'s diagnoses include Attention Deficit Hyperactivity Disorder, Anger Management, and Conduct Disorder. She is in a special education setting at school.

85.    Since being placed in ACS custody, Plaintiffs Olivia and Ana-Maria R. have suffered severe emotional and behavioral problems. Olivia R. has developed serious trust issues and she would wet the bed before any visit with her biological mother. Ana-Maria R. demonstrates severe hyperactivity and aggression. In her pre-kindergarten program, she often would hit her teacher, tear things off the wall or break other items. In January 2015, her pre-kindergarten program would not allow her to attend classes until she was medicated for these behavioral problems. Although her doctor has recommended that she be given medication, upon information and belief, she has been unable to start taking medication because the Contract Agency has not approved it.

86.    ACS has failed to ensure that Plaintiffs Olivia and Ana-Maria R. are provided with the necessary and appropriate services to ensure their physical, psychological and emotional well-being. One of their caseworkers recommended that the girls enroll in Bridges to Health Program ("B2H")—a Medicaid waiver program that provides support for children in foster care

A0234

who are medically fragile, have a developmental disability or are severely emotionally disturbed. Upon information and belief, when their foster mother initially requested these services, the Contract Agency declined to submit the request because an agency caseworker said "that's a lot of paperwork". Upon information and belief, Olivia and Ana-Maria R. still do not have all of the B2H services for which they have been approved, including speech therapy and education assistance.

87. In addition to failing to keep Plaintiffs Olivia and Ana-Maria R. free from physical, psychological and emotional harm while in its custody, ACS also has failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Olivia and Ana-Maria R. in a permanent home.

88. Plaintiffs Olivia and Ana-Maria R.'s permanency goal was not changed from return to parent to adoption until March 1, 2014—after they had been in ACS custody for almost three years. TPR petitions were filed approximately eight months later in November 2014. Upon information and belief, on May 28, 2015, the Family Court judge handling Olivia and Ana-Maria R.'s case made an oral statement that parental rights would be terminated; however, because none of the attorneys present had drafted a proposed order, that ruling was not finalized and Olivia and Ana-Maria R. were not freed for adoption at that time. Upon information and belief, since then, Olivia and Ana-Maria R. have been freed for adoption. Olivia and Ana-Maria R.'s current foster mother has indicated a willingness to adopt them and has submitted paperwork to proceed with the adoption. Upon information and belief, the Contract Agency has not provided clear instructions regarding what paperwork, classes and other information are necessary to complete the adoption, and has directed Olivia and Ana-Maria R.'s foster mother to submit to steps that are not requirements or steps that have already been completed. On

29

November 27, 2015, the Family Court judge informed the Contract Agency that it must provide

clear, written instructions regarding the adoption process to Olivia and Ana-Maria R.'s foster

mother. Upon information and belief, the Contract Agency has not yet done so.

89.     During the more than four years that Plaintiffs Olivia and Ana-Maria R. have

been in the custody of ACS, Defendants repeatedly have violated their constitutional, statutory

and contractual rights by failing to protect them from physical, psychological and emotional

harm; by failing to provide services to ensure their physical, psychological and emotional well-

being; by failing to ensure the provision of appropriate foster care placements consistent with

professional standards or of a meaningful, timely and appropriate plan to enable them to be

safely returned to their biological mother or, if that were not possible within a reasonable period

of time, to place them in a permanent home. ACS has further failed to exercise adequate and

meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day

care of, and case planning responsibility for, these children. As a direct result of Defendants'

actions and inactions, Plaintiffs Olivia and Ana-Maria R. have suffered and continue to suffer

irreparable harm and continue to be subjected to the lasting emotional damage that is a

consequence of children being harmed while in foster care, of not knowing where they will grow

up and of believing that there is no family they can call their own. Because of Defendants'

actions and inactions, Plaintiffs Olivia and Ana-Maria R. are being deprived of the opportunity

for a childhood that is reasonably free from harm and that provides the opportunity for stability

and healthy development.

A0236

**Xavion M.**

90.    Plaintiff Xavion M. is a six year old boy in the first grade.  ACS removed him from his biological mother due to an allegation of neglect 15 days after he was born.  He has been in ACS custody for over six years—nearly his entire life.

91.    Plaintiff Xavion M. appears through his next friend, Michael B. Mushlin.  Mr. Mushlin is a Law Professor at Pace University School of Law in New York City, where he has taught for the last 30 years.  His scholarship has included maltreatment of children in foster care.  Previously, he worked as a public interest and civil rights lawyer for 15 years as a staff attorney with Harlem Assertion of Rights, Inc., as a staff attorney and Project Director of the Prisoners Rights Project of the Legal Aid Society, and as Associate Director of the Children's Rights Project of the American Civil Liberties Union.  He is truly dedicated to Xavion M.'s best interests.

92.    Plaintiff Xavion M. is not the only child that ACS has removed from his biological mother and placed into foster care.   Xavion M. has two siblings:  (1) a 13 year old brother, Vincent D., and (2) an 11 year old sister, Zahara D.  Xavion M.'s siblings have been in ACS custody for the past six years.  Upon information and belief, at least one Family Court judge has referred to these two children as "unadoptable" and their permanency goals remain that they be returned to their parent.

93.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young boy first placed Plaintiff Xavion M. with a fictive kin foster parent, who was a friend of his biological mother.  On December 21, 2011, when Xavion M. was just two years old, he was moved to a second, non-kinship, foster placement.  When he arrived, he was anemic and malnourished.  He resided in this foster placement for well over three

years. On August 26, 2015, the Contract Agency removed Xavion M. from this foster placement and returned him to his biological mother on a trial basis. That Xavion M. has bounced in and out of foster placements is a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

94.     Since being placed in foster care over six years ago, Plaintiff Xavion M. has had approximately four caseworkers at the Contract Agency to which ACS has delegated his care and case planning.

95.     Plaintiff Xavion M., who has been in ACS custody for over six years, had weekly supervised visits with his biological mother and older siblings prior to July 2015. Upon information and belief, Xavion M.'s brother hit and kicked him during one such visit. In July 2015, Xavion M. started attending weekend, overnight visits with his biological mother. Upon information and belief, during one such visit, Xavion M.'s biological mother took him to a home in which his biological father resides, whom Xavion M. is not permitted to see because of an order of protection.

96.     The Contract Agency to which ACS has delegated the day-to-day care of, and case planning responsibility for, this boy has not provided Plaintiff Xavion M. with necessary services for his physical and emotional well-being. Although his teacher recommended that an Individualized Education Program ("IEP") be written for him, Xavion M. did not receive the evaluation necessary for many months because his biological mother refused to give consent.

97.     As a result of the over six years that Plaintiff Xavion M. has spent in ACS custody, Xavion M. has suffered severe emotional damage. He has exhibited behavioral

A0238

problems, including becoming aggressive and violent at home and at school; he also is having difficulty concentrating at school. At five years old, he would only sleep in the same bed as his foster mother and would not sleep through the night. Although Xavion M. was attending regular therapy sessions, upon information and belief, he has not attended these sessions since August 2015.

98.     In addition to failing to keep Plaintiff Xavion M. free from physical, psychological and emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Xavion M. in a permanent home.

99.     On July 21, 2014—after Plaintiff Xavion M. had been in foster care for almost five years—Xavion M.'s permanency goal was changed from return to parent to adoption. This goal change occurred only after the Family Court judge handling Xavion M. and his siblings' case instructed Xavion M.'s caseworkers at the Contract Agency to file a petition to terminate the parental rights of Xavion M.'s biological mother and begin adoption proceedings. Xavion M.'s foster mother at that time indicated a willingness to adopt him.

100.     No TPR petition was filed and the Contract Agency continued to pursue plans to return Xavion M. to his biological mother after first returning Xavion M.'s older siblings to his mother on a trial basis. Indeed, papers filed in Family Court in March 2015 state that the "Agency is working with [biological mother] for reunification". At a family team conference on June 24, 2015, the Contract Agency said it intended to pursue granting Xavion M.'s biological mother unsupervised visits despite the fact that Xavion M.'s therapist had stated that Xavion M. was not ready for this and that Xavion M.'s permanency goal was adoption.

A0239

101.    Upon information and belief, on July 29, 2015, the Contract Agency informed the Family Court judge that it wanted to return Xavion M. to his biological mother on a trial basis immediately.  Upon information and belief, the Family Court judge informed the Contract Agency that it could do so only after Xavion M. had one month of weekend, overnight visits with his biological mother and upon 28 days' notice.

102.    On August 26, 2015, Xavion M. was returned to his biological mother on a trial basis.  The long-standing inconsistency in planning for this child's future is increasing the insecurity and emotional damage this child is experiencing in foster care.

103.    During the over six years that Plaintiff Xavion M. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from physical, psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Xavion M. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Xavion M. is being deprived of the

A0240

opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Dameon C.**

104.    Plaintiff Dameon C. is a four year old boy with special needs.  ACS removed him from his biological mother, who was then incarcerated, nine days after he was born.  His permanency goal currently is adoption.  He has been in ACS custody for over four years—nearly his entire life.

105.    Plaintiff Dameon C. appears through his next friend, Reverend Doctor Gwendolyn Hadley-Hall.  Reverend Doctor Hadley-Hall is an associate pastor at Christ Temple United Baptist Church in Brooklyn.  Prior to entering the ministry, Reverend Doctor Hadley-Hall was a teacher at public elementary schools in New York City for 30 years.  She is truly dedicated to Dameon C.'s best interests.

106.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this boy first placed Plaintiff Dameon C. in a non-kinship foster placement.

107.    On Christmas Eve 2011, when Plaintiff Dameon C. was nine months old, he was returned to his mother on a trial basis when she was released from jail.  They were placed in a mother-child drug and alcohol rehabilitation center.  His former foster parent would often take Dameon C. for two to three weeks at a time with his biological mother's consent because Dameon C.'s behavior deteriorated drastically when he was moved to his biological mother's care.  He began banging his head, which he continues to do now at age four.  In July 2012, his biological mother was expelled from the rehabilitation center and Dameon C. was returned to his former foster placement, where he remains to this day.  He has been in foster care virtually his

35

entire life—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

108.    While in ACS custody, Plaintiff Dameon C. has had regular visits with his biological mother.  In February 2014, when Dameon C. was almost three years old, his biological mother kicked him during the first unsupervised overnight visit at her drug treatment facility.  Although she is still permitted to have supervised visits with him, she did not have contact with Dameon C. between December 2014 and April 23, 2015, at which time she began attending supervised visits with Dameon C. again.  However, during the summer of 2015, Dameon C.'s biological mother disappeared from her drug treatment program and has not consistently attended visits with him or contacted him since.

109.    In addition to failing to keep Plaintiff Dameon C. safe from physical abuse and emotional damage, ACS has also failed to ensure that he is provided with necessary services to ensure his physical, psychological and emotional well-being.  Although he has been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder, and has been approved to receive services through B2H, he is on a waiting list for those services.

110.    ACS also has failed to take reasonable and appropriate steps to place Plaintiff Dameon C. in a permanent home.  Dameon C.'s permanency goal was not changed to adoption until November 3, 2014—after he had already been in ACS custody for over three and a half years.  A TPR petition was filed thereafter.  Plaintiff Dameon C.'s next court date had been scheduled for June 2, 2015, but was postponed until November 2015, at which time it was postponed until February 2016.

111.     During the over four years that Plaintiff Dameon C. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from physical, psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child.  As a direct result of Defendants' actions and inactions, Dameon C. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Dameon C. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

**Tyrone M.**

112.     Plaintiff Tyrone M. is a seven year old boy with special needs.  ACS removed him from his biological mother 12 days after he was born.  His permanency goal currently is adoption.  He has been in ACS custody for over seven years—nearly his entire life.

113.     Plaintiff Tyrone M. appears through his next friend, Bishop Lillian Robinson-Wiltshire.  Bishop Robinson-Wiltshire is the Senior Pastor and Overseer of Cathedral of Christ Community Ministries in Brooklyn.  Prior to entering the ministry 30 years ago, Bishop

Robinson-Wiltshire was a family counselor and worked with families dealing with abuse and neglect. Bishop Robinson-Wiltshire has also served as a foster parent to older children. She is truly dedicated to Tyrone M.'s best interests.

114. Twelve days after he was born, ACS removed Plaintiff Tyrone M. from his biological mother when she tested positive for cocaine after giving birth to him.

115. The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young boy first placed Plaintiff Tyrone M. in a kinship foster placement with his aunt. On June 23, 2014, ACS removed him from his aunt's home after she failed a random drug screening. The Contract Agency then placed him in a non-kinship foster placement where he currently resides. Tyrone M. has now spent nearly his entire life in ACS custody—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young boy to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to ensure that he can grow up in a permanent family.

116. ACS also has also failed to keep Plaintiff Tyrone M. free from physical, psychological, and emotional harm while in its custody. When he arrived at his current foster placement, his health and behavior indicated severe neglect. He suffered from severe dental problems. He went to sleep in his clothing every night because in his previous foster placement he had not been provided with such basic care as being taught to undress or change into pajamas before bed.

117. As a result of the emotional harm he has suffered while in ACS custody for the past seven years, Plaintiff Tyrone M. suffered and continues to suffer from a variety of mental health problems. His diagnoses include Pervasive Developmental Disorder, Developmental

Coordination Disorder, Communication Disorder and Attention Deficit Hyperactivity Disorder. Tyrone M. also exhibits severe behavioral problems and often becomes violent at school and throws chairs or pencils. As a result, his school has barred him from eating in the lunchroom with other students and from attending school-sponsored field trips.

118.    ACS has also failed to ensure that Plaintiff Tyrone M. is provided with the necessary services to ensure his physical and emotional well-being. Although he has been approved to receive services through B2H, he is on a waiting list for those services.

119.    In addition to failing to keep Plaintiff Tyrone M. physically free from harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Tyrone M. in a permanent home.

120.    After Plaintiff Tyrone M. had been in foster care for over seven years, his biological mother voluntarily surrendered her parental rights. Although he is now free to be adopted, it is not clear that he will be adopted by his current foster parent and, upon information and belief, the Contract Agency, ACS and Tyrone M.'s law guardian have not sought out other adoption possibilities for Tyrone M. to have a permanent home and family to call his own.

121.    During the over seven years that Plaintiff Tyrone M. has been in the custody of ACS, Defendants repeatedly have violated his constitutional, statutory and contractual rights by failing to protect him from physical, psychological and emotional harm; by failing to provide services to ensure his physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable him to be safely returned to his biological mother or, if that were not possible within a reasonable period of time, to place him in a permanent home. ACS has further failed to exercise adequate and meaningful oversight over the

A0245

Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Tyrone M. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where he will grow up and of believing that there is no family he can call his own. Because of Defendants' actions and inactions, Plaintiff Tyrone M. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Brittney W.

122.    Plaintiff Brittney W. is a seven year old girl with special needs. ACS removed her from her biological mother and placed her into ACS custody on May 10, 2011. Her permanency goal currently is to be returned to her parent. She has been in ACS custody for over four years—most of her life.

123.    Plaintiff Brittney W. appears through her next friend, Liza Camellerie. Ms. Camellerie is an attorney in private practice in New York City. She currently serves on the assigned panel for Family Court in Manhattan, representing children and parents in Article 10 cases, among others. She also spent six years as a Family Court Legal Services ("FCLS") Attorney for ACS, four of which were spent as a supervisor to 25 to 30 other FCLS attorneys. Ms. Camellerie is truly dedicated to Brittney W.'s best interests.

124.    Shortly after Plaintiff Brittney W. was born, a report was called in to the Statewide Central Register of Child Abuse and Maltreatment alleging that her biological mother's own mental incapacity and developmental delays prevented her from caring for her

A0246

infant daughter.  Brittney W. was placed into voluntary kinship care with her biological mother's niece by agreement with ACS.

125.    On May 10, 2011, when Plaintiff Brittney W. was two years old, ACS remanded her into its custody because her biological mother's niece could no longer care for Brittney W.

126.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, this young girl then placed Plaintiff Brittney W. in a non-kinship foster placement.  She has been residing in this foster placement for over four years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to ensure that she can grow up in a permanent family.

127.    After over four years in foster care, Plaintiff Brittney W.'s permanency goal is to be returned to her parent.  Upon information and belief, Brittney W.'s lawyer does not think that her biological mother's mental incapacities allow her to provide appropriate care for Brittney W.  Upon information and belief, the Contract Agency to which ACS has delegated the care and case planning responsibility for this child has taken the position that Brittney W.'s biological mother can provide care if she has 24-hour medical support.

128.    In September 2015, Brittney W.'s biological mother was assigned a part-time home health attendant, and, soon after, Brittney W. started once a week, four-day, overnight visits with her mother.  Upon information and belief, Brittney W.'s biological mother was unable to ensure that Brittney W. got to and from school on time and, in October 2015, allowed a stranger to transport Brittney W. to her foster placement.  Upon information and belief, during a recent visit, Brittney W.'s biological mother struck Brittney W. across the face.  Upon

41

information and belief, the Contract Agency has terminated overnight visits because of this, however it intends to proceed with returning Brittney W. to her biological mother on a trial basis. Brittney W.'s current foster mother has indicated a willingness to adopt her. No TPR petition has been filed.

129.    During the over four years that Plaintiff Brittney W. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from physical, psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home. ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Brittney W. has suffered and continues to suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own. Because of Defendants' actions and inactions, Plaintiff Brittney W. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

A0248

**Mikayla G.**

130.    Plaintiff Mikayla G. is a two year old girl.  ACS removed her from her biological mother on November 21, 2013.  Her permanency goal currently is adoption.  She has been in ACS custody for the past two years—nearly her entire life.

131.    Plaintiff Mikayla G. appears through her next friend, Amy Mulzer.  As discussed *supra*, Ms. Mulzer is an Acting Assistant Professor of Lawyering at New York University School of Law.  The primary focus of her research includes:  Adoption, Child Welfare, Family Law, Parental Rights and Poverty Law.  Prior to joining the lawyering faculty at NYU, Ms. Mulzer spent five years representing low-income parents whose children were in foster care or at risk of being placed in foster care, first as a staff attorney at Brooklyn Defender Services and then as an appellate attorney on the assigned counsel panel for the Appellate Division, Second Department.  Ms. Mulzer is truly dedicated to Mikayla G.'s best interests.

132.    Upon information and belief, on November 20, 2013, Plaintiff Mikayla G.'s biological mother, then an 18 year old who had formerly been in the custody of ACS and who was struggling to financially support herself and her four month old child, arranged for childcare so that she could go to the Human Resources Administration to arrange for childcare, housing and other benefits.  Upon information and belief, thereafter, she went to several grocery stores to use her Women, Infants, and Children benefits ("WIC") to purchase formula Mikayla G. needed for colic.  Upon information and belief, upon her return to pick up her child, Mikayla G.'s biological mother was told that Mikayla G. had been taken to a family member's home.  Upon information and belief, Mikayla G.'s biological mother was told that an ACS caseworker would not allow her in her family member's home.  The next day, Mikayla G.'s biological mother was told that Mikayla G. was being removed from her custody.

43

133.    ACS removed Plaintiff Mikayla G. without taking necessary steps or making reasonable efforts to determine whether Mikayla G. could remain safely at home with her biological mother.  Although Mikayla G.'s biological mother had contact with ACS between July and November 2013, no preventive services case was ever opened and a report made to the Statewide Central Register of Child Abuse and Maltreatment came back "unfounded".  Upon information and belief, ACS removed Mikayla G. without offering Mikayla G.'s biological mother the services that would have allowed Mikayla G. to remain safely at home with her.

134.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, Plaintiff Mikayla G. initially placed her in a non-kinship foster placement.  The foster mother did not provide Mikayla G. with the appropriate formula.  Upon information and belief, in approximately December 2013, the Contract Agency moved Mikayla G. to a new foster placement because the foster mother in her first foster placement was not appropriately feeding Mikayla G.  Upon information and belief, Mikayla G. is one of many children living in this second foster placement.

135.    Plaintiff Mikayla G. has now been in foster care for two years—nearly her entire life.  This is a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable this young girl to be returned to her biological mother or, if that were not possible within a reasonable period of time, to ensure that she would grow up in a permanent family.

136.    Plaintiff Mikayla G. has had three caseworkers and two supervisors during her time in ACS custody.

137.    Plaintiff Mikayla G. has suffered emotional harm as a result of spending nearly her entire life in ACS custody without a permanent family.  All indications are that she misses

44

her biological mother very much. Mikayla G. visits once a week with her biological mother and asks at the end of every visit if she can go home with her. Upon information and belief, Mikayla G.'s biological mother has expressed concern that Mikayla G. is confused about her placement in foster care and has asked the Contract Agency to provide services to address this. Upon information and belief, the Contract Agency has not provided any services to address this issue.

138.    In addition to failing to keep Plaintiff Mikayla G. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with professional standards to place Mikayla G. in a permanent home.

139.    On or about March 2, 2015, Plaintiff Mikayla G.'s permanency goal was changed from return to parent to adoption. On April 28, 2015, a TPR petition was filed. Upon information and belief, in June 2015, the Family Court judge handling Mikayla G.'s case ordered that Mikayla G.'s permanency goal be changed back to return to parent. The Contract Agency is proceeding with adjudication of the TPR petition and the trial is scheduled to begin in February 2016.

140.    Plaintiff Mikayla G.'s biological mother wants nothing more than to finally bring her daughter home. When Mikayla G. was removed, Mikayla G.'s biological mother was ordered to attend parenting classes, attend a drug treatment program and find stable housing. Upon information and belief, Mikayla G.'s biological mother was not provided with any assistance in finding a parenting class. She identified one herself and completed it in nine weeks. Mikayla G.'s biological mother was referred to a drug treatment program for her marijuana use. Upon information and belief, she has been in and out of drug treatment programs and she has communicated to the Contract Agency that she intends to begin an outpatient drug program again soon. Upon information and belief, the Contract Agency has told Mikayla G.'s biological

A0251

mother that she cannot meet with its housing specialist to help find her stable housing until she has completed her outpatient drug treatment program. Due to her inability to find affordable and stable housing, Mikayla G.'s biological mother lived in an abandoned house with other family members for a number of months. Mikayla G.'s biological mother now lives with friends. Upon information and belief, the Family Court judge and Contract Agency caseworker handling Mikayla G.'s case told her to give finding work and housing lower priority than her drug treatment.

141.    If Plaintiff Mikayla G. is unable to be returned to her parent, Mikayla G.'s biological mother would like her to be placed with a relative. Upon information and belief, since her removal over two years ago, neither ACS nor the Contract Agency has made efforts to determine whether this little girl's relatives may be appropriate foster or adoptive placements even though family members have presented themselves to ACS and the Contract Agency as options for placement.

142.    During the more than two years that Plaintiff Mikayla G. has been in the custody of ACS, Defendants repeatedly have violated her constitutional, statutory and contractual rights by failing to protect her from psychological and emotional harm; by failing to provide services to ensure her physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable her to be safely returned to her biological mother or, if that were not possible within a reasonable period of time, to place her in a permanent home. ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, this child. As a direct result of Defendants' actions and inactions, Mikayla G. has suffered and continues to

A0252

suffer irreparable harm and continues to be subjected to the lasting emotional damage that is a consequence of a child being harmed while in foster care, of not knowing where she will grow up and of believing that there is no family she can call her own. Because of Defendants' actions and inactions, Plaintiff Mikayla G. is being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

### Myls J. and Malik M.

143. Plaintiff Myls J. is a five year old boy in kindergarten, and Plaintiff Malik M. is a three year old boy in pre-kindergarten. Myls J. and Malik M. are brothers. Myls J. was removed from his biological mother on March 14, 2011. Malik M. was removed from his biological mother on April 4, 2012, just two days after he was born. The permanency goal for both children currently is adoption. Myls J. has been in ACS custody for more than four years and Malik M. has been in custody for over three and a half years—nearly his entire life.

144. Plaintiffs Myls J. and Malik M. appear through their next friend, Elizabeth Hendrix. Ms. Hendrix worked as a special education teacher in public schools for several years before specializing in how to teach children with dyslexia or other reading disabilities, both in public schools and private tutoring. Ms. Hendrix is truly dedicated to Myls J. and Malik M.'s best interests.

145. Upon information and belief, shortly after Plaintiff Myls J. was born, his biological mother, then a 15 year old girl who had formerly been in the custody of ACS, left him with her grandmother. Upon information and belief, Myls J.'s biological great-grandmother reported to the Statewide Central Register of Child Abuse and Maltreatment that Myls J.'s biological mother had abandoned him.

A0253

146.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, Plaintiff Myls J. initially placed him in a non-kinship emergency foster placement.  Myls J. was then placed in a non-kinship foster placement—the third place he had lived in one month.

147.    When Plaintiff Malik M. was born, the Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, Malik M. placed him in the same non-kinship foster placement as Myls J.  Malik M. reportedly was removed from his biological mother because of her problems with drug and alcohol use.

148.    In the past four years, Plaintiffs Myls J. and Malik M. have had approximately twelve caseworkers at the Contract Agency to which ACS has delegated their day-to-day care.

149.    Plaintiffs Myls J. and Malik M. had sporadic supervised visits with their biological mother at the Contract Agency until approximately August 2012 when their biological mother stopped attending visits.  Upon information and belief, Myls J. did not visit his biological mother at all in 2013, and Malik M. visited with his biological mother only once in 2013.   In 2014, neither Myls J. nor Malik M. visited their biological mother.  On July 31, 2015, Myls J. and Malik M. saw their biological mother for the first time since 2013.  In November 2015, the Family Court judge handling Myls J. and Malik M.'s case suspended visits with their biological mother.

150.    Plaintiff Myls J. has languished in the custody of ACS for over four years and his brother Plaintiff Malik M. has languished in the custody of ACS for nearly his entire life—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable these young boys to be

safely returned to their biological mother or, if that were not possible within a reasonable period of time, to ensure that they can grow up in a permanent family.

151.    As a result of their continued placement in ACS custody, Plaintiffs Myls J. and Malik M. have suffered great physical and emotional harm.  Although a doctor has prescribed Myls J. medication for Attention Deficit Hyperactivity Disorder and to address his problems sleeping, he was unable to start this medication until a year after it was prescribed because the Contract Agency was unable to locate his biological mother so that she could give consent. Additionally, Myls J. and Malik M.'s visits with their biological mother caused them severe anxiety.  Soon after visits began in 2015, Myls J. began screaming and crying at school.  Malik M. had previously seen his biological mother only twice before, when he was approximately two months old, and was confused about who she was.

152.    As a result of the emotional harm they have suffered while in ACS custody for the past four years, Plaintiffs Myls J. and Malik M. have suffered and continue to suffer from a variety of mental health problems.  Myls J.'s diagnoses include Attention Deficit Hyperactivity Disorder, Autistic Disorder and Pervasive Developmental Disorder.  He is in a special education setting at school.  Malik M. also is in a special education early education program.

153.    In addition to failing to keep Plaintiffs Myls J. and Malik M. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Myls J. and Malik M. in a permanent home.

154.    On October 10, 2012, the Contract Agency determined that Plaintiffs Myls J. and Malik M.'s permanency goal should be changed from return to parent to adoption.  Their current foster parent has indicated a willingness to adopt them.

A0255

155.     A petition for TPR was filed on or about June 12, 2013.  Upon information and belief, the TPR proceedings have been adjourned repeatedly due to ACS's failure to ensure that all parties were prepared for court on scheduled hearing dates to resolve the permanency issues in this case.  The TPR proceedings are currently scheduled to begin on March 1, 2016.

156.     After languishing in foster care for over three years, Plaintiffs Myls J. and Malik M.'s permanency goal remains to be adopted.

157.     During the more than three years that Plaintiffs Myls J. and Malik M. have been in the custody of ACS, Defendants repeatedly have violated their constitutional, statutory and contractual rights by failing to protect them from psychological and emotional harm; by failing to provide services to ensure their physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable them to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to place them in a permanent home.  ACS has further failed to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, these children.  As a direct result of Defendants' actions and inactions, Myls J. and Malik M. have suffered and continue to suffer irreparable harm and continue to be subjected to the lasting emotional damage that is a consequence of children being harmed while in foster care, of not knowing where they will grow up and of believing that there is no family they can call their own.  Because of Defendants' actions and inactions, Plaintiffs Myls J. and Malik M. are being deprived of the opportunity for a childhood that is reasonably free from harm and that provides the opportunity for stability and healthy development.

A0256

**Emmanuel S. and Matthew V.**

158.    Plaintiff Emmanuel S. is a 14 year old boy in the ninth grade, and Plaintiff Matthew V. is a 13 year old boy in the eighth grade.  Emmanuel S. and Matthew V. are brothers. The permanency goal for both children currently is adoption.  They have been in ACS custody for more than four years.

159.    Plaintiffs Emmanuel S. and Matthew V. appear by their next friend, Samuel Perry.  Mr. Perry is a high school history and government teacher.  Mr. Perry started his career teaching students in special education classes and currently mentors a student who was previously in the custody of ACS.  Mr. Perry is truly dedicated to Emmanuel S. and Matthew V.'s best interests.

160.    Upon information and belief, this is Plaintiffs Emmanuel S. and Matthew V.'s second time in ACS custody.  Upon information and belief, ACS removed the children from their biological parents and then returned them home.  On September 19, 2011, when Emmanuel S. was ten years old and Matthew V. was nine years old, ACS removed Emmanuel S. and Matthew V. and placed them in ACS custody again, reportedly because of their biological mother's mental health issues and drug use.  Emmanuel S. and Matthew V.'s biological father suffers from Alzheimer's disease and is unable to care for the children.  When the children were placed in ACS custody, the Family Court entered a temporary order of protection prohibiting Emmanuel S. and Matthew V.'s biological mother from contacting them because of her mental health issues and drug use.

161.    The Contract Agency to which ACS delegated the day-to-day care of, and case planning responsibility for, these children placed Plaintiffs Emmanuel S. and Matthew V. in a

A0257

kinship foster placement with their cousin. At that time, their permanency goal was to be returned to their parent. They remain in that kinship foster placement with their cousin.

162. Upon information and belief, from October 2011 to March 2013, Plaintiffs Emmanuel S. and Matthew V. had occasional visitation with their biological mother. During at least one such visit, Emmanuel S. and Matthew V.'s biological mother brought with her to a visit a man who is prohibited by court order from being around the children. Upon information and belief, Emmanuel S. and Matthew V.'s visitation with their biological mother has become sporadic because of their reluctance to visit with her or have other contact with her.

163. Plaintiffs Emmanuel S. and Matthew V. have languished in the custody of ACS for the past four years—a direct result of ACS's failure to develop and implement an appropriate case plan and provide appropriate services consistent with professional standards to enable these young boys to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to ensure that they can grow up in a permanent family.

164. As a result of their continued placement in ACS custody, Plaintiffs Emmanuel S. and Matthew V. have suffered severe emotional trauma.

165. In June 2012, Plaintiff Emmanuel S. was diagnosed with adjustment disorder with depressed mood with moderate psychosocial stressors caused by conflicts between his biological mother and foster parent. In October 2013, the Contract Agency reported that Emmanuel S. experienced "emotional turmoil" over the course of the previous year and was disturbed by his inability to effectively communicate with his biological mother to express his feelings in a way she would consider. During this time, Emmanuel S.'s biological mother would also contact him at inappropriate times and in inappropriate places, such as when he was at school. Because of these events, Emmanuel S. began attending mental health counseling sessions once a week as

52

opposed to twice a month. In March 2015, Emmanuel S. was diagnosed with adjustment disorder with a mood psychosocial stressor, the "need for permanency". Upon information and belief, Emmanuel S. has developed an eating disorder because of the anxiety he suffers as a result of his continued placement in foster care.

166. Plaintiff Matthew V. has also suffered emotional harm because of his continued placement in ACS custody. In March 2012, a counselor at the school he attended reported that Matthew V. presented concerning behavior impacting his ability to cooperate with his teacher and complete his work, including being readily persuaded to engage in inappropriate behavior by his peers, such as going through his teacher's belongings and engaging in physical fights. The same counselor reported that he shared that "he is both angry and sad about the current relationship situation with his mother". In May 2014, Matthew V. was diagnosed with anxiety with "lack of permanency" as a stressor. In March 2015, Matthew V. was diagnosed with adjustment disorder with depressed mood with a mood psychosocial stressor, the "need for permanency".

167. ACS has failed to ensure that Plaintiffs Emmanuel S. and Matthew V. are provided with the necessary and appropriate services to ensure their physical, psychological and emotional well-being. Upon information and belief, Emmanuel S. and Matthew V. have had at least five caseworkers since they were placed in ACS custody four years ago, one of whom was their caseworker for only two weeks. Although Emmanuel S. and Matthew V. struggle in school and their foster mother requested additional education support for them, the Contract Agency did not approve an IEP evaluation, attend any of the IEP meetings or provide them with other educational support until an advocate intervened on their behalf.

168.    In addition to keeping Plaintiffs Emmanuel S. and Matthew V. free from emotional harm while in its custody, ACS has also failed to take reasonable and appropriate steps consistent with reasonable professional standards to place Emmanuel S. and Matthew V. in a permanent home.

169.    On April 16, 2013, the Contract Agency informed Emmanuel S. and Matthew V.'s therapists and their biological mother's therapist that it planned to request Emmanuel S. and Matthew V.'s goal be changed to adoption.  On April 17, 2013, the Contract Agency conducted a "goal change conference" and decided to postpone changing the children's goal to adoption until the Contract Agency provided services to Emmanuel S. and Matthew V.'s biological mother that it had failed to provide.  On August 21, 2013, the Contract Agency conducted a "goal change conference" and filed a TPR petition in Family Court.  On August 27, 2013, nearly two years after entering care, the Contract Agency spoke to Emmanuel S. and Matthew V. about being adopted by their current foster parent.  Upon information and belief, Emmanuel S. and Matthew V. have not yet been freed for adoption.  Upon information and belief, the trial in Family Court regarding the TPR petition is scheduled to begin in March 2016.

170.    During the four years that Plaintiffs Emmanuel S. and Matthew V. have been in the custody of ACS, Defendants repeatedly have violated their constitutional, statutory and contractual rights by failing to protect them from psychological and emotional harm; by failing to provide services to ensure them physical, psychological and emotional well-being; by failing to ensure the provision of appropriate foster care placements consistent with professional standards or of a meaningful, timely and appropriate plan to enable them to be safely returned to their biological mother or, if that were not possible within a reasonable period of time, to place them in a permanent home.  ACS has further failed to exercise adequate and meaningful

54

oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and

case planning responsibility for, these children.  As a direct result of Defendants' actions and

inactions, Emmanuel S. and Matthew V. have suffered and continue to suffer irreparable harm

and continue to be subjected to the lasting emotional damage that is a consequence of children

being harmed while in foster care, of not knowing where they will grow up and of believing that

there is no family they can call their own.  Because of Defendants' actions and inactions,

Plaintiffs Emmanuel S. and Matthew V. are being deprived of the opportunity for a childhood

that is reasonably free from harm and that provides the opportunity for stability and healthy

development.

***

171.    All of Defendants' actions and inactions as described herein substantially depart

from accepted professional judgment and constitute deliberate indifference to the harms, risk of

harms and violations of legal rights suffered by the Named Plaintiff Children.

## II.    The Public Advocate for the City of New York

172.    Plaintiff Letitia James is the Public Advocate for the City of New York (the

"Public Advocate").  In this capacity, the Public Advocate ensures that the city government

serves its citizens by exercising oversight of city agencies, investigating citizen complaints

regarding city services, and making proposals or seeking relief to address perceived

shortcomings or failures.

173.    Just two months into her tenure, the Public Advocate introduced a law, Int. 0104-

2014, that would require ACS to report information related to youth in the foster care system on

an annual basis.  This law ensures that the City monitors which supports and resources these

young adults use and identifies ongoing educational barriers they experience and problems they

55

might encounter with homelessness or law enforcement. In September 2014, the Office of the

Public Advocate issued a policy report concerning youth "aging out" of the foster care system.

The report provided recommendations to improve data collection, access to housing, and

coordination of services for young people aging out of the system. On September 30, 2014, Int.

0104-2014 was signed into law.

174.    On an ongoing basis, the Office of the Public Advocate Constituent Affairs

Department ("the Constituent Affairs Department") receives complaints from constituents in all

five boroughs alleging deficiencies and lapses in responsibilities by both ACS and Contract

Agencies. Constituent complaints alleged, for instance, failure to investigate allegations of abuse

of children in ACS custody, failure to initiate timely TPR proceedings, failure to follow proper

procedures when removing children from their family home or foster home, failure to provide

required services for both biological parents and foster children, failure to honor ACS vouchers

and potentially retaliatory practices against those who complained directly to ACS or Contract

Agencies. In total, the Constituent Affairs Department has received 559 complaints regarding

ACS since January 1, 2014.

175.    As a result of ongoing complaints, the Public Advocate identified ACS as an

agency whose practices warrant investigation.

176.    Upon learning that New York City keeps children in foster care longer than

almost every jurisdiction in the country, the Office of the Public Advocate began to examine

obstacles to permanency and established a hotline to hear directly from foster children and their

advocates about their experiences.

177.    In November 2014, the Office of the Public Advocate requested a copy of all

contracts ACS holds with individual Contract Agencies; on November 17, 2014, ACS responded

56

with electronic copies of all the contracts it has with the 29 Contract Agencies. On or about February 6, 2015, the Office requested all data collected by ACS used to produce "Scorecard" evaluations (*see infra* ¶¶ 272–75) of the Contract Agencies from 2012 to 2014, in addition to the Scorecard evaluations themselves and any related documentation. After receiving no response, the Office of the Public Advocate repeated the request on February 27, 2015. A meeting was held on March 11, 2015, at which the document request was made for a third time and denied by ACS.

178.   On or about April 1, 2015, the Office of the Public Advocate sent a letter to ACS threatening legal action if they did not comply with the data request and also requested access to ACS's Legal Tracking System in order to investigate constituent complaints concerning significant delays and inefficiencies occurring in Family Court proceedings in which ACS is involved. Following this correspondence, ACS provided Scorecard evaluations, but did not provide the underlying data used to produce them, or the other requested information.

179.   Also in April 2015, the Office of the Public Advocate launched a multilingual hotline to learn first-hand from children and their advocates about the current barriers to receiving better services while in foster care and obtaining a safe and permanent home. Participants in the hotline were asked to complete a survey. The survey's questions varied based on the type of respondent—typically a child, birth parent or foster parent—and asked about the child's trajectory in foster care, permanency planning, services provided and cases of maltreatment in care.

180.   Combining anecdotal reports from the hotline and publicly available data, the Office of the Public Advocate identified several deficiencies including, but not limited to, ACS removal of children without proper court process, failure to identify and provide adequate

services for parents of children in care and subsequent delays in reunification, failure to place

children appropriately and thus creating instability, failure of ACS and the Contract Agencies to

be prepared for court dates, failure of ACS to recruit, train and support adoptive placements,

failure to engage in concurrent planning, failure to protect children from maltreatment and failure

to provide adequate health and mental health services to children in care.  Those deficiencies and

recommendations for addressing them were cited in a report that was issued on July 2, 2015.

## III.    Defendants

181.    Defendant City of New York ("City") was, and is, a municipal entity created and

authorized under the laws of the State of New York.  It is authorized by law to maintain and

ultimately is responsible for the New York City Administration for Children's Services, which

acts as its agent in the area of protecting the safety and welfare of children in the City.  The City

assumes the risks incidental to the maintenance of the New York City Administration for

Children's Services and its employment of attorneys, caseworkers and others.

182.    Defendant New York City Administration for Children's Services ("ACS") was,

and is, a municipal agency of the City responsible for protecting the safety and welfare of all

children in New York City.  At all times relevant hereto, the officials, agents and employees of

ACS were acting under the color of state law in the course and scope of their duties and

functions as agents, servants, employees and officials of ACS and otherwise performed and

engaged in conduct incidental to the performance of their lawful duties.  The officials, agents and

employees were acting for, and on behalf of, ACS at all times relevant herein with the power and

authority vested in them as agents and employees of ACS and the City and incidental to their

lawful pursuit of their duties as officials, employees and agents of ACS.

A0264

183.    Defendant Gladys Carrión is Commissioner of ACS and is sued solely in her official capacity.  She is responsible for ACS's policies, practices and operations, and for ensuring that ACS and the private agencies with which it contracts comply with all applicable federal and state laws, pursuant to the Charter of the City of New York, Chapter 24-B §§ 615 and 617.  All children in foster care in New York City are in the custody of Defendant Carrión, and she is responsible for ensuring their health, safety and well-being, including, but not limited to, their freedom from maltreatment while in state custody and their placement in a permanent home within a reasonable period of time.

184.    Defendant State of New York ("State") was, and is, a governmental entity.  It is authorized by law to maintain and is ultimately responsible for the New York State Office of Children and Family Services, which acts as its agent in the area of foster care, adoption and adoption assistance for children in New York State.  The State assumes the risks incidental to the maintenance of the New York State Office of Children and Family Services.

185.    Defendant New York State Office of Children and Family Services ("OCFS") was, and is, an agency of the State responsible for programs involving foster care, adoption and adoption assistance for children in New York State.  At all times relevant hereto, the officials, agents and employees of OCFS were acting under the color of state law in the course and scope of their duties and functions as agents, servants, employees and officials of OCFS and otherwise performed and engaged in conduct incidental to the performance of their lawful duties.  The officials, agents and employees were acting for, and on behalf of, OCFS at all times relevant herein with the power and authority vested in them as agents and employees of OCFS and the State and incidental to their lawful pursuit of their duties as officials, employees and agents of OCFS.

59

186.    Defendant Sheila J. Poole is Acting Commissioner of OCFS and is sued solely in her official capacity.  She is responsible for the policies, practices and operation of OCFS, for ensuring OCFS's compliance with all applicable federal and state law, pursuant to New York State Social Services Law §§ 11 and 17, and for providing oversight to all social services districts in the state.

## JURISDICTION AND VENUE

187.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.  The Court has jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a).  The Court may exercise supplemental jurisdiction over the claims based on New York law pursuant to 28 U.S.C. § 1367(a).

188.    This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2002 and Rule 57 of the Federal Rules of Civil Procedure.

189.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) because the claims arise in this district.  Although OCFS and ACS are responsible for children from all five boroughs of New York City, including those in the Eastern District of New York, the Commissioner of ACS has custody of all Plaintiff Children, and ACS's administrative and managerial functions are operated out of its headquarters, which is located in the Southern District of New York.

## CLASS ACTION ALLEGATIONS

190.    This action is properly maintained as a class action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure.

A0266

191.    The general class is defined as all children who are now or will be in the foster care custody of the Commissioner of New York City's Administration for Children's Services ("Plaintiff Children" or the "Class").

192.    The Class is sufficiently numerous to make joinder impracticable.  As of September 2015, there were approximately 10,313 children in the foster care custody of the Commissioner of ACS.

193.    The questions of fact and law raised by Named Plaintiff Children's claims are common to and typical of those of each putative member of the Class whom they seek to represent.  The Named Plaintiff Children and Plaintiff Children rely on Defendants for foster care services in New York City and wholly depend on the State and City Defendants for provision of those services.  Defendants' long-standing and well-documented actions and inactions substantially depart from accepted professional judgment and constitute deliberate indifference to the harm, risk of harm and violations of legal rights suffered by the Named Plaintiff Children and Plaintiff Children.

194.    Questions of fact common to the Class include:

    a.    whether State and City Defendants fail to protect Plaintiff Children from physical, psychological and emotional harm;

    b.    whether State and City Defendants fail to ensure meaningful case plans to enable Plaintiff Children to be safely returned to their parents or, if that were not possible within a reasonable period of time, to place them in permanent homes;

    c.    whether State and City Defendants fail to provide foster care placements and services that ensure Plaintiff Children's well-being; and

A0267

    d.      whether ACS fails to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

195.    Questions of law common to the Class include:

    a.      whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's substantive rights under the due process clause of the Fourteenth Amendment to the United States Constitution;

    b.      whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's right to a permanent home and family under the First, Ninth and Fourteenth Amendments to the United States Constitution;

    c.      whether Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's rights under the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997;

    d.      whether City Defendants' long-standing and well-documented actions and inactions violate Plaintiff Children's rights under New York State Social Services Law and regulations adopted pursuant thereto; and

    e.      whether City Defendants' actions and inactions violate Plaintiff Children's rights as third party beneficiaries to the contracts between the City Defendants and the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

A0268

196.    The violations of law and resulting harms averred by Named Plaintiffs are typical of the legal violations and harms and/or risk of harms experienced by all Plaintiff Children in the Class.

197.    Named Plaintiffs will fairly and adequately protect the interests of the Class that they seek to represent.  Defendants have acted or failed to act on grounds generally applicable to all members of the Class, necessitating class-wide declaratory and injunctive relief.  Counsel for Plaintiff Children know of no conflict among the Class members.

198.    Named Plaintiffs and Plaintiff Children are represented by the following attorneys who are competent and experienced in class action litigation, child welfare litigation and complex civil litigation:

> a.    Marcia Robinson Lowry, an attorney with A Better Childhood, Inc., a non-profit legal advocacy organization, who has substantial experience and expertise in federal child welfare class actions nationally; and
>
> b.    Attorneys from Cravath, Swaine & Moore LLP, including Julie A. North and J. Wesley Earnhardt, Members of the Firm, who have significant experience in complex litigation in state and federal courts throughout the United States.

Plaintiff Children's attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Class through trial and any appeals. Each Named Plaintiff appears by a next friend pursuant to Federal Rule of Civil Procedure 17(c), and each next friend is sufficiently familiar with the facts of the child's situation and dedicated to the child's best interests to fairly and adequately represent the child's best interests in this litigation.

63

## STRUCTURE OF THE NEW YORK CITY CHILD WELFARE SYSTEM

199. Children in foster care in New York City are in the legal custody of the Commissioner of ACS (currently, Defendant Carrión) ("ACS custody"). At all times, ACS maintains legal custody and legal responsibility for all children in foster care in New York City.

200. Pursuant to its Charter, the City of New York and Defendant Carrión, as Commissioner of ACS, are responsible for ensuring that ACS complies with federal and state law.

201. New York State provides funding to New York City that is spent on child welfare services, and, through OCFS, is responsible for overseeing ACS and ensuring that ACS complies with all applicable federal and state laws. OCFS is also responsible for ensuring that ACS complies with all elements of the state plans (which OCFS signs as a condition of receiving child welfare funds from the United States Department of Health and Human Services) that document how the state will comply with certain core policies and procedures intended to, among other things, either enable children in foster care to be reunited with their families and/or ensure timely efforts to find a permanent home for children who cannot be reunited with their families.

202. Pursuant to the Constitution and federal and state statutory law, ACS, as the custodian of children in foster care in New York City, is required to:

  a. Protect each child in foster care from physical, psychological and emotional harm, U.S. Const. amend. XIV;

  b. Provide to each child in foster care the services necessary to ensure his or her physical, psychological and emotional well-being, U.S. Const. amend. XIV;

A0270

c.     Provide to each child in foster care conditions, treatment and care consistent with the purpose and assumptions of custody, U.S. Const. amend. XIV;

d.     Ensure that each child in foster care is not maintained in custody longer than is necessary to accomplish the purpose of custody, U.S. Const. amend. XIV;

e.     Provide each child in foster care with a permanent home and family within a reasonable period of time, U.S. Const. amends. I, IX, XIV;

f.     Place each child in foster care in a foster placement that conforms to nationally recommended professional standards, 42 U.S.C. § 671(a)(10);

g.     Provide for each child in foster care a written case plan that includes a plan to provide safe, appropriate and stable foster care placements and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(A);

h.     Provide for each child in foster care a written case plan that ensures that the child receives safe and proper care while in foster care and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

i.     Provide for each child in foster care a written case plan that ensures the provision of services to facilitate reunification or, where that is not possible, a permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(B);

j.     Provide for each child in foster care, where reunification is not possible or appropriate, a written case plan that ensures the location of an adoptive or

other permanent home for the child and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(E);

k.    Provide for each child in foster care a written case plan that ensures the educational stability of the child while in foster care and implement that plan, 42 U.S.C. §§ 671(a)(16), 675(1)(G);

l.    Maintain a case review system in which each child in foster care has a case plan designed to achieve safe, appropriate and stable foster care placements, 42 U.S.C. §§ 671(a)(16), 675(5)(A);

m.    Maintain a case review system in which the status of each child in foster care is reviewed every six months by a court, or person responsible for case management, for purposes of determining the safety of the child, the continuing necessity and appropriateness of the foster placement, the extent of compliance with the permanency plan and the projected date of permanency, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(C);

n.    Maintain a case review system that ensures that for each child that has been in foster care for 15 of the most recent 22 months, ACS files a petition to terminate the parental rights of the child's parents and concurrently identifies, recruits, processes and approves a qualified family for an adoption, or documents compelling reasons for determining that filing such a petition would not be in the best interest of the child, 42 U.S.C. §§ 671(a)(16), 675(5)(B), 675(5)(E);

o.    Provide to each child in foster care quality services to protect his or her safety and health, 42 U.S.C. § 671(a)(22);

66

p.    Timely create meaningful and appropriate Family Assessment and Service
Plans, New York State Social Services Law § 409-e;

q.    Timely plan and complete meaningful and appropriate Family Assessment
and Service Plan reviews, New York State Social Services Law § 409-e
and N.Y. Comp. Codes R. & Regs. tit. 18, § 430.12;

r.    Place each child in a foster placement that meets standards for continuity
and appropriate level of placement, N.Y. Comp. Codes R. & Regs. tit. 18,
§ 430.11;

s.    File a petition to terminate parental rights for each child who has been in
foster care for 15 out of the most recent 22 months or, where applicable,
appropriately document an exception, New York State Social Services
Law § 384-b, N.Y. Comp. Codes R. & Regs. tit. 18, §§ 430.12 and 431.9;
and

t.    Provide each child in foster care who has been freed for adoption with
meaningful and appropriate adoption services, including evaluation of the
child's placement and pre-placement needs, recruitment of and a home
study for prospective adoptive parents, placement planning, supervision
and post-adoption services, New York State Social Services Law §§ 372-b,
372-e and N.Y. Comp. Codes R. & Regs. tit. 18, § 421.8.

203.    By contract, ACS has delegated the care of the City's children in foster care to
agencies ("Contract Agencies").  ACS currently has entered into valid and enforceable contracts
with 29 Contract Agencies.  The contracts into which ACS has entered with each of the Contract
Agencies (referred to herein as the "Agreements") require the Contract Agencies to comply with

A0273

all applicable ACS policies, as well as state and federal law. The Agreements also require the Contract Agencies to provide comprehensive foster care services as defined in the Agreements.[1]

204.    Regardless of the terms of the Agreements, by law, ACS at all times maintains legal custody of and legal responsibility for all children in foster care in New York City. However, ACS has failed and continues to fail to ensure the protection of Plaintiff Children's rights under federal and state constitutional and statutory law.

205.    Children in New York City enter foster care in one of two ways—they can be voluntarily placed into foster care by their parents,[2] or they can be removed from their parents by ACS. Most children in foster care in New York City have been removed from their parents. When children are removed from their parents, the removal is either (a) pursuant to a Family Court finding that the child is in danger of abuse or neglect if left with his or her parents or (b) on an emergency basis, subject to a later finding by the Family Court that the child would have been in danger of abuse or neglect if he or she had been left with his or her legal parents. In both cases, the Family Court must hold a fact-finding hearing to determine whether the child was in danger of being abused or neglected if left with his or her parents. After the fact-finding hearing, the Family Court holds a disposition hearing to determine whether the child can safely be returned home or should remain in foster care pending the completion of certain actions (*e.g.*, treatment for drug or alcohol addiction, anger management classes, etc.).

---

[1] Each Agreement between the Contract Agency and ACS is for a particular set of foster placement services. Therefore, one Contract Agency may have multiple Agreements with ACS, each for a different type of placement. Appendix A lists, to the best of our information and belief, the Agreements which were current as of November 2014 (*see* ¶ 177) and that are still in force today.

[2] Unless otherwise specified, the term "parents" as used herein refers to the person(s) who have legal custody or legal responsibility for the child prior to his or her entry into foster care, and may include biological parents, grandparents, adoptive parents or other legal guardians.

206.     Once a child enters foster care, ACS "places" the child with a Contract Agency, to which ACS delegates the day-to-day care of, and case planning responsibility for, the child. Upon information and belief, placement with a Contract Agency is determined largely by which Contract Agency has availability when placement is sought, not by a determination of the child's health, safety or permanency needs, or of the ability of a potential available placement to meet those needs.

207.     The Contract Agency with which the child has been placed then assigns the child a foster placement, which can be either a traditional home-like setting or residential facility.[3] Upon information and belief, foster placements are determined largely by availability at the time the placement is sought, not by a determination of the child's health, safety or permanency needs, or of the ability of a potential available placement to meet those needs.

208.     Once a child is placed with a Contract Agency, caseworkers employed by that Contract Agency are responsible for generating and recommending a case plan for the child.

209.     Pursuant to federal and state law, ACS is required to ensure that a case plan meeting statutory criteria and professional standards is prepared for each child in foster care.  In New York, these case plans are referred to as Family Assessment and Service Plans ("FASP"). Each child's FASP must describe, among other things, the child's physical and mental health needs, the child's permanency goal, the services necessary to meet the child's physical and mental needs as identified in the case plan and the services necessary to help the child achieve his or her permanency goal as identified in the case plan.

---

[3] Residential facilities include boarding homes, group homes, group residences, and institutions or residential treatment facilities.  Residential facilities are the most restrictive settings, usually intended for the placement of older children with severe clinical, medical, mental and/or behavioral problems.

69

210.     Pursuant to state and federal law, ACS also is responsible for ensuring that each child's case plan is implemented, and for providing each child in its custody with the services necessary to meet the child's physical and mental needs as identified in the case plan and the services necessary to help the child achieve his or her permanency goal as identified in the case plan.

211.     ACS delegates the preparation of such case plans and the provision of such services to the Contract Agency with which the child has been placed.  However, ACS fails to ensure that the Contract Agencies prepare meaningful and appropriate FASPs for each child in ACS custody, as required by state law.  ACS also fails to ensure that the Contract Agencies provide the services necessary to meet both the child's physical and mental needs and to help the child achieve his or her permanency goal (as identified in the case plan), as required by law.

212.     Foster care is intended to be temporary—a short-term placement until a child can be safely reunified with his or her parents or, where that is not possible, placed into another stable, permanent home.

213.     Accordingly, federal and state law require ACS to ensure that each child in foster care has a "permanency goal" and that reasonable efforts are made to reach each child's established permanency goal within a reasonable period of time.  There are five possible permanency goals:  (1) return to parent; (2) adoption; (3) legal guardianship or kinship guardianship; (4) placement with a relative; and (5) another planned permanent living arrangement ("APPLA"), the permanency goal given to children who will "age out" of the foster care system.

214.     ACS delegates case planning responsibility, including assigning permanency goals and making reasonable efforts toward permanency goals, to the Contract Agency with

which each child in ACS custody has been placed. However, ACS fails to ensure that the Contract Agencies engage in meaningful and appropriate permanency planning, as required by federal and state law.

215. Federal law requires ACS to ensure that caseworkers engage in concurrent planning, so that each child in ACS custody has a primary permanency goal and a secondary permanency goal, both of which the caseworker must work toward simultaneously. For example, if a child's primary permanency goal is "return to parent" and the secondary permanency goal is "adoption", concurrent planning requires simultaneous provision of necessary services so that the child can be returned home safely and recruitment of potential adoptive parents in the event the child is unable to be returned home safely. The purpose of concurrent planning is to limit the harm caused to the child by a lengthy stay in foster care by ensuring that the child is placed into a permanent home within a reasonable period of time.

216. ACS delegates case planning responsibility, including engaging in concurrent planning, to the Contract Agency with which each child in ACS custody has been placed. However, ACS fails to ensure that the Contract Agencies engage in meaningful and appropriate concurrent planning, as required by federal law.

217. Federal and state law require ACS to ensure that a child's case plan is periodically reviewed to ensure that the child's permanency goal is appropriate and that progress is being made toward safely returning the child to his or her parent or, if that were not possible within a reasonable period of time, placing the child in a permanent home. By state statute, an initial FASP review must be held between 60 and 90 days after the child is placed in foster care, and subsequent FASP reviews must be held no less than every six months thereafter. ACS must ensure that the caseworker and all relevant persons, including, but not limited to, the parents of

71

the child, relatives, the foster parent and the child, if old enough, participate in the FASP reviews. However, ACS fails to ensure that meaningful and appropriate FASP reviews occur as required by state law.

218. By state statute, a permanency hearing must be held in the Family Court within eight months of a child's removal from his or her parents and every six months thereafter, and that permanency hearing must be completed within 30 days. The purpose of permanency hearings is to provide each child in ACS custody with timely judicial review of the child's permanency goal and whether progress has been made toward achieving that goal.

219. Because ACS fails to ensure that all parties are prepared for court and that Contract Agencies submit necessary paperwork in a timely fashion, such permanency hearings often are not completed within the time period required by state law. In many if not most instances, the permanency hearings are held before the Family Court has even made a determination about whether the parent from whom the child was removed has in fact neglected or abused the child.

220. Federal and state law provide that ACS must, after a child is removed from his or her parents, make a reasonable effort to preserve family relationships, which includes providing services to the child's parents. Federal law and policy dictate that the preferred course of action is to reunify the child with his or her parents.

221. ACS has delegated its responsibility to make reasonable efforts to reunify each child in its custody with his or her parents to the Contract Agency with which the child has been placed. However, ACS fails to ensure that reasonable efforts are being made or that necessary services are being provided to enable children in ACS custody to be returned home within a reasonable period of time, as required by federal and state law.

A0278

222.     Even while efforts are being made to reunify a child with his or her parents, federal law and professional standards also require ACS to ensure that concurrent planning—*i.e.*, to pursue another permanency option for the child in the event that the child cannot safely be returned to his or her parents (*see supra* ¶ 215)—occurs.  That means that ACS should not wait months or years until reunification efforts have failed to begin alternative permanency planning, including identifying other potential permanent homes for the child.

223.     Federal and state law require ACS to determine within a reasonable period of time whether or not a child in foster care can be safely and appropriately returned to his or her parents, and if not, to initiate a petition to terminate parental rights so that the child is legally available to be adopted.  ACS has delegated the responsibility for making that determination to the Contract Agency with which each child in ACS custody has been placed.  However, ACS fails to ensure that the Contract Agency makes that determination within a reasonable time, as required by federal and state law.

224.     Under federal and state law, ACS must file a petition to terminate parental rights ("TPR") when a child has been in foster care for 15 of the previous 22 months, subject to certain exceptions that must be documented.  Under state law, ACS must file a TPR petition (a) within 30 days of establishing a primary permanency goal of "adoption"; (b) within 60 days of completing a FASP that documents abandonment or permanent neglect of a child; and (c) within 60 days of a judicial determination that a child was abandoned.  ACS has delegated its responsibility to file TPR petitions to the Contract Agency with which each child in its custody has been placed.  However, ACS fails to ensure that TPR petitions are filed within the time periods required by federal and state law.

225.     Once parental rights have been terminated and a child in ACS custody is considered "freed" for adoption, state statutory law and regulations require ACS to take a number of additional steps to place that child into a permanent home, including (a) timely acting on applications by persons looking to adopt children; (b) initiating and completing adoption studies (evaluations of an applicant's ability to be an adoptive parent) within certain time periods; (c) placing children in adoptive homes within certain time periods; and (d) finalizing adoptions within certain time periods.  However, as the concept of concurrent planning (*see supra* ¶ 215) makes clear, ACS should have been identifying other potential permanent homes for the child well before the child is freed for adoption.  ACS has delegated these responsibilities to the Contract Agency with which each child in its custody has been placed; however, ACS fails to ensure that the necessary and appropriate steps are taken to develop an appropriate pool of adoptive families and to place children who have been freed for adoption into adoptive homes, as required by state law.

226.     Although ACS has delegated the provision of comprehensive foster care services in New York City to 29 Contract Agencies, that delegation does not and cannot supplant ACS's responsibilities to Plaintiff Children under federal and state law.  ACS has legal custody of all children in foster care in New York City.  ACS accordingly has legal responsibility for ensuring that the rights of all children in foster care in New York City are protected—which ACS has failed, and continues to fail, to do.

A0280

## FACTUAL ALLEGATIONS REGARDING SYSTEMIC DEFICIENCIES PLAGUING NEW YORK CITY'S FOSTER CARE SYSTEM AND RESULTING HARM TO PLAINTIFF CHILDREN

227.    The experiences and current situations of the Named Plaintiff Children as described above are neither unusual nor aberrational.  Rather, they are merely examples that are far too typical of the irreparable harm being suffered by all children in ACS custody.

228.    Defendants are harming Plaintiff Children by:

    a.    failing to protect Plaintiff Children from physical, psychological and emotional harm;

    b.    failing to ensure the development and implementation of meaningful case plans to enable Plaintiff Children to be safely returned to their parents or, if that were not possible within a reasonable period of time, to place them in permanent homes; and

    c.    failing to provide foster care placements and services to ensure Plaintiff Children's well-being.

229.    These harms are a direct result of Defendants' long-standing and well documented actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years:

    a.    ACS fails to exercise adequate and meaningful oversight over the Contract Agencies to which ACS has delegated the day-to-day care of, and case planning responsibility for, Plaintiff Children.

75

b.     ACS fails to ensure that Contract Agency caseworkers are assigned caseloads and receive appropriate training consistent with professional standards.

c.     ACS fails to provide a system for making foster placements consistent with federal and state law and minimum professional standards.

d.     ACS fails to ensure case and service plans are developed and implemented consistent with federal and state law and minimum professional standards.

e.     ACS fails to take all necessary and available action to ensure timely adjudication of family court proceedings involving children in ACS custody consistent with federal and state law and minimum professional standards.

All of Defendants' actions and inactions as described herein substantially depart from accepted professional judgment and constitute deliberate indifference to the harm, risk of harm and violations of legal rights suffered by Plaintiff Children.

230.     Put simply, as a result of Defendants' failures, caseworkers employed by the Contract Agencies to which ACS has delegated the care of Plaintiff Children often are inexperienced, undertrained, under-supervised, overworked and underpaid; case planning often is sloppy and ineffective; there are not enough suitable and appropriate foster and pre-adoptive placements to meet Plaintiff Children's needs; and a lack of urgency and accountability pervades New York City's foster care system.

231.     Defendants have long been aware of these systemic failures and the resulting harm to the vulnerable children in ACS custody. Since 2000, OCFS has undergone two federal performance audits of the New York State child welfare system, known as Child and Family

Services Reviews ("CFSR"). These reviews are conducted by the United States Department of Health and Human Services to assess the performance of child welfare systems across the country, including the outcomes achieved for children, to identify areas in which systemic improvement is required to assure appropriate outcomes for children, and to implement corrective actions where outcomes for children are found to be deficient. States are evaluated on seven outcome indicators of safety, permanency and well-being—the unequivocal goals of all foster care systems pursuant to federal statutory law—and on seven systemic factors that affect the state's capacity to deliver foster care services effectively.

232. The two federal audits completed to date revealed myriad areas in which the New York State foster care system was causing harm to the children in its care, and that New York State's foster care system was getting worse. The first CFSR audit, which was published in 2002, found that New York State failed to conform to federal expectations in five of the seven safety, permanency and well-being indicators, and in three of the seven systemic factors. Seven years later, New York State performed worse. During the second CFSR audit, which was published in 2009, the federal government determined that New York State failed to conform to federal expectations in all seven safety, permanency and well-being indicators, and in five of the seven systemic factors. New York State's CFSR results are heavily influenced by New York City's child welfare system, which accounted for well over 60% of children in foster care in New York State in both 2002 and 2009.

233. Notwithstanding having had 13 years to improve performance since the first CFSR audit of New York State, Defendants continue to place New York City children in ACS custody at significant risk of harm. The most recent federal data available shows that children in

New York State spend longer in foster care and are more likely to be maltreated while in foster care than children in virtually all other states.

234.    Defendants are not acting with sufficient urgency to address these known failures or to meet their legal obligations to protect the children in New York City's foster care system.

**I.      DEFENDANTS ARE CAUSING IRREPARABLE HARM TO CHILDREN IN ACS CUSTODY.**

A.      Defendants Fail To Protect Children in ACS Custody from Maltreatment.

235.    Maltreatment of children in foster care is a significant problem in New York City.

236.    New York City currently accounts for almost 60% of children in foster care in New York State, which lags far behind the nation with respect to the protection of children in foster care.

237.    Based on the most recent federal data available, New York State ranks 46th out of 48 states and territories for instances of substantiated or indicated maltreatment of children while in foster care.  Put simply, children in New York are more likely to be harmed while under the state's protection than children in virtually every other state.

238.    New York State has had a high rate of maltreatment in foster care for years.  In both the 2002 and 2009 CFSRs, the federal government found that New York State did not meet the national standard for the rate of maltreatment in foster care.  Based on the most recent federal data available, New York State did not meet the national standard for 2013.

239.    Upon information and belief, the high rate of maltreatment in care in New York State is largely driven by maltreatment of children in ACS custody in New York City, which accounts for the majority of children in foster care in New York State.

240.    All investigations of maltreatment, including those pertaining to children in foster care custody, begin with a call to the Statewide Central Register of Child Abuse and

Maltreatment ("SCR").  According to ACS, in 2014, SCR received 1,987 reports of maltreatment of children in ACS custody (*i.e.*, children in foster care in New York City).  ACS's Office of Special Investigation investigates reports of maltreatment made to the SCR, including those for children already in foster care; a report of maltreatment is "substantiated" when sufficient evidence is found to support a determination that a child was in fact maltreated.  Of the 1,987 reports of maltreatment in foster care received by SCR in 2014, 28% were substantiated.  The Children's Bureau of the federal government does not publish comparable data.

241.     The high rate of maltreatment of children in ACS custody is a direct result of Defendants' long-standing and well-documented actions and inactions and Defendants' failure to remedy structural and systemic deficiencies that have plagued New York City's foster care system for years.  ACS's failure to ensure that Plaintiff Children are protected from maltreatment substantially departs from accepted professional judgment and demonstrates a deliberate indifference to the risk of harm to Plaintiff Children.

B.     Defendants Fail To Provide Children in ACS Custody with Permanent Homes and Families Within a Reasonable Time.

242.     Foster care is intended to be temporary.  Children who do not grow up in stable family environments are less likely to complete their education, to form healthy relationships or to be otherwise prepared to live healthy, satisfying adult lives.  Accordingly, federal and state law and professional standards dictate that foster children should be placed in permanent homes as quickly as is safely possible, whether with their parents, another relative or an adoptive family.

243.     But ACS allows Plaintiff Children to languish for years in foster care without permanent homes or families to call their own.  Indeed, the most recent federal data available shows that New York City lags far behind the rest of New York State and the nation as a whole